Edward A. Klein, Esq. (SBN: 145736)
Heather H. Gilhooly, Esq. (SBN: 198911)
    hgilhooly@linerlaw.com
LINER YANKELEVITZ
SUNSHINE & REGENSTREIF LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024-3503
Telephone:  (310) 500-3500  Facsimile:  (310) 500-3501

James P. Tallon, Esq. (SBN: 154035)
    jtallon@shearman.com
Wayne Dale Collins, Esq. (*pro hac vice*)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone:  (212) 848-4000  Facsimile:  (212) 848-7179

James F. Rittinger, Esq. (*pro hac vice*)
    jrittinger@ssbb.com
Justin E. Klein, Esq. (*pro hac vice*)
SATTERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue, Suite 1130
New York, NY 10169
Telephone:  (212) 818-9200
Facsimile:  (212) 818-9606

Attorneys for Defendant
West Publishing Corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| STEPHEN STETSON, et al.,<br><br>   Plaintiffs,<br><br>  vs.<br><br>WEST PUBLISHING CORPORATION, et al.,<br><br>   Defendants. | Case No. CV08-00810 R (Ex)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 12(b)(1); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[DECLARATION OF HEATHER H. GILHOOLY; AND [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH]<br><br>Date:  April 7, 2008<br>Time:  10:00 a.m.<br>Courtroom:  8<br><br>Date Action Filed:  February 6, 2008 |

0020198/001/385250.01

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on April 7, 2008, at 10:00 a.m. or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Manuel L. Real, located at 312 North Spring Street, Los Angeles, California, defendant West Publishing Corporation ("West"), by its undersigned attorneys, hereby moves this Court pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) for an order dismissing the complaint in this action for failure to state a claim upon which relief can be granted and lack of subject-matter jurisdiction, and granting such other and further relief as the Court deems just and proper.

This motion is based upon Defendant's Memorandum of Points and Authorities filed contemporaneously herewith, the accompanying Declaration of Heather H. Gilhooly and the exhibits annexed thereto, all the papers and pleadings on file in this action, such matters and facts of which this Court may take judicial notice, and the argument of counsel herein.

Dated:  March 14, 2008          SHEARMAN & STERLING LLP

SATTERLEE STEPHENS BURKE &
BURKE LLP

LINER YANKELEVITZ SUNSHINE
& REGENSTREIF LLP


By: _____
    James P. Tallon
    Attorneys for Defendant West
    Publishing Corporation

1

# **TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ........................................................................ 1

II. FACTS........................................................................................................... 2

    A.   Alleged Market Allocation ................................................... 3

    B.   Miscellaneous Competitive Conduct ................................... 6

III. ARGUMENT ............................................................................................... 7

    A.   The Complaint Does Not Meet the Plausibility Standard Articulated by the Supreme Court in *Twombly*. ................... 7

    B.   Plaintiffs' Claims for Injunctive Relief Should Be Dismissed. ....................................................................... 11

        1.   Market Conditions ................................................... 12

        2.   Unpredictability Regarding Plaintiff Fathy ............... 13

        3.   The Other Plaintiffs Have an Adequate Legal Remedy. ................................................................. 15

    C.   Plaintiffs' Demand for Injunctive Relief Is Grossly Inappropriate. ...................................................................... 17

IV. CONCLUSION ........................................................................................ 19

i

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

## **FEDERAL CASES**

4

5 *Am. Passage Media Corp. v. Cass Comm'ns, Inc.*,
750 F.2d 1470 (9th Cir. 1985) ................................................................ 18

6 *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*,
7 108 F.3d 1147 (9th Cir. 1996) ........................................................ 12, 16

8 *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*,
9 459 U.S. 519, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983) ......................... 10

10 *Atl. Richfield Co. v. USA Petroleum Co.*,
495 U.S. 328, 110 S. Ct. 1884, 109 L. Ed. 2d 333 (1990) ..................... 19
11
*Beacon Theatres, Inc. v. Westover*,
12 359 U.S. 500, 79 S. Ct. 948, 3 L. Ed. 2d 988 (1959) .............................. 18

13 *Bell Atl. Corp. v. Twombly*,
127 S. Ct. 1955 (2007) ................................................... 7, 8, 9, 20
14
*Broadcom Corp. v. Qualcomm, Inc.*,
15 501 F.3d 297 (3d Cir. 2007) ................................................................. 11

16 *California Housing Corp. v. California Housing Fin. Agency*,
1981 WL 2409 (E.D. Cal. 1981) ............................................................. 16
17
*Cargill, Inc. v. Budine*,
18 2007 WL 2506451 (E.D. Cal. 2007) ......................................................... 8

19 *Conley v. Gibson*,
355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) ..................................... 7
20
*Cont'l Ore Co. v. Union Carbide Corp.*,
21 370 U.S. 690, 82 S. Ct. 1404, 8 L. Ed. 2d 777 (1962) .............................. 9

22 *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*,
497 F. Supp. 218 (C.D. Cal. 1980) .......................................................... 18
23
*In re Ditropan XL Antitrust Litig.*,
24 2007 WL 2978329 (N.D. Cal. 2007) ........................................................ 8

25 *Dove Audio, Inc. v. Lungren*,
1995 WL 432631 (C.D. Cal. 1995) ......................................................... 18
26
*Hairston v. Pac.-10 Conference*,
27 893 F. Supp. 1485 (W.D. Wash. 1994), *aff'd*, 101 F.3d 1315 (9th Cir. 1996) ....... 18

28

ii

0020198/001/385250v01

1

## <u>TABLE OF AUTHORITIES (cont.)</u>

2
<u>**Page(s)**</u>

3 *Justice v. Nat'l Collegiate Athletic Ass'n,*
577 F. Supp. 356 (D. Ariz. 1983).......................................................... 19
4

*Kendall v. VISA U.S.A., Inc.,*
5 2008 WL 613924 (9th Cir. 2008)........................................................... 8

6 *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,*
468 F. Supp. 154 (C.D. Cal. 1979)......................................................... 15
7

*Lucas v. Bechtel Corp.,*
8 800 F.2d 839 (9th Cir. 1986) ................................................................ 18

9 *Metromedia Broad. Corp. v. MGM/UA Entm't Co.,*
611 F. Supp. 415 (C.D. Cal. 1985)......................................................... 19
10

*O'Shea v. Littleton,*
11 414 U.S. 488, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1973) ........................... 15

12 *O'Toole v. Northrop Grumman Corp.,*
499 F.3d 1218 (10th Cir. 2007) ............................................................ 14
13

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.,*
14 762 F.2d 1374 (9th Cir. 1985) .............................................................. 18

15 *Rossi v. Standard Roofing, Inc.,*
156 F.3d 452 (3d Cir. 1998) .................................................................. 9
16

*Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.,*
17 594 F.2d 730 (9th Cir. 1979) ................................................................ 14

18 *Town Sound and Custom Tops, Inc. v. Chrysler Motors Corp.,*
959 F.2d 468 (3rd Cir. 1992) ................................................................ 20
19

*Treasure Valley Potato Bargaining Ass'n v. Ore-Ida Foods, Inc.,*
20 497 F.2d 203 (9th Cir. 1974) ................................................................ 19

21 *Zenith Radio Corp. v. Hazeltine Research, Inc.,*
395 U.S. 100, 89 S. Ct. 1562, 23 L. Ed. 2d 129 (1969) ........................ 15
22

23

**FEDERAL STATUTES**

24 15 U.S.C. § 26 .................................................................................... 16

25 Fed. R. Civ. P. 12(b)(6) ......................................................... 7, 8, 14

26

27

28

iii

00201981001 38525901

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## PRELIMINARY STATEMENT

Less than eight weeks after this Court's December 17, 2007 ruling dismissing the complaint in *Schall v. West Publ'g Corp.*, No. CV 07-5146 R, plaintiffs' attorney Eliot Disner filed the complaint in this case, alleging primarily that BAR/BRI, a division of defendant West, monopolizes a national market for full-service bar review preparation courses. Mr. Disner, as this Court knows, was also one of the attorneys for plaintiffs in *Rodriguez v. West Publ'g Corp.*, No. CV 05-3222 R. On September 10, 2007, this Court entered final judgment in *Rodriguez*, approving a settlement that Disner initially supported but later opposed. Many of plaintiffs' allegations in this action are the same as allegations that were pleaded in *Rodriguez* and were the subject of discovery in that case. This similarity is unsurprising, because – as this Court will recall from the *Rodriguez* litigation – this case, like its predecessors, is nothing more than the brainchild of Mr. Disner, who had previously litigated (unsuccessfully) against BAR/BRI, and disgruntled former BAR/BRI executive Stanley Chess. This most recent complaint seeks damages as well as unprecedented injunctive relief "to break up" BAR/BRI. The complaint also names Kaplan, Inc. as a defendant.

In key respects, the complaint in this action suffers from the defects that characterized the *Schall* complaint. Moreover, the complaint in this case is flawed because plaintiffs' allegations that they have sustained injury (or will sustain injury) depend on a collection of alleged acts that are sufficiently old or isolated that, as a matter of law, they are inadequate to be the basis of legally adequate causes of action.

In addition, none of the named plaintiffs has standing to seek injunctive relief; all plaintiffs have an adequate legal remedy for their claimed injury. Even if an equitable remedy were available to plaintiffs, the broad, destructive injunctive relief

1

1   sought by plaintiffs is grossly inappropriate.  Such relief ignores not only recent

2   developments in the bar review market, such as Wolters Kluwer's recent launch of

3   its own bar review courses and Kaplan's 2006 acquisition of bar review course

4   provider PMBR, but also the significant market effects of the non-monetary relief

5   provided by the *Rodriguez* settlement.

6        This Court should dismiss the complaint, which amounts to nothing more than

7   an attempt to end-run the Court's December 17, 2007 *Schall* ruling, from which no

8   appeal was taken.  This complaint does not articulate an adequate basis on which to

9   mount a lengthy, expensive litigation.

10                                **II.**

11                              **FACTS**

12        Plaintiffs Stetson and LaVigne allegedly have taken BAR/BRI review courses

13  to prepare for the Alabama and California bar exams, which they took in February

14  2008 and July 2007, respectively.  Complaint ¶¶ 6, 7.  Plaintiffs Brown-Roberts and

15  Karpenko are law students who allegedly plan to take a bar exam in July 2008, but

16  are undecided about which state's exam they will take.  *Id*. ¶¶ 8, 9.  Brown-Roberts

17  apparently has not enrolled in a BAR/BRI program.  *Id*. ¶ 8.  Plaintiff Fathy is also a

18  law student who plans to take a bar exam in July 2009, but is undecided about which

19  state's exam he will take.  *Id*. ¶ 10.

20        Stetson and LaVigne are designated as putative representatives of "Class A,"

21  which includes all persons who purchased a bar review course from BAR/BRI after

22  July 1, 2006.  *Id*. ¶¶ 79, 80.  The complaint seeks damages on behalf of Class A,

23  notwithstanding that an unknown number of persons who purchased bar review

24  courses from BAR/BRI and fall within Class A are already members of the class in

25  *Rodriguez*, which extends through July 31, 2006, and the *Rodriguez* class has

26  released its claims against West and Kaplan.  Brown-Roberts, Karpenko and Fathy

27  are designated as putative representatives of "Class B," which allegedly encompasses

28  all law students who intend to purchase a bar review course from BAR/BRI in the

                                    2

1  future.  *Id*. ¶¶ 79, 80.

2      Plaintiffs allege that they have been injured by (a) overpaying for BAR/BRI

3  courses; (b) denial of the opportunity to choose among "various courses" that

4  allegedly would have existed "in the absence of" BAR/BRI's conduct; and (c) the

5  increased likelihood that they will "fail the bar."  *Id.* ¶¶ 96, 104, 110.  As relief,

6  plaintiffs seek damages for Class A and injunctive relief for both Classes "including

7  but not limited to, an order creating at least one fully-operational, competitive, full-

8  service bar review business capable of competing successfully against BAR/BRI

9  throughout the United States."  *Id.* at 33.

10      The factual bases for such extraordinary relief are alleged in conclusory and

11  careless fashion.  In general, plaintiffs' factual allegations can be grouped into two

12  categories:  (a) various purported market allocation schemes and (b) other

13  miscellaneous supposed conduct regarding competitors.

14  **A.      Alleged Market Allocation**

15      Plaintiffs have stitched together a series of disparate alleged market allocation

16  agreements between BAR/BRI and others that are widely separated in time and

17  geography.  Most such alleged agreements are quite dated and are specific to a

18  particular locale, such as a state or even an individual law school.

19      For example, plaintiffs allege that Pieper, a successful bar review course

20  provider that has competed with BAR/BRI in New York "for decades" (Complaint ¶

21  41), "in the distant past" did business in an unidentified state other than New York.

22  *Id*.  Plaintiffs allege "on information and belief" that, in response to unspecified

23  "threats" by BAR/BRI, Pieper "peacefully reverted to its New York only program."

24  *Id*.  Plaintiffs concede that they do not know if BAR/BRI did anything that resulted

25  in Pieper's withdrawal to New York, because they allege only that "[w]hatever steps

26  BAR/BRI took to restrict Pieper to New York also violates [*sic*] Section 1 of the

27  Sherman Act."  *Id*.

28      In the case of DeVry, plaintiffs allege that DeVry, which offers a prep course

3

1  for the CPA exam, has never been in the bar review business.  *Id.* ¶ 57.  They also

2  allege that, in 1999, DeVry purchased a CPA exam preparation course from

3  BAR/BRI.  *Id.*  Based on these simple, facially neutral allegations, and once again

4  with resort to "information and belief," plaintiffs make the conclusory assertion that

5  DeVry is a likely entrant to the bar review market and that DeVry and BAR/BRI

6  have each agreed "not to compete in the market of the other."  *Id.*

7      In a particularly bizarre set of allegations, plaintiffs allege that BAR/BRI and

8  Lexis/Nexis do *not* have written non-compete agreements.  *Id.* ¶ 68.  Nevertheless,

9  because Lexis and West allegedly participate in joint marketing in Hong Kong, and

10 Lexis and West allegedly had a joint marketing agreement before 2001, plaintiffs

11 allege, without factual support of any kind, that Lexis has agreed not to compete with

12 BAR/BRI in the United States.  As with their allegations regarding Pieper, plaintiffs

13 concede that they do not have a factual basis for their assertion, asserting instead that

14 they will find one in discovery.  *Id.* ¶ 69.

15     Similarly, plaintiffs allege that, "in the late 1970s," Michigan-based BRC

16 agreed with BAR/BRI to stay out of Illinois and did so until some unspecified date in

17 the 1980s.  *Id.* ¶ 35.  In addition, plaintiffs assert that, in 1987, the owner of BRC

18 "closed the BRC course without explanation."  *Id.* ¶ 36.  Plaintiffs allege – vaguely –

19 based on information and belief, that BAR/BRI "took action . . . to drive BRC out of

20 business."  *Id.*  Plaintiffs do not allege what action BAR/BRI took.

21     Regarding Becker, another provider of prep courses for the CPA exam,

22 plaintiffs allege that, in the early 1990s, Becker planned to enter the bar review

23 course market working with Hugh Reed.  *Id.* ¶ 37.  According to plaintiffs, Reed

24 "received mysterious phone calls over several nights" and Becker "inexplicably"

25 terminated its plan to enter the bar review course market.  *Id.*  On this feeble basis,

26 plaintiffs make the nebulous allegation, on information and belief, that "BAR/BRI

27 interfered with and prevented Becker's entry into the relevant market."  *Id.*  Plaintiffs

28 do not allege how BAR/BRI interfered or prevented Becker's entry – they simply

4

1 assume the conclusion.

2      Similarly, plaintiffs do not even allege that BAR/BRI and bar review course

3 provider PMBR had an unlawful agreement; they simply assume it.  Starting with the

4 fact that PMBR has offered a specialty bar review course for many years, plaintiffs

5 assert that PMBR entered the full-service bar review market in California and

6 "several southeastern states" in the early 1990s, but then discontinued the offering

7 after settling litigation PMBR had initiated against BAR/BRI.  *Id.* ¶ 38.  Plaintiffs

8 allege that BAR/BRI "inexplicably settled the matter in an amount believed to be far

9 more than" the claimed damages.  *Id*.  Thereafter, plaintiffs claim, PMBR

10 discontinued its effort to enter the full-service market and "PMBR and BAR/BRI do

11 not speak of each other in any critical or comparative way . . . ."  *Id.* ¶ 39.  On this

12 basis, plaintiffs allege that PMBR and BAR/BRI participated in a "market division

13 conspiracy."  *Id*.

14      Plaintiffs allege that another New York course provider, Marino, expanded its

15 business into Pennsylvania and New Jersey "[b]y the 1990s."  *Id*. ¶ 40.  They also

16 allege that BAR/BRI later agreed to a consulting contract with Marino and that, on

17 some unspecified date, Marino shut down his own course.  *Id*.  Plaintiffs do not

18 allege, but apparently merely infer or assume an unlawful agreement between

19 Marino and BAR/BRI.

20      Plaintiffs allege two other market allocation agreements.  In the case of West's

21 co-defendant Kaplan, plaintiffs allege that, in 1997, Kaplan and BAR/BRI agreed

22 that each would stay out of the other's market.  *Id.* ¶¶ 48 – 50.  Plaintiffs also allege

23 that, in 2003, BAR/BRI agreed with Louisiana State University, in Baton Rouge, to

24 provide a bar review course for a three year period.  *Id.* ¶ 51.  Plaintiffs also allege

25 that the LSU agreement "appears to continue."  *Id*.

26      Plaintiffs likewise make only the most conclusory allegations of causation

27 from this disparate and old alleged conduct.  For example, plaintiffs do not explain

28 how the purported decade-old decision by Kaplan not to purchase West Bar could

5

1    plausibly be thought to be continuing to have any effects in the marketplace,

2    especially in light of the numerous other players, market allocation agreements and

3    other conduct that they allege with respect to bar review.

4    **B.      Miscellaneous Competitive Conduct**

5          In addition to the various market allocation schemes that they allege, plaintiffs

6    also allege that, essentially, BAR/BRI competes aggressively.  For example,

7    regarding Supreme Bar Review, a competitor of BAR/BRI that currently provides a

8    bar review course in Ohio, plaintiffs allege that BAR/BRI has "taken steps to rid the

9    course even from that state," although apparently without effect.  *Id.* ¶¶ 52, 54.

10   According to plaintiffs, BAR/BRI has attempted to "suppress Supreme and eliminate

11   it from the market" by offering scholarships to students to win business from

12   Supreme Bar Review, *i.e.*, BAR/BRI has discounted its prices to meet competition

13   (*id.* ¶¶ 53 – 54); BAR/BRI has started rumors about Supreme; has made misleading

14   comparative representations; has filed a lawsuit of an unspecified type; and has "co-

15   opted" law school students to deny bulletin board space to Supreme.  *Id.* ¶¶ 54 – 56.

16         With respect to another competitor of BAR/BRI, Bar Secrets, plaintiffs allege

17   that BAR/BRI has attempted to win customers from Bar Secrets, has unfavorably

18   compared Bar Secrets to BAR/BRI and, overtly or covertly, has sought to learn, or

19   learned, information about the content of the Bar Secrets course.  *Id.* ¶¶ 64 – 67.  Bar

20   Secrets has apparently operated in only two law schools in California – California

21   Western School of Law and Thomas Jefferson School of Law.  *Id.* ¶¶ 63 – 67.

22         Finally, plaintiffs also rely on allegations drawn from a bizarre declaration of

23   another BAR/BRI competitor, Rigos, from the state of Washington.  *Id.* ¶¶ 58 – 62.

24   Like Supreme Bar Review in Ohio and Bar Secrets at the Thomas Jefferson School

25   of Law, Rigos has apparently continued to compete with BAR/BRI, notwithstanding

26   plaintiffs' allegations that BAR/BRI competed aggressively against Rigos.  *Id.* ¶ 58.

27   Remarkably, plaintiffs incorporate Rigos' ludicrous assertion that BAR/BRI broke

28   into Rigos' offices – an allegation that plaintiffs did not take the time to investigate

6

1   before filing their complaint.  *Id.* ¶¶ 58, 61 – 62.

2      Cumulatively, plaintiffs' allegations of various market allocation agreements

3   and other conduct do not depict a national monopoly.  Rather, plaintiffs' allegations

4   relate to events that are too old or isolated to have an impact on plaintiffs.  These

5   allegations are an insufficient basis for the claims asserted.

6                                        **III.**

7                                   **ARGUMENT**

8   **A.    The Complaint Does Not Meet the Plausibility Standard Articulated by**

9          **the Supreme Court in *Twombly.***

10     In *Bell Atl. Corp. v. Twombly*, the Supreme Court ruled that, to state a claim of

11  violation of § 1 of the Sherman Act, a complaint must include "enough factual matter

12  (taken as true) to suggest that an agreement was made."  127 S. Ct. 1955, 1965

13  (2007).  The Court held that such a complaint's allegations must plausibly suggest an

14  unlawful agreement; it is not sufficient that the alleged conduct be merely consistent

15  with an agreement.  *Id.* at 1966.  In addition, the Court ruled that conclusory, "naked

16  assertion[s]" of conspiracy do not "enter the realm of plausible liability."  *Id.* at 1966,

17  1966 n.5.

18     The *Twombly* Court also expressly rejected the frequently-cited language from

19  *Conley v. Gibson* that a complaint should not be dismissed unless "the plaintiff can

20  prove no set of facts . . . which would entitle him to relief."  *Id.* at 1968 – 69 (quoting

21  *Conley v. Gibson*, 355 U.S. 41, 45 – 46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  Rather,

22  the Court explained, a complaint must plead enough facts to state a claim for relief

23  that is plausible on its face.  Finding that the complaint at issue did not cross the line

24  from conceivable to plausible, the Court upheld dismissal pursuant to Fed. R. Civ. P.

25  12(b)(6).

26     The Court justified its holding on the ground that it is preferable to deter

27  groundless claims at the pleading stage rather than to launch an expensive discovery

28  process.  *Id.* at 1967.  Indeed, the Court quoted at length and with approval Judge

                                          7

1   Easterbrook's articulation of the difficulties faced by the judiciary in effectively
2   controlling discovery abuse due to lack of adequate information about the nature of
3   the claims and the actual costs and benefits of discovery.  *Id.* at n.6 (quoting
4   Easterbrook, *Discovery as Abuse*, 69 B.U. L. REV. 635, 638 – 39 (1989)).  As the
5   Ninth Circuit has noted in explaining the holding of *Twombly*, "discovery in antitrust
6   cases frequently causes substantial expenditures and gives the plaintiff the
7   opportunity to extort large settlements even where he does not have much of a case."
8   *Kendall v. VISA U.S.A., Inc.*, No. 05-16549, 2008 WL 613924, at *3 (9th Cir. Mar. 7,
9   2008).

10          Courts have applied *Twombly* in the context of assessing antitrust allegations
11   other than those relating to the existence of a purported conspiracy.  For example,
12   courts have applied *Twombly* in the context of assessing complaints alleging
13   violations of § 2 of the Sherman Act.  *In re Ditropan XL Antitrust Litig.*, No. 06-cv-
14   01761, 2007 WL 2978329 (N.D. Cal. Oct. 11, 2007); *Cargill, Inc. v. Budine*, No.
15   CV-F-07-349, 2007 WL 2506451 (E.D. Cal. Aug. 30, 2007).  Indeed, there is (1) no
16   reason not to do so and (2) a substantial risk that not reading § 2 complaints in light
17   of *Twombly* will result in the very problems that the Supreme Court sought to avoid.

18          Application of *Twombly* to all claims for relief asserted in the complaint is
19   particularly apt in this case.  Most of the bases alleged by plaintiffs for their causes of
20   action are supposed market allocation agreements between BAR/BRI and its
21   competitors; there is no question that most of plaintiffs' allegations are wholly
22   inadequate to be the basis of claims for violation of § 1 in and of themselves.  For
23   example, with respect to DeVry, plaintiffs allege an agreement between DeVry and
24   BAR/BRI based on supposition only.  Complaint ¶ 57.  Plaintiffs repeatedly assume
25   the entering into and continuation through the present of unlawful agreements or take
26   refuge in conclusory assertions, "on information and belief," that unlawful
27   agreements exist.  *See id.* ¶¶ 36 (allegation that BRC business shut down "without
28   explanation;" no factual allegation that BAR/BRI caused that result); 41 (allegation

8

1  that Pieper restricts its business to New York but no factual allegation that BAR/BRI

2  did anything to cause that result); 37 (Becker "inexplicably" terminated its plan to

3  enter the bar review business; no factual allegation that BAR/BRI caused that result);

4  38 – 39 (plaintiffs assume an agreement between PMBR and BAR/BRI); 68 – 69

5  (plaintiffs assume an agreement between Lexis and BAR/BRI).  This is just the sort

6  of inadequate pleading that the Supreme Court condemned in *Twombly*.  Plaintiffs'

7  naked assertions underlying their claims simply do not entitle them to relief.

8  *Twombly*, 127 S. Ct. at 1966.

9  　　Moreover, plaintiffs' causes of action should be dismissed for two additional

10  separate and sufficient reasons:  (a) the alleged conduct is too remote in time and

11  geographically isolated to have plausibly had a causal impact on these plaintiffs; and

12  (b) the most recent alleged conduct is not anticompetitive.

13  　　Even older cases that extend the benefit of the doubt to plaintiffs recognize

14  that there is a point at which historic events cease to have meaningful impact for

15  purposes of the antitrust laws.  *See, e.g.*, *Cont'l Ore Co. v. Union Carbide Corp.*, 370

16  U.S. 690, 710, 82 S. Ct. 1404, 8 L. Ed. 2d 777 (1962) (discussing limits on evidence

17  of historic acts due to limited probative value).  Here, plaintiffs allege in conclusory

18  fashion that conduct dating back to the 1970s (BRC) and the 1990s (Becker, Kaplan,

19  PMBR) affected a national market for bar review courses in 2007, 2008, 2009 and

20  beyond.  West submits that, as a matter of law, such dated conduct does not and

21  could not have the claimed affect.

22  　　Plaintiffs make no connection between the alleged conduct of BAR/BRI (and

23  Kaplan) and their claimed injury other than pure assumption.  But, notwithstanding

24  plaintiffs' willingness to take for granted that, for example, alleged agreements with

25  DeVry in 1999 or Kaplan in 1997 were the purported proximate cause of antitrust

26  injury to plaintiffs in 2007, 2008 and beyond, the nexus between unlawful conduct

27  and an antitrust plaintiff's injury must be susceptible to reasonable proof.  *See, e.g.*,

28  *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 484 (3d Cir. 1998).  In *Twombly*

1  terms, that nexus must be plausible.  In the context of plaintiffs' allegations here, the

2  nexus is simply assumed.  Indeed, the relationship between the dated, isolated

3  conduct alleged by plaintiffs and their alleged injuries are too tenuous and

4  speculative to support their three causes of action.  *See Associated Gen. Contractors*

5  *of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 545 – 46,

6  103 S. Ct. 897, 74 L. Ed. 2d 723 (1983).  Despite plaintiffs' narrow view, it is neither

7  obvious nor plausible that events that occurred more than a decade ago would have

8  the effect claimed by plaintiffs.

9       Moreover, much of the alleged conduct is isolated and therefore limited in

10  impact.  Plaintiffs point to conduct in Michigan, Illinois, New York, Ohio,

11  Washington, Louisiana and Hong Kong.  None of the plaintiffs resides in these

12  jurisdictions, attends law school in them or alleges that he or she plans to practice

13  there.  One plaintiff (LaVigne) resides in San Diego, California; two other plaintiffs

14  (Brown-Roberts and Fathy) attend law school in Sacramento.  Yet the only

15  California-related conduct alleged in the complaint regards Bar Secrets, which has

16  limited its operations to two California law schools with which none of the plaintiffs

17  is affiliated.  The isolated and location-specific quality of the alleged conduct means

18  that there is no effect on the broad national market alleged by plaintiffs or even on

19  these particular plaintiffs.

20       Finally, the miscellaneous competitive conduct alleged by plaintiffs simply

21  does not rise to the level of the kind of anticompetitive conduct necessary to make

22  out a monopolization claim.  *See Broadcom Corp. v. Qualcomm, Inc*., 501 F.3d 297,

23  308 (3d Cir. 2007).

24       In sum, the various disparate acts that underlie plaintiffs' three causes of

25  action do not give rise to plausible claims of monopolization or collusion that have

26  proximately caused injury to plaintiffs.  Such dated, isolated conduct cannot be

27  assumed to have had impact on plaintiffs or a national market for bar review courses

28  in 2007, 2008, 2009, or beyond.  Indeed, the disconnect between plaintiffs'

10

1   assumptions regarding the effect of the alleged conduct on the market and a plausible

2   assessment of the actual market is illustrated by this Court's own comments

3   regarding the market effects of the *Rodriguez* settlement.  In approving the *Rodriguez*

4   settlement, this Court noted that the non-monetary relief provisions of the Rodriguez

5   settlement removed allegedly significant barriers to entry.  *Rodriguez v. West Publ'g*

6   *Corp.*, No. CV 05-3222 R, Opinion and Order dated Sept. 10, 2007 ("*Rodriguez*

7   Opinion and Order") at 17; *Rodriguez v. West Publ'g Corp.*, No. CV 05-3222 R,

8   Findings of Fact and Conclusions of Law dated Aug. 10, 2007 ("*Rodriguez* Findings

9   of Fact and Conclusions of Law") ¶¶ 118 – 119 and accompanying footnotes.  In

10  fact, this Court rejected the argument that the *Rodriguez* settlement does not

11  "encourage competitors into the market, require BAR/BRI to lower its prices, or

12  require Defendants to enter each other's market." *Rodriguez* Findings of Fact and

13  Conclusions of Law ¶ 123.

14      Put another way, plaintiffs' allegations regarding the state of the market and its

15  effect on plaintiffs cannot be squared with the provisions of the *Rodriguez* settlement

16  or, indeed, with existing precedent in this Circuit.  *See Am. Prof'l Testing Serv., Inc.*

17  *v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*, 108 F.3d 1147 (9th Cir.

18  1996) ("*APTS*").  In that case, the Ninth Circuit rejected the argument that

19  BAR/BRI's market share was equivalent to market power, ruling that the entry

20  barrier at issue was not legally adequate.  *APTS*, 108 F.3d at 1154.

21      Rather than articulate a plausible factual basis for their claims, plaintiffs

22  instead assume that every act ever taken by BAR/BRI in any corner of the nation has

23  resulted in injury to them today and in the future.  This implausible jump from A to Z

24  is simply a bridge too far; such assumptions underlying plaintiffs' three causes of

25  action should not be the basis of an expensive foray into litigation.

26  **B.    Plaintiffs' Claims for Injunctive Relief Should Be Dismissed.**

27      According to the complaint, both Classes A and B seek extraordinary

28  injunctive relief.  The Class A representative plaintiffs and two of the Class B

1  representative plaintiffs have an adequate remedy at law.  The remaining Class B

2  representative plaintiff lacks standing, because he may or may not actually take a bar

3  review course or a bar exam and because it cannot be assumed that the market will

4  remain static.

5       **1.       <u>Market Conditions</u>**

6       Underlying plaintiffs' request for injunctive relief is the important assumption

7  that the market for bar review courses has essentially been static since the exit of

8  West Bar Review from the market in 1997, and that it will remain static in the

9  coming months and years.  This assumption is critical, because it does not allow for

10 any changes in the market with respect to existing competitors or any new entrants to

11 the market.

12      Plaintiffs' assumption cannot be squared with their own allegations.

13 Allegations regarding conduct dating back to the 1970s (likely before some or all of

14 the plaintiffs were even born), 1990s-era PMBR litigation, and an alleged 1997

15 agreement with Kaplan do not dictate the current or future contours of the relevant

16 markets.  Plaintiffs notably concede that Kaplan, Inc., a subsidiary of the Washington

17 Post Company and a leading test preparation course provider, acquired PMBR, a

18 current provider of certain bar review courses, in 2006.  Complaint ¶ 39.  It is,

19 therefore, too early to gauge what impact Kaplan's acquisition may have on the

20 market in the coming months and years.  Similarly, plaintiffs allege that Dennis

21 Saccuzzo and Nancy Johnson, a pair of lawyer/psychologists, have started and built a

22 superior bar review course in California.  *Id.* ¶ 63.  Plaintiffs have no way of

23 predicting what they – or, for that matter, any of the dozens of other bar review

24 course providers in California and elsewhere – will do in the coming months and

25 years to alter the bar review market.  *See, e.g.*, Declaration of Heather Gilhooly dated

26 March 14, 2008 ("Gilhooly Dec.") ¶ 2, Ex. A (list of bar review courses from

27 FindLaw for Law Students, *available at*

28

00020198/001/385259-01

1  http://stu.findlaw.com/thebar/barreview.html).  Market entrants or existing providers,

2  such as Bar Secrets, may influence the market in ways not currently knowable.

3      Further, it is public knowledge that Wolters Kluwer subsidiary Aspen

4  Publishing has recently launched both a live MBE bar review course spearheaded by

5  Steven Emanuel in several locations, including California, and a comprehensive

6  home-study bar review course, authored by James Rigos.  *See* Gilhooly Dec. ¶ 3, Ex.

7  B (Wolters Kluwer press release dated February 28, 2008), ¶ 4, Ex. C (printout of

8  http://www.emanuelbarprep.com/), ¶ 5, Ex. D

9  (http://www.emanuelbarprep.com/rigos%2Dbar/).  The Court may take this

10  information into account on a motion pursuant to Fed. R. Civ. P. 12(b)(1).  *Thornhill*

11  *Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  This

12  information is subject to judicial notice under Rule 201 of the Federal Rules of

13  Evidence.  *See, e.g.*, *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225

14  (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual

15  information found on the world wide web.").

16      Moreover, as discussed above, this Court acknowledged that the *Rodriguez*

17  settlement addressed alleged barriers to market entry.  *Rodriguez* Opinion and Order

18  at 17; *Rodriguez* Findings of Fact and Conclusions of Law ¶¶ 118 – 119 and

19  accompanying footnotes.  It is therefore clear on the basis of the foregoing that the

20  bar review market is changing even as this case is litigated, rendering the radical

21  equitable relief requested by plaintiffs premature.

22      **2.    <u>Unpredictability Regarding Plaintiff Fathy</u>**

23      With respect to plaintiff Fathy, who allegedly will be taking the bar exam in an

24  undetermined state in July 2009, over a year from now, the foregoing developments

25  clearly have the potential to have a significant impact on the bar review market by

26  that time.  As such, Fathy lacks standing under Article III of the U.S. Constitution

27  and the antitrust laws to bring his claims and request for equitable relief.  Article III

28  standing requires that "[t]he injury or threat of injury must be both 'real and

13

1  immediate,' not 'conjectural' or 'hypothetical.'" *Los Angeles Mem'l Coliseum*
2  *Comm'n v. Nat'l Football League*, 468 F. Supp. 154, 158 (C.D. Cal. 1979) (quoting
3  *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1973)).
4  Similarly, Section 16 of the Clayton Act provides recourse for "a significant threat of
5  injury from an impending violation of the antitrust laws or from a contemporary
6  violation likely to continue or recur." *Zenith Radio Corp. v. Hazeltine Research,*
7  *Inc.*, 395 U.S. 100, 130, 89 S. Ct. 1562, 23 L. Ed. 2d 129 (1969).  Thus, not every
8  threatened injury is sufficient for Article III or § 16 purposes – the threat must be
9  significant and the violation of law impending.  Events that *might* occur in 2009 do
10  not qualify as significant or impending.  The foregoing discussion of recent and
11  ongoing market developments demonstrates that the market conditions upon which
12  Fathy predicates his claims and request for injunctive relief are far from inevitable,
13  but instead are entirely speculative.
14       The fact that Fathy has already registered for a BAR/BRI course does not
15  strengthen his claim of future injury.  Plaintiffs allege that BAR/BRI "has an
16  insurmountable advantage tying up most law students in or about their first year of
17  law school" (Complaint ¶ 24) and that barriers to entry "are very high in this
18  market." *Id.* ¶ 27.  However, as at least four of the plaintiffs (those who have pre-
19  registered for or taken a BAR/BRI course, including Fathy) and plaintiffs' counsel
20  are aware, plaintiffs are not obligated to take a BAR/BRI course merely by virtue of
21  their pre-registration with BAR/BRI during their first year of law school.  This Court
22  is well aware that BAR/BRI agreed as part of the *Rodriguez* settlement to make it
23  clear to law students that they are not committing to take a BAR/BRI course when
24  they initially enroll with BAR/BRI. Gilhooly Dec. ¶ 6, Ex. E ¶ 38(b) (*Rodriguez*
25  Stipulation and Settlement Agreement); *cf.* Complaint ¶ 24.  Indeed, BAR/BRI's
26  current enrollment form does not commit signers to take a BAR/BRI course.
27  Gilhooly Dec. ¶ 7, Ex. F (BAR/BRI current enrollment form).  Plaintiffs' claim that
28  entry barriers are high is belied both by case law and by the recent market

14

1   developments discussed above.  *See APTS*, 108 F.3d at 1149, 1154 (rejecting

2   argument that the bar review market was characterized by high barriers to entry and

3   finding that BAR/BRI lacked market power regardless of market share).  The

4   premature character of plaintiffs' claims deprives them of Article III and antitrust

5   standing.

6        **3.    The Other Plaintiffs Have an Adequate Legal Remedy.**

7        Plaintiffs request "that appropriate injunctive relief be entered, including but

8   not limited to, an order creating at least one fully-operational, competitive, full-

9   service bar review business capable of competing successfully against BAR/BRI

10  throughout the United States, and other equitable relief needed to ameliorate its

11  wrongdoing here, all to be provided pursuant to 15 U.S.C. § 26."  Complaint at 33.

12  However, for the reasons detailed below, equitable relief of any sort is unavailable as

13  a matter of law to any of these plaintiffs.

14       The core of plaintiffs' alleged case is quite simple:  it alleges that BAR/BRI,

15  because of its alleged monopoly and alleged monopolistic activities, *charges too*

16  *much money for its courses*.  *See, e.g., id.* ¶ 1.  Accordingly, the complaint requests

17  remedies at law – "damages plus interest and treble damages" (*id.* at 33) – as well as

18  the equitable relief discussed above.  However, "it is hornbook law that equitable

19  relief is not available unless the party seeking equity demonstrates that it lacks an

20  adequate remedy at law."  *California Housing Corp. v. California Housing Fin.*

21  *Agency*, No. Civ. S-81-515, 1981 WL 2409, at *2 (E.D. Cal. Nov. 3, 1981).

22  Plaintiffs, seemingly unaware of this fundamental proposition, have done precisely

23  the *opposite* here; instead of showing the *lack* of an adequate remedy at law, the very

24  language of the complaint *demonstrates* the availability of such a remedy, thus

25  rendering the requested equitable relief *un*available to plaintiffs.

26       Plaintiffs state that they "file this complaint . . . to recover the excess price

27  paid by many . . . class members for a BAR/BRI course."  Complaint ¶ 1.  The

28  complaint is filed in part under Clayton Act § 4, the provision of the antitrust laws

                                    15

1   that provides for damages.  *Id.* ¶ 3.  Each Class A plaintiff alleges that he "believes
2   he overpaid" for his respective BAR/BRI course and "now seeks to recover his actual
3   damages."  *Id.* ¶¶ 6, 7.  According to the complaint, *all* plaintiffs "paid, *or will pay*,
4   far more for the course(s) they purchased or will purchase than they would have paid
5   or pay . . . frequently substantially in excess of $1,000 above a competitive price."
6   *Id.* ¶ 74 (emphasis added).  Thus, the complaint not only admits that the alleged
7   injury is an overcharge, which is manifestly not susceptible to equitable relief; it also
8   goes so far as to quantify roughly the money damages that allegedly have been or
9   will be suffered by plaintiffs.  *Id.*

10          Plaintiffs also should not be allowed to bootstrap themselves into eligibility for
11   equitable relief by relying opportunistically on the fact that some are still in law
12   school and have not yet incurred the alleged injury by purchasing a BAR/BRI course.
13   Purely as a matter of logistics, two of the three Class B plaintiffs will be taking the
14   bar exam "in or about July 2008" (*id.* ¶¶ 8, 9), and will therefore have paid for their
15   respective bar preparation courses (whether from BAR/BRI or from any of the
16   dozens of other bar review course providers) or decided not to purchase any such
17   course, by the time of trial.  Consequently, these plaintiffs will also have an adequate
18   remedy at law at that time, and equitable relief will therefore be unavailable to them.
19   As for the third Class B plaintiff (Fathy), who "will be taking [a bar exam] in one
20   state or another in or about July 2009" (*id.* ¶ 10), the Court need look no further than
21   the length of the *Rodriguez* litigation to conclude that this plaintiff is likely to be in
22   the same position as the other two Class B plaintiffs by the time of trial.
23   (Furthermore, as discussed above, the remoteness of his alleged future injury renders
24   the very existence of his claim uncertain and speculative.)

25          In light of the foregoing, equitable relief of any sort is clearly unavailable to
26   plaintiffs.  All plaintiffs have (or will have by the time of trial) an adequate remedy at
27   law.

28

**C.      Plaintiffs' Demand for Injunctive Relief Is Grossly Inappropriate.**

Plaintiffs fail to demonstrate the other prerequisite for equitable relief: irreparable harm. *See, e.g.*, *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506 – 507, 79 S. Ct. 948, 3 L. Ed. 2d 988 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."); *see also Dove Audio, Inc. v. Lungren*, No. CV 95-2570 RG (JRX), 1995 WL 432631, at *5 (C.D. Cal. June 14, 1995) (Real, J.) (injunctive relief proper where plaintiffs would sustain irreparable injury not susceptible to legal remedies); *Am. Passage Media Corp. v. Cass Comm'ns, Inc.*, 750 F.2d 1470, 1473 – 74 (9th Cir. 1985) (reversing the district court's decision to grant a preliminary injunction under § 16 because plaintiff failed to show irreparable harm); *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374 (9th Cir. 1985); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 497 F. Supp. 218 (C.D. Cal. 1980). Plaintiffs speak of being "irreparably injured" and "suffer[ing] substantial damages" in the very same breath (*see* Complaint ¶ 78), apparently ignorant of the fundamental mutual exclusivity of these two terms.

Overpayment manifestly is not a species of irreparable harm and cannot be remedied by injunction. *Am. Passage Media Corp.*, 750 F.2d at 1473 – 74 ("Monetary damages are not usually sufficient to establish irreparable harm" necessary for injunctive relief because treble damage provisions of the antitrust laws suffice to compensate any such losses); *Lucas v. Bechtel Corp.*, 800 F.2d 839, 847 (9th Cir. 1986); *Hairston v. Pac.-10 Conference*, 893 F. Supp. 1485, 1493 (W.D. Wash. 1994), *aff'd*, 101 F.3d 1315 (9th Cir. 1996) ("Allegations of monetary damages alone will not suffice for a showing of irreparable harm.").

Plaintiffs also allege irreparable injury resulting from being deprived "of the right to choose among . . . alternative materials and approaches" (Complaint ¶ 76) and from being "reasonably more likely to fail the bar as a result of BAR/BRI's antitrust violations." *Id.* ¶ 77. However, these assertions are not sufficient to

17

1  constitute irreparable harm.  It is both theoretical and speculative to assume that,

2  absent BAR/BRI's alleged conduct, plaintiffs would have had multiple bar review

3  courses from which to choose in any and every state.  Consequently, the inability to

4  select among multiple imaginary courses is "theoretical and not properly the basis for

5  preliminary relief."  *Metromedia Broad. Corp. v. MGM/UA Entm't Co.*, 611 F. Supp.

6  415, 427 (C.D. Cal. 1985) (denying motion for preliminary injunction to restrain

7  alleged tying arrangement on the ground that anticipated success of television

8  program was theoretical); *see also Treasure Valley Potato Bargaining Ass'n v. Ore-*

9  *Ida Foods, Inc.*, 497 F.2d 203, 218 (9th Cir. 1974) (§ 16 injunction was not

10  appropriate where threatened future injury was based on conjecture and speculation).

11      With respect to the second alleged irreparable injury, plaintiffs' fear of failing

12  bar exams in the future, this is clearly not a type of injury protected by the antitrust

13  laws.  The antitrust laws protect competition.  *See, e.g.*, *Atl. Richfield Co. v. USA*

14  *Petroleum Co.*, 495 U.S. 328, 352 – 353, 110 S. Ct. 1884, 109 L. Ed. 2d 333 (1990).

15  Consequently, affording plaintiffs injunctive relief on the basis of their claimed harm

16  would stretch § 16 of the Clayton Act far beyond its intended scope.  Moreover, there

17  would be no practical way to issue an injunction that would address and resolve

18  plaintiffs' fear of failing any bar exams they may take, with or without the assistance

19  of a bar review course provided by BAR/BRI or another company, judicially created

20  or otherwise.

21      The Class B plaintiffs also fail to demonstrate any likelihood that they could

22  prove a causal connection between failing a bar exam and the alleged § 2 violation.

23  Courts look to proximate cause in evaluating standing under § 16 "to ensure that the

24  court's injunctive relief, if granted, would actually prevent the injury from

25  occurring." *Justice v. Nat'l Collegiate Athletic Ass'n*, 577 F. Supp. 356, 376 – 77 (D.

26  Ariz. 1983).  If plaintiffs fail future bar exams, that result could not be causally

27  linked to the alleged violations of law.  Rather, any number of complicating factors,

28  including plaintiffs' inherent ability and diligence, would separate their claimed

18

0020198/001/385250v01

1  injury from the scope of the Sherman Act.  As the United States Court of Appeals for

2  the Third Circuit succinctly put it, "protecting consumers from themselves is not the

3  goal of the antitrust laws."  *Town Sound and Custom Tops, Inc. v. Chrysler Motors*

4  *Corp.*, 959 F.2d 468, 495 (3rd Cir. 1992).

5      Plaintiffs' alleged future injuries will also not be remedied through judicial

6  creation of an entirely new business organization to compete with BAR/BRI in every

7  state.  Even if the Court were willing to engage in such an extraordinary and

8  unprecedented exercise, it is unlikely that a nationwide, "fully operational" business

9  organization could be judicially created and be a credible competitor to BAR/BRI in

10  time to provide these plaintiffs with one alternative vendor in every single state.

11      By its own language, the complaint demonstrates that money damages are

12  available, appropriate, and quantifiable (if imprecisely) with respect to all plaintiffs

13  even at the very outset of this litigation.  In this context, therefore, the equitable relief

14  requested by plaintiffs is unavailable and inappropriate as a matter of law.

15                                **IV.**

16                            **<u>CONCLUSION</u>**

17      Plaintiffs have failed to support the causes of action in their complaint under

18  the standard articulated by the Supreme Court in *Twombly*.  Accordingly, this Court

19  should dismiss plaintiffs' complaint in its entirety.  Moreover, this Court should

20  dismiss plaintiffs' claims for injunctive relief as unavailable in light of plaintiffs'

21  lack of standing to assert them and as inappropriate.

22  Dated:  March 14, 2008              SHEARMAN & STERLING LLP

23                                     SATTERLEE STEPHENS BURKE &
                                       BURKE LLP
24
                                       LINER YANKELEVITZ SUNSHINE
25                                     & REGENSTREIF LLP

26

27                                     By: _____

28                                         James P. Tallon
                                           Attorneys for Defendant West
                                           Publishing Corporation
                                       19

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 1100 Glendon Avenue, 14th Floor, Los Angeles, California 90024-3503. On March 14, 2008, I served the within document(s) described as:

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 12(b)(1); MEMORANDUM OF POINTS AND AUTHORITIES**

on the following counsel whose email addresses were not included in the Court's Electronic Mail List at the time of filing as stated below:

Bradley S. Phillips, Esq.
Stuart N. Senator, Esq.
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Los Angeles, California 90071-1560
Email: brad.phillips@mto.com
        stuart.senator@mto.com

[X]   (BY MAIL) By placing a true copy of the foregoing document(s) in a sealed envelope addressed as set forth above. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing contained in affidavit.

I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 14, 2008, at Los Angeles, California.

Henna Choi
(Type or print name)                                    (Signature)

20

0020198/001/385259v01