Alan Harris (SBN 146079)
David Zelenski (SBN 231768)
HARRIS & RUBLE
6424 Santa Monica Boulevard
Los Angeles, California 90038
Telephone:  (323) 962-3777
Facsimile:  (323) 962-3004

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN STETSON, SHANE LAVIGNE, CHRISTINE LEIGH BROWN-ROBERTS, VALENTIN YURI KARPENKO, and JAKE JEREMIAH FATHY, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>   v.<br><br>WEST PUBLISHING CORPORATION, a Minnesota corporation dba BAR/BRI, and KAPLAN, INC.,<br><br>            Defendants. | Case No. CV-08-00810 R (Ex)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS, PRELIMINARY APPROVAL OF CLASS-ACTION SETTLEMENT, AND APPPOINTMENT OF CLAIMS ADMINISTRATOR**<br><br>Date:  March 21, 2011<br>Time:  10:00 a.m.<br>Courtroom:  8<br><br>*Assigned to Hon. Manuel L. Real* |

    **TO EACH PARTY AND TO EACH PARTY'S ATTORNEY OF RECORD:**

**NOTICE IS HEREBY GIVEN** that, on March 21, 2011, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8 of the above-entitled Court located at 312 North Spring Street, Los Angeles, California 90012, Plaintiffs will move for an order granting conditional certification of a settlement class, preliminary approval of class-action settlement, and appointment of a Claims Administrator.  The Motion will be made and based upon this Notice of Motion; the Declaration of Alan Harris in Support of

1

Plaintiffs' Motion for Conditional Certification of Settlement Class, Preliminary Approval of Settlement, and Appointment of Claims Administrator, filed and served herewith; the Request for Judicial Notice in Support of Plaintiffs' Motion for Conditional Certification of Settlement Class, Preliminary Approval of Settlement, and Appointment of Claims Administrator, also filed and served herewith; all of the pleadings, papers, and documents contained in the file of the within action; and such further evidence and argument as may be presented in support at or before the determination of the Motion.


DATED:  February 18, 2011                    HARRIS & RUBLE

                                             _____/s/_____

                                             Alan Harris
                                             David Zelenski
                                             *Attorneys for Plaintiffs*

### TABLE OF CONTENTS

I.      Introduction .................................................................................... 1

II.     Summary of the Case ...................................................................... 2

III.    Summary of the Proposed Settlement ........................................... 5

        A.      The Settlement Fund .......................................................... 5

        B.      Discount Certificates ......................................................... 6

        C.      Dissemination and Content of Notice to the Class ........... 7

        D.      Release Provisions and Opting Out ................................. 10

        E.      Incentive Awards and Attorney's Fees ............................ 11

        F.      Entry of Judgment and Continuing Jurisdiction ............. 13

IV.     The Court Should Conditionally Certify the Class and Should
        Preliminarily Approve the Settlement ......................................... 13

        B.      The Settlement Meets the Requirements for Preliminary
                Approval ........................................................................... 16

                i.      Settlement Negotiations Were Conducted at Arm's
                        Length ..................................................................... 16

                ii.     The Settlement Has No Obvious Deficiencies ........ 16

                        a.      The Strength of Plaintiffs' Case .................. 17

                        b.      The Likely Duration of Further Litigation ... 18

                        c.      The Amount Offered in the Settlement ......... 18

                        d.      The Experience and Views of Counsel .......... 19

                        e.      The Reaction of Class Members to the Proposed
                                Settlement ..................................................... 19

      iii.    *The Settlement Does Not Grant Preferential Treatment to the Named Plaintiffs* ........................................................................ 19

      iv.    *The Settlement Falls Within the Range of Possible Approval* ............................................................................................. 20

*V.*    *Appointment of a Claims Administrator* ....................................... 20

*VI.*   *Proposed Calendar* .......................................................................... 21

*VII.*  *Conclusion* ......................................................................................... 22

1

### TABLE OF AUTHORITIES

2

#### *Cases*

3

4

Adames v. Mitsubishi Bank, Ltd.
  133 F.R.D. 82 (E.D.N.Y. 1989)......................................................................13

5

6

Boeing Co. v. Van Germet
  444 U.S. 472 (1980)........................................................................................12

7

8

Dukes v. Wal-Mart Stores, Inc.
  222 F.R.D. 137 (N.D. Cal. 2004)....................................................................14

9

10

Dunleavy v. Nadler
  213 F.3d 454 (9th Cir. 2000) ..........................................................................13

11

12

Eisen v. Carlisle & Jacqueline
  417 U.S. 156 (1974)........................................................................................20

13

14

Elliott v. ITT Corp.
  150 F.R.D. 569 (N.D. Ill. 1992) .....................................................................15

15

16

In re Cendant Corp. Litig.
  264 F.3d 201 (3d Cir. 2001) ...........................................................................18

17

18

Hanlon v. Chrysler Corp.
  150 F.3d 1011 (9th Cir. 1998) ........................................................................17

19

20

In re Nasdaq Market-Makers Antitrust Litig.
  187 F.R.D. 465 (S.D.N.Y. 1998) ...................................................................18

21

22

In re Warfarin Sodium Antitrust Litig.
  212 F.R.D. 231 (E.D. Del. 2002).............................................................17, 19

23

24

Int'l Molders' & Allied Workers' Local 164 v. Nelson
  102 F.R.D. 457 (N.D. Cal. 1983)....................................................................14

25

26

Int'l Union, United Auto. Workers of Am.
  497 F.3d 615 (6th Cir. 2007) ............................................................................8

27

28

Jarvaise v. Rand Corp.
   212 F.R.D. 1 (D.C.D.C. 2002)................................................................. 14

Joseph v. Gen. Motors Corp.
   109 F.R.D. 635 (D.C. Colo. 1986).......................................................... 15

Labbate-D'Alauro v. GC Servs. Ltd. P'ship
   168 F.R.D. 451 (E.D.N.Y. 1996)............................................................ 13

Lightbourn v. County of El Paso
   118 F.3d 421 (5th Cir. 1997) ................................................................. 14

Linney v. Cellular Alaska P'ship
   151 F.3d 1234 (9th Cir. 1998) ............................................................... 13

Marshall v. Holiday Magic, Inc.
   550 F.2d 1173 (9th Cir. 1977) ................................................................. 9

Nichols v. Smithkline Beecham Corp.
   2005 WL 950616 (E.D. Pa. Apr. 22, 2005)............................................ 19

Officers for Justice v. Civil Serv. Comm.
   688 F.2d 615 (9th Cir. 1982) ................................................................. 13

Palmer v. BRG of Ga.
   498 U.S. 46 (1990).................................................................................. 14

Paul, Johnson, Alston & Hunt v. Grauity
   886 F.2d 268 (9th Cir. 1989) ................................................................. 12

Rodriguez v. West Publ'g Corp.
   2007 WL 2827379 (C.D. Cal. Sept. 10, 2007) .......................................... 4

Rodriguez v. West Publ'g Corp.
   563 F.3d 948 (9th Cir. 2009) .................................................... 11, 19, 20

Torrisi v. Tucson Elec. Power Co.
   8 F.3d 1370 (9th Cir. 1993) ................................................................... 17

United States v. Kissel
  218 U.S. 601, 54 L. Ed. 1168, 31 S. Ct. 124 (1910).................................................... 14

Young v. Polo Retail, Inc.
  2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ............................................................. 16


**Statutes**

15 U.S.C. § 1 ................................................................................................................ 2

15 U.S.C. § 2 ................................................................................................................ 2

28 U.S.C. § 1712 ........................................................................................................ 12


**Rules**

Fed. R. Civ. P. 12 ......................................................................................................... 3

Fed. R. Civ. P. 23 .................................................................................. 1, 8, 9, 13, 14, 15, 20

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Introduction.

Plaintiffs Stephen Stetson, Shane Lavigne, Christine Leigh Brown-Roberts, Valentin Yuri Karpenko, and Jake Jeremiah Fathy (collectively, "Plaintiffs"), individually and on behalf of Class Members who purchased a BAR/BRI full-service bar-review course during the period of August 1, 2006, to the date of this Court's preliminary approval order, on the one hand, and Defendants West Publishing Corporation ("West") and Kaplan, Inc. ("Kaplan") (collectively, "Defendants"), on the other hand, have reached a settlement of the above-captioned antitrust class action.  The terms of the settlement are memorialized in a Stipulation and Settlement Agreement ("Settlement") executed by the parties, a copy of which is attached as Exhibit 1 to the Declaration of Alan Harris filed and served herewith.[1]  Plaintiffs and Defendants now seek to begin the settlement-approval process required by Rule 23 of the Federal Rules of Civil Procedure, requesting that the Court (1) grant conditional certification, for settlement purposes only, of a Class of approximately 165,210 individuals who purchased a BAR/BRI bar-review course; (2) preliminarily approve the Settlement; (3) approve the form and method of Notice to the Class; and (4) appoint Gilardi & Co., LLC as Claims Administrator.

As explained below, the Settlement was reached over the course of one year of arm's length negotiations by the parties, including negotiations under the supervision of the Ninth Circuit Mediator, who ultimately presented a proposal that West establish a Settlement Fund of $5,285,000.  In addition, Plaintiff's counsel had earlier negotiated additional relief to be provided by Kaplan in the form of Discount Certificates designed to foster competition in the bar-review-course market.  The Settlement embodies *both* of these remedies, providing for a significant cash payment by West of $5,285,000 to the Class *and* providing that Kaplan distribute Discount Certificates to the Class.[2]  The

---

[1] Capitalized terms in this Motion have the same meaning as used in the Stipulation and Settlement Agreement.

[2] As explained below, the Discount Certificates, redeemable toward the purchase of Kaplan test-preparation courses, are fully transferable regardless of whether the

Settlement comes on the heels of class-wide antitrust litigation against West and Kaplan in <u>Rodriguez v. West Publishing Corp.</u>, U.S. Dist. Court, Central District of California Case No. CV 05-3222 R, and the terms in large part mirror those from the settlement approved by this Court in <u>Rodriguez</u>, albeit modified on account of the fact that Defendants' allegedly anticompetitive behavior has ceased per the <u>Rodriguez</u> settlement's terms.

Plaintiffs' counsel submits that the proposed Settlement is fair, reasonable, and adequate, given the strengths and weaknesses of the alleged claims and defenses, as well as given the delay and uncertainties of continued litigation. Again, settlement negotiations culminated in the establishment of the Mediator's proposed $5,285,000 Settlement Fund, along with the *additional* Discount Certificate relief negotiated with Kaplan. Accordingly, the Settlement should enjoy a presumption of fairness, it should be submitted to Class Members for their review, and a hearing should be scheduled to determine whether the Settlement merits final approval.

## II.   *Summary of the Case.*

Plaintiffs commenced this putative class action in February 2008. (<u>See generally</u> Feb. 6, 2008, Class Action Compl. for Violations of the U.S. Antitrust Laws ("Feb. 6, 2008, Compl.").) Plaintiffs alleged that West and Kaplan violated section 1 of the Sherman Act, 15 U.S.C. § 1, by conspiring to restrain trade in the full-service bar-review-course market. (Feb. 6, 2008, Compl. ¶¶ 92–98.) Plaintiffs also alleged that West (but not Kaplan) violated section 2 of the Sherman Act, 15 U.S.C. § 2, by unlawfully acquiring and/or maintaining a monopoly of the bar-review-course market. (Feb. 6, 2008, Compl. ¶¶ 99–111.) On March 14, 2008, West filed a Motion to Dismiss (<u>see</u>

---

transferee is a Class Member and regardless of whether the transfer is in the nature of a gift, a barter transaction, an online auction or sale (such as on eBay or craigslist, for example), or any other legal form of transaction. (Feb. 18, 2011, Decl. of Alan Harris in Supp. of Pls.' Mot. for Conditional Certification of Settlement Class, Preliminary Approval of Settlement, and Appointment of Claims Administrator Ex. 1 at ¶ 38.) In other words, the Certificates encourage consumers in the bar-review market to purchase products other than BAR/BRI.

1   generally Mar. 8, 2008, Notice of Mot. and Mot. to Dismiss Compl. Pursuant to Fed. R.

2   Civ. P. 12(b)(6) and 12(b)(1)), a Motion in which Kaplan joined (see generally Mar. 14,

3   2008, Def. Kaplan, Inc.'s Notice of Joinder and Joinder in Def. West Publ'g Corp.'s Mot.

4   to Dismiss Compl. Pursuant to F.R.C.P. 12(b)(6)).  On April 10, 2008, after hearing oral

5   argument, this Court dismissed Plaintiffs' Complaint with prejudice.  (Apr. 10, 2008,

6   Order Granting Def. West Publ'g Corp.'s Mot. to Dismiss Compl. Pursuant to Fed. R.

7   Civ. P. 12(b)(6) and 12(b)(1) with Prejudice at 2.)

8        According to the Court, the above-captioned matter was preempted by the

9   settlement earlier reached in Rodriguez.  In that regard, this Court stated:

10            [S]ubstantively, plaintiffs' allegations regarding the current state of

11         the market and its effects on individual plaintiffs cannot be squared with the

12         provisions of the Rodriguez settlement.  In [ap]proving the [February 2007]

13         Rodriguez settlement, this [C]ourt noted that the non-monetary relief of

14         provisions of the Rodriguez settlement removed allegedly significant

15         barriers to entry [in the bar-review-course market]. . . .

16            Thus, the allegations that contradict these findings fail as a matter of

17         law.

18   (Apr. 7, 2008, Tr. of Proceedings at 8:17–9:2.)

19        Much like the above-captioned action, Rodriguez was an antitrust class action

20   brought against West and Kaplan for an alleged conspiracy to restrain trade in the bar-

21   review-course market.  (See generally Feb. 18, 2011, Req. for Judicial Notice in Supp. of

22   Pls.' Mot. for Conditional Certification of Settlement Class, Preliminary Approval of

23   Settlement, and Appointment of Claims Administrator ("Feb. 18, 2011, Req. for Judicial

24   Notice") Ex. 1.)  As alleged by the Rodriguez plaintiffs, West and Kaplan had entered

25   into an illegal market-division arrangement whereby West agreed to withdraw certain of

26   its exam-preparation courses in exchange for Kaplan's agreement not to enter the full-

27   service bar-review market.  (Feb. 18, 2011, Req. for Judicial Notice Ex. 1 at ¶ 8.)

28   Rodriguez was settled by the parties thereto, with the Court granting final approval in

1  September 2007.  (Feb. 18, 2011, Req. for Judicial Notice Ex. 2.)  The class period

2  covered by the <u>Rodriguez</u> settlement spanned ten years, from August 1, 1997, to July 31,

3  2006.  (Feb. 18, 2011, Req. for Judicial Notice Ex. 2 at 6:27.)  As part of the settlement,

4  West and Kaplan agreed to certain non-monetary relief, including, *inter alia*, the

5  termination of their alleged market-division agreement.  <u>Rodriguez v. West Publ'g Corp.</u>,

6  2007 WL 2827379 at *5, 12 (C.D. Cal. Sept. 10, 2007).  Such non-monetary relief was

7  designed to foster competition in, and eliminate barriers of entry to, the bar-review-

8  course market.  <u>Id.</u>

9     Where the claims alleged in <u>Rodriguez</u> cover the period of time from 1997 through

10  July 31, 2006, the claims at issue in the present litigation have been brought on behalf of

11  those individuals who purchased BAR/BRI bar-review courses from August 1, 2006,

12  onward.  (Feb. 6, 2008, Compl. ¶ 79.)  The above-captioned matter therefore concerns the

13  now-terminated market-division agreement's *residual* impact on the bar-review-course

14  market.  On May 7, 2008, Plaintiffs filed a timely Notice of Appeal in the above-

15  captioned matter (<u>see generally</u> May 7, 2008, Notice of Appeal), arguing before the Ninth

16  Circuit that settling with a subset of those who were injured by Defendants' allegedly

17  anticompetitive behavior—namely, the <u>Rodriguez</u> class—did not justify the dismissal of

18  a separate lawsuit brought on behalf of those not part of the <u>Rodriguez</u> class (Feb. 18,

19  2011, Req. for Judicial Notice Ex. 3 at 12–19).

20     Oral argument as to the appeal was heard by the Ninth Circuit on September 30,

21  2009.  (Feb. 18, 2011, Decl. of Alan Harris in Supp. of Pls.' Mot. for Conditional

22  Certification of Settlement Class, Preliminary Approval of Settlement, and Appointment

23  of Claims Administrator ("Feb. 18, 2011, Harris Decl.") ¶ 6.)  On October 9, 2009, the

24  Ninth Circuit issued an Order "referr[ing the matter] to the Ninth Circuit Mediation

25  Office to explore a possible resolution through mediation."  (Feb. 18, 2011, Req. for

26  Judicial Notice Ex. 6.)  Over the course of the following year, the parties engaged in

27  numerous settlement conferences supervised by the appointed Ninth Circuit Mediator,

28  Roxane Ashe.  (Feb. 18, 2011, Harris Decl. ¶ 6.)  In approximately June 2010, the

1  Mediator presented a proposal that West establish a Settlement Fund of $5,285,000.

2  (Feb. 18, 2011, Harris Decl. ¶ 7.)  In addition, Plaintiff's counsel had earlier negotiated

3  the above-noted additional Discount Certificate relief to be provided by Kaplan.  (Feb.

4  18, 2011, Harris Decl. ¶¶ 6–7.)  On December 17, 2010, after the Ninth Circuit was

5  apprised that a Settlement had been reached, the case was remanded to this Court for

6  preliminary-approval proceedings.  (Feb. 18, 2011, Harris Decl. ¶ 7.)

7  **III.    *Summary of the Proposed Settlement.***

8  　　　　　*A.    The Settlement Fund.*

9  　　　　　The Class in this matter is defined as all persons and entities who paid for a

10  BAR/BRI full-service bar-review course provided by West from August 1, 2006, through

11  and including the date of an order certifying the Class.[3]  (Feb. 18, 2011, Harris Decl. Ex.

12  1 at ¶ 34.)  Pursuant to the terms of the Settlement, West will pay $5,285,000 in cash for

13  the benefit of the Class.  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶¶ 28, 39.)  West will

14  deposit the money into an interest-bearing escrow account within ten business days of the

15  Court's order granting preliminary approval of the Settlement.  (Feb. 18, 2011, Harris

16  Decl. Ex. 1 at ¶ 39.)  The interest earned shall inure to the benefit of the Class.  (See Feb.

17  18, 2011, Harris Decl. Ex. 1 at ¶¶ 16, 42–43.)  The $5,285,000 Settlement Amount, plus

18  all interest earned thereon, constitutes the Gross Settlement Fund.  (Feb. 18, 2011, Harris

19  Decl. Ex. 1 at ¶¶ 16, 28.)

20  　　　　　The Gross Settlement Fund will be used to pay the costs of settlement

21  administration and Notice to the Class, as well as an associated Gross Settlement Fund

22  Fee Award and an Expense Award to Class Counsel, both as approved by the Court.

23  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶¶ 12, 15, 42, 57.)  No Incentive Awards will be

24  paid to the named Plaintiffs out of the Gross Settlement Fund; instead, to the extent that

25  the Court permits Incentive Awards to be paid to the named Plaintiffs, such Awards will

26  
　　　　　[3] The Settlement excludes from the Class both Defendants; their respective officers,
27  directors, employees, and personnel; and all employees and personnel of any law firm
　　that is counsel of record for either Defendant in this litigation.  (Feb. 18, 2011, Harris
28  Decl. Ex. 1 at ¶ 34.)

1    be paid separately by Kaplan.  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶¶ 17, 59.)

2          After the deductions have been made from the Gross Settlement Fund, the balance

3    (the "Net Settlement Fund") will be distributed to those Members of the Class who have

4    submitted a valid and timely Claim Form ("Authorized Claimants").  (Feb. 18, 2011,

5    Harris Decl. Ex. 1 at ¶¶ 3, 4, 19, 42, 52–54, 56–57.)  The Net Settlement Fund will be

6    distributed to Authorized Claimants pursuant to a Plan of Allocation submitted by

7    Plaintiffs' counsel in connection with the Settlement.  (Feb. 18, 2011, Harris Decl. Ex. 1

8    at ¶¶ 22, 52–53, 56.)  Under the terms of the Plan of Allocation, the Net Settlement Fund

9    will be distributed *pro rata* based on the amount each Authorized Claimant paid for a

10   full-service BAR/BRI course in relation to the amounts paid by all other Authorized

11   Claimants.  (Feb. 18, 2011, Harris Decl. Ex. 1 at Ex. B ¶¶ 1–2.)  For example, if the

12   amount paid for a bar-review course by an Authorized Claimant equals 1/50,000 of the

13   aggregate of such amounts paid by all other Authorized Claimants, then the Authorized

14   Claimant will receive 1/50,000 of the Net Settlement Fund.  Accordingly, West is not

15   entitled to a reversion of any amounts in the Net Settlement Fund, and, should any

16   amounts remain after all payments are distributed to Authorized Claimants, Class

17   Counsel will apply to the Court for a suitable *cy pres* distribution of the residual.  (Feb.

18   18, 2011, Harris Decl. Ex. 1 at ¶¶ 43–44.)

19          **B.    Discount Certificates.**

20          Separate from West's establishment of the Gross Settlement Fund, Kaplan will

21   provide to, or develop with, the Claims Administrator, for enclosure with the Notice to

22   each Class Member, one Discount Certificate.  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶¶ 8,

23   37.)  For each additional instance in which a Class Member paid the tuition for a

24   BAR/BRI full-service bar-review course—other than for a course discounted by fifty

25   percent or more—he or she will receive with the Notice one additional Discount

26   Certificate.  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 37.)  The Discount Certificates are

27   designed to foster competition in the bar-review-course market.  Each Certificate will be

28

redeemable toward the future purchase of one Qualifying Kaplan Course.[4]  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 38.)  More specifically, each Discount Certificate will entitle the holder—who, as explained below, may be someone other than the person to whom the Certificate was originally issued—to a $200 credit toward the purchase of a Qualifying Kaplan Course that would otherwise cost the holder $1,999 or more; a $150 credit toward the purchase of a Qualifying Kaplan Course that would otherwise cost the holder between $1,499 and $1,998; a $100 credit toward the purchase of a Qualifying Kaplan course that would otherwise cost the holder between $999 and $1,498; or a $50 credit toward the purchase of a Qualifying Kaplan Course that would otherwise cost the holder between $499 and $998.[5]  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 38.)  Each Discount Certificate will be valid for thirty months and will be fully transferable regardless of whether the transferee is a Class Member and regardless of whether the transfer is in the nature of a gift, a barter transaction, an online auction or sale (such as on eBay or craigslist, for example), or any other legal form of transaction.  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 38.)

### C.  Dissemination and Content of Notice to the Class.

Again, the costs of Notice and settlement administration will be paid for from the Gross Settlement Fund.  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 42.)  A copy of the Notice and Claim Form will be delivered via first-class mail to the last-known postal address of each Class Member.  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 45.)  In addition, a Summary Notice will be published in *The National Law Journal* (two insertions), *Lawyers Weekly USA* (two insertions), and *USA Today* (one insertion).  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶¶ 31, 46.)  The Summary Notice will contain a toll-free telephone number for inquiry purposes and a website address that Class Members can use to obtain copies of the Notice

---

[4] A list of Qualifying Kaplan Courses is attached as Exhibit C to the Settlement Agreement.  (Feb. 18, 2011, Harris Decl. Ex. 1 at Ex. C.)

[5] Although the Discount Certificates cannot be combined with one another, they can be combined with regional or national discounts.  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 38.)

1    and Claim Form.  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 46.)  The website will include a

2    copy of the Settlement Agreement, the Class Notice, the Summary Notice, contact

3    information for the Claims Administrator, and answers to frequently asked questions.

4    (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 46.)

5         The form of Notice to be mailed to Class Members and to be made available at the

6    above-noted website includes the information required by Rule 23 of the Federal Rules of

7    Civil Procedure.  Specifically, the Notice describes the nature of the action, the definition

8    of the Class, and the Class claims; it explains that Class Members may enter an

9    appearance through an attorney and that the Court will exclude those Members requesting

10   exclusion; and it specifies the time and manner of requesting exclusion, as well as the

11   binding effect of a class-wide judgment.  (Compare Feb. 18, 2011, Harris Decl. Ex. 3

12   with Fed. R. Civ. P. 23(c)(2)(B) (stating that "[t]he notice must clearly and concisely

13   state in plain, easily understood language:  (i) the nature of the action; (ii) the definition

14   of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member

15   may enter an appearance through an attorney if the member so desires; (v) that the court

16   will exclude from the class any member who requests exclusion; (vi) the time and manner

17   for requesting exclusion; and (vii) the binding effect of a class judgment on members

18   under Rule 23(c)(3).").)  Although Rule 23 does not require that the Notice inform Class

19   Members of their objection rights, see Int'l Union, United Auto. Workers of Am., 497

20   F.3d 615, 630 (6th Cir. 2007), the Notice also explains that Class Members may object to

21   the Settlement as to West, the Settlement as to Kaplan, or the Settlement as to both West

22   and Kaplan (Feb. 18, 2011, Harris Decl. Ex. 3 at pp. 3, 8).  Furthermore, the Notice

23   indicates (i) the time and place of the hearing to consider final approval of the Settlement,

24   (ii) it prominently displays the address and telephone number of Class Counsel and the

25   procedure for making inquiries, and (iii) it provides information regarding the attorney's

26   fees to be paid to Class Counsel and the Incentive Awards to be paid to the named

27   Plaintiffs.  (Feb. 18, 2011, Harris Decl. Ex. 3.)  See William W Schwarzer, et al.,

28   California Practice Guide:  Federal Civil Procedure Before Trial ¶ 10:824 (The Rutter

1    Group 2010) (specifying the content of settlement notice).

2        In addition, the Notice explains the procedures for allocating and distributing

3    Discount Certificates and the Settlement Fund to Class Members.  Again, each Class

4    Member will receive with the Notice a certain number of Discount Certificates depending

5    on the number of bar-review courses for which he or she paid. (Feb. 18, 2011, Harris

6    Decl. Ex. 3 at p. 1.)  With respect to the monetary portion of the Settlement, although the

7    Notice does not specify the exact amount that any Class Member will receive—

8    something that cannot be known until it is determined how many Class Members submit

9    claims—it does specify the formula for computing individual recoveries.  (Feb. 18, 2011,

10   Harris Decl. Ex. 3 at p. 5.)  See Marshall v. Holiday Magic, Inc., 550 F.2d 1173, 1177–78

11   (9th Cir. 1977) ("[Objectors] argue that the notice did not fairly apprise class members of

12   their positions because it did not specify their potential recovery.  It is obvious, however,

13   that this was a matter of conjecture since it was unknown how many class members

14   would opt out or submit claims.  The aggregate amount available to all claimants was

15   specified and the formula for determining one's recovery was given.  Nothing more

16   specific is needed.").

17       Finally, as noted above, the Notice explains the procedure for Class Members to

18   request exclusion from the Class.  See Fed. R. Civ. P. 23(e)(4) (stating that "the court

19   may refuse to approve a settlement unless it affords a new opportunity to request

20   exclusion").  According to the Settlement, "a Class Member shall be permitted to request

21   exclusion from the Settlement as to Kaplan, the Settlement as to West, or the Settlement

22   as to both Kaplan and West."  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 46.)  As explained

23   in the Notice, in order to request exclusion from the Settlement as to Kaplan—that is, as

24   to the Discount Certificate portion of the Settlement—a Class Member simply sends a

25   request in writing to the Claims Administrator stating that he or she wishes to exclude

26   himself or herself from the Settlement as to Kaplan.  (Feb. 18, 2011, Harris Decl. Ex. 3 at

27   pp. 3, 7–8.)  Likewise, the Notice explains that, in order to request exclusion from the

28   Settlement as to West—that is, as to the monetary portion of the Settlement—a Class

Member simply sends a request in writing to the Claims Administrator stating that he or she wishes to exclude himself or herself from the Settlement as to West.  (Feb. 18, 2011, Harris Decl. Ex. 3 at pp. 3, 7.)  Lastly, the Notice explains that, in order to request exclusion from the Settlement as a whole, a Class Member simply sends a request in writing to the Claims Administrator stating that he or she wishes to exclude himself or herself from the Settlement.  (Feb. 18, 2011, Harris Decl. Ex. 3 at pp. 3, 8.)

### D.    *Release Provisions and Opting Out.*

If the Court grants final approval of the Settlement, then, in exchange for the consideration described above, Class Members will be deemed to have released Defendants of those claims that were asserted or that could have been asserted in the Complaint stemming from the conduct alleged therein.  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶¶ 65–66.)  However, as noted above, Class Members are permitted to exclude themselves from the Settlement as a whole, the Settlement as to West, or the Settlement as to Kaplan.  If a Class Member opts out pursuant to the procedures outlined in the Notice as to the entire Settlement, then he or she will not release any claims the he or she may have against either Defendant.  (Feb. 18, 2011, Harris Decl. Ex. 1 ¶ 65 (explaining that the Release applies only to those Class Members who do not successfully exclude themselves).)  If a Class Member opts out as to a specific Defendant, then the Release will be limited to those claims against the remaining Defendant:

> If a Class Member excludes himself, herself, or itself from the Settlement as to West only (that is, the Class Member submits a timely request for exclusion as to the monetary portion of the Settlement but not the Settlement as to Kaplan), then, with respect to that Class Member, the above-described release shall apply only to Kaplan and the Kaplan Released Parties.  If a Class Member excludes himself, herself, or itself from the Settlement as to Kaplan only (that is, the Class Member submits a timely request for exclusion as to the Discount Certificate portion of the Settlement but not the

1   Settlement as to West), then, with respect to that Class Member, the above-

2   described release shall apply only to West and the West Released Parties.

3   (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 65.)

4   **E.    *Incentive Awards and Attorney's Fees.***

5   Under the terms of the Settlement, Class Counsel will apply for Incentive Awards

6   for the named Plaintiffs up to a maximum of $20,000 *in the aggregate* for their efforts in

7   bringing and prosecuting the case.  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 17, 59.)  <u>See</u>

8   <u>Rodriguez v. West Publ'g Corp.</u>, 563 F.3d 948, 958–59 (9th Cir. 2009) ("Incentive

9   *awards* are fairly typical in class action cases.  Such awards are discretionary and are

10  intended to compensate class representatives for work done on behalf of the class, to

11  make up for financial or reputational risk undertaken in bringing the action, and,

12  sometimes, to recognize their willingness to act as a private attorney general.") (emphasis

13  in original) (internal citations omitted).  In contrast to the settlement reached in

14  <u>Rodriguez</u>, the Incentive Awards herein amount to a modest $5,000 per Plaintiff,

15  compared to the $75,000 per-plaintiff awards sought in <u>Rodriguez</u>.  <u>Id.</u> at 957.  Also in

16  contrast to the settlement reached in <u>Rodriguez</u>, none of the named Plaintiffs herein

17  executed *ab initio* incentive agreements tied to the settlement amounts recovered, which

18  agreements both this Court and the Ninth Circuit held were inappropriate and contrary to

19  public policy.  <u>Id.</u> at 959.  Finally, again unlike the <u>Rodriguez</u> incentive awards, the

20  Incentive Awards will be paid *on top of* the $5,285,000 Settlement Amount.  (Feb. 18,

21  2011, Harris Decl. Ex. 1 at ¶ 59.)

22  Defendants have agreed not to oppose, directly or indirectly, the application for an

23  Incentive Award to any named Plaintiff.  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 59.)

24  Defendants have also agreed not to oppose Class Counsel's application for an award of

25  attorney's fees and reimbursement of litigation expenses.  (Feb. 18, 2011, Harris Decl.

26  Ex. 1 at ¶¶ 57, 59.)  With respect to the monetary portion of the Settlement, Class

27  Counsel intends to apply for an award of attorney's fees in an amount not to exceed

28  twenty-five percent of the Gross Settlement Fund, as well as for an amount to reimburse

1  Class Counsel for litigation expenses.  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 57.)

2  Twenty-five percent is the "bench mark" awarded by federal courts in common-fund

3  cases such as this, see, e.g., Paul, Johnson, Alston & Hunt v. Grauity, 886 F.2d 268, 272

4  (9th Cir. 1989) (stating that "fee awards range from 20 percent to 30 percent of the fund

5  created" and that "[w]e not with approval that one court has concluded that the "bench

6  mark" percentage for the fee award should be 25 percent"), and principles of equity

7  permit the fees to come from the fund as a whole, see, e.g., Boeing Co. v. Van Germet,

8  444 U.S. 472, 478 (1980) ("[T]this Court has recognized consistently that a litigant or a

9  lawyer who recovers a common fund for the benefit of persons other than himself or his

10  client is entitled to a reasonable attorney's fee from the fund as a whole.  The common-

11  fund doctrine reflects the traditional practice in courts of equity, and it stands as a well-

12  recognized exception to the general principle that requires every litigant to bear his own

13  attorney's fees.  The doctrine rests on the perception that persons who obtain the benefit

14  of a lawsuit without contributing to its cost are unjustly enriched at the successful

15  litigant's expense.  Jurisdiction over the fund involved in the litigation allows a court to

16  prevent this inequity by assessing attorney's fees against the entire fund, thus spreading

17  fees proportionately among those benefited by the suit.").

18  Class Counsel will also apply to the Court for an award of up to $450,000 on

19  account of the Discount Certificate portion of the Settlement.  (Feb. 18, 2011, Harris

20  Decl. Ex. 1 at ¶ 59.)  This amount will *not* come out of the Settlement Fund, it will be

21  paid entirely by Kaplan, and both Defendants have agreed not to oppose this separate

22  amount.  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 59.)  The Class Action Fairness Act

23  expressly permits this separate attorney's fee award.  See 28 U.S.C. § 1712(b) ("If a

24  proposed settlement in a class action provides for a recovery of coupons to class

25  members, and a portion of the recovery of the coupons is not used to determine the

26  attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon

27  the amount of time class counsel reasonably expended working on the action.  [] Any

28  attorney's fee under this subsection shall be subject to approval by the court and shall

1  include an appropriate attorney's fee, if any, for obtaining equitable relief, including an

2  injunction, if applicable.  Nothing in this subsection shall be construed to prohibit

3  application of a lodestar with a multiplier method of determining attorney's fees.").

4    **F.    Entry of Judgment and Continuing Jurisdiction.**

5    If the Court grants final approval of the Settlement, the parties will request that the

6  Court enter a final judgment of dismissal.  The Court will retain jurisdiction with respect

7  to the implementation and enforcement of the terms of the Settlement, and all parties

8  agree to submit to the jurisdiction of the Court for purposes of implementing and

9  enforcing the Settlement.  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 87.)

10  **IV.   The Court Should Conditionally Certify the Class and Should Preliminarily**

11    **Approve the Settlement.**

12    **A.    Class Certification Is Warranted.**

13    There is authority to the effect that a pre-certification settlement is subject to a

14  somewhat higher level of scrutiny than one negotiated post-certification.  <u>See</u>, e.g.,

15  <u>Dunleavy v. Nadler</u>, 213 F.3d 454, 458 (9th Cir. 2000).  However, concerns about the

16  rights of the absent Class Members herein can be dispelled by the Court's review of the

17  Settlement and by the procedural certification protections provided by Rule 23.  <u>Officers</u>

18  <u>for Justice v. Civil Serv. Comm.</u>, 688 F.2d 615, 624–25 (9th Cir. 1982), <u>cert. denied</u>, 459

19  U.S. 1217 (1983).  A trial court has wide discretion in certifying a class for settlement

20  purposes and will be reversed "'only upon a strong showing that [its] decision was a clear

21  abuse of discretion.'"  <u>Dunleavy</u>, 213 F.3d at 461 (quoting <u>Linney v. Cellular Alaska</u>

22  <u>P'ship</u>, 151 F.3d 1234, 1238 (9th Cir. 1998)).

23    Class actions are favored, and Rule 23 is to be given a broad, rather than a

24  restrictive, interpretation in favor maintaining class actions.  <u>Adames v. Mitsubishi Bank,</u>

25  <u>Ltd.</u>, 133 F.R.D. 82, 88 (E.D.N.Y. 1989); <u>Labbate-D'Alauro v. GC Servs. Ltd. P'ship</u>,

26  168 F.R.D. 451, 454 (E.D.N.Y. 1996).  Rule 23 contains four certification requirements

27  that must be satisfied:  (1) The class must be so numerous "that joinder of all members is

28  impracticable," (2) there must be "questions of law or fact common to the class," (3) the

1  claims of the representative plaintiffs must be "typical of the claims of the class," and (4)

2  the class representatives must show that they "will fairly and adequately protect the

3  interests of the class."  Fed. R. Civ. P. 23(a).

4      Here, the numerosity requirement is met.  The number of Class Members exceeds

5  approximately 165,210.  (Feb. 18, 2011, Harris Decl. ¶ 14.)  Given that it has been held

6  that a class of forty is sufficient to justify certification, Int'l Molders' & Allied Workers'

7  Local 164 v. Nelson, 102 F.R.D. 457, 461 (N.D. Cal. 1983), and given that common

8  sense indicates that joinder of all Class Members would be "impracticable," the Class is

9  sufficiently numerous to justify certification.

10      Likewise, the commonality requirement is met.  In this regard, a plaintiff is *not*

11  required to show that there is commonality on *every* factual and legal issue.  Dukes v.

12  Wal-Mart Stores, Inc., 222 F.R.D. 137 (N.D. Cal. 2004); Jarvaise v. Rand Corp., 212

13  F.R.D. 1, 5 (D.C.D.C. 2002).  Instead, if there is *one* issue whose resolution will affect all

14  or a significant number of a class' members, then commonality exists.  Lightbourn v.

15  County of El Paso, 118 F.3d 421, 426 (5th Cir. 1997).  With respect to the present matter,

16  there is considerable commonality among Class Members, as they have each purchased a

17  BAR/BRI bar-review course in a market suffering from the residual impact of the above-

18  described market-division agreement between West and Kaplan.  As the U.S. Supreme

19  Court has noted—in an antitrust case brought against BAR/BRI, no less—the residual

20  impact of a monopoly may continue for many years after the illegal conduct itself has

21  been exposed.  See Palmer v. BRG of Ga., 498 U.S. 46, 50 n.7 (1990) ("In United States

22  v. Kissel, 218 U.S. 601, 54 L. Ed. 1168, 31 S. Ct. 124 (1910), we held that antitrust

23  conspiracies may continue in time beyond the original conspiratorial agreement until

24  either the conspiracy's objectives are abandoned or succeed.").  Whether that market-

25  division agreement constitutes an unlawful restraint of trade is a common issue for the

26  entire Class, as is whether its effects have continued after its termination under the

27  Rodriguez settlement.  These issues predominate over issues that affect only individual

28  Class Members (for example, the individual amounts owing to each Class Member on

1   account of Defendants' alleged anticompetitive activity).  Moreover, even if it should

2   turn out that the Class definition includes Members who have not been injured or who do

3   not wish to pursue claims against Defendants, that is not a bar to certification.  Elliott v.

4   ITT Corp., 150 F.R.D. 569, 575 (N.D. Ill. 1992).  Cf. Joseph v. Gen. Motors Corp., 109

5   F.R.D. 635, 639–40 (D.C. Colo. 1986).

6        Plaintiffs also meet the typicality requirement, and they are adequate Class

7   Representatives.  Their claims are very similar to those of the absent Class Members.

8   Indeed, the fact-pattern for Plaintiffs is similar, *if not identical*, to the fact-pattern for

9   other Class Members:  Plaintiffs and Class Members purchased a BAR/BRI bar-review

10  course in an anticompetitive market and so paid a price higher than they otherwise would

11  have.  Plaintiffs also have no conflicts of interest with Class Members, as they share the

12  Members' likely desire to be reimbursed for having paid prices higher than they

13  otherwise would have.  Additionally, Plaintiffs are committed to pursuing the claims of

14  the Class Members, and Plaintiffs' motivation in retaining counsel and pursuing this

15  action has been to seek reimbursement for themselves and for Class Members and to

16  accelerate competition in the bar-review market.

17       In addition to the above-described four requirements, the action also must meet one

18  of the non-exclusive factors in Rule 23(b).  Rule 23(b) authorizes class certification if a

19  court determines that "questions of law or fact common to the members of the class

20  predominate over any questions affecting only individual members, and that a class

21  action is superior to other available methods for the fair and efficient adjudication of the

22  controversy."  Fed. R. Civ. P. 23(b)(3).  As discussed with respect to the commonality

23  requirement, questions of law and fact predominate over questions affecting only

24  individual Members.  *The only individual determination is the quantification of damages*

25  *for each Class Member*, which quantification can be easily calculated by verifying the

26  price paid by each Class Member.  To put things bluntly, the alternative to settlement and

27  conditional class certification is that the large majority of Class Members will *never* have

28  their claims determined on the merits.

**B.     The Settlement Meets the Requirements for Preliminary Approval.**

If a proposed settlement appears to be the product of "'serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to the class representatives or segments of the Class, and falls within the range of possible approval, then the court should direct that notice be given to the class of a formal fairness hearing.'" Young v. Polo Retail, Inc., 2006 WL 3050861 at *5 (N.D. Cal. Oct. 25, 2006) (quoting Manual for Complex Litigation (Second) § 30.44 (1985)).  The proposed Settlement satisfies these requirements.

**i.     Settlement Negotiations Were Conducted at Arm's Length.**

There is no doubt that the Settlement was reached through arm's length bargaining. Again, after hearing oral argument, the Ninth Circuit issued an Order referring the matter to the Ninth Circuit Mediation Office to explore settlement.  (Feb. 18, 2011, Harris Decl. Ex. 6.)  Over the course of the following year, the parties engaged in numerous settlement conferences supervised by the appointed Ninth Circuit Mediator.  (Feb. 18, 2011, Harris Decl. ¶ 6.)  During the course of this Ninth Circuit-supervised mediation, Plaintiffs' counsel's primary goal was to achieve the maximum substantive relief possible for the Class, while Defendants sought to minimize the costs of any settlement.  (Feb. 18, 2011, Harris Decl. ¶ 6.)  In light of the arguments made on both sides, the Mediator ultimately presented a proposal that West establish a Settlement Fund of $5,285,000.  (Feb. 18, 2011, Harris Decl. ¶ 7.)  In addition, Plaintiff's counsel—who had consistently insisted that any settlement include relief designed to accelerate competition in the bar-review-course market—had earlier negotiated the additional Discount Certificate relief to be provided by Kaplan.  (Feb. 18, 2011, Harris Decl. ¶¶ 6–7.)  The Settlement embodies *both* of these remedies, providing for the establishment by West of a $5,285,000 Settlement Fund *and* providing for the distribution by Kaplan of fully transferable Discount Certificates to the Class.  (Feb. 18, 2011, Harris Decl. ¶ 7.)

**ii.     The Settlement Has No Obvious Deficiencies.**

The Settlement's terms are fair, reasonable, and adequate.  According to the Ninth

1   Circuit:

2       Assessing a settlement proposal requires a district court to balance a number

3       of factors:  the strength of Plaintiffs' case; the risk, expense, complexity, and

4       likely duration of further litigation; the risk of maintaining a class-action

5       status throughout the trial; the amount offered in the settlement; the extent of

6       discovery completed and the stage of the proceedings; the experience and

7       views of counsel; . . . and the reaction of the class members to the proposed

8       settlement.

9   Dunleavy, 2132 F.3d at 458 (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th

10  Cir. 1998).  Certain factors may predominate in different factual contexts.  Indeed, one

11  factor may predominate over *all* the others and provide sufficient grounds for approval of

12  a settlement.  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

13                      *a.*      **The Strength of Plaintiffs' Case.**

14      Although Plaintiffs believe that their claims are strong, Plaintiff's counsel fully

15  realizes that *any* claim, regardless of its strength, can fail.  In other words, litigation is

16  always uncertain, and Plaintiffs could lose at trial just as easily as they could prevail.

17  Indeed, from this case's inception—and throughout the year-long Ninth-Circuit-

18  mandated mediation—Defendants have argued that their alleged market-division

19  arrangement was nothing more than a valid co-marketing agreement that was actually

20  *pro*-competitive.  West has also argued that its dominant market position is simply the

21  result of the high-quality products and services it offers, not the result of anticompetitive

22  behavior prohibited by section 2 of the Sherman Act.  Furthermore, even assuming that

23  Plaintiffs prevailed at trial, there is no guarantee that they would recover the full amount

24  of the damages they request, let alone any of the injunctive relief.  As one district court

25  has noted in connection with analyzing an antitrust class settlement, "[d]amages would

26  likely be established at trial through a 'battle of experts,' with each side presenting its

27  figures to the jury and with no guarantee whom the jury would believe."  In re Warfarin

28  Sodium Antitrust Litig., 212 F.R.D. 231, 256 (E.D. Del. 2002).  Finally, again assuming

1  that Plaintiffs prevailed at trial, there is still a risk that they might end up recovering

2  nothing, as "[t]he history of antitrust litigation is replete with cases in which antitrust

3  plaintiffs succeeded at trial on liability, but recovered no damages, or negligible damages,

4  at trial or on appeal." In re Nasdaq Market-Makers Antitrust Litig., 187 F.R.D. 465, 476

5  (S.D.N.Y. 1998).

6  **b.      *The Likely Duration of Further Litigation.***

7  This action has been in the court system for close to two years now, and Class

8  Members still remain unreimbursed for the alleged violations.  Granting approval of the

9  Settlement would create a Settlement Fund that would quickly correct that deficiency.

10  Because the putative Class has not been certified and because Notice has not been sent

11  out, the likely duration of further litigation would at be more than one year at the very

12  least.  The money, in other words, is available today, as opposed to some uncertain time,

13  and in some uncertain amount, in the future.  In light of the lengthy time necessary to

14  litigate complex antitrust cases such as this, the prompt payment through the Settlement

15  has meaningful value to the Class even apart from the contingent nature of any recovery

16  were this case litigated to conclusion.

17  **c.      *The Amount Offered in the Settlement.***

18  The Settlement Fund is $5,285,000.  Although this is not the amount that either

19  Plaintiffs or Defendants hoped for, it does represent a compromise by the parties in light

20  of the risks and costs of further litigation.  Under the Settlement, the average gross

21  recovery for each Class Member will over $180, and those who actually submit claims

22  will probably receive a gross benefit in excess of $240.  (Feb. 18, 2011, Harris Decl.

23  ¶ 14.)  The amounts provided to Class Members—to say nothing of the competition

24  created in the bar-review market on account of the Certificates—are on par with the

25  individual recovery amounts in the Rodriguez antitrust settlement and in the antitrust

26  settlement of Park v. Thompson Corp., S.D.N.Y. Case No. 05 Civ. 2931 (WHP), both of

27  which involved BAR/BRI.  (Feb. 18, 2011, Harris Decl. ¶ 14.)  The Settlement therefore

28  provides an entirely reasonable resolution of this case.  See, e.g., In re Cendant Corp.

1  Litig., 264 F.3d 201, 241 (3d Cir. 2001) (noting that recoveries can range from 1.6% to

2  14%, and affirming a settlement representing 36% of the recovery); Nichols v.

3  Smithkline Beecham Corp., 2005 WL 950616 at *16 (E.D. Pa. Apr. 22, 2005) (approving

4  a settlement that represented between 9.3% and 13.9% of the claimed damages); In re

5  Warfarin Sodium Antitrust Litig., 212 F.R.D. at 258 (finding that a settlement amount

6  representing 33% of the maximum possible recovery was well-within a reasonable range

7  when compared with recovery percentages in other class-action settlements).

8  **d.      The Experience and Views of Counsel.**

9          As reflected in the Harris Declaration filed herewith, counsel for Plaintiffs has

10  substantial experience in prosecuting class actions, including antitrust matters.  (See Feb.

11  18, 2011, Harris Decl. ¶¶ 2, 3.)  Plaintiffs' counsel is of the opinion that the proposed

12  settlement represents a very reasonable bargain for both sides, given the inherent risks,

13  hazards, and expenses of carrying the case through trial.  Defendants have reached a

14  similar conclusion.

15  **e.      The Reaction of Class Members to the Proposed Settlement.**

16          The reaction of Class Members to the proposed settlement cannot be known until

17  preliminary approval is given, Notice is sent out, and responses to the Notice are

18  received.

19  ***iii.      The Settlement Does Not Grant Preferential Treatment to the***

20  ***Named Plaintiffs.***

21          As noted above, Class Counsel will apply for Incentive Awards for the named

22  Plaintiffs up to a maximum of $20,000 *in the aggregate* for their efforts in bringing and

23  prosecuting the case.  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 17, 59.)  Such payments are

24  regularly sought and awarded to compensate representative plaintiffs for the risks of

25  bringing suit and the willingness to act on behalf of unnamed class members.  See

26  Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009) ("Incentive

27  *awards* are fairly typical in class action cases.  Such awards are discretionary and are

28  intended to compensate class representatives for work done on behalf of the class, to

19

1   make up for financial or reputational risk undertaken in bringing the action, and,

2   sometimes, to recognize their willingness to act as a private attorney general.") (emphasis

3   in original) (internal citations omitted).  In this regard, Plaintiff's counsel reiterates that,

4   in contrast to the settlement reached in <u>Rodriguez</u>, the Incentive Awards herein amount to

5   a modest $5,000 per Plaintiff, compared to the $75,000 per-plaintiff awards sought in

6   <u>Rodriguez</u>.  <u>Id.</u> at 957.  Also in contrast to the settlement reached in <u>Rodriguez</u>, none of

7   the named Plaintiffs herein executed incentive agreements tied to the settlement amounts

8   recovered, which agreements both this Court and the Ninth Circuit held were

9   inappropriate and contrary to public policy.  <u>Id.</u> at 959.  Finally, again unlike the

10   <u>Rodriguez</u> incentive awards, the Incentive Awards will be paid *on top of* the $5,285,000

11   Settlement Amount.  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 59.)

12          ***iv.     The Settlement Falls Within the Range of Possible Approval.***

13         Again, under the Settlement, those who submit claims will likely receive a gross

14   benefit in excess of $240.  (Feb. 18, 2011, Harris Decl. ¶ 14.)  The amounts provided to

15   Class Members are on par with the individual recovery amounts in the <u>Rodriguez</u> and

16   <u>Park</u> settlements.  (Feb. 18, 2011, Harris Decl. ¶ 14.)

17   ***V.    Appointment of a Claims Administrator.***

18         The Settlement provides for the appointment of a Claims Administrator to

19   implement the claims process.  The Claims Administrator proposed by Plaintiff is Gilardi

20   & Co., LLC, a well-established firm based in San Rafael, California with a respected

21   national reputation.  (Feb. 18, 2011, Harris Decl. ¶ 15.)  In providing Notice to the Class,

22   the Claims Administrator will follow the procedures outlined in the Settlement

23   Agreement.  That procedure is constitutionally sound and constitutes the best notice

24   practicable under the circumstances.  <u>See</u> <u>Franks v. Kroger Co.</u>, F.2d 1216, 1222–23 (6th

25   Cir. 1981) (explaining that Rule 23 "provides the courts with 'virtually complete

26   discretion' in selecting the kind of notice to employ in order to inform class members of a

27   settlement hearing").

28         Here, the Claims Administrator will individually mail the Notice, via first-class

mail, to the last-known postal address of each Class Member.  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 45.)  See Eisen v. Carlisle & Jacqueline, 417 U.S. 156, 175–76 (1974) (stating that "individual notice must be provided to those Class Members who are identifiable through reasonable effort").  As the "highest" level of class notice required by case law, individual mailed notice clearly comports with due process and meets the requirements of federal law.  In addition, the Settlement calls for Notice to be disseminated on the Internet and published in three national publications.  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 46.)  Clearly, the Notice procedure is comprehensive and comports with due process.  Accordingly, Plaintiffs request that the Court approve the Settlement.

## VI.   *Proposed Calendar.*

Were the Court to grant preliminary approval of the Settlement, the following calendar would be appropriate:

(A)   March 21, 2011:  The Court conditionally certifies the Class, preliminarily approves the Settlement, appoints the Claims Administrator, and approves the form and mailing of the Notice and Claim Form.

(B)   April 10, 2011:  The Claims Administrator sends the Notice and a Claim Form to each Class Member via first-class mail.

(C)   May 16, 2011:  All completed Claim Forms, objections, and exclusion requests must be postmarked no later than this date.

(E)   June 6, 2011:  Hearing on objections, the motion for final approval, and the motion for fees and reimbursement of costs.

/ / / / /

1

*VII.    Conclusion.*

2

      The Settlement is fair, reasonable, and adequate.  The Court should grant

3

conditional certification, appoint Gilardi & Co., LLC as the Claims Administrator,

4

approve the form and means of giving Notice, and set the matter for a final-approval

5

hearing.

6

7

DATED:  February 18, 2011                     HARRIS & RUBLE

8

                                             /s/

9

                               Alan Harris

10

                               David Zelenski
                               *Attorneys for Plaintiffs*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28