Alan Harris (SBN 146079)
David Zelenski (SBN 231768)
HARRIS & RUBLE
6424 Santa Monica Boulevard
Los Angeles, California 90038
Telephone: (323) 962-3777
Facsimile: (323) 962-3004

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN STETSON, SHANE LAVIGNE, CHRISTINE LEIGH BROWN-ROBERTS, VALENTIN YURI KARPENKO, and JAKE JEREMIAH FATHY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WEST PUBLISHING CORPORATION, a Minnesota corporation dba BAR/BRI, and KAPLAN, INC.,<br><br>Defendants. | Case No. CV-08-00810 R (Ex)<br><br>**DECLARATION OF ALAN HARRIS IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS, PRELIMINARY APPROVAL OF CLASS-ACTION SETTLEMENT, AND APPPOINTMENT OF CLAIMS ADMINISTRATOR**<br><br>Date: March 21, 2011<br>Time: 10:00 a.m.<br>Courtroom: 8<br><br>*Assigned to Hon. Manuel L. Real* |

ALAN HARRIS declares under penalty of perjury of the laws of the United States and the State of California as follows:

1. I am a member in good standing of the State Bar of California and am one of the attorneys for Plaintiffs in the within action. I make this Declaration in Support of Plaintiffs' Motion for Conditional Certification of Settlement Class, Preliminary Approval of Class-Action Settlement, and Appointment of Claims Administrator. If sworn as a witness, I could competently testify to each and every fact set forth herein

from my own personal knowledge.

2.     I have been and am licensed as an attorney, first in Illinois (1974) and later in California (1989).  I am a graduate of the University of Illinois (A.B. 1970, J.D. 1974). After graduation from law school in January 1974, I was hired as a litigation associate at a plaintiffs' antitrust boutique in Chicago, Illinois:  Freeman, Freeman & Salzman.  I became a partner in that firm in 1980, and I started my own practice in 1982.  I have represented plaintiffs in antitrust and complex business litigation for over thirty-five years.  E.g., Illinois v. Ill. Brick Co., Inc., 431 U.S. 720 (1977); In re My Left Hook, LLC, 129 Fed. Appx. 352 (9th Cir. 2005); Gregory v. SCIE, LLC, 317 F.3d 1050 (9th Cir. 2003); In re Blue Coal Corp., 986 F.2d 687 (3d Cir. 1993); In re Blue Coal Corp., 206 B.R. 730 (M.D. Pa. 1997); U.S. v. Gleneagles Inv. Co., Inc., 584 F. Supp. 671, 689 (M.D. Pa. 1984), aff'd. in part and vacated in part, and remanded sub. nom. U.S. v. Tabor Ct. Realty Corp. 803 F.2d 1288 (3d Cir. 1986), cert. den. sub. nom. McClellan Realty Co. v. U.S. 483 U.S. 1005 (1987); In re Uranium Antitrust Litig., 503 F. Supp. 33 (N.D. Ill. 1981); In re Grand Jury, 469 F. Supp. 666 (M.D. Pa. 1980); In re Anthracite Coal Antitrust Litig., 82 F.R.D. 364 (M.D. Pa. 1979), In re Folding Carton Antitrust Litig., 83 F.R.D. 251 (N.D. Ill. 1978); In re Anthracite Coal Antitrust Litig., 78 F.R.D. 709 (M.D. Pa. 1978); In re Masterkey Antitrust Litig., 1977 U.S. Dist. LEXIS 12948 (D. Conn. 1977) (six week jury trial for Plaintiffs); A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Corp., 68 F.R.D. 383 (N.D. Ill. 1975); In re Cement-Concrete Block, Chicago Area, Grand Jury Proceedings, 381 F. Supp. 1108 (N.D. Ill. 1974); Lisa Frank, Inc. v. Brown, 2006 Westlaw 1237277 (Cal Ct. App. 2006); Parmet v. Lapin, 2004 Cal. App. Unpub. LEXIS 5217 (June 1, 2004).  I have represented employees in numerous disputes concerning their receipt of pay in connection with their employment, both before the State of California Division of Labor Standards Enforcement and in state and federal courts in California.  E.g., Milligan v. Am. Airlines, Inc., 2009 U.S. App. LEXIS 9180 (9th Cir. April 30, 2009); Jacobs v. CSAA Inter Ins. Bureau, 2009 U.S. Dist. LEXIS 37153 (N.D. Cal. May 1, 2009); Escobar v. Whiteside Constr. Corp., 2008 U.S.

DECL. OF ALAN HARRIS IN SUPP. OF PLS.' MOT. FOR CONDITIONAL CERTIFICATION OF SETTLEMENT

Dist. LEXIS 68439 (N.D. Cal. 2008) (certification of collective action); Tremblay v. Chevron Stations, Inc., 2008 Westlaw 2020514 (N.D. Cal. 2008) (certification of collective action); Perez v. Maid Brigade, Inc., 2007 U.S. Dist. LEXIS 78412 (N.D. Cal. 2007) (denial of employer's effort to enforce arbitration clause in employment agreements); Hoffman v. Uncle P Prods., 2008 Cal. App. Unpub. LEXIS 3609 (three-year statute of limitations applies to section 203 claims for continuing wages); Bithell v. E.P. Mgmt. Servs., LP, 2007 Westlaw 4216854 (Cal. Ct. App. 2007) (sustaining class settlement of entertainment-industry employees section 203 and 226 claims against entertainment-industry "payroll companies" and studios); DuPont v. Avalon Hollywood Servs., Inc., 2007 Westlaw 93386 (Cal. App. 2007); Gregory v. Superior Court, 2004 Westlaw 2786357 (Cal. Ct. App. 2004) (employee of entertainment-industry "payroll company" not subject to arbitration of dispute under collective bargaining agreement). The undersigned has also been appointed lead class counsel in many settled class actions. E.g., Kang v. Albertson's, Inc., C.D. Cal. Case No. 2:07-CV-00894-CAS-FFM ($6,637,500 settlement of labor-law claims); Tremblay v. Chevron Stations, Inc., N.D. Cal. Case No. CV 07-6009 EDL ($4,500,000 settlement of labor-law claims); Doty v. Costco Wholesale Corp., C.D. Cal. Case No. CV 05-3241 FMC (JWJx) ($7,500,000 distributed to class members for FLSA and California Labor Code section 203 and 226 violations); Agatep v. Exxon Mobil Corp., C.D. Cal. Case No. CV 05-2342 GAF ($1,500,000 settlement on behalf of service-station employees in California); Alfano v. Int'l Coffee & Tea, LLC, C.D. Cal. Case No. CV 04-8996 SVW (CWx) (FLSA and California Labor Code section 226, 510, and 1194 case); Jenne v. On Stage Audio Corp., C.D. Cal. Case No. CV 04-2045 CAS (PJWx) (FLSA and California Labor Code section 203 violations); Hansen v. Advanced Tech Security Servs., Inc., Los Angeles Superior Court Case No BC 367175 ($1,050,000 settlement of labor-law claims); Ross v. Human Resources, Inc., Los Angeles Superior Court Case No. BC 351506 (California Labor Code section 203 case); Harrington v. Manpay, LLC, Los Angeles Superior Court Case No. BC 312171 ($1,000,000 distributed to class members in a section 510 and section

3
DECL. OF ALAN HARRIS IN SUPP. OF PLS.' MOT. FOR CONDITIONAL CERTIFICATION OF SETTLEMENT

1194 case); <u>Brackett v. Saatchi & Saatchi</u>, Los Angeles Superior Court Case No. BC 298728 (over $170,000 distributed to class members in an FLSA and section 203 case); <u>Readmond v. Straw Dogs, Inc.</u>, Los Angeles Superior Court Case No. BC257394 (over $100,000 distributed to class members in a section 203 case); <u>Greenberg v. EP Mgmt. Servs., LP</u>, Los Angeles Superior Court Case No. BC 237787 ($5,348,000 settlement of claims under sections 203 and 226 of California Labor Code); <u>Angel Paws, Inc. v. Avalon Payroll Servs., Inc.</u>, Los Angeles Superior Court Case No. BC 188982 (over $450,000 distributed to class members in a section 203 case); <u>Saunders v. Metro Image Group</u>, San Diego Superior Court Case No. GIC 809753 (California Labor Code section 203 case); <u>Stratford v. Citicorp West FSB</u>, Monterey Superior Court Case No. M 81026 ($950,000 settlement of labor-law claims); <u>Deckard v. Banco Popular North America</u>, related to <u>Silva v. Banco Popular North America</u>, C.D. Cal. Case No. CV 08-6709 JFW (RZx) ($1,050,000 settlement of California Labor Code and FLSA claims). The majority of the foregoing cases were undertaken on a contingent-fee basis, and Harris & Ruble has sufficient financial resources to engage in that sort of practice.

   3. David Zelenski, who is an attorney at my firm working on the above-captioned matter, has worked with me on numerous class-action matters and has been appointed as class counsel in connection therewith. <u>E.g.</u>, <u>Kang v. Albertson's, Inc.</u>, C.D. Cal. Case No. 2:07-CV-00894-CAS-FFM ($6,637,500 settlement of labor-law claims); <u>Doty v. Costco Wholesale Corp.</u>, C.D. Cal. Case No. CV 05-3241 FMC (JWJx) ($7,500,000 distributed to class members for FLSA and California Labor Code section 203 and 226 violations); <u>Agatep v. Exxon Mobil Corp.</u>, C.D. Cal. Case No. CV 05-2342 GAF ($1,500,000 settlement on behalf of service-station employees in California). Mr. Zelenski is a graduate of Reed College (B.A. 1999) and the University of Southern California (J.D. 2003) (law review). He is a member of the California bar (June 28, 2004), and his law-school Note, <u>Talent Agents, Personal Managers, and Their Conflicts in the New Hollywood</u>, 76 S. Cal. L. Rev. 979 (2003), has been cited by the California Supreme Court in <u>Marathon Entertainment, Inc. v. Blasi</u>, 42 Cal. 4th 974 (2008).

1    4.   In May 2007, I first identified and began investigating Defendants West Publishing Corporation ("West") and Kaplan, Inc.'s ("Kaplan") alleged violations of antitrust laws in the bar-review-course market.  Through a review of court filings and informal discovery, I confirmed the implicit message of a settlement reached with West and Kaplan in <u>Rodriguez v. West Publishing Corp.</u>, C.D. Cal. Case No. CV 05-3222 R, namely, that West and Kaplan had violated antitrust laws by their actions in the bar-review-course market (as described in the <u>Stetson</u> Complaint).  In the course of my firm's investigation, I reviewed many thousands of documents, interviewed Class Members and competitors, and engaged in extensive legal research and briefing.

5.   My office filed the Complaint in this matter in February 2008.  The Complaint alleges that West and Kaplan violated section 1 of the Sherman Act, 15 U.S.C. § 1, by conspiring to restrain trade in the full-service bar-review-course market.  The Complaint also alleges that West (but not Kaplan) violated section 2 of the Sherman Act, 15 U.S.C. § 2, by unlawfully acquiring and/or maintaining a monopoly of the bar-review-course market.  On March 14, 2008, West filed a Motion to Dismiss, a Motion in which Kaplan joined.  On April 10, 2008, after hearing oral argument, this Court dismissed the Complaint with prejudice.

6.   Thereafter, on May 7, 2008, my office filed a timely appeal.  Oral argument as to the appeal was heard by the Ninth Circuit on September 30, 2009.  On October 9, 2009, the Ninth Circuit issued an Order "referr[ing the matter] to the Ninth Circuit Mediation Office to explore a possible resolution through mediation."  A true and correct copy of that Order is attached as Exhibit 6 to the accompanying Request for Judicial Notice.  Over the course of the following year, the parties engaged in numerous settlement conferences, including conferences under the supervision of the Ninth Circuit Mediator, Roxane Ashe.  During the course of settlement discussions, my firm's primary goal was to achieve the maximum substantive relief possible for the Class, while Defendants sought to minimize the costs of any settlement.  To that end, I consistently insisted that any settlement include relief designed to accelerate competition in the bar-

review-course market.

7. In approximately June 2010, after a series of arm's length negotiation sessions, the Ninth Circuit Mediator issued a proposal that Plaintiffs settle their claims against Defendant West for $5,285,000. The parties ultimately accepted the Mediator's proposal as to that sum, with Defendant West agreeing to establish a Settlement Fund in that amount. In addition, Plaintiffs had earlier negotiated *additional* Discount Certificate relief with Defendant Kaplan in order to hasten competition in the bar-review-course market. A true and correct copy of the fully executed Stipulation and Settlement Agreement ("Settlement") embodying the terms of the settlement with West and the settlement with Kaplan is attached hereto as Exhibit 1. On December 17, 2010, after the Ninth Circuit was apprised that the Mediator's proposal had been accepted by the parties, the case was remanded to this Court for approval of the Settlement. A true and correct copy of the Order remanding the case is attached as Exhibit 7 to the accompanying Request for Judicial Notice.

8. In this case, common questions predominate between Plaintiffs, on the one hand, and Class Members, on the other. Based upon my investigation, Plaintiffs and Class Members were all injured in a similar fashion after having purchased BAR/BRI bar-review courses in a market suffering from the residual impact of an illegal market-division agreement between West and Kaplan. Whether the market-division agreement constitutes an unlawful restraint of trade is a common issue for the entire Class, as is whether its effects have continued after its termination under the Rodriguez settlement. Accordingly, the only individualized determination that remains is the quantification of damages for each Class Member.

9. Again, the negotiations ultimately culminated in the execution of a Settlement embodying the Ninth Circuit Mediator's proposal. These Ninth Circuit-supervised negotiations took place over the year following appellate oral argument. In negotiating and executing the Settlement, I have very carefully considered the risks of further litigation. I have also carefully considered the expenses involved in further

litigation, the potential recovery to the Members of the Class if the case were fully litigated through trial, and the probability of any recovery for Members of the Class being delayed in the event of a successful trial outcome by the taking of an appeal. After a careful analysis of all the relevant factors, I have formed and now hold the opinion that the terms and conditions embodied in the Settlement are fair, reasonable, and equitable; that they represent a good result; and that the risks and delay of further litigation likely outweigh the potential benefits that might derive from further litigation. Based on my experience in matters of this nature, the $5,285,000 Settlement Fund will be adequate to pay Class Members a significant cash recovery that, when coupled with the Discount Certificate portion of the Settlement, will enable participating Class Members to enjoy a significant cash benefit.

10. The Settlement calls for West to deposit $5,285,000 into an interest-bearing escrow account within ten business days of the Court's order granting preliminary approval of the Settlement. The interest earned shall inure to the benefit of the Class. The $5,285,000 Settlement Amount, plus all interest earned thereon, constitutes the Gross Settlement Fund. The Gross Settlement Fund will be used to pay the costs of settlement administration and Notice to the Class, as well as an associated Gross Settlement Fund Fee Award and an Expense Award to Class Counsel, both as approved by the Court. No Incentive Awards will be paid to the named Plaintiffs out of the Gross Settlement Fund; instead, to the extent that the Court permits Incentive Awards to be paid to the named Plaintiffs, such Awards will be paid separately by Kaplan.

11. After the above-described deductions have been made from the Gross Settlement Fund, the balance (the "Net Settlement Fund") will be distributed to those Members of the Class who have submitted a valid and timely Claim Form ("Authorized Claimants"). The Net Settlement Fund will be distributed to Authorized Claimants pursuant to a Plan of Allocation submitted by Plaintiffs' counsel in connection with the Settlement. Under the terms of the Plan of Allocation, the Net Settlement Fund will be distributed *pro rata* based on the amount each Authorized Claimant paid for a full-service

BAR/BRI course in relation to the amounts paid by all other Authorized Claimants. For example, if the amount paid for a bar-review course by an Authorized Claimant equals 1/50,000 of the aggregate of such amounts paid by all other Authorized Claimants, then the Authorized Claimant will receive 1/50,000 of the Net Settlement Fund. Accordingly, West is not entitled to a reversion of any amounts in the Net Settlement Fund.

12. Separate from West's establishment of the Gross Settlement Fund, Kaplan will provide to, or develop with, the Claims Administrator, for enclosure with the Notice to each Class Member, one Discount Certificate. For each additional instance in which a Class Member paid the tuition for a BAR/BRI full-service bar-review course—other than for a course discounted by fifty percent or more—he or she will receive with the Notice one additional Discount Certificate. The Discount Certificates are designed to foster competition in the bar-review-course market. Each Certificate will be redeemable toward the future purchase of one Qualifying Kaplan Course. More specifically, each Discount Certificate will entitle the holder—who may be someone other than the person to whom the Certificate was originally issued—to a $200 credit toward the purchase of a Qualifying Kaplan Course that would otherwise cost the holder $1,999 or more; a $150 credit toward the purchase of a Qualifying Kaplan Course that would otherwise cost the holder between $1,499 and $1,998; a $100 credit toward the purchase of a Qualifying Kaplan course that would otherwise cost the holder between $999 and $1,498; or a $50 credit toward the purchase of a Qualifying Kaplan Course that would otherwise cost the holder between $499 and $998. Each Discount Certificate will be valid for thirty months and will be fully transferable regardless of whether the transferee is a Class Member and regardless of whether the transfer is in the nature of a gift, a barter transaction, an online auction or sale (such as on eBay or Craig's List, for example), or any other legal form of transaction.

13. Given that the Discount Certificates are fully transferable and redeemable for a period of thirty months, it is very likely that a market will develop to assist a Class Member in finding buyers when he or she does not want to take a Course himself or

herself. In addition, given that the same Discount Certificate is worth more to someone taking an expensive Kaplan Qualifying Course than it is to an individual taking a less expensive one, it is economically reasonable to expect the secondary market price for these Certificates to tend toward the higher end of the $50-to-$200 spectrum. Given the magnitude of the enrollment in Kaplan Qualifying Courses, an economically reasonable estimate of the value of a Certificate is $150.

14. An examination of the settlement value in this case relative to similar class-action suits indicates that the Settlement's benefits are consistent with those achieved in other antitrust actions involving BAR/BRI, namely, Park v. Thomson Corp., S.D.N.Y. Case No. 05 Civ. 2931 (WHP), and Rodriguez v. West Publishing Corp., C.D. Cal. Case No. CV 05-3222 R. The Park settlement has been finally approved, and distributions were mailed to Class Members in November 2010. The Rodriguez settlement is not fully complete, with the Ninth Circuit Court of Appeals recently setting out a schedule that will not decide some of the issues until May 2011, namely, the question of objector awards. However, it appears that some payouts have been determined, at least minimally. The following table compares the three cases:[1]

|  | *Stetson* | *Park* | *Rodriguez* |
|---|---|---|---|
| **Gross Settlement Fund** | $5,285,000 | $13,000,000 | $49,000,000 |
| Less Attorney's Fees | ($1,321,250) | ($2,031,774) | ($3,146,517) |
| Less Attorney's Expenses |  | ($109,625) | ($1,413,359) |
| Less Claims-Administration Fees |  | ($750,000) | ($252,237) |

---

[1] The figures for Park are taken from the October 22, 2008, Order therein granting final approval, a true and correct copy of which is attached as Exhibit 4 to the accompanying Request for Judicial Notice. The figures for Rodriguez are taken (a) from the February 3, 2010, Order therein granting the plaintiff's motion for distribution of the net settlement fund and (b) from the Rodriguez class-settlement website, http://www.barbri-classaction.com/barbri/default.htm (last updated December 23, 2010). A true and correct copy of the Rodriguez Order is attached as Exhibit 5 to the accompanying Request for Judicial Notice. A true and correct copy of the Rodriguez settlement website is attached hereto as Exhibit 2.

| | | | |
|---|---|---|---|
| Less Incentive Awards | ($20,000) | ($5,000) | ($0) |
| **Total Remaining for Class** | $3,943,750 | $10,103,601 | $44,187,887 |
| Size of Class | 165,210 | 280,000 | 376,301 |
| Ratio of Valid Claims to Size of Class | 25% | 20% | 23% |
| Expected Number of Claims | 43,303 | 55,649 | 88,000 |
| Amount per Claimant | $91.07 | $181.56 | $502.14 |
| Value of Discount Certificate | $150 | | |
| **Total Expected Amount for Claimant** | $241.07 | $181.56[2] | $502.14 |

15.  The parties recommend that Gilardi & Co., LLC ("Gilardi") be appointed as Claims Administrator. Gilardi is a well-established firm based in Gilardi with a respected national reputation. In providing Notice to the Class, Gilardi will follow the procedures outlined in the Settlement. I believe that the Class will be well-served by the appointment of Gilardi as Claims Administrator, and, based on my experience, the proposed program for delivering Notice should be effective in providing actual notice to all Class Members. A true and correct copy of the proposed Notice to be delivered to the Class is attached hereto as Exhibit 4.

16.  Plaintiffs' counsel has advanced all costs of this case to date. The required legal services—including drafting the Complaint, conducting legal research, bringing the appeal, and participating in the Ninth Circuit-mandated mediation—have been provided on a contingent-fee basis. The undersigned has no conflict of interest with Plaintiffs or any Members of the Class, and Harris & Ruble will fairly and adequately represent the interests of the Class.

/ / / / /

---

[2] The amount received by participating Class Members in Park is actually less than that suggested by the figures in the Park Order granting final approval. Attached hereto as Exhibit 3 is a true and correct (redacted) copy of a check to a Park Class Member. The check is for $81.02—less than the anticipated amount per participating Class Member in the above-captioned matter *even excepting the Discount Certificate portion of the Settlement*.


1. I have read the foregoing, and the facts set forth therein are true and correct of my own personal knowledge. Executed February 18, 2011, in the County of Los Angeles, State of California.

/s/
Alan Harris