FILED

DANIEL GREENBERG (AR BAR 2007-193)
email: dngrnbrg@gmail.com
*Pro se*
**CENTER FOR CLASS ACTION FAIRNESS LLC**
**GREENBERG LEGAL SERVICES**
55 Fontenay Circle
Little Rock, AR  72223
(501) 588-4245

2011 MAY 24  PM 3: 06

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| STEPHEN STETSON, SHANE LEVIGNE, CHRISTINE LEIGH BROWN-ROBERTS, VALENTIN YUI KARPENKO, and JAKE JEREMIAH FATHY, individually and on behalf of all others similarly situated, | Case No. CV-08-00810-R (Ex)<br><br>**OBJECTION TO PROPOSED SETTLEMENT** |
| *Plaintiffs,* | Judge:  Hon. Manuel L. Real<br>Date:  June 20, 2011<br>Time:  11:00 a.m.<br>Courtroom: 8 |
| v. | BY FAX |
| WEST PUBLISHING CORPORATION, a Minnesota Corporation dba BAR/BRI, and KAPLAN, INC., | **CLASS ACTION** |
| *Defendants.* | |
| Daniel Greenberg, *Objector.* | |

OBJECTION TO PROPOSED SETTLEMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................ii

TABLE OF AUTHORITIES ...........................................................................iv

INTRODUCTION ............................................................................................1

I.     The Objector Is a Member of the Class.....................................................1

II.    Under Rule 23, Preventing an Unfair Settlement Is This Court's Duty. .....1

III.   This Coupon Settlement Violates Federal Law and Promotes Poor Public

       Policy. ....................................................................................................3

       a.     This Settlement's "Discount Certificates" Are Coupons...................4

       b.     As a Matter of Policy, Coupon Settlements Are Inherently

            Problematic...............................................................................5

       c.     As a Matter of Law, This Coupon Settlement's Fee Request Cannot

            Pass the Test of 28 U.S.C. § 1712.......................................................8

IV.   Class Counsel's (Non-Coupon) Fee Is Also Legally Insupportable. .........12

       a.     Class Counsel Should Not Collect a Commission on Notice. .........12

       b.     Class Counsel Should Not Collect a Commission on Settlement

            Administration Expenses. ...............................................................13

       c.     Class Counsel's Fee Request Is Inconsistent With both Ninth Circuit

            Precedent and the Class Notice........................................................14

V.  This Settlement's Motion Schedule Provides Inadequate Notice to Class Members. ............................................................... 17

VI.  The "Clear Sailing" Provisions Are Deficient Under Rule 23(a)(4).......... 19

VII.  The Court Should Discount Attempts By The Settling Parties To Infer Class Approval From A Low Number Of Objections................................ 21

VIII.  The Objection Furthers the Public Interest, Not Merely the Interest of the Objector. ................................................................. 24

CONCLUSION ............................................................... 25

OBJECTION TO PROPOSED SETTLEMENT

1

## TABLE OF AUTHORITIES

2

3

### Cases

4

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) ...............................5

5

*Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*, 52 F.R.D. 373
(D. Kan. 1971) ...................................................................................24

6

7

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)...........................................2

8

*Besinga v. United States*, 923 F.2d 133 (9th Cir. 1991)....................................... 13

9

*Churchill Village, LLC v. General Electric Co.*, 361 F.3d 566 (9th Cir. 2004)
...................................................................................................8

10

11

*Colautti v. Franklin*, 439 U.S. 379 (1979)........................................................11

12

*Create-A-Card, Inc. v. Intuit, Inc.*, No. C 07-06452 WHA, 2009 WL 3073920 (N.D. Cal.
Sept. 22, 2009) .......................................................................8, 9, 14, 17

13

14

*Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401 (9th Cir. 1989) ..................2

15

*Ellis v. Edward D. Jones & Co.*, 527 F. Supp. 2d 439 (W.D. Pa. 2007) ......................23

16

*Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292 (S.D. Fla. 2007) ...................5

17

*Fleury v. Richemont North Am., Inc.*, No. 05-4525, 2008 WL 3287154  (N.D. Cal. Aug. 6,
2008)...............................................................................................4

18

19

*Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434 (S.D. Iowa 2001).................22

20

*Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ...................2

21

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)..............................2, 19, 21

22

23

*In re Capital Underwriters, Inc.*, 519 F.Supp. 92 (N.D. Cal. 1981)........................16

24

*In re Cement and Concrete Antitrust Litig.*, 817 F.2d 1435 (9th Cir.1987) ...............16

25

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) .................23

26

*In re General Motors Corp. Engine Interchange Lit.*, 594 F.2d 1106 (7th Cir.1979)......23

27

28

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768

(3d Cir. 1995) ...............................................................................2, 9, 20, 22, 23

*In re Inkjet Litig.,* No. 5:05-cv-3580, 2011 WL 1158635 (N.D. Cal. Mar. 29, 2011) ..............................................................................................................4, 9, 14

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) ............. 17-18

*In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001) ..........................5

*In re Relafen Antitrust Litig.,* 366 F.Supp.2d 166 (D. Mass. 2005) ..........................2

*In re Veritas Software Corp. Sec. Litig.,* 496 F.3d 962 (9th Cir. 2007) ...............16-17

*In Re Washington Public Power Supply Syst. Lit.,* 19 F.3d 1291 (9th Cir. 1994) .........2

*Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996).....................................20-21

*Kearns v. Ford Motor Co.*, No. CV 05-5644, 2005 WL 3967998 (N.D. Cal. Nov. 21, 2005) ...................................................................................................2, 5

*Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986).............................................9

*Lightfoot v. District of Columbia,* 355 F. Supp. 2d 414 (D.D.C. 2005) ......................17

*Lobatz v. U.S. West Cellular of Cal., Inc.,* 222 F.3d 1142 (9th Cir. 2000)...................8

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677 (7th Cir. 1987) ...................................................................................................23

*Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292 (M.D. Pa. 1995) ..............23

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) ............................2

*Riker v. Gibbons,* 2010 WL 4366012 (D. Nev. Oct. 28, 2010) ................................2

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ..........................19

*Silber v. Mabon,* 957 F.2d 697 (9th Cir. 1992) ...............................................2

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ..........15

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)..........................2, 13, 15, 19, 20

*Synfuel Technologies, Inc. v. DHL Express, Inc.*, 463 F.3d 646 (7th Cir. 2006) ..........2, 6

*Thorogood v. Sears Roebuck & Co.*, 547 F.3d 742 (7th Cir. 2008) ..........................21

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ........................12, 15

*True v. American Honda Motor Co.*, No. CV 07-287, 2010 WL 707338 (C.D. Cal. Feb. 26, 2010).............................................................................................................4, 5, 8

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)...............................2, 15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) .................9, 14

*Weinberger v. Great Northern Nekoosa Corp.*, 925 F. 2d 518 (1st Cir. 1991) .............19

## **Statutes and Rules**

Class Action Fairness Act of 2005, 28 U.S.C. § 1712 .........................................*passim*

FED. R. CIV. P. 6.........................................................................................................18

FED. R. CIV. P. 23....................................................................................................*passim*

## **Other Authorities**

Judith N. Collins, *Trends in Graduate Employment,* National Association Of Legal Placement Bulletin (July 2009) .............................................................................6

Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors In Class Action Litigation: Theoretical and Empirical Issues,* 57 VAND. L. REV. 1529 (2004) .....23

Brian T. Fitzpatrick, *The End of Objector Blackmail?,* 62 VAND. L. REV. 1623 (2009)...24

Allison Frankel, *Legal Activist Ted Frank Cries Conflict of Interest, Forces O'Melveny and Grant & Eisenhofer to Modify Apple Securities Class Action Deal,* AMERICAN LAWYER LIT. DAILY (Nov. 30, 2010) .............................................................................24

Christopher R. Leslie, *The Need to Study Coupon Settlements in Class Action Litigation,* 18 GEO. J. L. ETHICS 1395 (2005)................................................................................6

Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements,* 59 FLA. L. REV. 71 (2007).............................................................22

Manual for Complex Litigation § 21.71 (4th ed. 2008)...........................................9

Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 13:20 (4th ed. 2002)....2

Notes of Advisory Committee on 2003 Amendments, FED. R. CIV. P. 23 S. REP. 109-14 (2005) ............................................................................................18

Charles Silver, *Due Process and the Lodestar Method: You Can't Get There From Here,* 74 TULANE L. REV. 1809 (2000) .....................................................................9

Rachel M. Zahorsky, "Unsettling Advocate," ABA J. (Apr. 2010)...........................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Judicial approval of this settlement would create reversible error as a matter of law. The settlement contains multiple independent deficiencies that require court intervention to protect the rights of absent class members. *First*, the Kaplan portion of the settlement, which gives only "discount certificates" to the class, violates the Class Action Fairness Act's strictures on coupon settlements. *Second*, the West Publishing portion of the settlement allocates an impermissible share of the cash available to the attorneys at the expense of the class. *Third*, the notice is fatally defective under Rule 23 and Ninth Circuit precedent.

The objection is not that the class attorneys should have litigated the case differently or that the settlement fund should be $60/class member instead of $30/class member; the objection does not second-guess the likelihood of success of the case. Rather, the objection is that the settlement is unfair because it has been structured in every way—including a "clear sailing" agreement and a reversion of a denied fee request to Kaplan—to ensure that a disproportionate share of the settlement goes to the attorneys and defendants rather than to the class. As such, it violates the Class Action Fairness Act and Federal Rules of Civil Procedure 23(a)(4), 23(e), and 23(h), and cannot be approved.

### I.   The Objector Is a Member of the Class.

In 2007, Objector Daniel Greenberg purchased a full service BAR/BRI bar review course. (Shortly thereafter, he took the course, passed the bar, and acquired a license to practice law in his home state of Arkansas.) Greenberg therefore qualifies for membership in the settlement class and has standing to object to this settlement. Greenberg has filed a separate brief with this court requesting the opportunity to be heard at the final fairness on June 20, 2011; in that brief, he requested the opportunity to cross-examine any witnesses who testify at the hearing in support of settlement approval.

### II.   Under Rule 23, Preventing an Unfair Settlement Is This Court's Duty.

"Both the United States Supreme Court and the Courts of Appeals have repeatedly emphasized the important duties and responsibilities that devolve upon a district court

pursuant to Rule 23(e) prior to final adjudication and settlement of a class action suit." *In re Relafen Antitrust Litigation*, 360 F.Supp.2d 166, 192-94 (D. Mass. 2005), citing *inter alia Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 68 (1997) ("Rule 23(e) protects unnamed class members from 'unjust or unfair settlements' agreed to by 'fainthearted' or self-interested class 'representatives.'"); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279-80 (7th Cir. 2002) ("district judges [are] to exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions" prior to settlement).

"Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members.... [T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F. 3d 768, 785 (3d. Cir. 1995) (quoting *Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)). *See also Riker v. Gibbons*, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010). "A trial court has a continuing duty in a class action case to scrutinize the class attorney to see that he or she is adequately protecting the interests of the class." Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 13:20 (4th ed. 2002). "Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon*, 957 F.2d 697 (9th Cir. 1992), at 701. *Accord Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989).

It is insufficient that the settlement happened to be at "arm's length" without express collusion between the settling parties; because of the danger of conflicts of interest, third parties must monitor the reasonableness of the settlement as well. There is a need for "special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998). *Accord Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) ("If fees are unreasonably high, the likelihood is that the

defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained."). "Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (quoting *In Re Washington Public Power Supply Syst. Lit.*, 19 F.3d 1291 (9th Cir. 1994)). "Accordingly, fee applications must be closely scrutinized." *Vizcaino*, 290 F. 3d at 1052. *See also Synfuel Technologies, Inc. v. DHL Express, Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) (". . . we note that in [CAFA] . . . Congress required heightened judicial scrutiny of coupon-based settlements based on its concern that in many cases 'counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value.'" (quoting Pub. L. 109-2, § 2(a)(3)(A)); *Kearns v. Ford Motor Co.*, No. CV 05-5644, 2005 WL 3967998, at *1 (N.D. Cal. Nov. 21, 2005) (In CAFA, "Congress put significant limits on so-called 'coupon settlements' which produce hardly any tangible benefits for the members of the plaintiff class, but generate huge fees for the class attorneys.")

In its Order of March 21, 2011 granting conditional certification of the settlement class, this Court discussed certain Rule 23 interests implicated by this class action. Order Granting Plaintiffs' Motion, ¶¶ 1-3. Regrettably, there are multiple respects in which this settlement cannot satisfy Rule 23's requirement that any binding settlement must be "fair, reasonable, and adequate."

### III.   This Coupon Settlement Violates Federal Law and Promotes Poor Public Policy.

This settlement grants "discount certificates" that are indistinguishable from coupons to class members. Coupon settlements are disfavored both by considerations of public policy and black-letter federal law. This coupon settlement flunks the test that 28 U.S.C. § 1712(a) imposes.

### a.   This Settlement's "Discount Certificates" Are Coupons.

Several factors have contributed to a decline in what are called "coupon settlements" over the last several years; one factor is that such settlements are now officially disfavored by federal law. When Congress passed the Class Action Fairness Act in 2005, it signaled its intent to subject coupon settlements to more penetrating scrutiny. The Senate's Committee Report on the Act is a blunt reminder of legislative goals:

> [W]here [coupon] settlements are used, the fairness of the settlement should be seriously questioned by the reviewing court where the attorneys' fees demand is disproportionate to the level of tangible, non-speculative benefit to the class members. In adopting [Section 1712(e)'s requirement of a written determination that the settlement is fair, reasonable and adequate], it is the intent of the Committee to incorporate that line of recent federal court precedents in which proposed settlements have been wholly or partially rejected because the compensation proposed to be paid to the class counsel was disproportionate to the real benefits to be provided to class members.

S. REP. 109-14, at 31 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 32. The settling parties' nomenclature is far from the first attempt to provide a cosmetic solution to the coupon problem.[1] Although the proposed settlement carefully avoids calling a certificate a "coupon," the certificates operate identically to that disfavored instrument: that is, the only beneficial use of a certificate lies in getting a lower price for Kaplan courses. To state the obvious, it is perfectly accurate to call these certificates "coupons." *See Fleury v. Richemont North Am., Inc.*, No. C-05-4525 EMC, 2008 WL 3287154, at *2 (N.D. Cal. Aug. 6, 2008) (a coupon settlement's relief consists of "a discount on another product or

---

[1] Other proposed class action settlements have offered "rebates," "vouchers," and "e-credits" (*see, e.g., True v. American Honda Motor Co.*, No. CV 07-287, 2010 WL 707338 (C.D. Cal. Feb. 26, 2010); *In re Inkjet Litig.*, No. 5:05-cv-3580 (N.D. Cal. Mar. 29, 2011)). But the problem with coupon settlements is not just semantic, but substantive. Regrettably, an unfair settlement agreement, like an unpublishably bad novel, cannot be repaired by resort to the thesaurus.

service offered by the defendant in the lawsuit"). *Accord True v. American Honda Motor Co.*, No. CV 07-287, 2010 WL 707338 at *11 (C.D. Cal. 2010) (Feb. 26, 2010). The "discount certificates" this settlement contemplates, though transferable, are not fungible in the way cash is; rather, they can only be used to reduce the cost of exactly one good that class members, in order to benefit from the discount certificate, must buy. Another name for such instruments is "coupons." The lawyers who draft these settlements surely know what a coupon is; they surely know consumers would rather have fungible cash than specialized coupons (how could anyone not?); and their resort to euphemism suggests an awareness that coupon settlements are, by their nature, problematic.

### b.    As a Matter of Policy, Coupon Settlements Are Inherently Problematic.

Under the Class Action Fairness Act, courts must give heightened scrutiny to coupon settlements. *True v. American Honda*, 2010 WL 707338, at *12; *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007); *Kearns v. Ford Motor Co.*, 2005 WL 3967998, at *1. Coupon settlements are problematic because: (1) they often do not provide meaningful compensation to class members; (2) they often fail to disgorge ill-gotten gains from the defendant; and (3) they often require class members to do future business with the defendant in order to receive compensation. *See Figueroa v. Sharper Image,* 517 F.Supp.2d at 1302; *True*, 2010 WL 707338 at *12. The "discount certificates" at issue exhibit all three problems.

Courts "have generally rejected the idea that the face value of coupons or rebates should be used for settlement valuation purposes." *True*, 2010 WL 707338 at *17. "Compensation in kind is worth less than cash of the same nominal value." *Id.* (*quoting Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 390 (C.D. Cal. 2007) (*quoting In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001))).[2] The other two prongs of the *Figueroa* triad are also in play here. Coupons that are not redeemed cost defendants

---

[2] Notably, class counsel has not requested *its* compensation in coupons.

1   nothing. But coupons that are redeemed may simply represent a purchase induced by the
2   settlement. "In many cases, coupons are not punishment; they are … the economic
3   equivalent of a court-supervised promotional campaign." *See* Christopher R. Leslie, "The
4   Need To Study Coupon Settlements in Class Action Litigation," 18 GEO. J. LEGAL ETHICS
5   1395, 1397 (2005). Furthermore, in order to receive any direct benefit from the settlement,
6   consumers must once again do business with the same company which plaintiffs allege
7   originally overcharged them. The coupon "'require[s] the claimant to return to the
8   Defendant to do business with him,' something at least some class members likely would
9   prefer not to do." *Synfuel Technologies, Inc. v. DHL Express, Inc.*, 463 F.3d, at 654
10  (quoting objectors in part). And these particular coupons exhibit a fourth defect: as
11  discussed immediately below, to the extent that the coupons are valuable, a significant
12  part of the value will never reach the class.

13       The proposed Kaplan settlement offers coupons of an especially low value, even in
14  the context of the diluted world of coupon settlements, because of the relatively minimal
15  worth of additional educational offerings from Kaplan to the class. The proposed coupons
16  do not offer discounts for goods like car maintenance or breakfast cereals that a typical
17  class member might buy regularly. Rather, these coupons offer a discounted price
18  (between 5% and 10%) on classes that help students with tests like the MCAT or the
19  DAT; because very few attorneys have medical or dental school as an immediate career
20  goal, personal use of the coupon will give almost no class member any real value. (From
21  1985-2008, the portion of law school graduates pursuing another degree was consistently
22  under 3%.[3] *See* Judith N. Collins, *Trends in Graduate Employment,* National Association
23  of Legal Placement Bulletin (July 2009), at 10.) To get any value from the coupon at all,
24  most class members will have to sell it in a secondary market. Therefore, any calculation
25  of coupon value must be adjusted steeply downwards, because no buyer will pay $100 for

---

27  [3] Furthermore, the vast majority of law school graduates who are pursuing other degrees
28  are likely enrolling in LL.M. programs or similar post-J.D. programs, for which Kaplan
    course discounts provide no benefit.

a coupon that supplies a $100 discount. Indeed, certain discounts on currently-offered courses will prevent some potential coupon beneficiaries from getting any value from the coupon at all. *See* Stipulation and Settlement Agreement, § 38(d). Common sense suggests that a large number of class members will likely discard the coupon in disgust after realizing that going to the trouble of selling the coupon is just not worth it. This is especially true for a class of law-school graduates, whose opportunity costs will be larger than average to retail, in a secondary market, a coupon that is worthless to most class members.[4] In short, a representation that the coupons provide value to the class anything like the value they offer on paper cannot, so to speak, be taken at face value: by and large, the class will get no value from the coupons at all unless they expend time and resources to sell them at a substantial discount.

It is unclear to what extent the coupons will encourage additional defendant patronage and repeat business, and it would be difficult or impossible for this Court to regularly monitor prices to ensure that Kaplan does not recoup some portion of the money it loses from the coupons simply by raising its rates. It is hard to say whether the discounts that these coupons create is a cost or a benefit to defendants—whether it is a loss-leader or a profit-maker—although one unambiguous benefit that will go entirely to defendants is that this settlement extinguishes class members' claims. In short, this settlement agreement may place defendants in the enviable posture of simultaneously doing good and doing well: if this settlement is approved, defendant Kaplan may be able to buy a court-approved marketing program that will extinguish expensive litigation for a bargain-basement price.

---

[4] The eBay secondary market is hardly costless. Those who successfully sell a Kaplan coupon through an eBay auction will lose a minimum of 9% of the final bid to eBay—*see* http://pages.ebay.com/help/sell/fees.html—as well as a possible "insertion fee." Furthermore, any eBay participant must invest time and effort in order to figure out how to sell the coupon on eBay in the first place. Admittedly, those who want to avoid this latter burden can contract the sale out to an eBay store—as long as they are willing to bear yet another fractional loss.

1    This objection does not argue that a settlement can never contain coupons, but

2    *Churchill Village, LLC v. General Electric Co.*, 361 F.3d 566, 575 (9th Cir. 2004),

3    requires a court to consider "the amount offered in settlement" in considering its fairness.

4    When determining whether this settlement is fair or adequate, this Court should recognize

5    the several respects in which these coupons benefit the defendant as well as the fact that

6    these coupons are not worth anywhere near their face value to the class.

7        **c.    As a Matter of Law, This Coupon Settlement's Fee Request**

8             **Cannot Pass the Test of 28 U.S.C. § 1712.**

9        If "class counsel agreed to accept excessive fees and costs to the detriment of class

10   plaintiffs, then class counsel breached their fiduciary duty to the class." *Lobatz v. U.S.*

11   *West Cellular of Cal., Inc.*, 222 F.3d 1142, 1147 (9th Cir. 2000).

12       Because this is a coupon settlement without any accompanying injunctive relief,[5]

13   attorneys' fees "shall be based on the value to class members of the coupons that are

14   redeemed" rather than the theoretical value of the coupons available for redemption. 28

15   U.S.C. §1712(a). The inequity of settlements in which "counsel are awarded large fees,

16   while leaving class members with coupons or other awards of little or no value" was a

17   central legislative motivation of the Class Action Fairness Act. *Id.*, § 2(a)(3)(A). "The

18   lodestar amount is particularly inappropriate where, as here, the benefit achieved for the

19   class is small and the lodestar award large." *True*, 2010 WL 707338, *citing Create-A-*

20   *Card, Inc. v. Intuit, Inc.*, No. C 07-06452 WHA, 2009 WL 3073920 (N.D. Cal. Sept. 22,

21   2009). Attorneys' fees should be based on a percentage of the recovery. "The contingent

22   fee uses private incentives rather than careful monitoring to align the interests of lawyer

23   and client. The lawyer gains only to the extent his client gains. This interest-alignment

24   device is not perfect. . . . But [an] imperfect alignment of interests is better than a conflict

25

26   ―――――――――――――――――
     [5] If this settlement creates injunctive relief for the class, it is a well-kept secret: injunctive

27   relief is not discussed in the Class Notice or the parties' Stipulation and Settlement
     Agreement, which notes that the award to class counsel is "based upon the recovery for

28   Class Members of the Discount Certificates." *See* § 59.

of interests, which hourly fees may create." *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986). *See generally* Charles Silver, *Due Process And The Lodestar Method: You Can't Get There From Here*, 74 TULANE L. REV. 1809 (2000) (citing authorities that show a "broad consensus that percentage-based formulas harmonize the interests of agents and principals better than time-based formulas like the lodestar approach."). The percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). In contrast, judicial reliance on the lodestar will "create an unanticipated disincentive to early settlements, tempt lawyers to run up their hours, and compel district courts to engage in a gimlet-eyed review of line-item fee audits." *Id.* Both public policy and the clear language of § 1712(a) require fees to be based on actual class recovery.

With respect to the Kaplan settlement, one can derive the total value of the settlement fund by adding the value that the coupons actually provide to the class to the cash that attorneys and named plaintiffs will receive. The sum of those benefits and that cash should be "treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel." Manual for Complex Litigation § 21.71 (4th ed. 2008). The attorneys' fees may be compared to this total fund to determine whether the allocation between attorneys and the class is reasonable. *See id.* Because this is a coupon settlement, attorneys' fees "shall be based on the value to class members of the coupons that are redeemed" rather than the theoretical value of the coupons that are merely available for redemption. 28 U.S.C. §1712(a). The "key consideration in determining a fee award is reasonableness in light of the benefit *actually conferred*" (emphasis in original). *In re HP Inkjet Printer Litig.*, No. 5:05–cv–3580 JF, 2011 WL 1158635, at *10 (N.D. Cal. Mar. 29, 2011) (quoting *Create-A-Card Inc., v. Intuit, Inc.*, No. C 07-06452 WHA, 2009 WL 3073920, at * 3 (N.D. Cal. Sept. 22, 2009)). *See also In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d, at 820-21 (considering automotive coupons and "separate" attorneys

fees as a common fund "in economic reality"). In this case, however, the redemption rate would overstate the benefit to the class: although the transferability of the coupons (which is commendable) increases the chance that class members will redeem them, the nature of the good that the coupons can be redeemed for decreases the chance that the full face value of the coupon will go to a class member.

The proposed settlement contemplates a fee from Kaplan to class counsel, termed a "Discount Certificate Fee Award," of up to $450,000. Stipulation and Settlement Agreement, § 59. The only justification the settlement agreement provides for Kaplan to pay class counsel the "Discount Certificate Fee Award" is the coupons that the settlement assigns the class. *Id.* But the agreement lacks any method of measuring the value of the coupons. This is a defect: compliance with the plain language of § 1712(a) is not optional. Mysteriously, the architects of this settlement seem to have understood the Class Action Fairness Act as offering class counsel a choice: namely, that its fees from Kaplan may be based either on the value of coupons redeemed by the class or on the number of hours that class counsel has expended on the action.

This idiosyncratic interpretation of the Class Action Fairness Act is impossible to square with the Act's express language, structure, and findings. The Act's regulation of coupons is driven by congressional findings that consumers are harmed by settlements in which "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value." Class Action Fairness Act of 2005, § 2(a)(3)(A). As noted above, 28 U.S.C. § 1712(a), titled "Contingent Fees in Coupon Settlements," requires that the portion of fee awards "that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." The next section, 28 § 1712(b), titled "Other Attorneys' Fee Awards in Coupon Settlements," addresses fees that are *not* attributable to coupon awards, such as equitable or injunctive relief. *See* § 28 U.S.C. 1712(b)(2). This distinction between these two sections is demonstrated by the third section, "Attorneys' Fee Awards Calculated on a Mixed Basis in Coupon Settlements": in the event that a settlement produces *both* coupon relief and

non-coupon relief, that third section controls, stating that the portion of the fee award "that is based upon a portion of the recovery of the coupons" must be calculated in accordance with § 1712(a), while the fee "that is not based upon a portion of the recovery of the coupons" must be calculated in accordance with § 1712(b). 28 U.S.C. § 1712(c).

In short, under the Class Action Fairness Act, calculation of attorney fees deriving from coupons must be controlled by the value that their redemption brings the class. That measure is mandatory, not optional. The portion of the Act that regulates coupon settlements was designed precisely to avoid what it called the "abuses" of previous coupon settlements. *See* Class Action Fairness Act of 2005, § 2(a)(2). As a matter of logic, the Act cannot be read to permit attorneys' fees deriving solely from coupon awards to be based on the amount of work class counsel has put into the settlement. Something has gone wrong somewhere if the Act is read to permit precisely the sort of coupon settlements that, by its language and structure, it prohibits. Any reading of the Class Action Fairness Act that understands §1712(a) as permitting attorneys' fees for coupon awards based on something besides the value of those coupons to class members would simply make §1712 a nullity, and "a statute should be interpreted so as not to render one part inoperative." *Colautti v. Franklin,* 439 U.S. 379, 99 S. Ct. 675, 58 L. Ed. 2d 596 (1979). In short, there is no way to calculate an appropriate attorneys' fee in this settlement without some knowledge of the coupon value at redemption.

Regrettably, the settlement at issue never supplies any information that would permit class members to judge the fairness of the settlement by calculating the value they would likely receive from its coupons. It is not so much that class counsel has failed the test of 28 U.S.C. §1712(a) by giving a bad answer to this question; instead, it looks as if class counsel never supplied anything like an answer at all.

This objection does not argue that settlements must be coupon-free. If the coupons could reasonably deliver $1.35 million of value to the class (accounting for the cost to the class of disposing of the coupons), then a $450,000 fee award after redemptions would arguably be reasonable. But that must be empirically demonstrated, rather than assumed

or predicted. At a minimum, the court cannot approve the fee award until an application is made that complies with requirements of § 1712.

## IV.   Class Counsel's (Non-Coupon) Fee Is Also Legally Insupportable.

As discussed above, the $450,000 payment from Kaplan that class counsel will likely demand as a result of the coupon settlement is legally insupportable. However, the fee that class counsel will likely demand from the West settlement—25% of the $5.285 million settlement fund, plus litigation expenses and a variety of other surcharges—is legally insupportable as well. The settlement fund includes money that is going to third parties, and not the class; as a result, class counsel will receive a disproportionate share of the settlement relative to what the class receives. The 25% should not be calculated on the "Gross Settlement Fund," but on the *common fund*, which is what the class receives: what the settlement calls the "Net Settlement Fund." Stipulation and Settlement Agreement § 42.

### a.   Class Counsel Should Not Collect a Commission on Notice.

Class counsel is requesting 25% of the settlement fund under a common fund theory, but the settlement fund includes moneys that are not part of the common fund going to the class. As a result, class counsel's attorney-fee request includes a 25% commission on the amount West is paying for notice. This is wrong. First, as a matter of law, post-settlement notice is carried out almost exclusively for the benefit of *defendants*, rather than the class, and thus cannot be double-counted as a class benefit; second, the theory that notice should be counted as a class benefit for purposes of evaluating the settlement would lead to absurd results that contradict the Class Action Fairness Act.

The consideration that defendants receive for settling a class action is a waiver of all claims by class members. But if an individual class member "later claims he did not receive adequate notice and therefore should not be bound by the settlement, he can litigate that issue on an individual basis when the settlement is raised as a bar to a lawsuit he has brought." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). Defendants therefore have every incentive to ensure that classwide notice meets

constitutional requirements. This is far from a hypothetical concern: defendants have found themselves on the end of repeat litigation when class members failed to receive constitutionally-adequate notice. *See, e.g., Besinga v. United States*, 923 F.2d 133, 137 (9th Cir. 1991) (reversing dismissal of plaintiff's case because no notice was given in prior class action). Notice benefits the defendants by creating claim preclusion that would not otherwise exist. As such, the expense of class notice cannot simply be counted as a benefit on the class's side of the ledger.

Furthermore, if the Court adopted the view that notice benefited the class, the very act of settlement could be considered "consideration"—even if class members got nothing in exchange for waiving their rights—simply because they received a letter in the mail notifying them of the settlement. For example, imagine a settlement against a bank that provided only a token $100 *cy pres* award, but in which the defendant was entitled to deduct half the cost of notice from individual customers' accounts to pay for attorneys' fees. Such a settlement would normally be prohibited by 28 U.S.C. § 1713.[6] Because the very act of notice "substantially outweighs the monetary loss," the skimming of all class members' accounts would be permissible, were a court to adopt the proposition that notice benefits the class generally. Because such a result would be flatly unjust and impossible to square with the plain import of the statute, this suggests that counting notice as a class benefit generally is not only insupportable and unfair, but also self-refuting.[7]

### a.    Class Counsel Should Not Collect a Commission on Settlement

---

[6] "The court may approve a proposed settlement under which any class member is obligated to pay sums to class counsel that would result in a net loss to the class member only if the court makes a written finding that nonmonetary benefits to the class member substantially outweigh the monetary loss."

[7] There is dictum to the contrary in *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003), but that case cites no authority and provides no reasoning for the proposition. In the context of that opinion—which included notice as a class benefit and found the resultant attorneys' fee award impermissibly high—it appears that the Ninth Circuit was assuming that notice costs could be counted as a class benefit only for the sake of the argument. Moreover, *Staton* predates the 2005 enactment of 28 U.S.C. § 1713.

**Administration Expenses.**

As part of its demand of 25% of the "Gross Settlement Fund," class counsel in effect demands 25% of the court-approved fees and expenses of the claims administrator, as well as 25% of the administrative and maintenance fees associated with the settlement fund. Just as in the case of the notice expenses, the money going to the claims administrator is money going to a third party, rather than the class, and should not be considered part of the common fund for purposes of calculating the fee award. Any other result is the economic equivalent of a kickback where class counsel gets money based on how much the settlement administrator bills.

Worse, such an arrangement creates a conflict of interest between the attorney and the class. Under the current structure, every dollar the settlement administrator receives is a dollar the class will not receive. If attorney fees are paid only on what the class receives, class counsel will be appropriately incentivized to ensure that settlement administration is efficient and to take steps to prevent overbilling or wasteful expenditures. But if class counsel is given a commission based on the size of administrative expenses, class counsel will be indifferent to the efforts of the administrator, creating a perverse incentive structure that discourages assignment of resources to the class. *Cf. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).

Class counsel may legitimately request a percentage of what the class receives, but should not be rewarded for the amounts the defendant pays the post office and the settlement administrator any more than class counsel should be rewarded for the amounts the defendants pay defense counsel. In short, class counsel is entitled to a share of the "Net Settlement Fund": the money the class *actually* receives. The "key consideration in determining a fee award is reasonableness in light of the benefit *actually conferred*" (emphasis in original). *In re HP Inkjet Printer Litig.*, No. 5:05–cv–3580 JF, 2011 WL 1158635, at *10 (N.D. Cal. Mar. 29, 2011) (quoting *Create-A-Card Inc., v. Intuit, Inc.*, No. C 07-06452 WHA, 2009 WL 3073920, at * 3 (N.D. Cal. Sept. 22, 2009)).

**b.   Class Counsel's Fee Request Is Inconsistent With both Ninth**

**Circuit Precedent and the Class Notice.**

Rule 23(h) lets class counsel request fees and "nontaxable costs" from the court. That rule makes no distinction between these two categories of disbursements; neither should this court. The West defendants have agreed to hand over $5.285 million in order to avoid the expense, inconvenience, and uncertainties of litigation (*see* Stipulation and Settlement Agreement, at 3); as long as the defendants can close the books on this action, it is a matter of indifference to them who gets what portion of their payment. A "defendant is interested only in disposing of the total claim asserted against it." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).

But the size of the "Net Settlement Fund"—the leftover portion of the settlement that remains after class counsel takes its share, the part that actually compensates the class—should be anything but a matter of indifference to this Court. Every reduction to the Net Settlement Fund is money that is taken away from the class. The class action bar is composed of sophisticated businesspeople who take calculated risks and are entitled to a return on their investment as part of their contingent fee. That return, however, is regulated by Ninth Circuit case law, which requires that fees not be disproportionate to results achieved.

The established benchmark in the Ninth Circuit is that 25% of the fund "should be given in common fund cases." *See, e.g., Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Torrisi v. Tucson Elec. Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). That benchmark can be adjusted higher or lower in unusual cases, *see Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002), but not every case is an unusual one. Class counsel's proposal to assign itself 25% of the common fund for fees, *plus* its expenses, *plus* a portion of the fees and expenses of the claims administrator, *plus* a portion of the administrative fees and expenses (Stipulation and Settlement Agreement, § 57) suggests an attempted end run around the Ninth Circuit benchmark. Such a hydra-headed proposal requires stronger justification than class counsel's appetite. Cash is fungible, and the 25% benchmark should apply to the total cash paid to attorneys:

class members are indifferent whether the attorneys are reimbursing their out-of-pocket payments to landlords and secretaries and paralegals (fees) or to airlines and hotels (expenses). Class counsel's attempts to maximize revenue by inventing multiple new award categories subverts the 25% benchmark as well as Rule 23(h)'s requirement of "reasonable" attorney payments.

(Because, in general, class members do not have the incentive to object—and, when they do object, they are not fully aware of the machinations that class counsel use to maximize attorneys' fees—there are, perhaps, already some examples of courts agreeing to such requests without considering this argument. That impermissible practice should not be considered "precedent"; this specific argument appears to be a question of first impression. Greenberg has not found cases that have discussed the issue one way or the other.)

Moreover, the plain language of the Class Notice blocks class counsel's attempted proliferation of multiple categories of fees and expenses. The Notice states that class counsel may pursue "an award of attorney's fees and costs in an amount of up to twenty-five percent (25%) of the Settlement Fund." Notice of Proposed Class Action Settlement, § 2. This Court must either mandate new notice or require class counsel to stick to the original notice's limits. *In re Capital Underwriters, Inc.*, 519 F.Supp. 92, 100 n. 10 (N.D. Cal. 1981) ("this Court believes itself duty bound" to adhere as closely as possible to the fee and expense ceiling described the class notice "since absent class members may well have relied on that estimate in refraining from raising objections to the proposed settlement agreement"), *vacated and remanded on other grounds*, 705 F.2d 466 (9th Cir. 1983). Notice is ineffective unless it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *In re Cement and Concrete Antitrust Litigation*, 817 F.2d 1435, 1440 (9th Cir.1987), *rev'd on other grounds*, 490 U.S. 93, 109 S. Ct. 1661, 104 L. Ed. 2d 86 (1989). "It is clear that the purpose of the notice requirement is to allow class members to evaluate a proposed settlement." *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962,

969 (9th Cir. 2007). *See also Lightfoot v. District of Columbia,* 355 F. Supp. 2d 414, 427 (D.D.C. 2005) ("Inaccurate notice is equivalent to no notice at all"). Any award request from class counsel that goes beyond the class notice will violate Rule 23(h)(1)'s admonition that the notice must be "directed to class members in a reasonable manner."

In short, the magnitude of the mismatch between the fees class counsel wants and the benefits it has conferred upon its clients—*Create-A-Card's* "key consideration"—especially when combined with the lack of notice about the details of class counsel's share of the settlement—is remarkable. To the extent there has been any calculation at all of the real value of the Kaplan coupons to the class, class counsel has failed to give any notice of it to its clients. Similarly, there has been little or no notice of the size or nature of the myriad expenses that class counsel will request as a result of the West settlement. The preferable alternative would be for this Court to reject this settlement, but at the very least it should require the provision of new, substantively informative notice about the value (and the factual basis for any estimate thereof) of all benefits that class counsel will ask to be assigned to itself and to the class. Indeed, the defective notice engineered by the settling parties also creates another substantive problem for the settlement.

## V.    This Settlement's Motion Schedule Provides Inadequate Notice to Class Members.

Not only have the settling parties failed to provide information that is crucial to the evaluation of the fairness and legality of this settlement, they have induced this Court to schedule the calendar of this action so as to foreclose any opportunity for substantive notice. In particular, the settling parties, via their proposed order for preliminary approval (Dkt. No. 67-1, at ¶ 10), have induced the Court to violate the rule of *In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988 (9th Cir. 2010). *In re Mercury* dictates that a Court must set the objection/opt-out deadline after the date for filing the fee motion and supporting documents, so that class members have a fair opportunity to exercise their Rule 23(h) objection powers. *Id.* at 993-94. Rule 23(h) "requires that any class member be allowed an opportunity to object to the fee 'motion'

itself, not merely to the preliminary notice that such a motion will be filed." *Id.* When the district court in *In re Mercury* set the objection deadline before the deadline for motions for attorneys' fees, it abused its discretion and erred as a matter of law. *Id. at* 993.

This settlement flunks *In re Mercury*. At the request of the settling parties, the Court set the deadline for objections on the date that motions for attorneys' fees are due. Order Granting Preliminary Approval, Dkt. No. 68, at ¶¶ 10, 11. Requests for exclusion or objections must be postmarked by May 30, 2011, which is also the deadline for submission of a motion for fees ("twenty-one days before the Fairness Settlement Hearing"). *Id.* "When the district court sets a schedule that denies the class an adequate opportunity to review and prepare objections to class counsel's completed fee motion, it fails to fulfill its fiduciary responsibilities to the class." *In re Mercury*, 618 F.3d at 994-95. *See also* Notes of Advisory Committee on 2003 Amendments, Fed. R. Civ. P. 23 ("For motions by class counsel in cases subject to court review of a proposed settlement under Rule 23(e), it would be important to require the filing of at least the initial motion in time for inclusion of information about the motion in the notice to the class about the proposed settlement that is required by Rule 23(e)."). There is actual prejudice here: Greenberg does not know the size of the expense request, and is unable to object to arguments counsel will make in support of their fee request; combined with the mismatch between the actual common fund and the denominator that class counsel is using to calculate their fees, the actual attorney award might well exceed 40% of the common fund—a figure, had it been disclosed, would no doubt have prompted additional objections from the class.

Additionally, there is a minor but legitimate concern that the May 30 deadline could mislead the class. Perhaps this settlement's architects overlooked that May 30, 2011, is Memorial Day: on that day, no objection can be postmarked or, indeed, received by any federal court. The settlement agreement (¶ 47), this Court's preliminary approval order (¶ 12), and the class notice (§ 7.iii) all require objectors to file no later than Memorial Day, three weeks before the fairness hearing. At a minimum, this Court should extend the filing period to the following day, May 31. *See* Fed. R. Civ. P. 6 (a)(1)(c).

In short, the flawed motion schedule that the settling parties induced this Court to approve provides an independent ground for the settlement's rejection. At a minimum, the Court should extend the objection period so that class members will receive appropriate and timely notice of the material details of this settlement—especially those involving awards to class counsel.

## VI. The "Clear Sailing" Provisions Are Deficient Under Rule 23(a)(4).

To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). The Court's duty of scrutiny is magnified here by the settling parties' insertion of multiple "clear sailing" clauses into the settlement agreement.

That clause stipulates that attorney awards will not be contested by opposing parties. "Such a clause by its very nature deprives the court of the advantages of the adversary process." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F. 2d 518, 525 (1st Cir. 1991). The implication of "absence of adversariness makes heightened judicial oversight of this type of agreement highly desirable. Furthermore, the very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class." *Id.* It is "self-evident" that a clear sailing clause should "put a court on its guard." *Id.*

A court should give a settlement "special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement." *Hanlon*, 150 F.3d at 1021 (9th Cir. 1998). The two separate "clear sailing" clauses in the settlement make this record about as suggestive as it can get: class counsel negotiated a provision protecting fees from challenge by the defendant, a clause which placed class counsel's interests ahead of those of the class. *See* Stipulation and Settlement Agreement, §§ 57, 59. Such a provision invites additional scrutiny of the settlement. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 961 n. 5 (9th Cir. 2009). Is the clause simply a gift from the defendant that benefits the class counsel, or did it come

at the expense of the class? "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained." *Staton v. Boeing Co.*, 327 F.3d, at 964.

As part of this settlement, class counsel has secured an unchallenged right to request $450,000 for itself—whether or not the class secures proportional relief from this coupon settlement. This provision cannot possibly benefit the class. In a typical common fund settlement, the district court may, at its discretion, reduce the fees requested by plaintiffs' counsel—when it does so, the class will benefit from the surplus. Under the proposed settlement, if the Court awards less than the $450,000 that Kaplan has already agreed to pay, the defendant will be the only beneficiary. The settlement is therefore worse for the class than a traditional common fund, yet plaintiffs have done nothing to improve this inferior settlement structure.

"Separate" attorneys' fees should be treated as bargained recovery from the defendants that the settling parties have earmarked exclusively for the benefit of class counsel. *Staton v. Boeing Co.*, 327 F.3d 938, at 963. "That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need carefully to scrutinize the fee award." *Id.* at 964. A "defendant is interested only in disposing of the total claim asserted against it." *Id.* "The rationale behind the percentage of recovery method also applies in situations where, although the parties claim that the fee and settlement are independent, they actually come from the same source." *In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d, at 820-21. "[P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case." *Id.* at 821. "[I]n essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal." *Johnson v. Comerica*, 83 F.3d 241

(8th Cir. 1996).

Any court judging the fairness of a class action faces "a responsibility difficult to discharge when the judge confronts a phalanx of colluding counsel. The defendant wants to minimize outflow of expenditures and the class counsel wants to increase inflow of attorneys' fees. Both can achieve their goals if they collude to sacrifice the interests of the class." *Thorogood v. Sears Roebuck & Co.*, 547 F.3d 742, 745 (7th Cir. 2008). In short, this Court should understand the clear-sailing agreement in this settlement as suggestive in the *Hanlon* sense—namely, that such an agreement inherently calls for "special attention" to the facts and circumstances of the settlement agreement. *See Hanlon*, 150 F.3d at 1021.

This is a fee-driven settlement: class counsel proposes to deliver compensation to their clients in, quite literally, an inferior currency as compared to what they request for themselves. It is unclear whether this underweight recovery for class members is because class counsel tacitly colluded with the defendant or because class counsel simply disregarded their obligation to negotiate a settlement that was likely to provide meaningful recovery to their clients. But in either situation, the attorneys have failed to meet the standard of Fed. R. Civ. Proc. 23(a)(4), and the settlement fails to meet the standard of Fed. R. Civ. Proc. 23(e). Because class counsel, by failing to negotiate for reversion to the class of any denied fee request, have put their own interests ahead of those they are charged to represent, the settlement deserves a higher level of scrutiny by this Court than settlement evaluations typically require.

## VII.   The Court Should Discount Attempts By The Settling Parties To Infer Class Approval From A Low Number Of Objections.

Any given class action settlement, no matter how much it betrays the interests of the class, will produce only a small percentage of objectors. The predominating response will always be apathy, because objectors—unless they can obtain *pro bono* counsel—must expend significant resources on an enterprise that will create little direct benefit for themselves. Another common response from non-lawyers will be the affirmative

1   avoidance, whenever possible, of anything involving a courtroom. Class counsel may
2   argue that this understandable tendency to ignore notices or free-ride on the work of other
3   objectors is best understood as acquiescence in or evidence of support for the settlement.
4   This is wrong. Silence is simply *not* consent:

> There may be many reasons why class members in this case didn't register
> their concerns about the settlement: lack of interest, time, information, etc.
> Like the Third Circuit in the *General Motors* case, the Court is unwilling to
> automatically equate class silence with a showing of "overwhelming"
> support for the settlement. Therefore, the fact that statistically few people
> bothered to opt-out or file an objection ultimately counts little in the Court's
> overall fairness analysis.

*Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 447 (S.D. Iowa 2001) (*citing In re
GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d, at 789.). "Silence may be a
function of ignorance about the settlement terms or may reflect an insufficient amount of
time to object. But most likely, silence is a rational response to any proposed settlement
even if that settlement is inadequate. For individual class members, objecting does not
appear to be cost-beneficial. Objecting entails costs, and the stakes for individual class
members are often low." Christopher R. Leslie, *The Significance of Silence: Collective
Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007).

There is usually little hope that opt-outs can recover for their claims—the entire
purpose of class actions is to aggregate claims that would be uneconomical to bring
individually. "Almost by definition, most class members have too little at stake to warrant
opting out of the class litigation and filing an individual lawsuit. Thus, opting out is
probably not a viable option even though a proposed settlement is unfair or inadequate."
*Id.* at 109. Without *pro bono* counsel to look out for the interests of the class, filing an
objection is economically irrational for any individual. "[A] combination of observations
about the practical realities of class actions has led a number of courts to be considerably
more cautious about inferring support from a small number of objectors to a sophisticated

settlement." *In re GMC Pick-Up Litig.*, 55 F.3d at 812 (*citing In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217-18 (5th Cir. 1981)); *cf. Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292, 297 (M.D. Pa. 1995) ("'[T]he silence of the overwhelming majority does not necessarily indicate that the class as a whole supports the proposed settlement . . . .'"). "[A] low number of objectors is almost guaranteed by an opt-out regime, especially one in which the putative class members receive notice of the action and notice of the settlement offer simultaneously." *Ellis v. Edward D. Jones & Co.*, 527 F. Supp. 2d 439, 446 (W.D. Pa. 2007). "[W]here notice of the class action is, again as in this case, sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a *fait accompli*." *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 680-681 (7th Cir. 1987). "Acquiescence to a bad deal is something quite different than affirmative support." *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1137 (7th Cir. 1979) (reversing approval of settlement).

When class members have little at stake, as in an action such as this where the maximum recovery is in the low three figures, the rate of response will be predictably low; as such, it cannot be seen as something akin to an election or a public opinion poll. *See In re GMC Pick-Up Litig.*, 55 F.3d at 813 (finding that "class reaction factor" does not weigh in favor of approval, even when low number of objectors in large class, when "those who did object did so quite vociferously"); Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1532 (2004). It is typically not worth the average citizen's time or money to object: the slight likelihood that one additional objection will be decisive, when multiplied by the slight increase in an individual class member's payout that such an objection would produce, makes individually-funded objections a losing proposition.

The judge must act as a guardian for *all* class members—whether or not they have formally entered the case by registering an objection. "[T]he absence or silence of class

parties does not relieve the judge of his duty and, in fact, adds to his responsibility." *Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*, 52 F.R.D. 373, 375 (D. Kan. 1971). It doesn't matter whether the number of formal objectors to this settlement is one or tens of thousands: the settlement's proponents still have the burden to show the proposed settlement and the proposed fee award is fundamentally fair, adequate, and reasonable. That burden is too heavy for this settlement's advocates to carry.

## VIII. The Objection Furthers the Public Interest, Not Merely the Interest of the Objector.

Objector Daniel Greenberg is senior counsel for the Center for Class Action Fairness LLC ("the Center"), a non-profit program of the 501(c)(3) DonorsTrust. The attorneys engaged by the Center represent consumers *pro bono* by, among other things, representing class members aggrieved by class action attorneys—particularly attorneys who negotiate settlements that benefit themselves at the expense of their putative clients. It has won millions of dollars for class members since its founding in 2009. *See, e.g.*, Rachel M. Zahorsky, "Unsettling Advocate," ABA J. (Apr. 2010); Allison Frankel, "Legal Activist Ted Frank Cries Conflict of Interest, Forces O'Melveny and Grant & Eisenhofer to Modify Apple Securities Class Action Deal," AMERICAN LAWYER LIT. DAILY (Nov. 30, 2010).

It is perhaps relevant to distinguish the Center's mission from the agenda of those who are often styled "professional objectors." A number of "professional objectors" are for-profit attorneys who attempt or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees; thus, some courts presume that the objector's legal arguments are not made in good faith. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009), 1635-36. This is not the business model of The Center for Class Action Fairness. While the Center focuses on bringing objections to unfair class action settlements, it refuses to engage in *quid pro quo* settlements to extort attorneys; the Center has never settled an objection. In short, Greenberg brings this objection in good faith to protect the interests of the class.

**CONCLUSION**

This proposed settlement treats all parties involved satisfactorily, with the exception of the class members in whose name it is brought. Regrettably, one portion of the settlement is composed of coupons; it exemplifies many of the defects that coupon settlements ordinarily contain. Another portion of the settlement that should go to class members will be devoured by oversized attorneys' awards. The settlement notice sent to class members is deficient in multiple respects. The clear sailing clauses that this settlement contains signal a less than fervent attention to the interests of the class—which are, of course, the only ultimate justification of this settlement. This settlement is generous to its advocates, but that generosity cannot be reconciled with class counsel's duty under Rule 23(a)(4) to "fairly and adequately protect the interests of the class." Class counsel has neglected its fiduciary responsibilities in its production of the proposed settlement; therefore, this court should carry out its own fiduciary responsibilities by rejecting it.

Dated: May 24, 2011

Respectfully submitted,

*/s/ Daniel Greenberg*
Daniel Greenberg (AR BAR 2007-193)
**GREENBERG LEGAL SERVICES**
**CENTER FOR CLASS ACTION FAIRNESS LLC**
55 Fontenay Circle
Little Rock, AR  72223
DnGrnbrg@gmail.com
(501) 588-4245

Appearing *pro se*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I filed the foregoing with the Clerk of the Court, and served true and correct copies upon class counsel and defendants' counsel via UPS delivery at the addresses below, per the instructions of the Settlement Notice.

Clerk of Court
Stetson v. West Publishing Corp. Settlement Administrator
c/o Gilardi & Co. LLC
Box 8090
San Rafael, CA 94912-8090

Alan Harris or David Zelenski
HARRIS & RUBLE
6424 Santa Monica Boulevard
Los Angeles, CA 90038

Perrin F. Disner
1855 Camden Avenue, Suite 3
Los Angeles, CA  90025

James Tallon
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY  10022

James F. Rittinger
SATTERLEE STEPHENS BURKE BURKE
230 Park Avenue
New York, NY  10169

Stuart Senator
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071

DATED this 24th day of May, 2011.

_(s) Daniel Greenberg_

Daniel Greenberg