Alan Harris (SBN 146079)
David Zelenski (SBN 231768)
HARRIS & RUBLE
6424 Santa Monica Boulevard
Los Angeles, California 90038
Telephone: (323) 962-3777
Facsimile: (323) 962-3004
aharris@harrisandruble.com
dzelenski@harrisandruble.com

Perrin F. Disner (SBN 257586)
1855 Camden Avenue, Suite 3
Los Angeles, California 90025
Telephone: (310) 742-7944
Facsimile: (888) 544-5154
pdisner@disnerlaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN STETSON, SHANE LAVIGNE, CHRISTINE LEIGH BROWN-ROBERTS, VALENTIN YURI KARPENKO, and JAKE JEREMIAH FATHY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WEST PUBLISHING CORPORATION, a Minnesota corporation dba BAR/BRI, and KAPLAN, INC.,<br><br>Defendants. | Case No. CV-08-00810 R (Ex)<br><br>**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: June 20, 2011<br>Time: 11:00 a.m.<br>Courtroom: 8<br><br>*Assigned to Hon. Manuel L. Real* |

**TO EACH PARTY AND TO COUNSEL FOR EACH PARTY OF RECORD:**

**NOTICE IS HEREBY GIVEN** that, on June 20, 2011, at 11:00 a.m. or as soon thereafter as counsel may be heard, in Courtroom 8 of the above-entitled Court located at 312 North Spring Street, Los Angeles, California 90012, Plaintiffs will move for an order

awarding $450,000 in attorney's fees for the Settlement with Kaplan Inc., on the one hand, and $1,321,250 in attorney's fees and $44,047 in the reimbursement of costs for the Settlement with West Publishing Corporation, on the other hand. The Motion will be made and based upon this Notice of Motion; the Memorandum of Points and Authorities appended hereto; the Declaration of Alan Harris in Support of Plaintiffs' Motions for Final Approval of Class-Action Settlement and Award of Attorneys' Fees and Reimbursement of Costs, filed herewith; the Declaration of Perrin Disner in Support of Motion for Final Approval of Class-Action Settlement, filed herewith; the Declaration of Professor Dennis Rook , filed herewith; and all of the pleadings, papers, and documents contained in the file of the within action.

This Motion is made pursuant to the March 21, 2011, Order Granting Conditional Certification of Settlement Class, Preliminary Approval of Class-Action Settlement, and Appointment of Claims Administrator, which set the final-approval hearing in the above-captioned matter for June 20, 2011.

DATED: May 31, 2011                          HARRIS & RUBLE
                                             PERRIN F. DISNER


                                             _____/s/_____
                                             Alan Harris
                                             David Zelenski
                                             Perrin F. Disner
                                             *Attorneys for Plaintiffs*

# *TABLE OF CONTENTS*

I.   *Introduction* .................................................................. 1

II.  *Procedural Background* .................................................. 4

III. *Argument* ...................................................................... 5

   A.   *Plaintiffs' Attorneys Are Entitled to Recover Fees from the West Common Fund* ......................................................... 5

   B.   *A Twenty-Five Percent Fee from the West Fund Is Appropriate* ................... 7

      1.   *Plaintiffs' Counsel Achieved an Excellent Result for the Class* ....................................................................... 8

      2.   *The Risks Assumed by Plaintiffs' Counsel Support the Requested Attorney's Fees* ....................................... 9

      3.   *Plaintiffs' Counsel's Request for Fees Is Justified in Light of the Speed of Settlement* ................................ 10

      4.   *The Fee Award Requested Fits With Plaintiffs' Counsel's Reasonable Expectations* .................................. 10

   C.   *The Lodestar Cross-Check Confirms that the Requested Attorney's Fees Are Reasonable* .................................... 12

   D.   *Plaintiffs' Counsel's Expenses are Reasonable and Should Be Reimbursed* ................................................... 16

   E.   *The Reaction of the Settlement Class Supports the Requested Fee* ........................................................................ 17

   F.   *Plaintiffs' Attorneys Are Entitled to Fees on Account of the Kaplan Discount Certificate Settlement* ...................... 18

   G.   *The Objections Are Without Merit* ................................ 20

IV.  *Conclusion* .................................................................. 25

1

## *TABLE OF AUTHORITIES*

2

3

### *Cases*

4

Basco v. Wal-Mart Stores, Inc.
    216 F. Supp. 2d 592 (E.D. La. 2002)..........................................................................15

5

6

Blum v. Stenson
    465 U.S. 886 (1984).........................................................................................................5

7

8

Boeing Co. v. Van Gemert
    444 U.S. 472 (1980).........................................................................................................6

9

10

Central Railroad & Banking Co. of Ga. v. Pettus
    113 U.S. 116, 28 L.Ed. 915, 5 S.Ct. 387 (1885)...........................................................6

11

12

DeBoer v. Mellon Mortgage Co.
    64 F.3d 1171 (8th Cir. 1995) .......................................................................................25

13

14

Deposit Guar. Nat'l Bank v. Roper
    445 U.S. 326 (1980).........................................................................................................7

15

16

Dukes v. Walmart Stores, Inc.
    603 F.3d 571 (9th Cir. 2010) .......................................................................................24

17

18

Fabiani v. Oreck Corp.
    2006 WL 1390458 (N.D. Cal. May 19, 2006)..............................................................11

19

20

Fischel v. Equitable Life Assur. Soc'y of U.S.
    307 F. 3d 997 (9th Cir. 2002) ......................................................................................12

21

22

Gen. Tel. Co. of the Sw. v. Falcon
    457 U.S. 147 (1982).......................................................................................................15

23

24

Goldberg v. Kelly
    397 U.S. 254 (1970).......................................................................................................25

25

26

Goldberger v. Integrated Resources, Inc.
    209 F. 3d 43 (2nd Cir. 2000) .........................................................................................5

27

28

Grosz v. Boeing Co.
   2003 U.S. Dist. LEXIS 25341(C.D. Cal., Nov. 7, 2003) ............................................. 16

Hanlon v. Chrysler Corp.
   150 F. 3d 1011 (9th Cir. 1998) ................................................................................ 8

Harris v. Marhoefer
   24 F.3d 16 (9th Cir. 1994) .......................................................... 13, 14, 16, 17

Hensley v. Eckerhart
   461 U.S. 424 (1983) ................................................................................ 3, 12, 13

In re Activision Sec. Litig.
   723 F. Supp. 1373 (N.D. Cal. 1989) ....................................................... 7, 8

In re Fidelity/Micron Sec. Litig.
   167 F. 3d 735 (1st Cir. 1999) .................................................................... 17

In re FPI/Agretech Sec. Litig.
   105 F.3d 469 (9th Cir. 1997) ..................................................................... 5

In re Heritage Bond Litig.
   2005 U.S. Dist. LEXIS 13555 (C.D. Cal. 2005) ................................... 3, 7

In re Interpublic Sec. Litig.
   2004 U.S. Dist. LEXIS 21429 (S.D.N.Y. 2004) ........................................ 5

In re Mego Fin. Corp.Sec. Litig.
   213 F.3d 454 (9th Cir. 2000) ................................................................... 12

In re Mercury Interactive Corp. Sec. Litig.
   618 F.3d 988 (9th Cir. 2010) ............................................................ 23, 25

In re Pac. Enters. Sec. Litig.
   47 F. 3d 373 (9th Cir. 1995) ................................................................ 7, 12

In re Prudential Sec. Ltd. P'ships. Litig.
   985 F. Supp. 410 (S.D.N.Y. 1997) ......................................................... 17

In re W. Union Money Transfer Litig.
   2004 U.S. LEXIS 29377 (E.D.N.Y. Oct. 19. 2004) ................................ 19

In re U.S. Bancorp Litig.
    291 F.3d 1035 (8th Cir. 2002) .......................................................................... 25

Kerr v. Screen Guild Extras, Inc.
    526 F.2d 67 (9th Cir. 1976) ..................................................................... 14, 16

Laube v. Allen
    506 F. Supp. 2d 969 (M.D. Ala. 2007) .......................................................... 12

Masters v. Wilhelmina Model Agency, Inc.
    473 F.3d 423 (2d Cir. 2007) ............................................................................ 8

Mills v. Electric Auto-Lite Co.
    396 U.S. 375 (1970) ......................................................................................... 6

Paul, Johnson, Alston & Hunt v. Graulty
    886 F. 2d 268 (9th Cir. 1989) .......................................................................... 6

Petition of Hill
    775 F.2d 1037 (9th Cir. 1985) ......................................................................... 6

Powers v. Eichen
    229 F.3d 1249 (9th Cir. 2000) ..................................................................... 5, 8

Probe v. State Teachers' Ret. Sys.
    780 F.2d 776 (9th Cir. 1985) ......................................................................... 24

Radosti v. Envision EMI, LLC
    2011 U.S. Dist. LEXIS 4858 (D. D.C. Jan. 19, 2011) .............................. 18, 19

Radosti v. Envision EMI, LLC
    717 F. Supp. 2d 37 2011 (D. D.C. 2010) ....................................................... 18

Ressler v. Jacobson
    149 F.R.D. 651 (M.D. Fla. 1992) ..................................................................... 7

Rodriguez v. West Publishing Corp.
    563 F. 3d 948 (9th Cir. 2009) ...................................................................... 1, 2

Romero v. Producers Dairy Foods, Inc.
    2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ............................................... 11

Singer v. Becton Dickinson
    2010 WL 2196104 (S.D. Cal. Jun. 1, 2010) .................................................. 11

Six Mexican Workers v. Ariz. Citrus Growers
    904 F.2d 1301 (9th Cir. 1990) .................................................. 7, 8

Staton v. Boeing Co.
    327 F. 3d 938 (9th Cir. 2003) .................................................. 8, 23

Stoetzner v. United States Steel Corp.
    897 F.2d 115 (3d Cir. 1990) .................................................. 17

Torrisi v. Tucson Elec. Power Co.
    8 F.3d 1370 (9th Cir. 1993) .................................................. 10

Van Vranken v. Atl. Richfield Co.
    901 F. Supp. 294 (N.D. Cal. 1995) .................................................. 11

Vasquez v. Coast Valley Roofing
    266 F.R.D. 482 (E.D. Cal. 2010) .................................................. 7, 11

Vizcaino v. Microsoft Corp.
    290 F.3d 1043 (9th Cir. 2002) .................................................. 6, 7, 8, 10, 12, 13, 16

Wang v. Chinese Daily News, Inc.
    623 F.3d 743 (9th Cir. 2010) .................................................. 24

Williams v. MGM-Pathe Commc'ns Co.
    129 F.3d 1026 (9th Cir. 1997) .................................................. 8

**Statutes**

28 U.S.C. § 1712 .................................................. 18, 19, 20, 23

**Rules**

Fed. R. Civ. P. 12 .................................................. 4

Fed. R. Civ. P. 23 .................................................. 1, 23, 24, 25

1

2

***Secondary Sources***

3

Hon. William W. Schwarzer, *et al.*, <u>California Practice Guide:</u>
<u>Federal Civil Procedure Before Trial</u> (The Rutter Group 2011) .......................................23

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### *MEMORANDUM OF POINTS AND AUTHORITIES*

## I.  Introduction.

Pursuant to Federal Rule of Civil Procedure 23(h), in connection with the $5,285,000 cash settlement with West Publishing Corp. ("West") and the valuable coupon settlement with Kaplan, Inc. ("Kaplan") generated by Plaintiffs' Counsel in this case, this Court should approve Plaintiffs' Motion for Award of Attorney's Fees and Reimbursement of Costs by granting this application for a total award of $1,771,250 for attorney's fees and $44,057 for the reimbursement of costs.  Plaintiffs' Counsel secured a Settlement on behalf of a Class of law firms and law-school graduates who had paid for the West bar-examination preparation course in their respective states.[1]  The Class was deprived of the opportunity to take the course at a competitive price and, accordingly, its Members overpaid and were injured.[2]  As a result of this lawsuit, Members of the Class look forward to a *net* payment, on average, of over $90 from West, along with a valuable Kaplan coupon worth approximately $150.[3]  (Decl. of Alan Harris in Supp. of Mots. for Final Approval of Class-Action Settlement and Award of Attorney's Fees and Reimbursement of Costs ("Harris Decl.") ¶ 14).)  Accordingly, the total recovery for each Class Member could average over $240.[4]

---

[1] As detailed in the Claims Administrator's Declaration filed herewith, of the 184,496 Notice Packets mailed to Class Members, 177,203 were addressed to individuals and 7,293 were addressed to law firms that had paid for full-service bar-review courses on behalf of newly hired associates.  (Decl. of Markham Sherwood re Mailing of Notice to Class of Proposed Settlement of Class Action, Claim Form and Discount Certificates and Report on Requests for Exclusion and Objections Received ¶ 4.)

[2] On March 21, 2011, a Rule 23 Class was conditionally certified, for settlement purposes only, as follows:  "All persons and entities who paid for a BAR/BRI full-service bar-review course provided by Defendant West Publishing Corporation from 2006, through and including the date of this Order."  (Mar. 21, 2011, Order Granting Plaintiffs' Motion for Conditional Certification of Settlement Class, Preliminary Approval of Class-Action Settlement, and Appointment of Claims Administrator (Mar. 21, 2011, Preliminary Approval Order) ¶ 4.)

[3] These amounts represent the recovery that each claimant will receive assuming that the Court grants all requested attorney's fees and costs, all claims-administration fees and costs, and the $4,000 enhancement award to each named Plaintiff.  (Harris Decl. ¶17.)

[4] Rodriguez v. West Publishing Corp., 563 F. 3d 948 (9th Cir. 2009), teaches that, in considering whether to approve an antitrust class action settlement, the court may determine the resolution was "reasonable even though it evaluated the monetary potion of the settlement based only on an estimate of single damages."  Rodriguez, 563 F. 3d at 955.

---

1    The Settlement comes on the heels of antitrust litigation against West and Kaplan

2    in <u>Rodriguez v. West Publishing Corp.</u>, U.S. Dist. Court, Central District of California

3    Case No. CV 05-3222 R.  The terms of the Settlement herein, in large part, mirror those

4    from the settlement approved by this Court in <u>Rodriguez</u>, albeit modified on account of

5    the fact that Defendants' overtly anticompetitive behavior (the alleged market-division

6    agreement between West and Kaplan) was terminated as part of the <u>Rodriguez</u>

7    settlement.  In other words, the Settlement herein concerns residual anticompetitive

8    effects in the bar-review market as opposed to the direct effects addressed by <u>Rodriguez</u>.

9    However, despite <u>Rodriguez</u>'s termination of the market-division agreement, Class

10   Members are still receiving a substantial cash benefit—over $100, on average.  In

11   addition, and perhaps of greatest significance, the 7,293 law firms that are Class

12   Members—along with all individual Class Members who may directly or indirectly pay

13   for bar-review courses in the future (including those who have failed a bar examination

14   despite having taken the West course to prepare and those who will, themselves, become

15   employers who reimburse new hires for the expense in the future)—will realize benefits

16   for many years to come via Kaplan's Discount Certificates, further stabilizing and/or

17   lowering out-of-pocket costs, as well as increasing the quality of the bar-review

18   instruction.  (Decl. of Professor Dennis W. Rook in Supp. of Pls.' Mot. for Final

19   Approval of Settlement ("Rook Decl.") ¶17.)  For their services in generating a

20   substantial settlement fund for the benefit of the Class, Plaintiffs' Counsel seeks a fee of

21   $1,321,250, or twenty-five percent of the non-reversionary West settlement amount, and

22   $450,000 from the Kaplan coupon settlement, for a total of $1,771,250.  This amount will

23   fairly compensate Plaintiffs' Counsel for the work already performed in the case and for

24   the work remaining to be performed, including efforts to ensure that the Settlement is

25   fairly administered and implemented, and that the objections are properly addressed.

26   With respect to the work already performed, Plaintiffs' Counsel notes that

27   Defendants West and Kaplan called upon preeminent counsel in their defense (Harris

28   Decl. ¶ 28.)  Nevertheless, Plaintiffs achieved an outstanding result, with claimants

poised to recover total benefits of about $240 each, on average.  (See Harris Decl. ¶ 14.)

Cf. In re Heritage Bond Litig., 2005 U.S. Dist. LEXIS 13555 at *62 (C.D. Cal. 2005)

(explaining that, in a class action, "[t]he result achieved is a significant factor to be

considered in making a fee award") (citing Hensley v. Eckerhart, 461 U.S. 424, 436

(1983)).  Plaintiffs' Counsel believes that these payments represent a fair, adequate, and

reasonable result for participating Class Members who have waited years to recover.

(Harris Decl. ¶ 9.)

Defendants do not oppose Plaintiffs' request for an award of attorney's fees and

reimbursement of costs.  Importantly, as of the date of the filing of this Motion, there are

only a small number of objections to the Settlement and, more specifically, to its

attorney-fee provisions.  (Sherwood Decl. ¶ 11.)  As to attorney's fees, the Class Notice

informed all Members of the Class that:

> With respect to the Settlement with West, court-approved lawyers for Class
>
> Members [] will ask the Court for up to twenty-five percent (25%) of the
>
> monetary portion of the Settlement amount as fees for investigating the
>
> facts, litigating the case, and negotiating the Settlement as to West, plus
>
> reimbursement of litigation expenses.  With respect to the Settlement with
>
> Kaplan, Class Counsel will ask the Court for fees up to $450,000, which
>
> amount is in addition to, and will not come out of, the monetary portion of
>
> the Settlement.  The issue of whether to award attorney's fees and costs to
>
> Class Counsel will be determined by the Court.  Any amount awarded as
>
> attorney's fees must be approved by the Court in the final fairness hearing as
>
> herein discussed.

(Feb. 18, 2011, Decl. of Alan Harris in Supp. of Pls.' Mot. for Conditional Certification

of Settlement Class, Preliminary Approval of Class-Action Settlement, and Appointment

of Claims Administrator ("Feb. 18, 2011, Harris Decl.") Ex. 4.)  Under the

circumstances, the Court should award Class Counsel the requested fee.

1    ## II.    *Procedural Background.*

2         Plaintiffs were prospective lawyers, seeking to take the bar examination in one of

3    fifty-one jurisdictions.  On February 6, 2008, they filed a putative class action against

4    Defendants.  In the Complaint, Plaintiffs alleged that Defendants had violated the

5    Sherman Act by conspiring to restrain trade in the full-service bar-review-course market.

6    Plaintiffs also alleged that West had violated the Sherman Act by unlawfully acquiring

7    and/or maintaining a monopoly in the full-service bar-review-course market.  (See

8    generally Feb. 6, 2008, Class-Action Compl. for Violations of the U.S. Antitrust Laws ¶¶

9    92–98, 99–111].)  On March 14, 2008, West filed a Motion to Dismiss (see generally

10   Mar. 8, 2008, Notice of Mot. and Mot. to Dismiss Compl. Pursuant to Fed. R. Civ. P.

11   12(b)(6) and 12(b)(1)), a Motion in which Kaplan joined (see generally Mar. 14, 2008,

12   Def. Kaplan, Inc.'s Notice of Joinder and Joinder in Def. West Publ'g Corp.'s Mot. to

13   Dismiss Compl. Pursuant to F.R.C.P. 12(b)(6)).  On April 10, 2008, after hearing oral

14   argument, this Court dismissed Plaintiffs' Complaint with prejudice.  (Apr. 10, 2008,

15   Order Granting Def. West Publ'g Corp.'s Mot. to Dismiss Compl. Pursuant to Fed. R.

16   Civ. P. 12(b)(6) and 12(b)(1) with Prejudice at 2.)  According to the Court, the above-

17   captioned matter was preempted by the settlement earlier reached in Rodriguez.  In that

18   regard, this Court stated:

19              [S]ubstantively, plaintiffs' allegations regarding the current state of

20         the market and its effects on individual plaintiffs cannot be squared with the

21         provisions of the Rodriguez settlement.  In [ap]proving the [February 2007]

22         Rodriguez settlement, this [C]ourt noted that the non-monetary relief of

23         provisions of the Rodriguez settlement removed allegedly significant

24         barriers to entry [in the bar-review-course market]. . . .  Thus, the allegations

25         that contradict these findings fail as a matter of law.

26   (Apr. 7, 2008, Tr. of Proceedings at 8:17–9:2.)

27         An appeal followed.  In the many months leading up to the successful negotiation

28   through the offices of Ninth Circuit Mediator Roxanne Ashe, counsel became familiar

with the extensive factual background of this case and undertook what appeared to be a winning argument before the Ninth Circuit. (Harris Decl. ¶¶ 6-7.) At the direction of the Ninth Circuit Panel, and under the guidance of Ms. Ashe, the parties entered into the Settlement that is now presented to this Court for final approval.

In light of the defense's arguments that their conduct was at all times legal, Plaintiffs faced multiple challenges in demonstrating that their claims passed the threshold for actionable violations of the antitrust laws. Given the arguments that could be made by both sides, the parties decided to settle. Accordingly, on February 18, 2011, Plaintiffs filed a Motion for Preliminary Approval of Class-Action Settlement. On March 21, 2011, the Court issued the Preliminary Approval Order, establishing the June 20, 2011, date for final approval of the settlement and the fee hearing.

### III. Argument.

#### A. Plaintiffs' Attorneys Are Entitled to Recover Fees from the West Common Fund.

Courts have broad discretion in assessing the reasonableness of attorney's fees in class actions. Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000); In re FPI/Agretech Sec. Litig., 105 F.3d 469, 472 (9th Cir. 1997). Federal courts—particularly those in the Ninth Circuit—have endorsed a percentage method as a fair way to calculate a reasonable fee when contingency-fee litigation has produced a "common fund." See, e.g., Blum v. Stenson, 465 U.S. 886, 900 n. 16 (1984) (under the common-fund doctrine, a "reasonable fee is based on a percentage of the fund bestowed on the class"). With respect to such litigation, "[i]t is well established that[,] where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to 'a reasonable fee—set by the court—to be taken from the fund.'" In re Interpublic Sec. Litig., 2004 U.S. Dist. LEXIS 21429 at *30–31 (S.D.N.Y. 2004) (citing Goldberger v. Integrated Resources, Inc., 209 F. 3d 43, 47 (2nd Cir. 2000)). In the above-captioned matter, Plaintiffs' Counsel seeks an award of fees from the West Settlement under the common-fund doctrine, which allows a litigant who recovers a

common fund for the benefit of others to recover reasonable attorney's fee from the fund as a whole. <u>Boeing Co. v. Van Gemert</u>, 444 U.S. 472, 478 (1980); <u>Mills v. Electric Auto-Lite Co.</u>, 396 U.S. 375, 392–96 (1970); <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1047 (9th Cir. 2002).

"Determination of 'reasonableness' is within the discretion of the district court." <u>In re Interpublic Sec. Litig.</u>, 2004 U.S. Dist. LEXIS 21429 at *31.  The common-fund doctrine is properly applied when "(1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting."  <u>In re Petition of Hill</u>, 775 F.2d 1037, 1041 (9th Cir. 1985).  Here, the common-fund fee recovery is appropriate because "each [M]ember of [the] certified [C]lass has an undisputed and mathematically ascertainable claim to part of a lump-sum recovered on his [or her] behalf."  <u>Boeing Co.</u>, 444 U.S. at 479.

Under the foregoing doctrine, courts have historically and consistently recognized that class litigation is increasingly necessary to protect the rights of individuals whose injuries and/or damages are too small to economically justify individual representation.  In <u>Paul, Johnson, Alston & Hunt v. Graulty</u>, 886 F. 2d 268, 271 (9th Cir. 1989), the Ninth Circuit embraced this principle when it stated:

> Since the Supreme Court's 1885 decision in <u>Central Railroad & Banking Co. of Ga. v. Pettus</u>, 113 U.S. 116, 28 L.Ed. 915, 5 S.Ct. 387 (1885), it is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit.  The amount of such a reward is that which is deemed 'reasonable' under the circumstances.

<u>Paul, Johnson, Alston & Hunt</u>, 886 F. 2d at 271 (internal citations omitted).  Accordingly, in the determination of a reasonable common-fund fee award, the awarding of attorney's fees is designed to serve as an economic incentive for counsel to bring class-action litigation to achieve increased access to the judicial system for meritorious claims.  This

case provided remedies to Class Members that otherwise would have been at public expense.  "The Supreme Court has observed that[,] without the possibility of recovering an attorneys' fee, most class actions would never be filed."  See <u>Deposit Guar. Nat'l Bank v. Roper</u>, 445 U.S. 326, 339 (1980) (observing that, "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device.").  <u>Cf.</u> <u>Ressler v. Jacobson</u>, 149 F.R.D. 651, 657 (M.D. Fla. 1992) ("Attorneys who bring class actions are acting as 'private attorneys general' and are vital to the enforcement of securities laws.  Accordingly, public policy favors the granting of counsel fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions.").

### B.    *A Twenty-Five Percent Fee from the West Fund Is Appropriate.*

In this case, Plaintiffs' Counsel seeks a recovery of twenty-five percent of the $5,285,000 non-reversionary West Settlement Fund for their attorney's fees.  The Ninth Circuit has held that up to thirty percent "[i]s the 'benchmark' award that should be given in common fund cases."  See <u>Six Mexican Workers v. Ariz. Citrus Growers</u>, 904 F.2d 1301, 1311 (9th Cir. 1990) (citing 3 Newberg on Class Actions § 14.03 (stating that twenty to thirty percent is the usual common-fund award); <u>Vizcaino</u>, 290 F.3d at 1050 (approving a twenty-eight-percent contingency-fee award of $27,127,800); <u>In re Pac. Enters. Sec. Litig.</u>, 47 F. 3d 373, 379 (9th Cir. 1995); <u>In re Activision Sec. Litig.</u>, 723 F. Supp. 1373, 1378–79 (N.D. Cal. 1989) (finding that, in most cases, the benchmark is thirty percent and that an award of thirty percent is substantially justified).  <u>See also</u> <u>In re Heritage Bond Litig.</u>, 2005 U.S. Dist. LEXIS 13555 at *61 ("As a preliminary matter, the Court notes that courts in this circuit, as well as in other circuits, have awarded attorneys' fees of 30% or more in complex class actions."); <u>Vasquez v. Coast Valley Roofing</u>, 266 F.R.D. 482, 491–92 (E.D. Cal. 2010) (citing <u>Powers v. Eichen</u>, 229 F. 3d 1249, 1256 (9th Cir. 2000)) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered as the benchmark.'");

1   Hanlon v. Chrysler Corp., 150 F. 3d 1011, 1029 (9th Cir. 1998); Staton v. Boeing Co.,

2   327 F. 3d 938, 952 (9th Cir. 2003).  "[T]he exact percentage varies depending on the

3   facts of the case, and[,] in 'most common fund cases, the award exceeds that

4   benchmark.'"  Id. (internal citations omitted).  The Northern District of California has

5   noted that "[t]his court's review of recent reported cases discloses that nearly all common

6   fund awards range around 30%."  In re Activision Sec. Litig., 723 F. Supp. 1373, 1377–

7   78 (N.D. Cal. 1989).[5]

8       In Vizcaino, the Ninth Circuit set forth five factors in determining whether to

9   adjust the fee award from the twenty-five-percent benchmark rate:  (1) the results

10  achieved for the class (i.e. the settlement fund created); (2) the risks assumed by

11  plaintiffs' counsel; (3) the benefits to the class; (4) the percentage fee requested in the

12  petition, compared with the percentage agreed upon in the retainer agreement; and (5) the

13  quality of the representation of plaintiffs' counsel.  See Vizcaino, 290 F.3d at 1047–50.

14  A consideration of the factors in Vizcaino shows that Plaintiffs' Counsel's request for

15  twenty-five percent of the non-reversionary settlement is quite reasonable.

16          ***1.    Plaintiffs' Counsel Achieved an Excellent Result for the Class.***

17      The results obtained by Plaintiffs' Counsel are outstanding.  The total cash value of

18  the West Settlement is $5,285,000.  If the full request for attorneys' fees and costs is

19  awarded, along with funds for claims-administration fees and costs, sufficient funds will

20  be available for distribution of a benefit of slightly over $90 to each individual Class

21

22

23      [5] The instant Settlement presents a stronger argument for a twenty-five-percent fee
    award, as the entire $5,285,000 settlement amount will be distributed.  In other words,
24  there is no reversion of any portion of the settlement amount to Defendants.  Cf. Williams
    v. MGM-Pathe Commc'ns Co., 129 F.3d 1026, 1027 (9th Cir. 1997) (explaining that it is
25  an abuse of discretion to base an attorney's fee award on the actual distribution to class
    members instead of on the entire fund recovered).  See also Masters v. Wilhelmina Model
26  Agency, Inc., 473 F.3d 423, 437 (2d Cir. 2007) ("In this case, the District Court
    calculated the percentage of the Fund on the basis of the claims made against the Fund,
27  rather than on the entire Fund created by the efforts of counsel.  We hold that this was
    error."); Six Mexican Workers, 904 F.2d at 1311 ("The Supreme Court has stated that
28  attorneys' fees sought under a common fund theory should be assessed against every
    class members' share, not just the claiming members").

Member, with law firms recovering hundreds—or thousands—of dollars, each.[6]  (Harris Decl. ¶14.)  As a result of the Settlement, Class Members will receive payments for claims that would have almost certainly been too small to pursue on an individual basis. The fairness of Plaintiffs' request for attorneys' fees is further supported by the high quality of Plaintiffs' Counsel's legal representation, as described in the Declaration of Alan Harris filed herewith.  As shown in the Harris Declaration, Class Counsel are experienced class-action attorneys who have recovered millions of dollars on behalf of many class members.  (See Harris Decl. ¶¶ 2–3.)  Plaintiffs' Counsel's well-organized, efficient, and diligent prosecution of this matter positioned Plaintiffs to successfully settle this case on behalf of themselves and the other Class Members.  Plaintiffs' Counsel has avoided the high expense and risk of protracted litigation, which could have taken years to prosecute.  It is also important to note that Plaintiffs' Counsel was opposed by experienced and skilled lawyers from several nationally recognized firms.  (See Harris Decl. ¶ 28.)  Notwithstanding the formidable legal opposition, Plaintiffs' Counsel was able to achieve excellent results in a relatively short time.

### 2.   The Risks Assumed by Plaintiffs' Counsel Support the Requested Attorney's Fees.

Plaintiffs' Counsel assumed—and still face—a substantial risk in taking this case. Defendants West and Kaplan are corporate behemoths, with far more resources than Plaintiffs.  Plaintiffs' Counsel took the case on a contingency basis.  Plaintiffs' Counsel expended time, effort, and expenses with no guarantee of any recovery.  From the outset, Defendants have adamantly denied any liability and continue to do so.  Plaintiffs recognize that Defendants might argue that a nation-wide Class could not be certified, since damages might require state-by-state inquiry.  The risks of the case—proving liability as well as class-certification issues—were great, but Plaintiffs' Counsel,

---

[6] Plaintiffs have also requested incentive awards for acting as class representatives. However, the requested incentive awards for the five Plaintiffs—$4,000 each—are to be paid separately by Kaplan and therefore *do not* come from funds available to the Class.

1  nevertheless, achieved an outstanding result on behalf of the Class.  Participating Class

2  Members will look to a possible total recovery, on average, of $240 each.

3       ***3.      Plaintiffs' Counsel's Request for Fees Is Justified in Light of the***

4            ***Speed of Settlement.***

5       This case was litigated in an efficient manner and settled with relative speed,

6  before rehashing the discovery undertaken in <u>Rodriguez</u>.  This should underscore—not

7  undermine—Counsel's entitlement to the requested fee.  Many courts have cautioned

8  against any implication that class counsel should be penalized for its skill in settling a

9  case:

10      [I]n many instances, it may be a relevant circumstance that counsel achieved

11      a timely result for class members in need of immediate relief.  The lodestar

12      method is merely a cross-check on the reasonableness of a percentage figure,

13      and it is widely recognized that the lodestar method creates incentives for

14      counsel to expend more hours than may be necessary on litigating a case so

15      as to recover a reasonable fee, since the lodestar method does not reward

16      early settlement.

17  <u>Vizcaino</u>, 290 F.3d at 1050 n.5.

18      From counsel's viewpoint, this case was risky, with a substantial possibility of

19  years of work and no recovery whatsoever.  Plaintiffs' Counsel did not sacrifice due

20  diligence in achieving an efficient resolution of this case.  As discussed in the Harris

21  Declaration filed herewith, Plaintiffs' Counsel carefully reviewed the applicable facts and

22  the law.  (Harris Decl. ¶ 4.)  In light of the substantial work involved, Plaintiffs' Counsel

23  is entitled to the requested fee.

24       ***4.      The Fee Award Requested Fits With Plaintiffs' Counsel's***

25            ***Reasonable Expectations.***

26      Contingency fees are intended to reward class counsel for carrying the financial

27  burden of a case, effectively prosecuting it, and achieving a settlement for the class.

28  <u>Torrisi v. Tucson Elec. Power Co.</u>, 8 F.3d 1370, 1377 (9th Cir. 1993).  As explained

above, the Settlement confers a substantial benefit on participating Class Members.  The entire cash Settlement Fund has already been paid to the Claims Administrator, and the Kaplan Discount Certificates are already in the hands of Class Members.  In light of these facts, the fee request of twenty-five percent of the West Settlement Fund is entirely reasonable and fair.

The requested fee of twenty-five percent of the Settlement Fund fits with the reasonable expectations of Class Counsel, based on settlements reached in similar cases—including cases Class Counsel has itself litigated.  See, e.g., Kang v. Albertson's Inc., Case No. 2:07-cv-00894-CAS (FFMx) (C.D. Cal. 2007) (awarding 28.4% of the $6,637,500 common fund as attorney's fees where Class Counsel herein represented the plaintiffs and the class).  Case surveys reflect that awards of this amount—or more—are common.  In fact, fee awards often exceed thirty percent of the common fund:

- 33.3% in Benitez v. Wilbur, E.D. Cal. 1:08-CV-1122 LJO GSA;
- 33.3% in Chavez v. Petrissans, E.D. Cal. 1:08-CV-00122 LJO-GSA;
- 30% in Vasquez v. Aartman, E.D. Cal. 1:02-CV05624 AWI LJO;
- 31.25% in Baganha v. Cal. Milk Transp., E.D. Cal. 1:01-CV-05729 AWI LJO; and
- 33% in Willis v. Cal Western Transp., and Baron v. Cal. W. Transp., Coordinated Case No. 1:00-cv-05695 AWI LJO.

Vasquez, 266 F.R.D. at 492.  See also Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 297–98 (N.D. Cal. 1995) (citing cases awarding fees in the amount of 33%); see also, e.g., Singer v. Becton Dickinson, No. 08-cv-821, 2010 WL 2196104, at *8–9 (S.D. Cal. Jun. 1, 2010) (approving an award of 33.33 % of the common fund); Vazquez, 266 F.R.D. at 491–92 (approving an award of approximately 33.3% of the total common-fund recovery); Romero v. Producers Dairy Foods, Inc., No. 05-cv-0484, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of a settlement and noting that "fee awards in class actions average around one-third of the recovery"); Fabiani v. Oreck Corp., 2006 WL 1390458 (N.D. Cal. May 19, 2006) (awarding class counsel a fee

1    award of one-third of gross settlement amount).  The amount requested is also
2    commensurate with Ninth Circuit precedent.  <u>In re Mego Fin. Corp.Sec. Litig.</u>, 213 F.3d
3    454, 463 (9th Cir. 2000) (affirming an award of attorney's fees equal to 33% of the fund);
4    <u>In re Pac. Enters. Sec. Litig.</u>, 47 F.3d at 379 (affirming an award equal to 33% of the
5    common fund); <u>Vizcaino</u>, 290 F. 3d at 1050 (approving a twenty-eight-percent
6    contingency-fee award of $27,127,800).

7         ***C.    The Lodestar Cross-Check Confirms that the Requested Attorney's Fees***
8              ***Are Reasonable.***

9         The Ninth Circuit has recognized that "the district court has discretion to apply
10   either the lodestar method or the percentage-of-the-fund method in calculating a fee
11   award.  <u>Fischel v. Equitable Life Assur. Soc'y of U.S.</u>, 307 F. 3d 997, 1006 (9th Cir.
12   2002).  The appropriateness of a percentage award can be subject to a "lodestar cross-
13   check" that involves examining the time expended by counsel, counsel's market rate, and
14   the appropriateness of a multiplier to verify the reasonableness of the percentage recovery
15   sought.  <u>See</u> <u>Vizcaino</u>, 290 F.3d at 1050 (stating that reference to the lodestar "may
16   provide a useful perspective on the reasonableness of a given percentage award").  When
17   analyzing attorney's fees under the lodestar approach, courts generally begin by
18   multiplying the number of hours reasonably expended on the litigation by a reasonable
19   hourly rate.  <u>Hensley</u>, 461 U.S. at 433, superseded by statute on other grounds as stated in
20   <u>Laube v. Allen</u>, 506 F. Supp. 2d 969, 978 (M.D. Ala. 2007).  In <u>Hensley</u>, the U.S.
21   Supreme Court explained:

22         Where a plaintiff has obtained excellent results, his attorney should recover
23         a fully compensatory fee.  Normally this will encompass all hours
24         reasonably expended on the litigation, and indeed in some cases of
25         exceptional success an enhanced award may be justified. . . .  Litigants in
26         good faith may raise alternative legal grounds for a desired outcome, and the
27         court's rejection of or failure to reach certain grounds is not a sufficient
28         reason for reducing a fee.  The result is what matters.

<u>Hensley</u>, 461 U.S. at 435.  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  <u>Hensley</u>, 461 U.S. at 433.  This lodestar is a presumptively accurate measure of a reasonable fee.  <u>Harris v. Marhoefer</u>, 24 F.3d 16, 18 (9th Cir. 1994).

Here, Plaintiffs' Counsel has achieved such exceptional success, and they should be awarded the full requested amount, which is a relatively small multiple of the lodestar.[7]  The hourly rates to be utilized in establishing the lodestar figure in this case are market rates, supported by the Declaration of Plaintiffs' expert, Peter Zeughauser. (Harris Decl. Ex. 2.)  This has a number of important ramifications, and the market-rate principle applies both to attorney's fees and to services such as paralegal fees.  The hourly rate to be used in calculating the lodestar is not the actual cost of the services but, instead, the market rate.  In <u>Samson v. NAMA Holdings, Inc.</u>, 2009 U.S. Dist. LEXIS 114494 (C.D. Cal. Aug. 10, 2009), Judge Morrow approved rates for lead attorneys of $700 to $800 per hour, with other attorneys charging between $510 and $800 per hour; Paralegal rates were $90 to $270 per hour.  <u>Samson</u>, 2009 U.S. Dist. LEXIS 114494 at *10–18.  Similarly, in <u>Pom Wonderful, LLC v. Purely Juice, Inc.</u>, 2008 U.S. Dist. LEXIS 110460 (C.D. Cal. Sept. 22, 2008), Judge Snyder approved partner rates of $450 to $750 per hour and associate rates of $325 to $425 per hour, basing her decision on the Court's familiarity with the rates charged by other firms in the legal community.  <u>Pom Wonderful, LLC</u>, 2008 U.S. Dist. LEXIS 110460 at *11–12.  In the matter presently before the Court, attorney rates range from $245 per hour for a first-year associate to $800 per hour for veteran partners with extensive, successful trial experience:  Eliot Disner and Alan Harris.  The Harris & Ruble rates have been approved by other courts, both in Los Angeles and San Francisco.  Harris & Ruble has used these rates since November 2008, throughout most of the time this matter has been pending.  The rates are

---

[7] "The bar against risk multipliers in statutory fee cases do[es] not apply to common-fund cases."  <u>Vizcaino</u>, 290 F. 3d at 1051.

1  quite reasonable, as they are comparable to those in the relevant legal community.  (See,

2  Harris Decl. ¶¶ 13–16 & Exs. 4–6.)

3      Typically, courts adjust the lodestar by a multiplier to increase the lodestar amount,

4  using the factors set out in Kerr v. Screen Guild Extras, Inc., 526 F.2d 67 (9th Cir. 1976).

5  These factors include (1) the time and labor required; (2) the novelty and difficulty of the

6  issues litigated; (3) the skill needed to perform properly the legal service; (4) the

7  preclusion of other employment due to the acceptance of work; (5) the customary fee; (6)

8  whether the fee is fixed or contingent; (7) the time limitations imposed by the client or

9  the circumstances; (8) the amount at issue and the results obtained; (9) the experience,

10  reputation, and ability of the attorney or attorneys; (10) the "undesirability" of the case;

11  (11) the length and nature of the professional relationship between the attorney and the

12  client; and (12) awards in similar cases.  Kerr, 526 F.2d at 70.

13      In the present case, the above factors support the requested award.  Plaintiffs'

14  attorneys have devoted substantial time and effort to this litigation, the defense of which

15  was conducted by preeminent defense firms.  (See Harris Decl. Ex. 3.)  Defendants

16  continue to deny all of Plaintiffs' contentions and allegations and, if not for this

17  settlement, would oppose both the merits of the litigation and class certification.

18  Moreover, Plaintiffs' Counsel took this case on a contingency-fee basis.  Accordingly,

19  the prosecution of this class action involved significant financial risk for Plaintiffs'

20  Counsel, as they undertook the obligation to prosecute this matter with no guarantee of

21  recovery.  In the absence of a contingency-fee arrangement under which Plaintiffs'

22  Counsel undertook the responsibility to pursue this case, the matter simply could not have

23  been brought.  Plaintiffs simply do not have the resources to advance the necessary costs,

24  much less pay the normal hourly rates that Counsel would charge.  Counsel's undertaking

25  to prosecute a matter of this magnitude and complexity requires Counsel to advance

26  substantial costs and defer any fee whatsoever, pending a favorable outcome.  In the

27  absence of a favorable outcome, Counsel was faced with a substantial financial loss.

28      Under the circumstances, attorneys who secure a substantial recovery on behalf of

a class deserve the requested fee.  Plaintiffs' Counsel undertook this case at a time when the outcome of the asserted class claims was highly uncertain.  There have been numerous recent trial-court decisions denying class certification.  Indeed, with respect to the issue of certification, although class certification does not decide the merits of a claim, the substantive elements of Plaintiffs' claims nonetheless must be evaluated, and a "rigorous analysis" must be performed, in order to determine if class claims can be established by common proof or whether (as here, perhaps) individualized issues predominate.  Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 160–61 (1982).  Common issues will not predominate where each member's right to recover depends on facts peculiar to his or her case and where each member of the alleged class would be required to litigate numerous and substantial questions determining his or her individual right to recover following the class judgment.

In this regard, Basco v. Wal-Mart Stores, Inc., 216 F. Supp. 2d 592 (E.D. La. 2002), is a leading class-action case that courts throughout the country, including California, have followed.  In Basco, the court denied a motion to certify a class of all Wal-Mart employees in the State of Louisiana who collectively worked in eighty-nine different stores and who had allegedly been deprived of meal breaks and rest periods. Basco, 216 F. Supp. at 596.  The court squarely rejected the plaintiffs' contention that their claims could be tried with statistical evidence.  Id. at 603 (stating that the "[p]laintiffs' proposed statistical analysis ignores the highly individualized issues involved in this case").  The court concluded that "the individual issues concerning the facts . . . and defendant's potential defenses predominate any common issues," and it denied certification.  Id. at 603.  Similar arguments could be advanced by Defendants herein, who would argue that the eighty-three different stores in Basco are similar to the fifty-one different bar-review submarkets in this case.

In short, from the beginning of this litigation, Plaintiffs' recoveries were far from assured.  As explained above, they faced multiple challenges with regard not only to the theory of liability but also with regard to whether the proposed class action would even

be certified.  Cf., e.g., Grosz v. Boeing Co., 2003 U.S. Dist. LEXIS 25341 at *16–17 (C.D. Cal., Nov. 7, 2003) ("Without some evidence of the class-wide use of common decisional criteria or practices, [the p]laintiffs have failed to show the requisite commonality and typicality.").  Despite such challenges, Plaintiffs' Counsel was able to persuade Defendants that a credible case could be marshaled and maintained, which ultimately resulted in the sizable settlement that is presently before this Court.  Indeed, the experience and ability of Plaintiffs' Counsel was essential to success in this litigation.  As noted in the Declaration of Alan Harris filed and served herewith, Plaintiffs' Counsel specializes in complex and class-action litigation and has substantial experience with the prosecution of antitrust cases.  (See Harris Decl. ¶¶ 2–3).  Plaintiffs' Counsel's skill in convincing Defendants of their potential exposure was essential to achieving the result.

Here, Plaintiffs' Counsel has submitted records showing the amount of time expended on this litigation and the attorneys' corresponding billing rates.  (Harris Decl. Ex. 1.)  The records indicate the nature of the specific tasks for which compensation is sought without block billing.  They are quite detailed, and they reflect a reasonable number of hours given the complexity and risks of this case.  Harris & Ruble also has submitted the Declaration of an expert who was retained by the firm in order to calculate the reasonableness of Harris & Ruble's billing rates.  (Harris Decl. Ex. 2.)  Those rates are the rates that are used in Harris & Ruble's time records.  Exhibits to the Declaration of Alan Harris detail the total hours worked on this case, resulting in the substantial lodestar.  Accordingly, Plaintiffs' Counsel has met the factors set forth in Kerr above for a positive multiplier.  See Vizcaino, 290 F.3d at 1051 n.6 (describing the range of multipliers used in lodestar cross-checks, "finding a range of 0.6–19.6").  In a case in which the Class Members who have filed claims will recover a substantial cash benefit, the fee request is reasonable and should be granted.

## D.  Plaintiffs' Counsel's Expenses are Reasonable and Should Be Reimbursed.

"Lawyers whose efforts succeed in creating a common fund for the benefit of a

1  class are entitled not only to reasonable fees, but also to recover from the fund, as a

2  general matter, expenses, reasonable in amount, that were necessary to bring the action to

3  a climax."  In re Fidelity/Micron Sec. Litig., 167 F. 3d 735, 737 (1st Cir. 1999).  The

4  expenses incurred in this litigation, which total $44,047, are described in detail in the

5  accompanying Declaration of Alan Harris.  (See Harris Decl. ¶ 18 & Ex. 1.)  The

6  expenses are of the type typically billed by attorneys to paying clients in the marketplace

7  and include such costs as filing and service fees, copying fees, computerized research,

8  and expert fees in connection with this litigation.  All of these expenses were reasonable

9  and necessary for the successful prosecution of this case and should be approved.

10      **_E._     _The Reaction of the Settlement Class Supports the Requested Fee._**

11          Pursuant to the Court's Preliminary Approval Order, the Class Notice and

12  accompanying Claim Forms and Requests for Exclusion were mailed to Class Members.

13  It is projected that perhaps 40,000 Claims will be filed, accounting for a substantial

14  percentage of the Class.  (Harris Decl. ¶ 15.)  Very few Class Members filed requests for

15  exclusion or objections.  (Sherwood Decl. ¶ 10.)  These facts weigh in favor of the

16  requested fee, particularly in light of the fact that the Class consists entirely of law-school

17  graduates and law firms.  Here, the first page of Class Notice provided:  "With respect to

18  the Settlement with West, court-approved lawyers for Class Members ("Class Counsel")

19  will ask the Court for up to twenty-five percent (25%) of the monetary portion of the

20  Settlement amount as fees . . . plus reimbursement of litigation expenses."  (Feb. 18,

21  2011, Harris Decl. Ex. 4 at 2:1–8.)  In re Prudential Sec. Ltd. P'ships. Litig., 985 F. Supp.

22  410, 416 (S.D.N.Y. 1997) ("The Notice of Pendency of Class Action and Settlement

23  Hearing, mailed to Class Members, advised that Class Counsel would request a fee not to

24  exceed 30% of the Settlement fund.  No objection to the amount of the requested attorney

25  fees has been received.  In determining the reasonableness of a requested fee, numerous

26  courts have recognized that "the lack of objection from members of the class is one of the

27  most important reasons.") (citations omitted); Stoetzner v. United States Steel Corp., 897

28  F.2d 115, 118–19 (3d Cir. 1990) (objections by "only" 10% of the class "strongly favors

settlement."). Based upon the reasons set forth above, Class Counsel respectfully submits that the requested fee is fair and reasonable, and should be approved.

### F.   Plaintiffs' Attorneys Are Entitled to Fees on Account of the Kaplan Discount Certificate Settlement

Class Counsel are also entitled to an award of $450,000 on account of the Discount Certificate portion of the Settlement. (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 59.) This amount will *not* come out of the Settlement Fund; it will be paid entirely by Kaplan. (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 59.) The Class Action Fairness Act ("CAFA") expressly permits this separate fee award. See 28 U.S.C. § 1712(b) ("If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action. [] Any attorney's fee under this subsection shall be subject to approval by the court and shall include an appropriate attorney's fee, if any, for obtaining equitable relief, including an injunction, if applicable. Nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees."). The CAFA fee issue was recently addressed in Radosti v. Envision EMI, LLC, 2011 U.S. Dist. LEXIS 4858 (D. D.C. Jan. 19, 2011):

> Because the recovery for the class is in the form of coupons, the award of attorneys' fees is also governed by 28 U.S.C. § 1712. Pursuant to § 1712(a), "[i]f a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." 28 U.S.C. § 1712(a). *[However, i]n this case, the agreed upon award was separately negotiated and therefore was not based on the value of the coupons redeemed. Section 1712 provides that where the value of redeemed coupons is not used to determine the fee award, "any attorney's fee award*

*shall be based upon the amount of time class counsel reasonably expended*
*working on the action.*"  28 U.S.C. § 1712(b)(1).  The statute explicitly
contemplates application of the lodestar method with a multiplier, but it does
not explicitly require that approach.  <u>See</u> <u>id.</u> § 1712(b)(2) ("Nothing in this
subsection shall be construed to prohibit application of a lodestar with a
multiplier method of determining attorney's fees.")  The statute does not
explicitly contemplate the "constructive common fund" approach that has
been applied in this district.  However, the Court concludes that this
approach is not prohibited by § 1712 so long as the value of redeemed
coupons is used as the denominator in calculating any percentage award.

<u>Radosti</u>, 2011 U.S. Dist. LEXIS at *9–10 (emphasis supplied).

Professor Dennis Rook has herewith submitted a Declaration concerning the
Discount Certificate portion of the Settlement.  Professor Rook's conclusion concerning
the high value of the Certificates is supported by <u>Radosti</u>, in which the court highlighted
factors that are virtually identical to those present in this case.  In <u>Radosti</u>, as here, the
vouchers were for discounts for "tuition for future Envision programs."  <u>Radosti v.</u>
<u>Envision EMI, LLC</u>, 717 F. Supp. 2d 37, 44 (D.D.C., 2010).  The vouchers, as here, were
valid for several years.  <u>Id</u>.[8]  The vouchers, as here, were "fully transferable."  <u>Id</u>.  In
<u>Radosti</u>, as here, "most class members are students who have a natural network of
classmates to whom vouchers might be sold."  <u>Id</u>. at 45.  However, unlike <u>Radosti</u>—in
which there was no expert testimony to support the claims of value for the coupons—
Plaintiffs have the expert opinion of Professor Rook, who is the Chair of the Department
of Marketing at the USC Marshall School of Business.

Here, the face value of the coupons is $37,600,000.  (Rook Decl. ¶ 10.)  According
to Professor Rook's analysis, a conservative redemption rate will result in additional

---

[8] Although the Discount Certificates are valid for only thirty months while the <u>Radosti</u>
vouchers were valid for seven years, the thirty-month period here compares favorably
with the thirty-five-month period approved in <u>In re Western Union Money Transfer</u>
<u>Litigation</u>, 2004 U.S. LEXIS 29377 (E.D.N.Y. Oct. 19, 2004).

1   value to Class Members in excess of $2,000,000—to say nothing of the added benefits of

2   increased competition in the long-term on account of the short-run use of the Certificates.

3   (Rook Decl. ¶ 16.)  In light of the fact that Class Counsel has a lodestar well in excess of

4   $450,000, whether the Kaplan fee is measured by the lodestar method or the percentage-

5   of-recovery technique, the requested fee is reasonable and should be awarded, in full.

6       **G.    *The Objections Are Without Merit.***

7       The substance of all objections thus far received happens to be contained in the

8   detailed Objection and Notice of Intent to Appear (the "Center Objection"), filed by

9   Daniel Greenberg, "senior counsel for the Center for Class Action Fairness LLC."[9]

10  (Center Objection at 24:9–10.)  None of the arguments in the Center Objection to the fee

11  request have merit.

12      The Center's implicit argument that Class Counsel is attempting to mislead the

13  Court by claiming that the Discount Certificates are anything other than coupons, subject

14  to the requirements of 28 U.S.C. § 1712 (Center Objection at 10:25–12:9), is immediately

15  put to rest by review of the February 18, 2011, Motion for Preliminary Approval, which

16  *explicitly discusses the applicability of CAFA* and the fact that the statute "expressly

17  permits this separate attorney's fee award" in cases such as this:  "If a proposed

18  settlement in a class action provides for a recovery of coupons to class members . . . any

19  attorney's fee award shall be based upon the amount of time class counsel reasonably

20  expended working on the action."[10]  (Feb. 18, 2011, Pls.' Mot. for Conditional

21  Certification of Settlement Class, Preliminary Approval of Class-Action Settlement, and

22  Appointment of Claims Administrator at 19:23–27.)

---

[9] While it seems perplexing that one who took a bar-review course during the class period could so soon become "senior counsel," it is even more difficult to square the Center's claim that it is acting "in good faith," with its boast that "the Center has never settled an objection."  (Center Objection at 24:23–27.)

[10] In an equally weak argument, the Center seems to admit that there is no authority for computing the percentage award from the West Settlement on a number that excludes costs and expenses incurred in connection with the case.  (Center Objection at 23:10–12 (stating that "this specific argument appears to be a question of first impression.").)  This argument is addressed below.

The undersigned shares the concerns of the Center Objection that "coupon settlements are inherently problematic." (Center Objection at 12:10–11.)  However, the Center ignores the unusual circumstances of this case.  Here, Kaplan is increasingly going into competition with West, and the use of coupons—especially those many thousands of coupons awarded to some of the 7,293 law-firm Class Members—will inevitably boost Kaplan's competitive posture, with a positive impact on both the quality and cost of bar-review courses.  (Rook Decl. ¶ 17.)  Indeed, anecdotal evidence concerning law-firms Class Members that have asked their young attorneys to give them the Kaplan coupons while permitting them to keep the West cash strengthens the claim that the use of coupons in monopolization cases such as this has a great deal of merit.  The Center argument that, "in order to receive any direct benefit from the settlement, consumers must once again do business with the same company which plaintiffs allege originally overcharged them" (Center Objection at 13:5–7) reveals the Center's lack of analysis here, where Kaplan itself never overcharged anyone.  Class Members, after all, previously purchased from the monopolist West.  The purpose of the coupons, in large part, is to encourage Class Members (and others) to purchase from the *new* entrant— Kaplan—helping to destroy the monopoly that gave rise to this case in the first place.

The Center incorrectly asserts that the "Kaplan settlement offers coupons of an especially low value . . . because of the relatively minimal worth of additional educational offerings from Kaplan to the [C]lass." (Center Objection at 13:13–15.) Again, the Center ignores the reality of the 7,293 law-firm Class Members that have purchased bar-review courses in the past and that will do so, again in the future.  In addition, the Center ignores the reality that the individual Class Members have a large pool of spouses, relatives, friends, and neighbors to whom the coupons can be donated or sold for use to prepare for the bar examination or a myriad other purposes.  (Rook Decl. ¶ 11.)  While it remains to be seen whether the Center is correct that "these coupons are not worth anywhere near their face value" (Center Objection at 15:6), the truth is that the face value is in excess of $37,000,000, not counting the *additional* value of establishing a

strong competitor in the marketplace.  Again, the ultimate value of the coupons need not approach the $37,000,000 face value for this Court to approve the Settlement.

As to the total value of the Settlement, the Center states that "one can derive the total value of the settlement fund by adding the value that the coupons actually provide to the [C]lass to the cash that attorneys and named [P]laintiffs will receive." (Center Objection 16:13–15.)  Here, the Settlement provides that Kaplan will provide $450,000 for attorney's fees and a total of $20,000 for five incentive awards of up to $4,000 each. The total Kaplan cash is therefore $470,000.  (Feb. 18, 2011, Harris Decl. Ex. 1 at ¶ 59.) Accordingly, if this Court finds that the coupons have a value of $1,330,000 or more, the requested award of $450,000 will be justified on the traditional twenty-five-percent-of-recovery theory.  As established by the Rook Declaration, the coupon value is substantially in excess of $1,330,000.  (Rook Decl. ¶ 16.)[11]  Of course, the $659,316 lodestar is also greatly in excess of $450,000.  (Harris Decl. ¶ 19.)  This case in not one in which "counsel are awarded large fees, while leaving the class members with coupons or other awards of little or no value." (Center Objection at 17:19–20].)  Indeed, the amounts are in line with two earlier lawsuits involving BAR/BRI:  the above-mentioned Rodriguez action (that was before this very Court) and Park v. Thompson Corp., S.D.N.Y. Case No. 05 Civ. 2931 (WHP).  (See Feb. 18, 2011, Harris Decl. ¶ 14 (describing the average recovery in both Rodriguez and Park).)

Simply put, the Center's argument that no fee award can be made on the Kaplan Settlement until the coupons are actually redeemed is based on an incorrect reading of CAFA.  It is simply not true that the "calculation of attorney fees deriving from coupons must be controlled by the value that their redemption brings to the class"—that "the Act cannot be read to permit attorneys' fees deriving solely from coupon awards to be based on the amount of work class counsel has put into the settlement." (Center Objection at 18:5–11 (emphasis supplied).)  Again, the statute expressly provides that a coupon

---

[11] The Center acknowledges this conclusion:  "If the coupons could reasonably deliver $1.35 million of value to the class . . . then a $450,000 fee award after redemptions would arguably be reasonable." (Center Objection at 18:25–28.)

1   settlement may, as here, provide for a fee award "based upon the amount of time class

2   counsel reasonably expended working on the action" and that "[n]othing in this

3   subsection shall be construed to prohibit application of a lodestar with a multiplier

4   method of determining attorney's fees." 28 U.S.C. § 1712(b). Indeed, this construction

5   is explicitly acknowledged in the federal practice guide: "Where the attorney's fee is not

6   determined by a percentage of coupons . . . [t]he fee shall be based on time reasonably

7   expended . . . [a]n appropriate lodestar with a multiplier may be applied in determining

8   the fee award." William W. Schwarzer, *et al.*, <u>California Practice Guide:  Federal Civil</u>

9   <u>Procedure Before Trial</u> ¶ 10:888.10 (The Rutter Group 2011).

10         The Center similarly misleads the Court with respect to its discussion concerning

11   the exclusion of costs from the percentage recovery.  In this regard, the Center itself

12   admits that there is no authority for computing the percentage on a number that excludes

13   costs and expenses incurred in connection with the case.  (Center Objection at 23:10–12.)

14   In this case—in which every penny of the $5,285,000 is going to the benefit of the

15   Class—the Center's "first impression" issue is hardly worthy of consideration,

16   particularly since Class Counsel's out-of-pocket expenses are less than $45,000 (i.e., less

17   than one percent of the West Settlement Fund) *and* the Center has utterly misrepresented

18   the holding of <u>Staton v. Boeing</u> 327 F.3d 938 (9th Cir. 2003).  In <u>Staton</u>, the problem,

19   simply, was that there were *two* notices, which the Ninth Circuit deemed "excessive"

20   while simultaneously holding that standard notice was a "justifiable cost" paid by the

21   defendant—a *benefit* to the class that *should be considered* in calculating attorney's fees.

22   See Staton, 327 F.3d at 974–75.

23         Finally, contrary to the Center's contention, Class Counsel has not "induced the

24   Court to violate <u>In re Mercury Interactive Corp. Securities Litigation</u>, 618 F.3d 988 (9th

25   Cir. 2010) (hereinafter, "<u>In re Mercury</u>").  The recent case of <u>In re Lifelock, Inc.</u>, 2010

26   U.S. Dist. LEXIS 102612 (D. Ariz. Aug. 31, 2010), *expressly excludes* class actions

27   certified under Federal Rule of Civil Procedure 23(b)(2) from the new <u>In re Mercury</u>

28   standard (as opposed to cases certified under Rule 23(b)(3), like <u>In re Mercury</u>).  In the

1    above-captioned matter, the Preliminary Approval Order states that, "pursuant to Rule 23

2    of the Federal Rules of Civil Procedure, the following Class is conditionally certified"

3    (Mar. 21, 2011, Preliminary Approval Order ¶ 4). The Court nowhere stated that it was

4    certifying the matter exclusively under subsection (b)(3). As in Lifelock, "certification

5    pursuant to Rule 23(b)(2) is appropriate herein because the Class Members' claims for

6    injunctive relief predominate over their damage requests." In re Lifelock, Inc., 2010 U.S.

7    Dist. LEXIS 102612 at *12–13 (citing Dukes v. Walmart Stores, Inc., 603 F.3d 571, 617

8    (9th Cir. 2010)).

9        The Ninth Circuit has recognized that "class actions certified under Rule 23(b)(2)

10   are not limited to actions requesting only injunctive or declaratory relief, but may include

11   cases that also seek monetary damages." Probe v. State Teachers' Ret. Sys., 780 F.2d

12   776, 780 (9th Cir. 1985). More recently, the Ninth Circuit has recognized that, so long as

13   claims for damages in a putative class action do not "predominate" over claims for

14   injunctive relief, the action can and should be certified under Rule 23(b)(2) regardless of

15   what the plaintiff's subjective intent was in bringing the lawsuit. Dukes, 603 F.3d at

16   615–17. The Ninth Circuit has also rejected the requirement in other circuits that

17   requests for monetary damages be merely "incidental" to the injunctive relief. Id.

18       Instead of focusing on a plaintiff's subjective-intent or whether the class-wide

19   monetary claims are incidental to the demand for injunctive relief, the "predominance"

20   test looks at "the objective 'effect of the relief' sought." Id. at 617. In applying the

21   Dukes test, the Ninth Circuit recently noted that a "'[d]efendant's future compliance with

22   the law may be more valuable to the class than the present claims for back pay.'" Wang

23   v. Chinese Daily News, Inc., 623 F.3d 743, 754 (9th Cir. 2010).

24       Here, Plaintiffs' Counsel's dogged pursuit of justice eventually caused Kaplan to

25   create its own bar-review course in competition with former co-conspirator West, and

26   then Plaintiffs' Counsel's close scrutiny motivated Kaplan to quickly expand its bar-

27   review offering from three initial states to—as of the date of this Motion—the twenty-six

28   most-populous states. In light of the foregoing, as applied to the facts of the present case,

the Court can find that, objectively, the present case's injunctive effects do indeed predominate over the monetary relief.  Accordingly, the present case is governed by Rule 23(b)(2), and <u>In re Mercury</u> is inapplicable.[12]

In any event, any concerns stemming from <u>In re Mercury</u> have, effectively, been mooted by the fact that the Center has now come forward and objected on behalf of all Class Members concerning the amount of fees requested by Plaintiffs' Counsel.  In other words, the crux of the Center's <u>In re Mercury</u> objection is that Class Members' due-process rights were violated because they were not afforded an adequate opportunity to review and—presumably—object to the Settlement's attorney-fee provision.  But the Center has come to their rescue in this respect and objected on their behalf, thereby rectifying this dilemma.  <u>See</u> <u>In re U.S. Bancorp Litig.</u>, 291 F.3d 1035 (8th Cir. 2002) ("We find due process was satisfied.  All objectors had an opportunity to be heard at the settlement hearing, and the intervenors raised their objections to the fee amount both at the hearing and in writing.  <u>See</u> <u>Goldberg v. Kelly</u>, 397 U.S. 254, 267 [] (1970) (fundamental requisite of due process of law is opportunity to be heard); <u>DeBoer v. Mellon Mortgage Co.</u>, 64 F.3d 1171, 1176 (8th Cir. 1995) [] (due process satisfied where class members received notice of settlement proposal and were able to argue their objections to district court), <em>cert. denied</em>, 517 U.S. 1156, [] (1996).").  Because any objections to the amount of fees has now been heard, the Center's concerns have necessarily been alleviated.

### IV.   *Conclusion.*

It is respectfully submitted that this Court award Class Counsel $1,771,250 for attorneys' fees and reimburse its costs in the amount of $44,047.


DATED:  May 31, 2011          HARRIS & RUBLE / PERRIN F. DISNER
                                                        /s/
                                              Alan Harris, David Zelenski, Perrin F. Disner

---

[12] Furthermore, the detailed notice requirements in <u>In re Mercury</u> are intended for large, security class actions filed *after* the date of that decision.