1  Edward A. Klein, Esq. (SBN: 145736)
   Heather H. Gilhooly, Esq. (SBN: 198911)
2    hgilhooly@linerlaw.com
   LINER GRODE STEIN YANKELEVITZ
3  SUNSHINE REGENSTREIF & TAYLOR LLP
   1100 Glendon Avenue, 14th Floor
4  Los Angeles, California 90024-3503
   Tel:  (310) 500-3500; Fax:  (310) 500-3501
5
   James P. Tallon, Esq. (SBN: 154035)
6    jtallon@shearman.com
   Wayne Dale Collins, Esq. (pro hac vice)
7  SHEARMAN & STERLING LLP
   599 Lexington Avenue
8  New York, New York 10022-6069
   Tel: (212) 848-4000; Fax:  (212) 848-7179
9
   James F. Rittinger(pro hac vice)
10   jrittinger@ssbb.com
   Justin E. Klein (pro hac vice)
11 SATTERLEE STEPHENS BURKE & BURKE LLP
   230 Park Avenue, Suite 1130
12 New York, NY 10169
   Tel:  (212) 818-9200; Fax: (212) 818-9606
13
   Attorneys for Plaintiff
14 West Publishing Corporation

15 Bradley S. Phillips, Esq. (SBN: 85263)
   Stuart N. Senator, Esq. (SBN: 148009)
16   stuart.senator@mto.com
   MUNGER, TOLLES & OLSON LLP
17 355 South Grand Avenue
   Los Angeles, CA 90071-1560
18 Tel:  (213) 683-9100; Fax:  (213 687-3702

19 Attorneys for Defendant
   Kaplan, Inc.
20

21              **UNITED STATES DISTRICT COURT**

22              **CENTRAL DISTRICT OF CALIFORNIA**

23 STEPHEN STETSON, et al.,                )  Case No. CV 08-00810 R (Ex)
                                           )
24            Plaintiffs,                   )  **MEMORANDUM IN SUPPORT**
                                           )  **OF MOTION TO APPROVE**
25        vs.                               )  **SETTLEMENT AND IN**
                                           )  **RESPONSE TO OBJECTIONS**
26 WEST PUBLISHING CORPORATION,            )
   et al.,                                 )  Date:        June 20, 2011
27                                          )  Time:        11:00 a.m.
              Defendants.                   )  Courtroom:   8
28 _____)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

FACTS AND PROCEDURAL BACKGROUND ...................................................2

ARGUMENT ........................................................................................................5

1. The Alleged § 1 Market Division Claim Is Weaker Than The Analogous *Rodriguez* Claim. .........................................................5

2. The Alleged § 2 Claims Were Based on Dated, Isolated and Unrelated Events.......................................................................................7

3. The Class Benefits From Kaplan's Discount Certificates....................8

4. Other Factors Favor Approval of the Settlements..............................10

5. Dissemination of the Notice Was Consistent With Due Process ....................................................................................................13

6. The Class was Given Appropriate Notice of the Settlements .............14

7. The Use of a Claim Form Is Appropriate For The Cash Fund .........................................................................................................16

8. The Release Is Consistent With Law and Appropriate .......................17

9. Defendants' Conditional Agreement Regarding Class Counsel's Motion for Attorneys' Fees is Proper .................................18

CONCLUSION..................................................................................................20

1

## TABLE OF AUTHORITIES

2

## CASES

3   *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*, 108 F.3d 1147 (9th Cir. 1997) ................................................. 8

4

5   *In re Cement and Concrete Antitrust Litig.*, 817 F.2d 1435 (9th Cir. 1989) ........... 15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...................................... 18

6

*Hartless v. Clorox*, 2011 WL 197542 (S.D. Cal. Jan. 20, 2011) ............................. 18

7

*Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996) ....................................... 17

8

*In re Joint Briefing of Issues on Appeal From the Trans-Alaska Pipeline Liab. Fund,* 1995 WL 138573 (9th Cir. Mar. 24, 1995) ......................................... 17

9

10   *Knisley v. Network Assocs., Inc.*, 312 F.3d 1123 (9th Cir. 2002) ........................... 17

11   *Marshall v. Holiday Magic Inc.*, 550 F.2d 1173 (9th Cir. 1977) ............................ 15

12   *In re Mexican Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001) ................. 9, 10

13   *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421 (9th Cir.), *cert. denied,* 516 U.S. 987 (1995) ......................................................................................... 7

14

15   *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006) ............. 18

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ...................... *passim*

16

*Rodriguez v. West Publ'g Corp.,* 2007 WL 2827379 (C.D. Cal. Sept. 10, 2007) ....................................... 5-6, 7

17

18   *Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) ..................................................... 14

19   *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ................................................................................................................. 19

20

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................... 19

21

*Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ...................... 15, 16

22

*United States v. Syufy Enters.*, 903 F.2d 659 (9th Cir. 1990) .................................. 7

23

24

## STATUTES

25   Fed. R. Civ. P. 23(c)(2)(B) ................................................................................... 14

26

27

28

MEMORANDUM IN SUPPORT OF MOTION TO APPROVE SETTLEMENT AND IN RESPONSE TO OBJECTIONS

0031003/004/ 497509v01

1

## INTRODUCTION

2       This Court should approve the class-wide settlements agreed to by defendants

3   West Publishing Corp. ("West") and Kaplan, Inc. ("Kaplan") because they are fair,

4   reasonable, and adequate.  In light of the procedural and substantive challenges that

5   confront the class, as well as the change in market conditions since the *Rodriguez*

6   settlement, the relevant factors articulated in Ninth Circuit precedent favor approval.

7   *See, e.g., Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) ("[A]

8   district court may consider some or all of the following factors[:] the strength of

9   plaintiff's case; the risk, expense, complexity, and likely duration of further

10  litigation; the risk of maintaining class action status throughout the trial; the amount

11  offered in settlement; the extent of discovery completed, and the stage of the

12  proceedings; the experience and views of counsel; the presence of a governmental

13  participant; and the reaction of the class members to the proposed settlement.")

14  (citation and internal quotation marks omitted).

15      A small number of class members (the "Objectors") have submitted written

16  objections.  All of the big law firms in the United States are class members but none

17  of them has objected to any aspect of the settlements.  Some Objectors argue that the

18  settlements should be richer.  Additionally, certain Objectors advocate that the

19  settlements should not be approved based on miscellaneous procedural grounds.

20      The objections to the value of the settlements to class members are not well

21  taken.  For example, the objections overlook that the class not only did not prevail in

22  this case, but in fact, had their complaint dismissed by this Court in a decision that

23  the Ninth Circuit has not disturbed.  Even if the Ninth Circuit had reinstated the

24  complaint, the class faced meaningful litigation risk due especially to the state of the

25  market.  As the Court will recall, the settlement in Rodriguez included a requirement

26  that West and Kaplan terminate their co-marketing agreement.  For the majority of

27  the class period here, there was no co-marketing agreement.  Kaplan now offers full

28  service bar review in direct competition with West's Bar/Bri courses in states

Case No.  CV 08-00810 R (Ex)

MEMORANDUM IN SUPPORT OF MOTION TO APPROVE SETTLEMENT AND IN RESPONSE TO
OBJECTIONS

0031003/004/ 497509v01

1  comprising 80% of the bar-taking population.  It is an understatement to say that this

2  case was and would have been an uphill battle for plaintiffs.

3      Moreover, the various procedural objections made by class members lack

4  merit in light of Ninth Circuit precedent.  All the objections should be overruled and

5  the settlements approved.

6                    **FACTS AND PROCEDURAL BACKGROUND**

7      Plaintiffs filed their class-action complaint in this case on February 6, 2008.

8  They alleged (a) that defendants West Publishing Corp. ("West") and Kaplan, Inc.

9  ("Kaplan") entered into a co-marketing agreement involving an agreement to restrain

10  competition in the full-service bar review market in violation of Sherman Act § 1;

11  and (b) that West monopolized and conspired to monopolize that market in violation

12  of Sherman Act § 2.  Declaration of Heather H. Gilhooly dated June 13, 2011

13  ("Gilhooly Decl."), Ex. A, ¶¶ 92 – 111.  The complaint in this case was modeled on –

14  and indeed, was very nearly copied from -- the complaint in *Rodriguez v. West*

15  *Publishing Corp.*, CV 05-03222 R (C.D. Cal. Filed April 29, 2005) ("*Rodriguez*"),

16  which pleaded an identical § 1 claim against Kaplan and West and essentially the

17  same § 2 claims against West.  This Court approved a class settlement of *Rodriguez*

18  in September 2007.  The settlement included a requirement that the defendants' co-

19  marketing agreement be terminated.

20      On March 14, 2008, West moved to dismiss the *Stetson* complaint pursuant to

21  Fed. R. Civ. P. 12(b)(1) and (6).  Gilhooly Decl., Ex. B at 9 – 10, Docket Nos. 28,

22  30.  Kaplan joined the motions.  *Id.*, Docket No. 32.  This Court granted the motions

23  and dismissed the complaint on April 10, 2008.  *Id.*, Docket No. 49.  At the motion

24  hearing, the Court noted that plaintiffs' allegations "regarding the current state of the

25  market . . . cannot be squared with the provisions of the Rodriguez settlement

26  [which] removed allegedly significant barriers to entry" to the full-service bar review

27  market.  *Id.*, Ex. D at 4.  The Court was referring to the fact that the class in the

28  current case consists principally of persons who paid for Bar/Bri bar review courses

after the co-marketing agreement was expressly required to be terminated pursuant to the *Rodriguez* settlement.

Plaintiffs appealed.  *Id*., Ex. B, Docket No. 51.  After full briefing, a three-judge panel of Ninth Circuit judges heard oral argument on September 30, 2009.  Id., Ex. C at 8, Docket No. 40.  Ten days later, on October 9, 2009, the panel vacated submission of the appeal and ordered that the case be referred to the Ninth Circuit Mediation Office.  *Id*., Docket No. 41.  The Ninth Circuit did not disturb this Court's order dismissing the complaint.

The Ninth Circuit's Mediation Office promptly assigned a Circuit Mediator to the case, who organized an initial conference among the parties in late October 2009.  *Id*., Docket No. 43.  Subsequently, the mediator worked with the parties in multiple sessions over the ensuing year.  *Id*., Docket Nos. 44 – 55.  Ultimately, with the assistance of the Circuit Mediator, the parties stipulated that the case should be remanded to this Court for consideration of the settlements.  The Ninth Circuit approved that stipulation and remanded the case.  *Id*., at 9, Docket No. 57.

In brief, the settlements provide that, in exchange for releases, class members will get

- fully transferrable discount certificates – already provided to class members with the Notice – entitling the holder to a discount of up to $200 on qualifying Kaplan courses; and
- $5,285,000 cash, net of attorneys' fees, costs and settlement expenses, to be distributed to class members that submit valid claim forms, in proportion to the tuition paid by the class member and the number of valid claims submitted.

On March 21, 2011, this Court (a) conditionally certified the class; (b) preliminarily approved the settlement; (c) approved the proposed Notice, Summary Notice and notice program; (d) scheduled notice to the class, submission of objections, submission of requests for exclusion and the final fairness hearing; and

0031003/004/ 497509v01

(e) appointed class counsel. *Id*., Ex. B at 14, Docket No. 68.  Subsequently, the Settlement Administrator mailed Notices to over 177,000 individuals and multiple law firms that fell within the class definition.  Declaration of Markham Sherwood dated May 31, 2011 ("Markham Decl."), ¶4 (accompanying class counsel's moving papers).  In addition, the Settlement Administrator arranged for publication of the Summary Notice in *USA Today*, the *National Law Journal* and *Lawyers USA*.  *Id*., ¶ 5.  Finally, the Settlement Administrator established a toll-free phone service to answer question from class members and created an informational website, www.gilardi.com/barbrisettlement.  *Id*., ¶¶ 8 – 9.

Class members were notified that they had the option of excluding themselves with respect to the settlement as to Kaplan, the settlement as to West, or both.  As of June 10, 2011, the Settlement Administrator has received requests for exclusion from 107 class members.  Fifty-seven of these requests are requests for exclusion with respect to the settlement as to Kaplan only; seven are requests for exclusion with respect to the settlement as to West only.  Forty-three class members have requested to be excluded from the settlements entirely.

Defendants are aware of 60 written objections to the settlements.  Despite the fact that all of the major law firms in the United States are class members (because they pay for bar review courses for their new associates), none has filed an objection. One objection, filed by Jonathan Hutcheson, is said to have been electronically co-signed by 209 class members.  These signatures appear to have been gathered by the use of a website, barbrisettlementobjection.com, and social media sites (Twitter and Facebook).  Thirty of the 60 class members that submitted written objections did so to join an objection filed by Daniel Greenberg, who runs an office that specializes in objecting to class action settlements.  Six objecting class members are represented by counsel, who filed a written objection on their behalf.

**ARGUMENT**

The settlements confer meaningful value on class members. They were achieved following lengthy arms-length negotiations supervised by a Ninth Circuit Mediator. In light of the facts that (a) this Court dismissed the complaint in this case, in a ruling that has not been disturbed by the Ninth Circuit; and (b) West and Kaplan are now, and during much of the class period have been, offering general bar review courses in direct competition with each other (by contrast with the situation during the *Rodriguez* class period), the settlements are fair, reasonable and adequate and should be approved.

**1. The Alleged § 1 Market Division Claim Is Weaker Than The Analogous *Rodriguez* Claim.**

Plaintiffs' contention that West, through its division Bar/Bri, had agreed with Kaplan "to eliminate competition in the full-service bar review course market throughout the U.S.," Gilhooly Decl., Ex. A, ¶ 93, was flawed for multiple reasons. Chief among these reasons were (a) that this Court found that the settlement of *Rodriguez* meaningfully affected the "full-service bar review course market" because that settlement required that Bar/Bri and Kaplan terminate their co-marketing agreement; and (b) the indisputable facts are that Bar/Bri and Kaplan have been engaged in vigorous competition throughout much of the class period.

The Court will recall that the *Rodriguez* settlement provided that (a) a 1997 Bar/Bri – Kaplan co-marketing agreement that was the focus of *Rodriguez* would be "terminated forthwith;" and (b) Bar/Bri would change its student enrollment form to make clear that law students were not contractually committed to take a Bar/Bri course after graduation just because they signed up with Bar/Bri early in law school. These provisions addressed key aspects of the *Rodriguez* complaint – the complaint upon which the complaint in this case was modeled. The *Rodriguez* plaintiffs had contended that the 1997 co-marketing agreement "allowed Bar/Bri to maintain a monopoly and Defendants [to] divide the market." *Rodriguez v. West Publ'g Corp.*,

Case No. CV 08-00810 R (Ex)

MEMORANDUM IN SUPPORT OF MOTION TO APPROVE SETTLEMENT AND IN RESPONSE TO OBJECTIONS

0031003/004/ 497509v01

2007 WL 2827379 at *5 (C.D. Cal. Sept. 10, 2007) (Real, J.). The *Rodriguez* plaintiffs had also advocated that Bar/Bri "locked up" law students early in their law school careers, thus erecting a "significant barrier to entry into the market by competitors." Id. at *12. The Court therefore found that terminating the 1997 co-marketing agreement and amending the enrollment form had meaningful impact on the market for full-service bar review courses. *See Rodriguez v. West Publishing Corp.*, No. CV 05-3222 R, Findings of Fact and Conclusions of Law, ¶ 123 (C.D. Cal. Sept. 10, 2007) (rejecting the argument that the *Rodriguez* settlement does not "encourage competitors into the market, require BAR/BRI to lower its prices, or require Defendants to enter each other's market") (copy attached as Ex. C to Gilhooly Decl.).

Moreover, it is factually indisputable that Kaplan and Bar/Bri compete in the full-service bar review course market and have been doing so for the bulk of the class period. The Court may recall that, even before it approved the *Rodriguez* settlement, Kaplan acquired PMBR, a national provider of test preparation courses for the Multistate Bar Exam, in October 2006. Declaration of Jeremy Singer, filed June 13, 2011 ("Singer Decl."), ¶ 4. Buying PMBR was just the first stage of Kaplan's competition with Bar/Bri because, following that acquisition, Kaplan began to roll out full-service bar review courses in the largest states. Thereafter, Kaplan has continued to grow its business by introducing full-service bar review courses in multiple additional states and also by offering specialty courses for international law students and lawyers. Singer Decl., ¶ 5.

In light of the market impact that this Court found from the *Rodriguez* settlement and the fact that Kaplan competes with Bar/Bri, the allegations of plaintiffs' § 1 claim in this case were untenable. Indeed, the central tenet of plaintiffs' § 1 claim, that West and Kaplan had a "secret" agreement "to eliminate competition in the full-service bar review course market throughout the U.S.," Complaint, ¶ 93, was unproveable. At best, the class was in the position of having to

6

Case No. CV 08-00810 R (Ex)

1   argue that the terminated 1997 co-marketing agreement between Kaplan and Bar/Bri

2   had a continuing effect on the market, notwithstanding fundamentally changed

3   market conditions.  Defendants believe that such a theory would not have prevailed

4   factually, legally or economically.  Put another way, plaintiffs' § 1 claim was a

5   shambles.  The value conferred on the class by Kaplan and West is meaningful,

6   particularly in light of the significant risk faced by the class that they would not have

7   prevailed on their § 1 theory in the district court, assuming that the Ninth Circuit

8   would have given them that opportunity.

9        **2.    The Alleged § 2 Claims Were Based on Dated, Isolated and**

10            **Unrelated Events**.

11       In addition to their § 1 claim, plaintiffs also asserted claims, against West

12   alone, that Bar/Bri had monopolized and conspired to monopolize the full-service bar

13   review market.  These claims also suffered from failure to recognize the impact of

14   the *Rodriguez* settlement which, as this Court observed, eliminated a significant

15   barrier to entry.  *Rodriguez*, 2007 WL 2827379, at *12.

16       It has always been West's view that the bar review market[1] is characterized by

17   low or no barriers to entry, in the absence of which Bar/Bri could not wield

18   monopoly power.  Bar/Bri would have submitted fact and expert evidence at trial that

19   there are no barriers to entry into the bar review business.  Source materials, faculty

20   and means to communicate with consumers – particularly in the Internet age – are

21   not scarce; entry barriers are low or non-existent.  *See Rebel Oil Co. v. Atl. Richfield*

22   *Co*., 51 F.3d 1421, 1439 (9th Cir. 1995), *cert. denied*, 516 U.S. 987 (1995).  Thus,

23   any market share advantage held by Bar/Bri legally is insignificant in light of the

24   disciplinary risk of new entry on Bar/Bri's ability to raise prices.  *United States v.*

25   *Syufy Enters.*, 903 F.2d 659 (9th Cir. 1990).  The Ninth Circuit said as much when it

26

27   [1]    It is West's position that there is not a single "national" bar review market, but

28   rather, that markets are local, based on demand for admission to the bar in particular
    states.

1  held, in *American Professional Testing Service, Inc. v. Harcourt Brace Jovanovich*
2  *Legal & Professional Publications, Inc*., that Bar/Bri's market share was insufficient
3  to establish monopoly power absent evidence of barriers to new entry or expansion.
4  108 F.3d 1147, 1154 (9th Cir. 1997) (noting that "the existence of 29 bar review
5  courses in California suggests that any barriers to entry may not be that significant").
6      Factually, plaintiffs' monopolization allegations are based on a disparate series
7  of alleged market allocation agreements between Bar/Bri and others that are widely
8  separated in time and geography.  Most such alleged agreements are quite dated and
9  are specific to a particular locale, such as a state or even an individual law school.
10 Plaintiffs concede the lack of a basis for even assuming unlawful conduct on
11 Bar/Bri's part in many respects.  See, e.g., Complaint ¶¶ 36 (allegation that BRC
12 business shut down "without explanation;" no factual allegation that Bar/Bri caused
13 that result); 41 (allegation that Pieper restricts its business to New York but no
14 factual allegation that Bar/Bri did anything to cause that result); 37 (Becker
15 "inexplicably" terminated its plan to enter the bar review business; no factual
16 allegation that Bar/Bri caused that result); 38 – 39 (assuming an agreement between
17 PMBR and Bar/Bri); 68 – 69 (assuming an agreement between Lexis and Bar/Bri).
18 In no way do plaintiffs explain how such a mixed bag of dated, unrelated and
19 geographically isolated events could have national effect during the class period.
20 Nor do they account for the fact that Bar/Bri would proffer evidence that its success
21 is attributable to innovation and high-quality products and services.
22      In sum, it is far from certain that the class would have prevailed on their § 2
23 claims.  Consequently, the settlement as to West represents a fair compromise in
24 light of the risks to the class.
25      **3.    The Class Benefits From Kaplan's Discount Certificates**.
26      Certain of the Objectors have questioned the benefit of Kaplan's discount
27 certificates.  At the outset, it should be noted that there is a good reason for the
28 Kaplan portion of the settlements to provide discount certificates, not cash.  The

theory of plaintiffs' § 1 claim was that the alleged overcharges of class members arose from paying tuition for Bar/Bri's bar review courses.  Class members did not pay tuition to Kaplan.  Also, Kaplan was not a defendant with respect to, and Kaplan's conduct was not at issue in, plaintiffs' § 2 claims.  Therefore, according to plaintiffs' own theory, Kaplan has no money to return.

Furthermore, the certificates provide real value.  First, numerous law firms are class members and have received multiple certificates because they paid directly for the bar review courses of their new hires.  It is also anticipated that individual class members who themselves paid for Bar/Bri bar review courses but were ultimately reimbursed by their law firms will in many instances turn their certificates over to their law firms.  As the law firms continue to hire new law school graduates, they will have a continuing ability themselves to redeem the discount certificates.

Plaintiffs and Kaplan recognize of course that most individual class members whose employers have not directly or indirectly paid for their bar review course will not be in a position to redeem the Kaplan discount certificates for their own use.  But many will have friends or relatives to whom they can gift, sell or barter the discount certificates.  Moreover, those of test-taking age are extremely comfortable in the use of the Internet and in conducting secondary market transactions using services like eBay, craigslist, and the like.  Where, as here, discount certificates have a face value of up to $200, it is eminently reasonable to expect that a secondary market will develop for the certificates and class members will be able to realize real value for their Kaplan discount certificates.  Indeed, a respected marketing expert at USC has opined that a secondary market will develop for the Kaplan discount certificates in light of their significant face value, the fact that they can be transferred at face value, and other relevant factors.  *See* Declaration of Professor Dennis Rook In Support Of Plaintiffs' Motion For Final Approval Of Settlement, Doc. 80, filed May 31, 2011.

Thus, the Kaplan portion of the settlements is eminently reasonable in value.  *See, e.g., In re Mexican Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001)

(approving settlement, in part, because coupons were likely to be used by class members or transferred on a secondary market to others who would redeem them). Similar to the situation in the *Mexican Money Transfer Litigation*, "The coupons can be used throughout a 35-month period [here a 30 month period], and, because they are transferable, even class members who do not again use defendants' services may obtain some value (if not by selling them, the by giving them to relatives [or friends and colleagues]." *Id.* Moreover, Kaplan expects that in the normal course, there will be well more than enough demand for its courses for all of the discount certificates and more to be useable during the 30 month period in which the coupons will be valid. Singer Decl., ¶ 3. This, again in conjunction with the very significant face value of the discount certificates, also supports the expectation that a vibrant secondary market will develop for the Kaplan discount certificates.

### 4. Other Factors Favor Approval of the Settlements.

Ninth Circuit precedent teaches that district courts may consider a number of factors in assessing proposed class settlements. *Rodriguez*, 563 F.3d at 963. In this case, the factors favor approval.

A. *Strength of Plaintiffs' Case*. Defendants have already recounted that plaintiffs' case suffered from a number of serious flaws. Defendants would have exploited all these flaws and others had the case proceeded beyond the dismissal of the complaint. In any case, antitrust cases are difficult to prove as a general proposition. *Accord, Rodriguez*, 563 F.3d at 964. This particular case would have been especially difficult for the class.

B. *Amount Offered in Settlement*. Because the Court dismissed this case on motion before discovery, there is not a full record of expert discovery regarding plaintiffs' damage theories. That said, this Court is aware that, in *Rodriguez*, defendants' expert economist opined that, with respect to a larger class and a longer class period, closer in time to the alleged anticompetitive agreement, but with the same fact allegations, class damages in *Rodriguez* would not have exceeded $7

million.  *See Rodriguez v. West Publishing Corp.*, No. CV 05-3222 R, Findings of Fact and Conclusions of Law, ¶ 83; *Rodriguez v. West Publishing Corp.*, 563 F.3d at 964.  Thus, from the defense perspective, damages in this case would necessarily be less because of the shorter class period and also because of the changed market conditions during the bulk of the class period.  The total settlement value – discount certificates plus cash – fairly compensates the class.

Ultimately, courts in the Ninth Circuit have long deferred to the private consensual decision of the parties.  *Rodriguez*, 563 F.3d at 965.  Experienced counsel, assisted by a Ninth Circuit Mediator, concluded that the total settlement value contributed by West and by Kaplan was fair.  There is no evidence of collusion, fraud or overreaching.  Thus, this Court should conclude that the total value of the settlement is fair, reasonable and adequate.

C.  *Risk, Expense, Complexity and Likely Duration of Litigation*.  Plaintiffs filed their complaint over three years ago.  If the Court does not approve the settlements, then, pursuant to the terms of the remand order, the case would have to go back to the Ninth Circuit for decision regarding the appeal.  Needless to say, defendants believe that the Ninth Circuit would affirm this Court's decision dismissing the complaint.

But if the Ninth Circuit reinstated the complaint in whole or in part, that would mark the beginning of a period of further motion practice, the class certification process, fact discovery, expert discovery, summary judgment practice and trial (followed, potentially, by appeals).  At best, recovery would be years away, if plaintiffs prevailed.  Compensation today is, of course, better than compensation years from now, if at all.

D.  *Risk of Maintaining Class Action Status*.  Defendants have agreed to class certification for settlement purposes; but if the settlements are not approved, the parties' agreement to conditional certification would be rescinded.  If the Ninth Circuit thereafter reinstated the complaint in whole or in part, on remand plaintiffs

11

Case No.  CV 08-00810 R (Ex)
MEMORANDUM IN SUPPORT OF MOTION TO APPROVE SETTLEMENT AND IN RESPONSE TO OBJECTIONS
0031003/004/ 497509v01

1  would have to persuade the court that class certification is warranted.  The proposed

2  class here is fundamentally different from the class certified in *Rodriguez*.  Most of

3  the members of the proposed class here took the Bar/Bri full-service bar review

4  course in a state and at a time when Kaplan had a directly competing course; but

5  others did not.  A small number of the putative class members took the bar before

6  Kaplan and West terminated their co-marketing agreement, but most took the bar

7  after.

8      West has long maintained that the relevant markets are localized: bar review

9  courses are offered on a state-by-state basis, states are distinct geographic markets

10  and, due to the variations in state bar exams, there are different product markets.  *See*

11  *Rodriguez*, 563 F.3d at 966.  The localized nature of the markets has become all the

12  more apparent with Kaplan's roll-out of general bar review courses on a state-by-

13  state basis.  Additionally, plaintiffs' § 2 claims are characterized by a series of

14  geographically unique events as to which no national impact is discernable or

15  reasonably inferable.  Thus, class certification for purposes other than settlement

16  would be far from certain if this case proceeded.

17      E.   *State of Proceedings*.  This Court dismissed this case on the complaint;

18  there has been no discovery.  However, the *Stetson* lead class counsel Alan Harris

19  was given the key documents in the *Rodriguez* discovery record.  *See Rodriguez v.*

20  *West Publishing Corp.*, Case No. CV 05-03222 R (Mcx) (C.D. Cal.), Doc. # 385

21  (Stipulation).  In addition, class counsel were closely associated with the lawyer who

22  was the principal architect of the *Rodriguez* complaint and principal prosecutor of the

23  *Rodriguez* theories.  Thus, class counsel should have become well-informed about

24  the factual and legal bases (and gaps) underlying the complaint.

25      F.   *Reaction to the Proposed Settlement*.  Defendants are aware of 60

26  written objections to the settlement.  One written objection, filed by Jonathan

27  Hutcheson, is said to have been electronically co-signed by 209 class members (the

28  "Hutcheson" objection).  Thirty of the 60 class members that provided a written

1  objection did so to join an objection filed by Daniel Greenberg (the "Greenberg"

2  Objection).  Six objecting class members are represented by counsel, who filed a

3  written objection on their behalf (the "Baker" objection).

4       In the Court's evaluation of the objections, the Court should consider that the

5  class is made up of lawyers, who are comfortable making court filings.  The court

6  should also consider that there was a concerted Internet effort (*see*

7  www.barbrisettlementobjection.com) to drum up objections to the settlements.

8  Nevertheless, none of the big law firms that are class members have objected to any

9  aspect of the settlements and only a small fraction of the individual class members

10  have filed objections.  The inability of the Objectors to gather more objectors, even

11  having created a website specifically for this purpose and having and other modern

12  means of social networking and a class of lawyers, is striking and significant.

13       Approximately 45,000 class members (of roughly 184,496 total) have

14  submitted claim forms; it would have been an easy matter for these class members

15  also to submit objections if they thought the settlements were unfair.  The Court may

16  conclude that the class strongly favors the settlements, as less than 1% of the class

17  have objected and a significant percentage have submitted claim forms, signaling a

18  desire to participate in the coupon and cash benefits.

19       **5.    Dissemination of the Notice Was Consistent With Due Process**.

20       Certain objectors argue that notice was inadequate because some class

21  members did not receive notice at their current addresses.  Notices were mailed to

22  class members' at the addresses they had provided to Bar/Bri.  Objectors argue that

23  Notice should have been mailed to class members' addresses listed in state bar

24  registries and law school graduate databases instead.  Baker at 5; Hutcheson at 14.

25       These objections are without merit.  Notice squarely comported with the

26  requirements of Rule 23(b)(3).  For a class certified under Rule 23(b)(3), "the court

27  must direct to class members the best notice that is practicable under the

28  circumstances, including individual notice to all members who can be identified

1  through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Actual notice, however, is
2  not required. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). In this case,
3  Notice was sent by mail; summary notice was published in three newspapers; and the
4  Settlement Administrator created a toll-free telephone number and an informational
5  website.

6      The Settlement Administrator mailed the Notice to 177,203 individuals and to
7  multiple law firms based on data provided by West. Markham Decl., ¶ 4. About
8  12% of the mailings were returned as undeliverable, but the Settlement
9  Administrator obtained updated addresses for 73% of these and re-mailed Notice to
10 the affected class members. *Id.*, ¶7.

11     The addresses that West had were the addresses provided by class members,
12 usually when they enrolled in Bar/Bri courses. In some number of cases, class
13 members have moved and no longer reside at their law school or permanent
14 addresses. Objectors assert that Notice should have been mailed to class members'
15 current addresses, derived from state bar or law school records. But Objectors do not
16 note that obtaining current addresses in the manner they suggest would have required
17 labor, which would have resulted in charges against the common fund, thus reducing
18 the amount available for distribution to class members. In any case, perfect notice is
19 not required. In point of fact, only a relatively small fraction of Notices were
20 undeliverable, thus indicating that the mailed Notice reached class members.

21     **6.    The Class was Given Appropriate Notice of the Settlements**.

22     Some objectors argue that the Notice was inadequate because it failed to
23 apprise class members of certain information. Specifically, they contend that the
24 notice should have included the class size, attorneys' fees and expenses, and costs of
25 claims administration so that class members could measure their potential recovery.
26 *See* Johnson Objection at 4 (arguing that there should be a "liquidated amount that is
27 communicated to Class Members before they choose whether to opt out of the
28 settlement agreement; not a vague formula"); Baker at 2 (stating that the notice is

1  "substantively defective because it fails to provide class members…any means of

2  calculating or even estimating their individual recoveries").

3      The purpose of the notice is to inform class members of the settlement and

4  furnish them with an opportunity to object. In the Ninth Circuit, notice must

5  comport with the requirements articulated in *Torrisi v. Tuscon Elec. Power Co.*, 8

6  F.3d 1370 (9th Cir. 1993). In *Torrisi*, objectors argued that the notice failed to

7  satisfy due process requirements "because it did not contain enough information to

8  enable individual class members to calculate what they would get out of the

9  settlement." 8 F.3d at 1373–74. The Ninth Circuit ruled that, because the notice

10 clearly stated the aggregate amount of the settlement and the formula for computing

11 rewards to class members, the notice was adequate. *Id.* at 1374. *Torrisi* relied on the

12 Ninth Circuit's earlier decision in *Marshall v. Holiday Magic Inc.*, 550 F.2d 1173

13 (9th Cir. 1977), where objectors had made the same arguments. Noting that the

14 specific amount of awards to class members was "a matter of conjecture since it was

15 unknown how many class members would opt out or submit claims," the Marshall

16 court ruled that the notice in that case comported with due process. 550 F.2d at

17 1177-78. *See also In re Cement and Concrete Antitrust Litig.*, 817 F.2d 1435, 1440

18 (9th Cir. 1987) (stating that notice is "satisfactory if it 'generally describes the terms

19 of the settlement in sufficient detail to alert those with adverse viewpoints to

20 investigate and to come forward and be heard'") (citation omitted)).

21      Here, the notice contained in the Settlement meets and exceeds the *Torrisi*

22 standard. It provides all salient details of the settlement, information about the case,

23 and explains how class members can make a claim against the settlement fund. The

24 notice states that the West settlement fund amount is $5,285,000 and that West will

25 pay class members who submit claim forms based on a plan of allocation that the

26 Notice describes. It also states that Kaplan will provide a Discount Certificate to

27 each class member, and describes the terms of the discount and when it may be used.

28 The notice explains that the settlement, if approved by the court, will resolve this

0031003/004/ 497509v01

case and describes the release to be provided by the class.  The notice sets forth the attorneys fees that may be requested in relation to both the West and Kaplan portions of the settlement.  The notice explains that class members must fill out the attached claim form and return it to the claims administrator by May 30, 2011 in order to participate in the settlement.  It also lays out class members' options under the settlement agreement – to receive both a cash payment and a discount certificate, to receive only one or the other, or to be excluded from the settlement entirely.  The notice carefully details the release that defendants receive under the settlement agreement and the types of conduct that are being released.

The notice explains the plan of allocation of the cash portion of the settlements.  The formula is based on the amount of the settlement fund, the deduction of attorneys' fees and costs, the number of claims received and the amount paid by each class member who submits a claim.  It is, of course, impossible to offer a precise figure of individual recovery in the notice of settlement.  The amount of recovery for each class member can only be determined after all claim forms are received.  This fact does not render the notice defective.  *See Torrisi*, 8 F.3d at 1374 (stating that notice is adequate even where class members' "potential recovery was 'a matter of conjecture since it was unknown how many class members would opt out or submit claims'") (citation omitted)).  Despite the objectors' arguments, class members were given the most specific information available at the time notice was sent to make an informed decision about the settlements.

### 7.    The Use of a Claim Form Is Appropriate For The Cash Fund.

Other objectors argue that use of a claim form as a predicate to payment of a portion of the common fund puts "needless barriers" in the way of their recovery.  Hutcheson at 21.  Specifically, they argue that the claim form was used so that "the burden falls on the class to fulfill the requirements decided by class counsel," making it more difficult for class members to receive recovery.  *Id*. at 20.

These objections are misplaced and unsupported by law.  The objectors have not provided any authority to support their argument that the use of a claim form is inappropriate.  To the contrary, claim forms have been approved in the Ninth Circuit as a way of identifying class members.  *See Rodriguez*, 563 F.3d at 986; *Knisley v. Network Assocs., Inc*., 312 F.3d 1123, 1125 (9th Cir. 2002); *Hilao v. Estate of Marcos*, 103 F.3d 767, 772 (9th Cir. 1996).   The Ninth Circuit affirmatively approved a similar procedure in *In re Joint Briefing of Issues on Appeal From the Trans-Alaska Pipeline Liability Fund*, 1995 WL 138573, at *1-2 (9th Cir. 1995), a class action suit against Exxon after the Exxon Valdez caused a massive oil spill in Alaska.  Certain claimants argued that defendants "imposed an unlawfully onerous burden on them by requiring each claimant to fill out a form listing individual losses." *Id*. at *2.  The Ninth Circuit rejected claimants' arguments as meritless. *Id.* The court stated that "claimants cite no authority, and we have found none, that would support the contention that it was unlawful for the Fund to require anyone who wished to recover money from the Fund to fill out a form listing his or her claimed loss." *Id.*

The Kaplan certificates were sent out with the class notice.  No claim form is required for class members to obtain the benefit of the certificates.

### 8. The Release Is Consistent With Law and Appropriate.

Some objectors argue that the release is too broad.  They contend that class members are giving up too much by agreeing to release the "litany" of claims in the complaint and causes of action based on the allegations of the complaint.  Hutcheson at 18-20.  They also assert that "several members of the class" who have paid for a bar review course but not yet taken it "are forced to give up their rights to contest a failure of Bar/Bri to perform as it has promised in the future."  Hutcheson at 19.

With respect to the objection that class members are giving up the claims alleged in the complaint, it is common, accepted practice to release all such claims and causes of action based on the allegations of the complaint.  To do otherwise

1   would be to fail to achieve a resolution of the case, resulting in additional

2   consumption of judicial resources.

3           It is not clear which "several members" of the class are referred to in the

4   relevant objection.  In any case, the release does not by its terms release claims that

5   have not yet accrued, such as "a failure of Bar/Bri to perform as it has promised in

6   the future."

7           The release is proportionate to the conduct challenged in the complaint and the

8   settlement afforded to plaintiffs.  The release is the consideration that defendants get

9   out of this settlement bargain – the right to be free from future claims based on the

10  same set of facts and circumstances.  The weight of authority in the Ninth Circuit

11  "holds that a federal court may release not only those claims alleged in the

12  complaint, but also a claim 'based on the identical factual predicate as that

13  underlying the claims in the settled action.'"  *Reyn's Pasta Bella, LLC v. Visa USA*,

14  *Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (quoting *Class Plaintiffs v. City of Seattle*,

15  955 F.2d 1268, 1287-88 (9th Cir. 1992)).

16          **9.      Defendants' Conditional Agreement Regarding Class Counsel's**

17                  **Motion for Attorneys' Fees is Proper.**

18          Defendants have agreed not to oppose class counsel's requests for attorneys'

19  fees so long as the requests do not exceed a stated level.  Objectors argue that the

20  pertinent provisions of the Stipulation and Settlement Agreement are suspect.

21  Greenberg at 20.  In addition, these Objectors assert that it is inappropriate that, if the

22  Court awards less than $450,000 with respect to the Kaplan portion of the

23  settlements, the class does not benefit because no money "reverts" to the class.

24          These objections lack merit.  First, Objectors fail to cite relevant authority in

25  this Circuit that "clear sailing" provisions "are routinely accepted in both the federal

26  and California courts."  *Hartless v. Clorox*, 2011 WL 197542, at *13 n.6 (S.D.Cal.

27  Jan. 20, 2011).  Second, in this Circuit, the benchmark for fee awards payable from a

28  common fund is 25%.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir.

1998); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Indeed, in *Rodriguez*, the Ninth Circuit specifically noted that a "clear sailing" provision of up to 25% of the common fund did "not signal the possibility of collusion because, by agreeing to a sum certain, West and Kaplan were acting consistently with their own interests in minimizing liability." 563 F.3d at 961 n.5. It follows, therefore, that the challenged provisions of the settlements are not suspect.

In any event, the issue of class counsel's fees is separate and distinct from the settlement; approval is not dependent on the approval of the attorneys' fees request. As the Ninth Circuit observed in *Staton v. Boeing Co.*:

> the parties may negotiate and agree to the value of a common fund (which will ordinarily include an amount representing an estimated hypothetical award of statutory fees) and provide that, subsequently, class counsel will apply to the court for an award from the fund, using common fund fee principles. In those circumstances, the agreement as a whole does not stand or fall on the amount of the fees.

327 F.3d 938 (9th Cir. 2003). The settlements do not stand or fall based on the on the court's ruling regarding class counsel's fees.

Finally, objectors are wrong to speak of some portion of the $450,000 maximum fee award with respect to the Kaplan portion of the settlements in terms of whether it "revert[s]" to Kaplan. The Kaplan portion of the settlements does not include a common fund. Instead, Kaplan has simply agreed to pay class counsel's attorney's fees up to a stated maximum. There is no money to "revert" or not to "revert." Kaplan will simply pay whatever the Court awards, up to the referenced maximum amount. Objectors have cited no authority questioning the appropriateness of this straightforward arrangement for a settlement that does not involve a common fund.

## CONCLUSION

None of the proffered objections should give this Court hesitation to approve the Stipulation and Settlement Agreement.  As set forth above, the settlements are fair, adequate, and reasonable in all respects and to all concerned parties.


Dated:  June 13, 2011                      SHEARMAN & STERLING LLP

                                           James P. Tallon
                                           Wayne Dale Collins

                                           LINER GRODE STEIN YANKELEVITZ
                                           SUNSHINE REGENSTREIF & TAYLOR
                                           LLP

                                           Edward A. Klein
                                           Heather H. Gilhooly

                                           SATTERLEE STEPHENS BURKE &
                                           BURKE LLP

                                           James F. Rittinger



                                           By:  _____/S/_____
                                                    Heather H. Gilhooly
                                           Attorneys for Defendant West Publishing
                                           Corporation


                                           MUNGER, TOLLES & OLSON LLP


                                           Bradley S. Phillips
                                           Stuart N. Senator



                                           By:  _____/S/_____
                                                    Stuart N. Senator*
                                           *By Heather H. Gilhooly with express email
                                           authorization

                                           Attorneys for Defendant Kaplan, Inc.

                                           (Each of the respective defendants joins in this
                                           brief with respect to the aspects of the brief
                                           that apply to it.)