Alan Harris (SBN 146079)
David Zelenski (SBN 231768)
HARRIS & RUBLE
6424 Santa Monica Boulevard
Los Angeles, California 90038
Telephone: (323) 962-3777
Facsimile: (323) 962-3004
aharris@harrisandruble.com
dzelenski@harrisandruble.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN STETSON, SHANE LAVIGNE, CHRISTINE LEIGH BROWN-ROBERTS, VALENTIN YURI KARPENKO, and JAKE JEREMIAH FATHY, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>WEST PUBLISHING CORPORATION, a Minnesota corporation dba BAR/BRI, and KAPLAN, INC.,<br><br>        Defendants. | Case No. CV-08-00810 R (Ex)<br><br>**PLAINTIFFS' RESPONSE TO OBJECTIONS TO CLASS-ACTION SETTLEMENT**<br><br>Date: June 20, 2011<br>Time: 11:00 a.m.<br>Courtroom: 8<br><br>*Assigned to Hon. Manuel L. Real* |

# *TABLE OF CONTENTS*

I. Introduction ........................................................................................................... 1

II. The Objections Should Be Overruled ................................................................. 2

    A. *Fewer than One Percent of the Class Has Objected to the Settlement* ........................................................................................... 2

    B. *Objections Concerning Late-Submitted Claim Forms* ................................ 3

    C. *The Objection Submitted by the "Center for Class Action Fairness" Is the Same* Pro Forma *Objection Filed by the Center in Opposition to Previous Class-Action Settlements* ......................................... 4

    D. *The Center's Objection Fails on the Merits* ...................................... 6

III. Conclusion ........................................................................................................ 12

# *TABLE OF AUTHORITIES*

*Cases*

DeBoer v. Mellon Mortgage Co.
   64 F.3d 1171 (8th Cir. 1995) .................................................................................. 11

Dukes v. Walmart Stores, Inc.
   603 F.3d 571 (9th Cir. 2010) ........................................................................... 10, 11

Goldberg v. Kelly
   397 U.S. 254 (1970) ................................................................................................ 11

In re Mercury Interactive Corp. Secs. Litig.
   618 F.3d 988 (9th Cir. 2010) .................................................................................. 10

In re U.S. Bancorp Litig.
   291 F.3d 1035 (8th Cir. 2002) ................................................................................ 11

Pettway v. Am. Cast Iron Pipe Co.
   576 F.2d 1157 (5th Cir. 1978) .................................................................................. 3

Probe v. State Teachers' Ret. Sys.
   780 F.2d 776 (9th Cir. 1985) .................................................................................. 10

Staton v. Boeing
   327 F.3d 938 (9th Cir. 2003) ............................................................................. 9, 10

Wang v. Chinese Daily News, Inc.
   623 F.3d 743 (9th Cir. 2010) .................................................................................. 11

*Statutes*

28 U.S.C. § 1712 ........................................................................................................ 5, 6, 9

*Rules*

Fed. R. Civ. P. 23 .......................................................................................... 1, 4, 5, 10, 11

## I. Introduction.

The objections to the settlements with Defendants West Publishing Corporation ("West") and Kaplan, Inc. ("Kaplan"), as well as to the award of fees and costs to Plaintiffs' counsel, are without merit and should be overruled. Plaintiffs respectfully reiterate their request that this Court grant final approval of the $5,285,000 cash settlement with West and the valuable Discount Certificate settlement with Kaplan (collectively, the two settlements are referred to hereinafter as the "Settlement"). As explained in Plaintiffs' May 31, 2011, moving papers, the Settlement meets the "fair, reasonable, and adequate" standard of Federal Rule of Civil Procedure 23, and the requested fees are supported by the loadstar crosscheck. Accordingly, the Settlement should be granted final approval, payments should be mailed to participating Class Members, the Discount Certificates should be activated, and the requested fees and costs should be awarded.

Significantly, the Class consists not only of law-school graduates, but of hundreds of law firms that paid for full-service bar-review courses on behalf of newly hired associates. In this regard, it is striking that, of all the major law firms, *not a single one* has filed an objection, whether to the West cash settlement or to the Kaplan Discount Certificate settlement. (June 13, 2011, Decl. of Alan Harris in Supp. of Pls.' Resp. to Objections to Class-Action Settlement ("June 13, 2011, Harris Decl.") ¶ 3.) The participation by law firms in this Settlement is particularly significant, given that many received hundreds of Discount Certificates, all of which will likely be redeemed at some point in the future.[1] (June 13, 2011, Harris Decl. ¶ 3.) This, in turn, benefits both the

---

[1] If the Certificates were truly "worthless" or had a "negative value," as claimed by certain Objectors, it stands to reason that at least one firm would have objected to the Discount Certificate portion of the Settlement. As it stands, however, no such objections have been filed. (June 13, 2011, Harris Decl. ¶ 3.) Accordingly, the Court is left principally with the objections advanced by the "Center for Class Action Fairness"—an institution that, as explained below, has filed the substantially similar—if not identical, save for some "tweaks"—*objections* in response to other class-wide settlements. (See June 13, 2011, Req. for Judicial Notice in Supp. of Pls.' Resp. to Objections to Class-Action Settlement ("June 13, 2011, Req. for Judicial Notice") Exs. 1–2.) These objections, as also explained below, are without merit and should be denied.

Class Member firms themselves *and* the full-service bar-review-course market as a whole, as law firms will now have an obvious economic incentive to begin prospectively purchasing Kaplan courses rather than those offered by West, fostering competition in an industry that previously had none.  Put differently, participating Class Member firms, which have previously paid thousands of dollars for courses in the past, will be back in the market for the indefinite future, again paying for thousands of dollars for additional courses—this time to Kaplan, not West.  *The Settlement, in other words, encourages exactly the kind of competitive behavior the antitrust laws were designed to protect*.  It should therefore be approved.

## II.     *The Objections Should Be Overruled.*

### A.     *Fewer than One Percent of the Class Has Objected to the Settlement.*

As noted by West and Kaplan in their Memorandum in Support of Motion to Approve Settlement and in Response to Objections,[2] fewer than 1% of the Class has objected to the Settlement.[3]  (June 13, 2011, West and Kaplan's Mem. in Supp. of Mot. to Approve Settlement and in Resp. to Objections at 12:25–18.)  Again, this is particularly striking, given that the Class consists of attorneys who are, no doubt, experienced with making court filings.  It is also particularly striking given the overwhelming Internet effort made to mobilize objections to the Settlement.  (See June 13, 2011, Harris Decl. Exs. 1 (printout from the www.barbrisettlementobjection.com website seeking individuals to join in objecting to the Settlement), 2 (printout from the "Center for Class Action Fairness' website encouraging Class Members to object to the Settlement).)  Compare, e.g., Pettway v. Am. Cast Iron Pipe Co., 576 F.2d 1157, 1216–17 (5th Cir.

---

[2] Plaintiffs join in West and Kaplan's arguments, and hereby incorporate them by reference.  (See generally June 13, 2011, West and Kaplan's Mem. in Supp. of Mot. to Approve Settlement and in Resp. to Objections.)  In the interest of judicial economy, Plaintiffs will not repeat the arguments made by West and Kaplan in their recent filing.

[3] The total number of objecting Class Member is actually less than 0.15%.  (See June 13, 2011, Harris Decl. ¶ 4.)  Moreover, if the objections filed by the Center for Class Action Fairness and by Jonathan Hutcheson are each counted only once (as thirty Class Members joined in the objection filed by the Center for Class Action Fairness and as Mr. Hutcheson purported to file his objection on behalf of 209 Class Members), the number falls to approximately 0.03%.  (June 13, 2011, Harris Decl. ¶ 4.)

1978) (refusing to approve a settlement opposed by 70% of the settlement class and all of the active named plaintiffs). This is an outstanding outcome that speaks volumes as to the Settlement's fairness, and it should therefore be approved so that participating Class Members can begin to share in its benefits.

### B. Objections Concerning Late-Submitted Claim Forms.

Plaintiffs have conferred with counsel for both West and Kaplan, and the parties are in agreement that *all* Claim Forms submitted by Class Members prior to the final-approval hearing should be processed for payment. (June 13, 2011, Harris Decl. ¶ 2.) According to the Claims Administrator, approximately 46,440 Class Members have submitted timely Claim Forms. (June 13, 2011, Harris Decl. ¶ 2.) To date, approximately 1,355 late Claim Forms have also been submitted. (June 13, 2011, Harris Decl. ¶ 2.) The parties respectfully request that any and all Claim Forms with postmarks dated through June 19, 2011, be allowed.[4] If all such Claim Forms are processed, approximately 26% of the Class will have elected to participate—a response rate that *exceeds* that in connection with this Court's earlier approval of the settlement in Rodriguez v. West Publishing Corp., C.D. Cal. Case No. CV 05-3222 R. (E.g., May 31, 2011, Decl. of Alan Harris in Supp. of Mots. for Final Approval of Class-Action Settlement and Award of Att'ys Fees and Reimbursement of Costs ("May 31, 2011, Harris Decl") ¶ 14 (comparing the above-captioned Settlement with those in two earlier cases concerning bar-review courses, including the settlement reached in Rodriguez).) Plaintiffs submit that processing Claim Forms through June 19, 2011, moots those objections contending that Class Members had insufficient time to opt into the action.

/ / / / /

---

[4] The June 19, 2011, deadline has been chosen to shield against the potential "moral hazard" that would result were Class Members permitted to submit Claim Forms *after* the Court has had an opportunity to issue its final-approval order. In other words, the deadline should be set for a date prior to the hearing to protect against the information asymmetry that would arise were Class Members permitted to act knowing whether the Settlement has actually been approved.

    **C.**    ***The Objection Submitted by the "Center for Class Action Fairness" Is the Same Pro Forma Objection Filed by the Center in Opposition to Previous Class-Action Settlements.***

A review of the objection filed by the Center for Class Action Fairness ("Center") reveals that it is, in fact, a slightly modified version of various objections that have recently been filed in opposition to other class-wide settlements.  (<u>Compare</u> May 24, 2011, Center's Objection to Proposed Settlement (Center's objection to the above-captioned Settlement) <u>with</u> June 13, 2011, Req. for Judicial Notice Exs. 1 (Center's objection to <u>Sobel v. Hertz Corp.</u>, D. Nev. Case No. 06-CV-00545 LRH-RAM), 2 (Center's objection to <u>McDonough v. Toy "R" Us, Inc.</u>, E.D. Pa Case No. 06-CV-00242-AB).)  In point of fact, Plaintiffs submit that the following portions of the Center's objection herein are substantially the same as—if not *identical* cut-and-pastes of—earlier objections made by the Center in other, unrelated actions:

| *Objection to <u>Stetson</u>* | *Objection to <u>Sobel</u>* | *Objection to <u>McDonough</u>* |
|---|---|---|
| 1:26–3:22 ("Under Rule 23, Preventing an Unfair Settlement Is This Court's Duty") | 5:25–8:4 ("Under Rule 23, Preventing an Unfair Settlement Is This Court's Duty") | |
| 3:23–28 ("This Coupon Settlement Violates Federal Law and Promotes Poor Public Policy") | 8:6–14 ("This Coupon Settlement Violates Federal Law and Creates a Conflict Between the Class Attorneys and Their Clients") | |
| 4:1–5:9 ("This Settlement's 'Discount Certificates' Are Coupons") | 8:16–10:13 ("This Settlement's 'Certificates' Are Coupons") | |

| | *Objection to <u>Stetson</u>* | *Objection to <u>Sobel</u>* | *Objection to <u>McDonough</u>* |
|---|---|---|---|
| | 5:10–6:12, 7:12–22 ("As a Matter of Policy, Coupon Settlements Are Inherently Problematic") | 10:15–13:21 ("As a Matter of Policy, Coupon Settlements Are Inherently Problematic") | |
| | 8:7–9:28 ("As a Matter of Law, This Coupon Settlement's Fee Request Cannot Pass the Test of 28 U.S.C. § 1712") | 13:23–16:8 ("As a Matter of Law, This Settlement's Fee Request Cannot Pass the Test of 28 U.S.C. § 1712(a)") | |
| | 12:14–13:19 ("Class Counsel Should Not Collect a Commission on Notice") | | 4–8 ("Class Counsel Should Not Collect a Commission on Expenses or Administration") |
| | 13:20–14:27 ("Class Counsel Should Not Collect a Commission on Settlement Administration Expenses") | | 4–8 ("Class Counsel Should Not Collect a Commission on Expenses or Administration") |
| | 19:20–21:21 ("The 'Clear Sailing' Provisions Are Deficient Under Rule 23(a)(4)") | 22:4–16:14 ("The 'Clear Sailing' Provision Is Deficient Under Rule 23(a)(4)") | |
| | 21:22–24:6 ("The Court Should Discount Attempts by the Settling Parties to Infer Class Approval from a Low Number of | 26:16–29:21 ("The Court Should Discount Attempts by the Settling Parties to Infer Class Approval from a Low Number of | |

| *Objection to <u>Stetson</u>* | *Objection to <u>Sobel</u>* | *Objection to <u>McDonough</u>* |
|---|---|---|
| Objections") | Objections") | |

The cookie-cutter nature of the Center's objection should cast doubt not only the merits therein, but on the underlying reason for the objection, which seems to be to attack class actions in general. Indeed, as explained both in Plaintiffs' final-approval papers and in Kaplan's June 13, 2011, filing, Kaplan now offers full-service bar-review courses in most of the states—states that represent over 80% of the population. By agreeing to the Discount Certificate settlement, Kaplan has undertaken to continue this now-successful effort to become a real competitor, thereby changing the landscape of the market and providing the law firms and individuals in the Class with what is, in effect, substantial injunctive relief. Accordingly, the Center's objection should be denied.

### D. The Center's Objection Fails on the Merits.

The perfunctory nature of the Center's objection aside, it should also be overruled on the merits. The Center's implicit argument that Plaintiff's counsel is attempting to mislead the Court by claiming that the Discount Certificates are anything other than coupons, subject to the requirements of 28 U.S.C. § 1712 (May 24, 2011, Center's Objection to Proposed Settlement 10:25–12:9), is immediately put to rest by review of the relevant statute, which statute states that, "[i]f a proposed settlement in a class action provides for a recovery of coupons to class members . . . any attorney's fee award *shall be based upon the amount of time class counsel reasonably expended working on the action*."[5] 28 U.S.C. § 1712(b) (emphasis supplied).

The undersigned shares the concerns of the Center that "coupon settlements are inherently problematic." (May 24, 2011, Center's Objection at 12:10–11.) However, the Center ignores the unusual circumstances of this case. Here, as noted both above and in

---

[5] In an equally weak argument, the Center seems to admit that there is no authority for computing the percentage award from the West Settlement on a number that excludes costs and expenses incurred in connection with the case. (May 24, 2011, Center's Objection at 23:10–12 (stating that "this specific argument appears to be a question of first impression.").) This argument is addressed below.

Kaplan's June 13, 2011, filing, Kaplan is increasingly going into competition with West, and the use of Certificates—especially those many thousands of Certificates awarded to law-firm Class Members—will inevitably boost Kaplan's competitive posture, with a positive impact on both the quality and cost of bar-review courses.[6] (May 31, 2011, Decl. of Professor Dennis W. Rook in Supp. of Pls.' Mot. for Final Approval of Settlement ("May 31, 2011, Rook Decl.") ¶ 17.) Indeed, anecdotal evidence concerning law-firms Class Members that have asked their young attorneys to give them the Kaplan coupons while permitting them to keep the West cash strengthens the claim that the use of coupons in monopolization cases such as this has a great deal of merit. The Center's argument that, "in order to receive any direct benefit from the settlement, consumers must once again do business with the same company which plaintiffs allege originally overcharged them" (May 24, 2011, Center's Objection at 13:5–7) reveals the Center's lack of analysis here, *where Kaplan itself never overcharged anyone*. Class Members, after all, previously purchased from the monopolist West. The purpose of the coupons, in large part, is to encourage Class Members (and others) to purchase from the *new* entrant—Kaplan—helping to destroy the monopoly that gave rise to this case in the first place.

The Center also incorrectly asserts that the "Kaplan settlement offers coupons of an especially low value . . . because of the relatively minimal worth of additional educational offerings from Kaplan to the [C]lass." (May 24, 2011, Center's Objection at 13:13–15.) Again, the Center ignores the reality of the law-firm Class Members that

---

[6] Plaintiffs' final-approval papers stated that "7,293 [Notice Packets] were addressed to law firms that West indicated had paid for the full-service bar-review course." (May 31, 2011, Decl. of Markham Sherwood re Mailing of Notice to Class of Proposed Settlement of Class Action, Claim Form and Discount Certificates and Report on Reqs. for Exclusion and Objections Received ¶ 4.) In hindsight, Plaintiffs' counsel submits that this statement from the Claims Administrator is ambiguous, as it could be interpreted to mean that 7,293 *separate* law firms were provided Notice of the Settlement. Plaintiffs' counsel has since conferred with the Claims Administrator, who has revealed that approximately 455 separate institutions (e.g., law firms) received Notice of the Settlement. (Harris Decl. ¶ 3.) In other words, 7,293 Notice Packets were mailed to a total of 455 unique institutions, all of whom now have an incentive to use the Discount Certificates enclosed with the Notice. Plaintiffs' counsel apologizes for any ambiguity in the earlier filing.

have purchased bar-review courses in the past and that will do so, again, in the future. In addition, the Center ignores the reality that the individual Class Members have a large pool of spouses, relatives, friends, and neighbors to whom the coupons can be donated or sold for use to prepare for the bar examination or a myriad other purposes. (May 31, 2011, Rook Decl. ¶ 11.) While it remains to be seen whether the Center is correct that "these coupons are not worth anywhere near their face value" (May 24, 2011, Center's Objection at 15:6), the truth is that the face value is in excess of $37,000,000, not counting the *additional* value of establishing a strong competitor in the marketplace. Again, the ultimate value of the coupons need not approach the $37,000,000 face value for this Court to approve the Settlement.

As to the total value of the Settlement, the Center states that "one can derive the total value of the settlement fund by adding the value that the coupons actually provide to the [C]lass to the cash that attorneys and named [P]laintiffs will receive." (May 31, 2011, Center's Objection 16:13–15.) Here, the Settlement provides that Kaplan will provide $450,000 for attorney's fees and a total of $20,000 for five incentive awards of up to $4,000 each. The total Kaplan cash is therefore $470,000. Accordingly, if this Court finds that the coupons have a value of $1,330,000 or more, the requested award of $450,000 will be justified on the traditional twenty-five-percent-of-recovery theory. As established by the May 31, 2011, Rook Declaration, the coupon value is substantially in excess of $1,330,000.[7] (May 31, 2011, Rook Decl. ¶ 16.) Of course, the $659,316 lodestar is also greatly in excess of $450,000. (May 31, 2011, Harris Decl. ¶ 19.) This case in not one in which "counsel are awarded large fees, while leaving the class members with coupons or other awards of little or no value." (May 24, 2011, Center's Objection at 17:19–20].) Indeed, the amounts are in line with two earlier lawsuits involving BAR/BRI: the above-mentioned <u>Rodriguez</u> action (that was before this very Court) and <u>Park v. Thompson Corp.</u>, S.D.N.Y. Case No. 05 Civ. 2931 (WHP). (<u>See</u> May

---

[7] The Center acknowledges this conclusion: "If the coupons could reasonably deliver $1.35 million of value to the class . . . then a $450,000 fee award after redemptions would arguably be reasonable." (May 24, 2011, Center's Objection at 18:25–28.)

31, 2011, Harris Decl. ¶ 14 (describing the average recovery in both Rodriguez and Park).)

Simply put, the Center's argument that no fee award can be made on the Kaplan Settlement until the coupons are actually redeemed is based on an incorrect reading of CAFA. It is simply not true that the "calculation of attorney fees deriving from coupons *must* be controlled by the value that their redemption brings to the class"—that "the Act cannot be read to permit attorneys' fees deriving solely from coupon awards to be based on the amount of work class counsel has put into the settlement." (May 24, 2011, Center's Objection at 18:5–11 (emphasis supplied).) Again, the statute *expressly* provides that a coupon settlement may, as here, provide for a fee award "based upon the amount of time class counsel reasonably expended working on the action" and that "[n]othing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees." 28 U.S.C. § 1712(b). Indeed, this construction is explicitly acknowledged in the federal practice guide: "Where the attorney's fee is not determined by a percentage of coupons . . . [t]he fee shall be based on time reasonably expended . . . [a]n appropriate lodestar with a multiplier may be applied in determining the fee award." William W. Schwarzer, *et al.*, California Practice Guide: Federal Civil Procedure Before Trial ¶ 10:888.10 (The Rutter Group 2011).

The Center similarly misleads the Court with respect to its discussion concerning the exclusion of costs from the percentage recovery. In this regard, the Center itself admits that there is no authority for computing the percentage on a number that excludes costs and expenses incurred in connection with the case. (May 24, 2011, Center's Objection at 23:10–12.) In this case—in which every penny of the $5,285,000 is going to the benefit of the Class—the Center's "first impression" issue is hardly worthy of consideration, particularly since Class Counsel's out-of-pocket expenses are less than $45,000 (i.e., less than one percent of the West settlement fund) *and* the Center has utterly misrepresented the holding of Staton v. Boeing 327 F.3d 938 (9th Cir. 2003). In Staton, the problem, simply, was that there were *two* notices, which the Ninth Circuit

deemed "excessive" while simultaneously holding that standard notice was a "justifiable cost" paid by the defendant—a *benefit* to the class that *should be considered* in calculating attorney's fees. See Staton, 327 F.3d at 974–75.

Finally, contrary to the Center's contention, Class Counsel has not "induced" the Court to violate In re Mercury Interactive Corp. Securities Litigation, 618 F.3d 988 (9th Cir. 2010) (hereinafter, "In re Mercury"). The recent case of In re Lifelock, Inc., 2010 U.S. Dist. LEXIS 102612 (D. Ariz. Aug. 31, 2010), *expressly excludes* class actions certified under Federal Rule of Civil Procedure 23(b)(2) from the new In re Mercury standard (as opposed to cases certified under Rule 23(b)(3), like In re Mercury). In the above-captioned matter, the Preliminary Approval Order states that, "pursuant to Rule 23 of the Federal Rules of Civil Procedure, the following Class is conditionally certified" (Mar. 21, 2011, Preliminary Approval Order ¶ 4). The Court nowhere stated that it was certifying the matter exclusively under subsection (b)(3). As in Lifelock, "certification pursuant to Rule 23(b)(2) is appropriate herein because the Class Members' claims for injunctive relief predominate over their damage requests." In re Lifelock, Inc., 2010 U.S. Dist. LEXIS 102612 at *12–13 (citing Dukes v. Walmart Stores, Inc., 603 F.3d 571, 617 (9th Cir. 2010)).

The Ninth Circuit has recognized that "class actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary damages." Probe v. State Teachers' Ret. Sys., 780 F.2d 776, 780 (9th Cir. 1985). More recently, the Ninth Circuit has recognized that, so long as claims for damages in a putative class action do not "predominate" over claims for injunctive relief, the action can and should be certified under Rule 23(b)(2) regardless of what the plaintiff's subjective intent was in bringing the lawsuit. Dukes, 603 F.3d at 615–17. The Ninth Circuit has also rejected the requirement in other circuits that requests for monetary damages be merely "incidental" to the injunctive relief. Id.

Instead of focusing on a plaintiff's subjective-intent or whether the class-wide monetary claims are incidental to the demand for injunctive relief, the "predominance"

1  test looks at "the objective 'effect of the relief' sought." Id. at 617. In applying the
2  Dukes test, the Ninth Circuit recently noted that a "'[d]efendant's future compliance with
3  the law may be more valuable to the class than the present claims for [damages].'" Wang
4  v. Chinese Daily News, Inc., 623 F.3d 743, 754 (9th Cir. 2010).

Here, again, Plaintiffs' counsel's dogged pursuit of justice eventually caused Kaplan to create its own bar-review course in competition with former co-conspirator West, and then Plaintiffs' counsel's close scrutiny motivated Kaplan to quickly expand its bar-review offering from three initial states to—as of the date of this Motion—the twenty-six most-populous states. In light of the foregoing, as applied to the facts of the present case, the Court can find that, objectively, the present case's injunctive effects do indeed predominate over the monetary relief. Accordingly, the present case is governed by Rule 23(b)(2), and In re Mercury is inapplicable.

In any event, any concerns stemming from In re Mercury have, effectively, been mooted by the fact that the Center has now come forward and objected on behalf of all Class Members concerning the amount of fees requested by Plaintiffs' counsel. In other words, the crux of the Center's In re Mercury objection is that Class Members' due-process rights were violated because they were not afforded an adequate opportunity to review and—presumably—object to the Settlement's attorney-fee provision. *But the Center has come to their rescue in this respect and objected on their behalf, thereby rectifying this dilemma.* See In re U.S. Bancorp Litig., 291 F.3d 1035 (8th Cir. 2002) ("We find due process was satisfied. All objectors had an opportunity to be heard at the settlement hearing, and the intervenors raised their objections to the fee amount both at the hearing and in writing. See Goldberg v. Kelly, 397 U.S. 254, 267 [] (1970) (fundamental requisite of due process of law is opportunity to be heard); DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1176 (8th Cir. 1995) [] (due process satisfied where class members received notice of settlement proposal and were able to argue their objections to district court), *cert. denied*, 517 U.S. 1156, [] (1996)."). Because any objections to the amount of fees has now been heard, the Center's concerns have

necessarily been alleviated.

### III. Conclusion.

For the foregoing reasons, the Court should conclude that the Settlement is fair, reasonable, and adequate; it should overrule all submitted objections; it should approve the Settlement in its entirety; and it should grant the requested fees and expenses.

DATED: June 13, 2011

HARRIS & RUBLE
PERRIN F. DISNER

/s/
Alan Harris
David Zelenski
Perrin F. Disner
*Attorneys for Plaintiffs*