Alan Harris (SBN 146079)
David Zelenski (SBN 231768)
HARRIS & RUBLE
6424 Santa Monica Boulevard
Los Angeles, California 90038
Telephone:  (323) 962-3777
Facsimile:  (323) 962-3004
aharris@harrisandruble.com
dzelenski@harrisandruble.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN STETSON, SHANE LAVIGNE, CHRISTINE LEIGH BROWN-ROBERTS, VALENTIN YURI KARPENKO, and JAKE JEREMIAH FATHY, individually and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br><br>   v.<br><br>WEST PUBLISHING CORPORATION, a Minnesota corporation dba BAR/BRI, and KAPLAN, INC.,<br><br>           Defendants. | Case No. CV-08-00810 R (Ex)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF ORDER DENYING FINAL APPROVAL OF CLASS-ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  August 1, 2011<br>Time:  10:00 a.m.<br>Courtroom:  8<br><br>*Assigned to Hon. Manuel L. Real* |

**PLEASE TAKE NOTICE** that, on August 1, 2011, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8 of the above-entitled Court located at 312 North Spring Street, Los Angeles, California 90012, Plaintiffs will move for reconsideration of the Order denying final approval of the settlements reached in the above-captioned action.  The Motion is made pursuant to the Court's inherent power to reconsider and modify its orders and pursuant Central District Local Rule 7-18 on the grounds (a) that the Court erred by finding that the monetary settlement with Defendant West Publishing Corp. was not commensurate with amounts in earlier antitrust litigation,

(b) that the Court erred by finding that the settlement with Defendant Kaplan, Inc. contained no prospective relief, (c) that there has been an intervening change in controlling law since the Court's ruling, as set forth in <u>Wal-Mart Stores, Inc. v. Dukes</u>, --- U.S. ---, 2011 U.S. LEXIS 4567 (filed June 20, 2011).

The Motion follows the conference of counsel, pursuant to Central District Local Rule 7-3, on June 20, 2011.

The Motion is made and based upon this Notice of Motion and the accompanying memorandum of points and authorities; the Declaration of Alan Harris and the Request for Judicial Notice, both filed herewith;[1] all of the pleadings, papers, and documents contained in the file of the within action; and such further evidence and argument as may be presented in support at or before the determination of the Motion.

DATED:  June 30, 2011

HARRIS & RUBLE

_____/s/_____

Alan Harris
David Zelenski
*Attorneys for Plaintiffs*

---

[1] Obviously, motions for reconsideration cannot be based on evidence that could have been submitted with the papers in support of the order to be reconsidered. <u>See Hopkins v. Andaya</u>, 958 F.2d 887 n.5 (9th Cir. 1992), <u>overruled on other grounds as stated in Megargee v. Wittman</u>, 550 F. Supp. 2d 1190 (9th Cir. 2008). However, neither the accompanying Harris Declaration nor the accompanying Request for Judicial Notice contains any such "new" evidence. The Harris Declaration simply re-attaches as an Exhibit thereto a copy of the executed Settlement Agreement. It also reiterates the procedural history of this case on appeal and remand. As for the Request for Judicial Notice, it is identical to the one submitted in connection with the Motion for Preliminary Approval. Plaintiffs are simply "resubmitting" this information in new filings for the Court's convenience.

1

## *TABLE OF CONTENTS*

2

*I.*   *Introduction* ........................................................................................ 1

3

4
*II.*   *Procedural Background* ...................................................................... 3

5
*III.*   *Argument* ............................................................................................ 6

6

7
    *A.*   *The Court Has the Inherent Power to Reconsider Its Own*
        *Orders* .......................................................................................... 6

8

9
    *B.*   *The Monetary Settlement with West Should Be Approved* ............... 7

10
    *C.*   *The Coupon Settlement with Kaplan Should Be Approved* ........... 12

11

12
    *D.*   *New Authority from the U.S. Supreme Court Increases the Risk*
        *of Maintaining Class-Action Status Through Trial* ...................... 15

13
*IV.*   *Conclusion* ....................................................................................... 16

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# *TABLE OF AUTHORITIES*

*Cases*

Beaudry Motor Co. v. Abko Props., Inc.
    780 F.2d 751 (9th Cir. 1986) ........................................................................ 1

In re Nasdaq Market-Makers Antitrust Litig.
    187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................ 12

In re Mercury
    618 F.3d 988 (9th Cir. 2010) ...................................................................... 16

In re Warfarin Sodium Antitrust Litig.
    212 F.R.D. 231 (E.D. Del. 2002) ................................................................ 12

Rodriguez v. West Publ'g Corp.
    2007 WL 2827379 (C.D. Cal. filed Sept. 10, 2007) .................................... 5, 10, 11, 16

Rodriguez v. West Publ'g Corp.
    563 F.3d 948 (9th Cir. 2009) .................................................................. 10, 11

Rodriguez v. West Publ'g Corp.
    2010 U.S. Dist. LEXIS 24155 (C.D. Cal. filed Feb. 3, 2010) ...................... 11

Sch. Dist. No. 5 v. Lundgren,
    259 F.2d 101 (9th Cir. 1958) ......................................................................... 6

U.S. v. Byrne,
    203 F.3d 671 (9th Cir. 2000) ......................................................................... 6

U.S. v. Cuddy,
    147 F.3d 1111 (9th Cir. 1998) ....................................................................... 6

Wal-Mart Stores, Inc. v. Dukes
    --- U.S. ---, 2011 U.S. LEXIS 4567 (filed June 20, 2011) .............................. 3, 6–7, 15

*Statutes*

15 U.S.C. § 1 .................................................................................................... 3

15 U.S.C. § 2 ................................................................................................................ 3

**Rules**

Fed. R. Civ. Proc. 12 ................................................................................................ 3, 4

Fed. R. Civ. Proc. 23 ................................................................................................ 15

Fed. R. Civ. Proc. 30 ................................................................................................ 16

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction.

On June 20, 2011, Plaintiffs' Motion for Final Approval of Class-Action Settlement came on for hearing.  The Motion sought final approval of two separate settlements reached between Plaintiffs and a conditionally certified Class, on the one hand, and Defendants West Publishing Corp. ("West") and Kaplan, Inc. ("Kaplan"), on the other hand, for alleged antitrust violations in the bar-review-course market.[2]  Earlier, on March 21, 2011, the Court had granted preliminary approval, directing the parties to notify the Class—consisting of law firms and law-school graduates who had paid for West's bar-examination course—of their option to participate in or exclude themselves from the settlements.  (See generally Mar. 21, 2011, Order Granting Plaintiffs' Motion for Conditional Certification of Settlement Class, Preliminary Approval of Settlement, and Appointment of Claims Administrator ("Mar. 21, 2011, Preliminary Approval Order").)

On June 20, 2011, the Court entered a Minute Order[3] denying final approval for the

---

[2] The settlement with West consisted of a non-reversionary $5,285,000 settlement fund to be divided proportionately among participating Class Members after the deduction of fees and costs.  (June 30, 2011, Decl. of Alan Harris in Supp. of Pls.' Mot. for Reconsideration of Order Denying Final Approval of Class-Action Settlement ("June 30, 2011, Harris Decl.") Ex. 1 (Stipulation and Settlement Agreement) at ¶¶ 42, 52–54, 56–57.)  The settlement with Kaplan, on the other hand, consisted of fully transferable coupons that were delivered to Class Members with the mailing of notice.  (June 30, 2011, Harris Decl. Ex. 1 at ¶ 8, 37–38.)  Kaplan had no part in funding any of the $5,285,000 settlement fund, and West had no part in developing and/or administering the coupons.  In other words, although there was only a single settlement agreement, there were, in fact, two separate settlements.  In point of fact, as explained below, the settlement agreement itself expressly contemplated that the Court might choose to approve one settlement and not the other.  In other words, it was not mandatory that both settlements be approved together.

[3] It is unclear whether the Minute Order constitutes an "order" for purposes of reconsideration in light of the Court's directive during the hearing that counsel "[p]repare the [o]rder."  (June 20, 2011 Reporter's Tr. of Proceedings at 15:12.)  See Beaudry Motor Co. v. Abko Props., Inc., 780 F.2d 751, 755 (9th Cir. 1986) (holding a minute order constitutes a formal order).  For whatever reason, although the Minute Order was signed on June 20, 2011, it was not delivered to counsel via the ECF System until June 24, 2011.  (See June 20, 2011, Minute Order.)  Plaintiffs are submitting herewith a Proposed Order Denying Final Approval of Class-Action Settlement.  In the event that the June 20, 2011, Minute Order is not, in fact, an "order" for purposes of this Motion, Plaintiffs submit that the Proposed Order, once signed, is such an order.

"reasons as stated on the record."[4]  (June 20, 2011, Civil Minutes.)  A review of the June 20, 2011, transcript of proceedings reveals that the Court found the monetary settlement was "not commensurate" with settlements reached in earlier antitrust litigation against West, namely, <u>Park v. Thomson Corp.</u>, Southern District of New York Case No. 05 Civ. 2931 (WHP), and <u>Rodriguez v. West</u>, Central District of California Case No. CV 05-3222 R.  (June 20, 2011, Reporter Tr. of Proceedings at 14:25.)  Specifically, the Court found that the per-claimant recovery in <u>Park</u>, for example, was $181.56, exceeding the amount to be paid to Class Members herein by over $100.  (<u>See</u> June 20, 2011, Reporter's Tr. of Proceedings at 14:15–25.)  However, the figures submitted in connection with the Motion for Final Approval reveal that, if all timely claims of Class Members are, in fact, processed, <u>Park</u> exceeds the average individual settlement amount herein *by only $10*.  Similarly, as to <u>Rodriguez</u>, the average settlement payment therein is actually much closer—over $100 closer, in fact—than the Court found when it denied final approval.  Plaintiffs therefore respectfully request that the Court reconsider its earlier ruling.

Plaintiffs also respectfully request that the Court reconsider its holding as to the separate coupon settlement with Kaplan.  As to the settlement with Kaplan, the June 20, 2011, transcript of proceedings reveals that the Court found the settlement did not provide any "prospective relief," rendering it dissimilar to <u>Rodriguez</u>.  (June 20, 2011, Reporter's Tr. of Proceedings at 14:25–15:1.)  However, the at-issue coupons were specifically designed with two purposes in mind:  to provide a form of remuneration to Class Members *and* to encourage *future* competition in the relevant market by encouraging future customers to purchase bar-review courses from Kaplan rather than West.[5]  In addition, it appears as though the Court misapprehended the expert testimony

---

[4] The Minute Order also denied Plaintiffs' Motion for Award of Attorney's Fees and Reimbursement of Costs as moot, given the denial of the Motion for Final Approval. (June 20, 2011, Civil Minutes.)

[5] Evidence was submitted in connection with the Motion for Final Approval detailing how, up until the time that the above-captioned action was filed, Kaplan did no business in the relevant market.  In other words, until that time, the only nationwide participant in the full-service bar-review market was West.

1  provided by Professor Dennis Rook.  According to the transcript, the Court seemed to

2  understand Professor Rook as having testified that only one percent of the Kaplan

3  coupons would be redeemed.  (See June 20, 2011, Reporter's Tr. of Proceedings at

4  13:22–14:9.)  However, a review of Professor Rook's submitted Declaration reveals that

5  the anticipated redemption rate is at least ten percent.  Accordingly, Plaintiffs respectfully

6  request that the Court reconsider its ruling in light of the prospective relief afforded to

7  future customers and in light of Professor Rook's actual testimony.

8        Finally, Plaintiffs submit that, since the time of the hearing on Plaintiffs' Motion

9  for Final Approval, there has been an arguable change in controlling law as to the risk of

10  maintaining class-action status through trial—one of the factors cited by the Court as

11  relevant to determining whether to grant final approval.  With the U.S. Supreme Court's

12  recent ruling in Wal-Mart Stores, Inc. v. Dukes, --- U.S. ---, 2011 U.S. LEXIS 4567 (filed

13  June 20, 2011), it may now be more difficult to certify classes seeking both monetary and

14  injunctive relief, which is the type of class presently at issue.  Plaintiffs therefore

15  respectfully request that the Court reconsider its ruling in light of this heightened

16  standard.

17  ***II.     Procedural Background.***

18        Plaintiffs commenced this putative class action in February 2008.  (See generally

19  Feb. 6, 2008, Class Action Compl. for Violations of the U.S. Antitrust Laws ("Feb. 6,

20  2008, Compl.").)  Plaintiffs alleged that West and Kaplan violated section 1 of the

21  Sherman Act, 15 U.S.C. § 1, by conspiring to restrain trade in the full-service bar-review-

22  course market.  (Feb. 6, 2008, Compl. ¶¶ 92–98.)  Plaintiffs also alleged that West (but

23  not Kaplan) violated section 2 of the Sherman Act, 15 U.S.C. § 2, by unlawfully

24  acquiring and/or maintaining a monopoly of the bar-review-course market.  (Feb. 6,

25  2008, Compl. ¶¶ 99–111.)  On March 14, 2008, West filed a Motion to Dismiss (see

26  generally Mar. 8, 2008, Notice of Mot. and Mot. to Dismiss Compl. Pursuant to Fed. R.

27  Civ. P. 12(b)(6) and 12(b)(1)), a Motion in which Kaplan joined (see generally Mar. 14,

28  2008, Def. Kaplan, Inc.'s Notice of Joinder and Joinder in Def. West Publ'g Corp.'s Mot.

1  to Dismiss Compl. Pursuant to F.R.C.P. 12(b)(6)).  On April 10, 2008, after hearing oral

2  argument, this Court dismissed Plaintiffs' Complaint with prejudice.  (Apr. 10, 2008,

3  Order Granting Def. West Publ'g Corp.'s Mot. to Dismiss Compl. Pursuant to Fed. R.

4  Civ. P. 12(b)(6) and 12(b)(1) with Prejudice at 2.)

5       According to the Court, the above-captioned matter was preempted by the

6  settlement earlier reached in Rodriguez.  In that regard, this Court stated:

7       [S]ubstantively, plaintiffs' allegations regarding the current state of

8       the market and its effects on individual plaintiffs cannot be squared with the

9       provisions of the Rodriguez settlement.  In [ap]proving the [February 2007]

10      Rodriguez settlement, this [C]ourt noted that the non-monetary relief of

11      provisions of the Rodriguez settlement removed allegedly significant

12      barriers to entry [in the bar-review-course market]. . . .

13          Thus, the allegations that contradict these findings fail as a matter of

14      law.

15  (Apr. 7, 2008, Tr. of Proceedings at 8:17–9:2.)  Much like the above-captioned action,

16  Rodriguez was an antitrust class action brought against West and Kaplan for an alleged

17  conspiracy to restrain trade in the bar-review-course market.  (See generally June 30,

18  2011, Req. for Judicial Notice in Supp. of Pls.' Mot. for Reconsideration of Order

19  Denying Final Approval of Class-Action Settlement ("June 30, 2011, Req. for Judicial

20  Notice") Ex. 1.)  As alleged by the Rodriguez plaintiffs, West and Kaplan had entered

21  into an illegal market-division arrangement under which West agreed to withdraw certain

22  of its exam-preparation courses in exchange for Kaplan's agreement not to enter the full-

23  service bar-review market.  (June 30, 2011, Req. for Judicial Notice Ex. 1 at ¶ 8.)

24  Rodriguez was settled by the parties thereto, with the Court granting final approval in

25  September 2007.  (June 30, 2011, Req. for Judicial Notice Ex. 2.)  The class period

26  covered by the Rodriguez settlement spanned ten years, from August 1, 1997, to July 31,

27  2006.  (June 30, 2011, Req. for Judicial Notice Ex. 2 at 6:27.)  As part of the settlement,

28  West and Kaplan agreed to certain non-monetary relief, *including,* inter alia*, the*

*termination of their alleged market-division agreement*.  <u>Rodriguez v. West</u>, 2007 WL 2827379 at \*5, 12 (C.D. Cal. filed Sept. 10, 2007).  Such non-monetary relief was designed to foster competition in, and eliminate barriers of entry to, the bar-review-course market.  <u>Id</u>.

Where the claims alleged in <u>Rodriguez</u> cover the period of time from 1997 through July 31, 2006, the claims at issue in the present litigation have been brought on behalf of those individuals who purchased BAR/BRI bar-review courses from August 1, 2006, onward.  (Feb. 6, 2008, Compl. ¶ 79.)  *A fortiori*, the above-captioned matter therefore focuses on the *now-terminated* market-division agreement's *residual* impact on the bar-review-course market.

On May 7, 2008, Plaintiffs filed a timely Notice of Appeal in the above-captioned matter (<u>see</u> <u>generally</u> May 7, 2008, Notice of Appeal), arguing before the Ninth Circuit that settling with a subset of those who had been injured by Defendants' allegedly anticompetitive behavior—namely, the <u>Rodriguez</u> class—did not justify the dismissal of a separate lawsuit brought on behalf of those not part of the <u>Rodriguez</u> class (June 30, 2011, Req. for Judicial Notice Ex. 3 at 12–19).  Oral argument as to the appeal was heard by the Ninth Circuit on September 30, 2009.  (June 30, 2011, Harris Decl. ¶ 3.)  On October 9, 2009, the Ninth Circuit issued an Order "referr[ing the matter] to the Ninth Circuit Mediation Office to explore a possible resolution through mediation."  (June 30, 2011, Req. for Judicial Notice Ex. 6.)  Over the course of the following year, the parties engaged in numerous settlement conferences supervised by the appointed Ninth Circuit Mediator, Roxane Ashe.  (June 30, 2011, Harris Decl. ¶¶ 3–4.)  In approximately June 2010, the Mediator presented a proposal that West establish a Settlement Fund of $5,285,000.  (June 30, 2011, Harris Decl. ¶ 4.)  In addition, a separate settlement was negotiated with Kaplan, whereby Kaplan agreed to provide fully transferable coupons to Class Members.  (June 30, 2011, Harris Decl. ¶ 4.)

On December 17, 2010, after the Ninth Circuit was apprised that a settlement had been reached, the case was remanded to this Court for settlement-approval proceedings.

1   (June 30, 2011, Req. for Judicial Notice Ex. 7.)  On remand, the Court granted

2   preliminary approval as to both settlements, directing that notice be provided to Class

3   Members.  (See generally Mar. 21, 2011, Preliminary Approval Order.)  Thereafter,

4   based on the reasons explained above, the Court denied final approval to the settlements.

5   This Motion for Reconsideration now follows.

6   **III.  Argument.**

7       **A.    The Court Has the Inherent Power to Reconsider Its Own Orders.**

8       Courts have "inherent power to revise, correct, and alter [their] findings and

9   conclusions." Sch. Dist. No. 5 v. Lundgren, 259 F.2d 101, 105 (9th Cir. 1958).  See also

10  U.S. v. Byrne, 203 F.3d 671, 674 (9th Cir. 2000) (affirming a district court's right to

11  reconsider motions).  A court has discretion to reconsider its own orders where "(1) the

12  first decision was clearly erroneous; (2) an intervening change of law has occurred; (3)

13  the evidence on remand is substantially different; (4) other changed circumstances exist;

14  or (5) a manifest injustice would otherwise result." U.S. v. Cuddy, 147 F.3d 1111, 1114

15  (9th Cir. 1998).  Similarly, the Central District of California's Local Rules *expressly*

16  authorize reconsideration on the following grounds:

17      (a) a material difference [exists] in fact or law from that presented to the

18      Court before such decision that in the exercise of reasonable diligence could

19      not have been known to the party moving for reconsideration at the time of

20      such decision, or (b) the emergence of new material facts or a change of law

21      occurring after the time of such decision, or (c) a manifest showing of a

22      failure to consider material facts presented to the Court before such decision.

23  C.D. Local R. 7-18.  With respect to the present matter, Plaintiffs respectfully submit that

24  the Court's articulated reasons for denying final approval of the two settlements reached

25  with West and Kaplan—as reflected in the June 20, 2011, transcript of proceedings—are

26  contrary to the evidence in the record and, therefore, are clearly erroneous.  Plaintiffs also

27  respectfully submit that the Supreme Court's June 20, 2011, ruling in Wal-Mart Stores,

28  Inc. constitutes a change in the law with respect to certification.  Under Wal-Mart Stores,

Inc., it may now be more difficult to maintain a certified class through trial when that class seeks both monetary and injunctive relief.  For both of these reasons, the Order denying final approval should be set aside in part or in full.

### B.  *The Monetary Settlement with West Should Be Approved.*

The settlement with West consisted of a non-reversionary $5,285,000 settlement fund to be divided proportionately among participating Class Members after the deduction of fees and costs.  (June 30, 2011, Harris Decl. Ex. 1 at ¶¶ 42, 52–54, 56–57.) Kaplan had *no part* in funding any of the $5,285,000; instead, Kaplan was responsible *only* for the above-described coupons.  (Compare June 30, 2011, Harris Decl. Ex. 1 at ¶¶ 39–44 (describing the monetary settlement with West) with ¶¶ 37–38 (describing the coupon settlement with Kaplan).)  As such, the Court is free to approve the settlement with West regardless of its conclusions as to the merits of the Kaplan settlement—an eventuality expressly contemplated by the settlement papers:

> The District Court may approve or disapprove the entire Settlement or approve this Settlement as to Kaplan alone or approve this Settlement as to West alone.  An approval as to one Defendant alone shall mean approval of those terms of this Settlement under which such Defendant has obligations, it being recognized in particular but without limitation that, if the Settlement is approved as to West only, West has no obligation under this Settlement to provide the [coupons] defined in Paragraph 8 or to pay the associated Fee Award defined in Paragraph 9; and, if the Settlement is approved as to Kaplan only, Kaplan has no obligation to provide the Settlement Fund referenced in Paragraph 29, or the associated Fee Award defined in Paragraph 15 or Expense Award defined in Paragraph 12 or to pay expenses that this Settlement provides are to be paid out of the Settlement Fund.[6]

---

[6] Each settlement contained its own associated fee award:  With respect to West, Plaintiffs' counsel requested twenty-five percent of the settlement fund; with respect to Kaplan, Plaintiffs' counsel requested an award of $450,000 to be funded separately by Kaplan, meaning that *none* of the Kaplan award would come out of the $5,285,000.  (See June 30, 2011, Harris Decl. Ex. 1 at ¶¶ 9, 12, 15, 57, 59.)

(June 30, 2011, Harris Decl. Ex. 1 at ¶ 74.)  To the extent that only the West was approved, Class Members would retain their rights to proceed separately against Kaplan. (June 30, 2011, Harris Decl. Ex. 1 at ¶ 74(b).)

In declining to approve the settlement as a whole—that is, the settlement as to both West and Kaplan—the Court concluded that the monetary settlement with West was "not commensurate" with settlements reached in earlier antitrust litigation against West, namely, and Park and Rodriguez.  (June 20, 2011, Reporter Tr. of Proceedings at 14:25.) As to Park, the Court found that the per-claimant recovery therein exceeded that for Class Members in the above-captioned action by over $100.  (See June 20, 2011, Reporter's Tr. of Proceedings at 14:15–25.)  However, the figures submitted with the Motion for Final Approval reveal that, if all timely claims of Class Members are, in fact, processed, Park merely exceeds the average settlement amount by about $10.

In Park, the total settlement fund was $13,000,000—a figure larger than the monetary settlement reached herein, but for a class *more than fifty-percent larger than the one in the above-captioned matter*.  (Compare May 31, 2011 Decl. of Markham Sherwood re Mailing Notice to Class of Proposed Settlement of Class Action, Claim Form and Discount Certificates and Report on Reqs. for Exclusion and Objections ("May 31, 2011, Sherwood Decl.") ¶ 4 (identifying 184,496 Class Members in the above-captioned action) with June 30, 2011, Req. for Judicial Notice Ex. 4 (Park final-approval order) at 3 (identifying 280,000 class members).)  Of the 280,000 Park class members, 55,649 submitted claim forms.  (June 30, 2011, Req. for Judicial Notice Ex. 4 at 3.)  After subtracting the awarded attorney's fees of $2,031,774; attorney's expenses of $109,625; the claims-administration fees of $750,000; and the incentive award of $5,000, a total of $10,103,601 was left for the Park class, leading to an average payment of $181.56—the figure cited by this Court in its Order denying final approval.

However, the $181.56 "average" payment to Park class members, as pointed out in both the Motion for Preliminary Approval and the Motion for Final Approval, was *not* the *actual* average payment received by Park class members.  (See May 31, 2011, Decl.

of Alan Harris in Supp. of Mots. for Final Approval of Class-Action Settlement and Award of Att'ys Fees and Reimbursement of Costs ("May 31, 2011, Harris Decl.") at 9 n.2; Feb. 18, 2011, Decl. of Alan Harris in Supp. of Pls.' Mot. for Conditional Certification of Settlement Class, Preliminary Approval of Class-Action Settlement, and Appointment of Claims Administrator ("Feb. 18, 2011, Harris Decl.") at 10 n.2 & Ex. 3.) Submitted in connection with those moving papers was a redacted copy of an actual settlement check in Park reflecting a settlement payment of $81.02.  (May 31, 2011, Harris Decl. at 9 n.2; Feb. 18, 2011, Harris Decl. at 10 n.2 & Ex. 3.)  The average payment in Park was reduced on account of a second, post-final-approval mailing mandated by the Park court to permit additional class members to opt in following various amendments to the terms of the settlement.  (See June 30, 2011, Req. for Judicial Notice Ex. 4 at 4 (stating that, "[f]ollowing final approval, the Class Members will receive notification of the Amended Settlement, and another opportunity to submit a claim form").)  It was also reduced on account of the fact that, in finally approving the settlement, the Park court eliminated the need for class members who had submitted claim forms in the concurrent Rodriguez action to submit claim forms to participate in the Park settlement.  (See June 30, 2011, Req. for Judicial Notice Ex. 4 at 4 (stating that "[t]he Amended Settlement also obviates the need for any Rodriguez class member who submitted a claim form in that case to submit one in this action as well, in order to receive a payment").)  This brought the actual payments down to the $81 amount reflected in the Park settlement check.

Running through the math with respect to the above-captioned matter reveals just how close the average monetary award is to the $81 payment in Park.  Again, the total settlement fund for the above-captioned matter is $5,285,000.  Requested attorney's fees equal $1,321,250; attorney's costs equal $44,047; and claims-administration fees and expenses equal $600,890.  (May 31, 2011, Harris Decl. ¶ 18; June 17, 2011, Supplemental Decl. of Markham Sherwood re Mailing of Notice to Class of Proposed Settlement of Class Action, Claim Form, Discount Certificates and Report on Claim

Forms, Reqs. for Exclusion and Objections Received ("June 17, 2011, Sherwood Decl.") ¶ 6.)  According to the Claims Administrator, 47,542 Class Members timely opted into this action.  (June 17, 2011, Sherwood Decl. ¶ 3.)  This leads to an average payment of $70.

The similarity between the amounts achieved herein and those achieved in Park is all the more remarkable given that this case primarily concerns the *residual* impact of the above-described anticompetitive agreement between West and Kaplan (terminated at the very beginning of the class periods herein) while Park, on the other hand, concerns the *direct* impact of that agreement (on consumers who purchased West bar-prep courses during the period of time the anticompetitive agreement was in place).  (See June 30, 2011, Req. for Judicial Notice Ex. 4 at 2 (specifying a class consisting of anyone who paid for a bar-review course during the period from March 15, 2001, to January 4, 2008.)  Again, per the settlement reached in Rodriguez, the arrangement between West and Kaplan was not terminated until sometime between February 2007 and September 2007.  See Rodriguez v. West, 563 F.3d 948, 956–57 (9th Cir. 2009) (noting that the settlement between West and Kaplan was executed in February 2007); Rodriguez, 2007 WL 2827379 at *24 (granting final approval of the settlement in September 2007).  The above-captioned action, however, defined its Class with a start-date of August 2006—in other words, *at the very end of the agreement's lifespan.*[7]  Indeed, this Court at one point *dismissed* Plaintiffs' claims on the basis that no damages were owing to the Class by virtue of the terminated anticompetitive agreement.  This means that the overwhelming majority of Class Members paid for full-service bar-review courses *after* Kaplan had entered the market.  That they are recovering nearly as much the Park class members received—class members who had actually been subjected to the alleged anticompetitive agreement—demonstrates the fairness of the settlement with West.

---

[7] The "stronger-case" aspect of Rodriguez is discussed at length in West and Kaplan's jointly filed June 13, 2011, Memorandum in Support of Motion to Approve Settlement and in Response to Objections.  (See June 13, 2011, Mem. in Supp. of Mot. to Approve Settlement and in Resp. to Objections at 5:10–8:24.)

Although the per-claimant disparity in settlement amounts is not as small when the above-captioned matter is compared to <u>Rodriguez</u>, two points presently bear stressing. First, in the figures submitted to the Court with Plaintiffs' Motions for Preliminary and Final Approval, the total attorney's fees deducted from the <u>Rodriguez</u> settlement amounted to only six percent of the $49,000,000 settlement.[8]  This is because the Court declined to award the total requested fees—amounting to twenty-five percent of the settlement fund, or $12,250,000—in light of the Ninth Circuit's holding that improper "incentive agreements" had been entered by the named <u>Rodriguez</u> plaintiffs and their counsel.  <u>See Rodriguez</u>, 563 F.3d at 968 (explaining that, under the <u>Rodriguez</u> settlement, plaintiffs' counsel had reserved the right to seek up to twenty-five percent of the $49,000,000 fund).  But for the improper incentive agreements, it is reasonable to assume that the benchmark twenty-five-percent amount would have been awarded to class counsel.  Once that amount is placed back into the equation, the average per-claimant recovery in <u>Rodriguez</u> falls from over $500—the amount cited by the Court in denying final approval to the above-captioned action (<u>see</u> June 20, 2011, Reporter's Tr. of Proceedings at 14:24)—to under $400.[9]  Although this does not lead to the $10 disparity vis-à-vis <u>Park</u>, it is substantially less than what the Court had initially found.

Second, Plaintiffs note that, when granting final approval to the settlement in <u>Rodriguez</u>, this Court expressly held, "it is estimated that each Class Member who files an appropriate claim against the [s]ettlement [f]und will receive about $125." <u>Rodriguez</u>, 2007 WL 2827379 at *18.  Using this figure—again, the figure that this Court adopted in granting final approval to <u>Rodriguez</u>—the disparity with the above-captioned is reduced even more dramatically.  In this regard, Plaintiffs submit that the different factual circumstances in <u>Rodriguez</u> and in the above-captioned matter—with <u>Rodriguez</u>

[8] This amount was taken from the Court's February 3, 2010, ruling in <u>Rodriguez</u>.  <u>See</u> <u>Rodriguez v. West</u>, 2010 U.S. Dist. LEXIS 24155 at *14–16 (C.D. Cal. filed Feb. 3, 2010).  This particular ruling is attached to the accompanying Request for Judicial Notice as Exhibit 5.

[9] The exact amount is $398 (= ($49,000,000 – $12,250,000 [fees] – $1,413,359 [expenses] – $252,237 [claims administration]) ÷ 88,000 class members).

concerning the direct impact of an anticompetitive agreement between West and Kaplan that was, by virtue of the settlement agreement entered therein, *terminated* before the filing of the above-captioned suit—reasonably account for this disparity.  Plaintiffs therefore respectfully request that the Order denying the settlement as to West—under which each Class Member will receive but $10 less than what the class members in <u>Park</u> actually received—be reconsidered .  Final approval should be granted to the $5,285,000 settlement, honoring the express desire of those who have submitted claims to receive a sum-certain payment today in light of the risk of receiving nothing down the road.  <u>See</u> <u>In re Warfarin Sodium Antitrust Litig.</u>, 212 F.R.D. 231, 256 (E.D. Del. 2002) (explaining that "[d]amages would likely be established at trial through a 'battle of experts,' with each side presenting its figures to the jury and with no guarantee whom the jury would believe"); <u>In re Nasdaq Market-Makers Antitrust Litig.</u>, 187 F.R.D. 465, 476 (S.D.N.Y. 1998) (stating that "[t]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or negligible damages, at trial or on appeal").

### C. *The Coupon Settlement with Kaplan Should Be Approved.*

Separate from the settlement with West, the settlement with Kaplan consisted of fully transferable coupons that were delivered to Class Members with the mailing of notice.  (June 30, 2011, Harris Decl. Ex. 1 at ¶ 8, 37–38.)  Similar to Kaplan's non-involvement with the West portion of the settlement, West had no part in developing and/or administering the coupons.  (<u>Compare</u> June 30, 2011, Harris Decl. Ex. 1 at ¶¶ 39–44 (describing the monetary settlement with West) <u>with</u> ¶¶ 37–38 (describing the coupon settlement with Kaplan).)  As such, the Court was free to approve the settlement with Kaplan regardless of its conclusions as to the merits of the West settlement—an eventuality expressly contemplated by the settlement papers:

The District Court may approve or disapprove the entire Settlement or approve this Settlement as to Kaplan alone or approve this Settlement as to West alone.  An approval as to one Defendant alone shall mean approval of

those terms of this Settlement under which such Defendant has obligations,

it being recognized in particular but without limitation that, if the Settlement

is approved as to West only, West has no obligation under this Settlement to

provide the [coupons] defined in Paragraph 8 or to pay the associated Fee

Award defined in Paragraph 9; and, if the Settlement is approved as to

Kaplan only, Kaplan has no obligation to provide the Settlement Fund

referenced in Paragraph 29, or the associated Fee Award defined in

Paragraph 15 or Expense Award defined in Paragraph 12 or to pay expenses

that this Settlement provides are to be paid out of the Settlement Fund.[10]

(June 30, 2011, Harris Decl. Ex. 1 at ¶ 74.)  To the extent that only the Kaplan was

approved, Class Members would retain their rights to proceed separately against West.

(June 30, 2011, Harris Decl. Ex. 1 at ¶ 74(b).)

In declining to approve the settlement as a whole—that is, the settlement as to both

West and Kaplan—the Court found that it did not provide any "prospective relief,"

rendering it dissimilar to Rodriguez.  (June 20, 2011, Reporter's Tr. of Proceedings at

14:25–15:1.)  However, the at-issue coupons were specifically designed with two

purposes in mind:  to provide a form of remuneration to Class Members *and* to encourage

*future* competition in the relevant market by encouraging future customers to purchase

bar-review courses from Kaplan rather than West.  In addition, it appears as though the

Court may have misapprehended the expert testimony provided by Professor Dennis

Rook.  According to the transcript, the Court seemed to understand Professor Rook as

having testified that only one percent of the Kaplan coupons would be redeemed.  (See

June 20, 2011, Reporter's Tr. of Proceedings at 13:22–14:9.)  However, a review of

Professor Rook's submitted Declaration reveals that the anticipated redemption rate is at

least ten percent.  Accordingly, Plaintiffs respectfully request that the Court reconsider its

---

[10] Again, each settlement contained its own associated fee award:  With respect to West, Plaintiffs' counsel requested twenty-five percent of the settlement fund; with respect to Kaplan, Plaintiffs' counsel requested an award of $450,000 to be funded separately by Kaplan, meaning that none of the Kaplan award would come out of the $5,285,000.  (See June 30, 2011, Harris Decl. Ex. 1 at ¶¶ 9, 12, 15, 57, 59.)

1   ruling in light of the prospective relief afforded to future customers and in light of

2   Professor Rook's actual testimony.

3          As to the prospective relief afforded by the coupons, the Court found it

4   "problematic" that the coupons "encourage[d] further business with Kaplan rather than

5   disgorging ill-gotten gains."  (June 20, 2011, Reporter's Tr. of Proceedings at 14:11–12.)

6   However, Plaintiffs note that no Class Member is alleged to have ever paid any amounts

7   directly to Kaplan; instead, the Class consists *exclusively* of individuals who took bar-

8   review courses—or law firms that paid for those individuals to take bar-review courses—

9   offered by the other Defendant in this action, West.  *Simply put, Kaplan never took any*

10  *money from the Class*.  Accordingly, instead of offering to "pay back" Class Members,

11  Kaplan issued approximately 190,000 coupons the Class.  (May 31, 2011, Sherwood

12  Decl. ¶ 4.)  According to Professor Rook, it is reasonable to assume at least a *ten-percent*

13  redemption rate for the Kaplan coupons—particularly given that this was, in fact, the rate

14  posited by one of the Objectors to the Kaplan settlement.[11]  (May 31, 2011, Decl. of

15  Professor Dennis W. Rook in Supp. of Pls.' Mot. for Final Approval of Settlement ("May

16  31, 2011, Rook Decl.") ¶ 16.)  Assuming that ten percent of the coupons are redeemed at

17  some point during their thirty-month redemption period, 19,000 separate Kaplan courses

18  (as opposed to West courses) will be purchased in the future.  Although Kaplan is a

19  Defendant in this action, it is a still a competitor to West—the alleged monopolist—and

20  any competition between the two Defendants is a prospective benefit for future

21  consumers down the road.  Accordingly, Plaintiffs respectfully request that the Court

22  reconsider its earlier ruling and approve the settlement as to Kaplan.

23  / / / / /

24

25

26  [11] It appears that the Court was focused on the one-percent figure mentioned by
    Professor Rook in his Declaration when he was describing the redemption rate for
27  coupons *in general* (as opposed to coupons issued pursuant to a class-action settlement).
    (See May 31, 2011, Rook Decl. ¶ 13 & n.3 (describing a one-percent redemption rate for
28  "all forms of coupons, including, for example, those widely distributed to the public via
    newspapers, as well as those mailed to the public via the USPS").)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*D.*      *New Authority from the U.S. Supreme Court Increases the Risk of*
*Maintaining Class-Action Status Through Trial.*

In Wal-Mart Stores, Inc. v. Dukes, --- U.S. ---, 2011 U.S. LEXIS 4567 (filed June 20, 2011), the U.S. Supreme Court reversed the Ninth Circuit's earlier rule that simultaneous claims for injunctive and monetary relief could be certified under Federal Rule of Civil Procedure 23(b)(2) without a showing of the "predominance" requirement of Rule 23(b)(3).  See Wal-Mart Stores, Inc., --- U.S. ---, 2011 U.S. LEXIS 4567 at *38– 43.  Accordingly, *any* putative class action seeking both injunctive relief and monetary relief—so long as the monetary-relief claim is not "incidental" to the simultaneous injunctive-relief claim, id. at *48—is now required to demonstrate the elements of Rule 23(b)(3), namely, that "questions of law and fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. Proc. 23(b)(3).  See Wal-Mart Stores, Inc., --- U.S. ---, 2011 U.S. LEXIS 4567 at *44–45.

The decision thus impacts Plaintiffs' action, which asserts claims for both monetary and injunctive relief.  When Plaintiffs' Motion for Preliminary Approval was filed—the Motion by which Plaintiffs had requested certification of their putative Class—the earlier, more lenient Ninth Circuit standard for hybrid injunctive-relief-and-damages actions was in place, and Plaintiffs did not necessarily need to satisfy the requirements of Rule 23(b)(3).  In order to maintain class-wide status through trial, however, Plaintiffs would now be required to satisfy those elements.  Accordingly, the Court's finding that the "risk of maintaining class-action status through trial . . . does not appear to be particularly high" (June 20, 2011, Reporter's Tr. of Proceedings at 12:22– 24) is, in light of Wal-Mart Stores, Inc., erroneous, and this acknowledged element going to the fairness, reasonableness, and adequacy of the settlement now weighs *in favor* of / / / / /

1   granting final approval.[12]  The Motion should therefore be granted, and both settlements

2   should be approved.

3   **IV.   Conclusion.**

4           For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider

5   its Order denying Plaintiffs' Motion for Final Approval of Class-Action Settlement.[13]

6   The Court should issue a new order granting the settlement as to West and/or the

7   settlement as to Kaplan.[14]

8   / / / / /

9

---

10   [12] Plaintiffs also note that another element going to the fairness of the proposed
    settlement—the formal and informal discovery engaged in prior to settlement—actually
11   supports granting final approval.  According to the Court, "Plaintiffs appear to have
    conducted almost no formal discovery and very little informal discovery." (June 20,
12   2011, Reporter's Tr. at 13:6–7.)  However, as noted above, this case was ordered into
    mediation by the Ninth Circuit in lieu of a ruling on Defendants' preliminary Motion to
13   Dismiss.  Moreover, this case was only remanded for the limited purpose of approving
    the Mediator's settlement proposal.  Accordingly, Plaintiffs were necessarily precluded
14   from engaging in formal discovery.  However, that does not mean that no informal
    discovery took place.  As noted in the Harris Declaration submitted in connection with
15   the Motion for Final Approval, Plaintiffs' counsel "reviewed many thousands of
    documents [and] interviewed Class Members and competitors." (May 31, 2011, Harris
16   Decl. ¶ 4.)  Furthermore, Plaintiffs note that this case was filed in February 2008 by Eliot
    Disner—counsel of record in the earlier Rodriguez action. (See Feb. 6, 2008, Compl. at
17   1.)  In connection with Rodriguez, Plaintiffs' counsel "reviewed and analyzed over
    400,000 pages of documents produced by Defendants and third parties, conducted one
18   deposition pursuant to Federal Rule of Civil Procedure 30(b)(6), and deposed fourteen
    fact witness." Rodriguez, 2007 WL 2827379 at *1.  As explained above, despite the fact
19   that Rodriguez and the above-captioned matter concern different time periods, they both
    allege at their core the illegal agreement between West and Kaplan.  Although Mr. Disner
20   passed away in April 2009, Plaintiffs' counsel had the benefit of Mr. Disner's substantial
    involvement in Rodriguez in successfully bringing this case to closure.

21   [13] To the extent that this Court considers In re Mercury, 618 F.3d 988 (9th Cir. 2010),
    relevant, Plaintiffs submit that the Court may defer consideration of the petition for
22   attorney's fees until such time as the parties have re-noticed the fee issue to those Class
    Members with standing (i.e., those Class Members who filed claims against the West
23   settlement fund) to articulate objections to the requested fees.  Such re-notice would
    specify the exact amount of attorney's fees requested.  Because the mailing list has
24   already been prepared, the cost of postcard notice to claimants would be relatively
    nominal.

25   [14] Again, the Court is not required to approve both settlements together on an all-or-
    nothing basis.  For example, it could choose to revisit its Order by approving only the
26   monetary settlement with West, given the congruence in the individual settlement
    amounts between those herein and those in Park.  Indeed, as alleged in the Complaint,
27   both West and Kaplan are equally culpable under the Sherman Act for conspiracy, and
    there is no evidence that either Defendant would be unable to pay an ultimate judgment
28   following a full trial on the merits were the case to proceed to trial as to only one of them.

PLS.' MOT. FOR RECONSIDERATION OF ORDER DENYING FINAL APPROVAL

1   DATED:  June 30, 2011                      HARRIS & RUBLE

2                                                      /s/

3                                              Alan Harris
                                               David Zelenski
4                                              *Attorneys for Plaintiffs*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLS.' MOT. FOR RECONSIDERATION OF ORDER DENYING FINAL APPROVAL

***PROOF OF SERVICE***

I am an attorney for Plaintiffs herein, over the age of eighteen years, and not a party to the within action.  My business address is 6424 Santa Monica Boulevard, Los Angeles, California 90038.

On June 30, 2011, I served the within document(s):

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF ORDER DENYING FINAL APPROVAL OF CLASS-ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

I am readily familiar with the Firm's practice of collection and processing correspondence for mailing.  Under that practice, these document(s) would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business, addressed as follows:

Caeden C. Drayton
4233 NW 25 Place
Launderhill, Florida 33313

Daniel Greenberg
Greenberg Legal Services
55 Fontenay Circle
Little Rock, Arkansas 72223

Robert T. Plunkert
Brown & James P.C.
1010 Market Street, 20th Floor
St Louis, Missouri 63101

Thomas E. Jackson
14521 E. Cabana Street
Corpus Christi, Texas 78418

I declare under penalty of perjury that the above is true and correct.  Executed on June 30, 2011, at Los Angeles, California.

_____
/s/
David Zelenski