1  Edward A. Klein, Esq. (SBN: 145736)
   Heather H. Gilhooly, Esq. (SBN: 198911)
2       hgilhooly@linerlaw.com
   LINER GRODE STEIN YANKELEVITZ
3  SUNSHINE REGENSTREIF & TAYLOR LLP
   1100 Glendon Avenue, 14th Floor
4  Los Angeles, California 90024-3503
   Telephone: (310) 500-3500
5  Facsimile: (310) 500-3501

6  James P. Tallon, Esq. (SBN: 154035)
        jtallon@shearman.com
7  Wayne Dale Collins, Esq. (pro hac vice)
   SHEARMAN & STERLING LLP
8  599 Lexington Avenue
   New York, New York 10022-6069
9  Telephone: (212) 848-4000
   Facsimile: (212) 848-7179

10
   James F. Rittinger, Esq. (pro hac vice)
11     jrittinger@ssbb.com
   Justin E. Klein, Esq. (pro hac vice)
12 SATTERLEE STEPHENS BURKE & BURKE LLP
   230 Park Avenue, Suite 1130
13 New York, New York 10169
   Telephone: (212) 818-9200
14 Facsimile: (212) 818-9606

15 Attorneys for Defendant
   West Publishing Corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN STETSON, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>WEST PUBLISHING CORPORATION, et al.,<br><br>    Defendants. | Case No. CV 08-00810 R (Ex)<br><br>**DEFENDANT WEST PUBLISHING CORPORATION'S MEMORANDUM IN SUPPORT OF THAT PORTION OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE ORDER DENYING FINAL APPROVAL OF THE WEST PORTION OF THE CLASS ACTION SETTLEMENT**<br><br>Date: August 8, 2011<br>Time: 10:00 a.m.<br>Place: Courtroom 8<br><br>Date Action Filed: February 6, 2008 |

0031003/004/ 501266v01

# I.
# INTRODUCTION

Defendant West Publishing Corporation ("West") submits this Memorandum in support of that portion of Plaintiff's Motion for Reconsideration of the Order Denying Final Approval of the West Portion of the Stetson Class Action Settlement ("West Settlement"). West respectfully submits that the Court should reconsider its refusal to approve the West Settlement. In their moving papers, Class Counsel note that, in rejecting the West Settlement, the Court cited an incorrect per-claim payment when the Court compared the *Park* settlement to the West Settlement. As a result, the Court erred in concluding that the proposed per-claim payment to class members in the West Settlement was not comparable to the payment in *Park*. Additionally, Class Counsel explain that in comparing the *Rodriguez* settlement with the West Settlement, the Court did not use the same method for calculating the per-claim payments. If the same methodology had been used to compute the *Rodriquez* and West Settlement per-claim payments, the per-claim payments in the two cases would have been closer than the Court concluded. For these reasons, West respectfully urges that the Court should reconsider its prior decision and, based on the arguments submitted to the Court in connection with the Motion to Approve the Settlement, find that the West settlement is fair, reasonable, and adequate.

# II.
# BACKGROUND

The Court is fully familiar with this case, and the detailed background and facts are fully set forth in the parties' submissions seeking preliminary and final approval, as well as in Plaintiffs' Memorandum in Support of their Motion for Reconsideration ("Plaintiffs' Reconsideration Memo").

In summary, plaintiffs commenced this putative class action in February 2008 and West timely filed its motion to dismiss on or about March 14, 2008. On April 10, 2008, after oral argument, this Court dismissed plaintiffs' complaint with

1

prejudice. In so doing, the Court ruled from the bench that, "[S]ubstantively, plaintiffs' allegations regarding the current state of the market and its effects on individual plaintiffs cannot be squared with the provisions of the *Rodriguez* settlement. In approving the *Rodriguez* settlement, this court noted that the non-monetary relief provisions of the *Rodriguez* settlement removed allegedly significant barriers to entry." (April 7, 2008, Tr. of Proceedings at 8:17 - 8:23.) The Court therefore effectively determined, *inter alia*, that the termination of the co-marketing agreement between West and Kaplan pursuant to the *Rodriguez* settlement eliminated the possibility of antitrust damages being suffered by potential *Stetson* class members.

On May 7, 2008, plaintiffs filed a timely Notice of Appeal and, after full briefing, the Ninth Circuit heard oral argument on September 30, 2009. On appeal, the plaintiffs argued, *inter alia*, that the anti-competitive conduct alleged in the *Rodriguez* case continued to have an effect on potential *Stetson* class members, while West and Kaplan argued, in support of this Court's ruling dismissing the *Stetson* complaint with prejudice, that any antitrust damages ended at least with the *Rodriguez* settlement. To the extent that the potential *Stetson* class suffered any lingering anti-competitive impact after the termination of the co-marketing agreement, it has not been disputed that any damages would be in ever-decreasing amounts with the passage of time.

The Ninth Circuit did not decide the appeal, but instead on October 9, 2009, issued an order referring the matter to the Ninth Circuit Mediation Office. While the Ninth Circuit's reason for this referral is, of course, not known, it seems fairly apparent that the Ninth Circuit did not think that either side's position was a legal or equitable certainty. What is certain, however, is that at present there is no complaint pending in this action.

As set forth in the various papers submitted by the parties in support of approval of the settlement, for almost a year plaintiffs and West engaged in extensive

0031003/004/ 501266v01

settlement negotiations under the guidance and assistance of Ninth Circuit Mediator Roxanne Ashe. Mediator Ashe was fully familiar with the facts, including the injunctive provisions of the *Rodriguez* settlement, this Court's decision dismissing the Complaint in this action, and the vigorous entry of Kaplan into the full-service bar review preparation market in competition with BAR/BRI. While over the course of this time plaintiffs and West did substantially close the monetary gap between them with respect to the amount of a settlement, both ultimately agreed to accept Mediator Ashe's informed proposal of $5,285,000.

Whatever the separate value of the Kaplan coupon settlement or the West monetary settlement or the combined value of both, the Settlement Agreement specifically provided that class members could accept both, one, or none and that this Court could accept both, one or neither.[1] It was in this context that this Court, on March 21, 2011, conditionally certified the class and granted preliminary approval to both settlements. After appropriate notice, a final fairness hearing was held on June 20, 2011, following which the Court denied approval of both settlements.

## III.

## ARGUMENT

A. **The West Settlement Is Fair, Reasonable and Adequate.**

1. **The Court Has the Inherent Power to Reconsider Its Rejection of the West Settlement.**

As set forth in Plaintiffs' Memorandum in Support of Reconsideration, this Court has the discretion to reconsider its own orders, and this is especially true when an order is based upon an error of fact upon which the order is based. In their Memorandum, Class Counsel point out that the per-claim calculations cited by the

---

[1] It appears that the class members understood this choice. While there are only 107 opt-outs, 57 opted out only from the Kaplan portion of the settlement, 43 opted out of both, and only 7 opted out of the monetary West Settlement.

3

Court with respect to the *Park* and *Rodriguez* settlements, as well as the estimate for the West Settlement, are not accurate and/or comparable.[2]

### 2. The Per Claim Payments Cited by this Court in Rejecting the *Stetson* Settlement Were Not Correct (as to *Park*) and Not Comparable (as to *Rodriguez*).

In stating that the estimated per-claim payment to class members in this case was not commensurate with the per-claim payments in *Park* and *Rodriguez*, the Court calculated the recovery in those cases at $181.56 and $502.14 respectively. In fact, as explained by Class Counsel, the per-claim payments in both *Park* and *Rodriguez* were lower than the amounts cited by the Court.

In *Park*, $181.56 was the initial estimated average per-claim payment amount. However, the average per-claim payment was substantially reduced as a result of an amendment to the *Park* settlement, suggested by the *Park* Court at an initial fairness hearing, that increased the number of eligible class members and reduced the per claim payment. Thus, Class Counsel provided this Court with a copy of a check representing an individual *Park* settlement payment of $81.02. (*See* Plaintiffs' Reconsideration Memo at 8-11).

Similarly, Class Counsel also have explained that due to the lack of a substantial award of attorneys' fees and the number of claims submitted, the average actual per-claim payment from the *Rodriguez* settlement was greater than the per-claim payment in *Park* or the anticipated per-claim payment based on the West Settlement. But Class Counsel point out that if the Court had awarded benchmark fees to *Rodriguez* class counsel, as it did in calculating the West Settlement, the per-

---

[2] Plaintiffs also contend that the Supreme Court's June 20, 2011 decision in *Wal-Mart Stores* constitutes a change in law. *Wal-Mart* is consistent with West's position that bar review courses are offered on a state-by-state basis in distinct geographic markets, that, unlike the *Rodriguez* class, the vast majority of the *Stetson* class took the bar review course in a state and at a time when Kaplan had a directly competing course, and thus class certification for purposes other than settlement would be far from certain if this case proceeded.

4

claim payment in *Rodriguez* would have been approximately $398 per claim. (*See* Plaintiffs' Reconsideration Memo at 10-12).

Based on the total number of claims filed with respect to the West Settlement, the Court's estimated $82.15 per claim should probably be closer to $70 per claim (*see* Plaintiffs' Reconsideration Memo at 9-10). However, even this reduced amount compares much more favorably to the correct per-claim payments in *Park* and *Rodriguez*. There is only a $12 per-claim disparity between the *Park* settlement payment provided to the Court by Class Counsel and the projected West Settlement per-claim payment, instead of the $100 that the Court cited. Moreover, the $70 amount assumes that the Court awards to Class Counsel attorneys' fees of a full 25% of the West Settlement, equal to $1,321,250 of the total $5,285,000[3] contributed by West. If the Court in its discretion were to award instead $750,000 in attorneys' fees, the amount of the per-claim payment from the West Settlement would be virtually identical to the per-claim payment in *Park*.[4]

### 3. Due to Changed Circumstances, Potential Damages in *Rodriguez* Are Not Comparable to *Stetson* Potential Damages.

The per-claim payment in *Rodriguez* is obviously substantially higher than the estimated per-claim payment pursuant to the West Settlement. However, it is indisputable that market conditions have changed dramatically between the *Rodriguez* class period (from 1997 to July 2006) and the *Stetson* class period (from August 2006 to March 2011). Accordingly, to the extent that the *Stetson* class has sustained any damages, such damages are *de minimis* and in each subsequent year

---

[3] It is worth noting that the $600,000 in notice and administrative expenses, all of which came out of the West payment, will be for naught if the West Settlement is not approved.

[4] At Footnote 13 of Plaintiffs' Reconsideration Memorandum, plaintiffs' attorneys agree that if the Court believes the issue of attorneys' fees under the authority of *In re Mercury* required earlier notice, they do not object to deferring the award of attorneys' fees until further notice. In any event and under any circumstances, the amount of attorneys' fees ultimately awarded if the Court does approve the West Settlement is in the discretion of the Court.

5

further declining. The market changed because the *Rodriguez* settlement required termination of the co-marketing agreement and because BAR/BRI was required to amend its forms to make it clear that law students were not contractually committed to take BAR/BRI after graduation just because they signed up early in law school. Indeed, this Court specifically found that terminating the 1997 co-marketing agreement and amending the enrollment form had a meaningful impact on the market for full-service bar review courses (see *Rodriguez* Findings of Fact and Conclusion of Law, ¶ 123), which in effect holds that the *Rodriguez* settlement encourages competitors to enter the market, and requires BAR/BRI to lower its prices.

Moreover, it is factually indisputable that Kaplan and BAR/BRI now actively compete in the full service bar review course market and have been doing so for the bulk of the *Stetson* class period. But even before the Court approved the *Rodriguez* settlement, Kaplan had, in October 2006, acquired PNBR, a national provider of test preparation courses for the multi-state bar exam. Thereafter, Kaplan continued to grow its business by introducing full-service bar review courses in virtually all of the major states.

4. **At the Time of the Mediation and the Final Approval Hearing This Court's Decision Dismissing the Complaint Was (and Still Is) Law of the Case.**

Of course, the best evidence that any payment to a *Stetson* class member is adequate is that this Court, in dismissing the complaint, in effect held, due to the injunctive provisions of the *Rodriguez* settlement, that the *Stetson* complaint could not stand. This ruling (which West submits was correct) still stands. However, even if the Ninth Circuit eventually were to reinstate the complaint, it certainly would not mean that *Stetson* class members had suffered damages that should properly be compared to damages allegedly suffered by the *Rodriguez* class.

Although this Court rejected the settlement, it did state that the factor that the parties' counsel represented the settlement to be "fair, reasonable and adequate," and

6

the factor that they were "assisted in reaching settlement by mediator Roxanne Ashe" . . . "weigh in favor of approval." (June 20, 2011, Tr. of Proceedings at 13:11-14.) These findings were clearly justified based on the record as it existed at the time of mediation and the final fairness hearing:

- This Court dismissed the complaint with prejudice, specifically because the *Rodriguez* settlement eliminated any barriers to entry and implicitly because the *Stetson* class therefore could suffer no damages.
- On appeal, the Ninth Circuit did not affirm or reverse, but instead ordered the case to mediation.
- During this period, Kaplan vigorously expanded its full service bar review course offerings in every major state (*e.g.*, New York, California, Illinois, Florida, Texas, etc.) and is now, or shortly will be, in over 80% of the individual markets.
- Under the direction and assistance of Mediator Ashe, who was fully familiar with the record and the position of the parties, plaintiffs' and West's attorneys engaged in extensive settlement negotiations and, after the financial gap in their respective settlement positions sufficiently narrowed, Mediator Ashe submitted a monetary proposal that was accepted by plaintiffs and West.
- In recognition of the very different provisions with respect to the West and Kaplan settlements, the parties entered into a Settlement Agreement, with the guidance of Mediator Ashe, that specifically provided for an acceptance or rejection of one or both of the Kaplan and West settlement provisions.
- Thereafter, this Court, upon appropriate motion, preliminarily approved the entire *Stetson* settlement.

West takes no view with respect to the rejection of the Kaplan portion of the settlement, but notes that the Court in effect determined that Kaplan's coupon settlement was without any real value. Conversely, the Court did not and could not

0031003/004/ 501266v01

find the West monetary settlement to be valueless, but instead calculated an estimated per-claim value, depending upon the amount of attorneys' fees ultimately awarded, that is virtually identical to the per-claim payments in *Park*. In light of the fact that the complaint is currently dismissed, and the indisputably substantially changed market conditions that exist even if the Complaint is reinstated, and further considering the involvement, assistance and recommendation of Ninth Circuit Mediator Ashe, West submits that it was more than reasonable for counsel and Mediator Ashe to assert and the Court to find that the West Settlement was fair, reasonable and adequate.

Finally, West respectfully submits that two other points weigh in favor of the Court reconsidering its order and approving the West Settlement:

1. In rejecting the settlement, the Court held that the strength of the case and the risk, expense, complexity and likely duration of further litigation weighed in favor of rejection. West respectfully submits that even if the Ninth Circuit eventually reinstates the Complaint, the risk, expense, complexity and duration of renewed litigation would be substantial, and any recovery and its amount uncertain and, at best, years away.

2. Acceptance of the West Settlement means that class members will receive a fair and reasonable payment now, as opposed to many years from now. However, it does not mean that another payment will not also be forthcoming. The case will continue against Kaplan. If Kaplan wins, in all likelihood West would too. But if Kaplan settles or loses, the *Stetson* class members will receive some additional payment. Thus, just as the amount of the eventual award of attorneys' fees would impact the ultimate per-claim amount of the West Settlement, the *Stetson* class, if Kaplan does not prevail, will eventually receive some additional payment; if Kaplan wins, the *Stetson* class will have at least received the West Settlement payment.

## IV.

## **CONCLUSION**

West respectfully submits that the Court should grant Plaintiffs' Motion for Reconsideration and, upon reconsideration, determine that the West Settlement is fair, reasonable and adequate.

Dated: July 21, 2011

SHEARMAN & STERLING LLP

James P. Tallon
Wayne Dale Collins

LINER GRODE STEIN YANKELEVITZ SUNSHINE REGENSTREIF & TAYLOR LLP

Edward A. Klein
Heather H. Gilhooly

SATTERLEE STEPHENS BURKE & BURKE LLP

James F. Rittinger
Justin E. Klein

By: /s/ James F. Rittinger
James F. Rittinger
Attorneys for Defendant West Publishing Corporation

0031003/004/ 501266v01

# **PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 1100 Glendon Avenue, 14th Floor, Los Angeles, California 90024-3503. On July 21, 2011, I served the within document(s) described as:

DEFENDANT WEST PUBLISHING CORPORATION'S MEMORANDUM IN SUPPORT OF THAT PORTION OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE ORDER DENYING FINAL APPROVAL OF THE WEST PORTION OF THE CLASS ACTION SETTLEMENT

on the interested parties in this action as stated on the attached mailing list.

[X] (BY MAIL) By placing true copies of the foregoing document(s) in a sealed envelope addressed as set forth on the attached mailing list. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing contained in affidavit.

I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 21, 2011, at Los Angeles, California.

| Maryann Wilcox | *(signature)* |
|---|---|
| (Type or print name) | (Signature) |

0031003/004/ 501266v01

| | |
|---|---|
| 1 | **SERVICE LIST** |

Caeden C. Drayton
4233 NW 25 Place
Launderhill, FL 33313

Robert T. Plunkert
Brown & James P.C.
1010 Market Street, 20th Floor
St. Louis, MO 63101

Daniel Greenberg
Greenberg Legal Services
55 Fontenay Circle
Little Rock, AR 72223

Thomas E. Jackson
14521 E. Cabana Street #306
Corpus Christi, TX 78418

0031003/004/ 501266v01