1  Alan Harris (SBN 146079)
   David Zelenski (SBN 231768)
2  HARRIS & RUBLE
   6424 Santa Monica Boulevard
3  Los Angeles, California 90038
   Telephone:  (323) 962-3777
4  Facsimile:  (323) 962-3004
   aharris@harrisandruble.com
5  dzelenski@harrisandruble.com

6  Perrin Disner (SBN 257586)
   LAW OFFICES OF PERRIN F. DISNER
7  1855 Camden Avenue, Suite 3
   Los Angeles, California 90025
8  Telephone:  (310) 742-7944
   Facsimile:  (888) 544-5154
9  pdisner@disnerlaw.com

   *Attorneys for Plaintiffs*
10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

14  STEPHEN STETSON, SHANE              Case No. CV-08-00810 R (Ex)
    LAVIGNE, CHRISTINE LEIGH
15  BROWN-ROBERTS, VALENTIN YURI        **PLAINTIFFS' NOTICE OF**
    KARPENKO, and JAKE JEREMIAH         **MOTION AND MOTION FOR**
16  FATHY, individually and on behalf of all  **AWARD OF ATTORNEY'S FEES**
    others similarly situated,          **AND REIMBURSEMENT OF**
17                                      **COSTS; MEMORANDUM OF**
              Plaintiffs,               **POINTS AND AUTHORITIES IN**
18                                      **SUPPORT THEREOF**

19       v.                            Date:  August 19, 2013
                                        Time:  10:00 a.m.
20  WEST PUBLISHING CORPORATION,        Courtroom:  8
    a Minnesota corporation dba BAR/BRI,
21  and KAPLAN, INC.,                   *Assigned to Hon. Manuel L. Real*

22            Defendants.

23

24

25

26

27

28

**PLEASE TAKE NOTICE** that, on August 19, 2013, at 10:00 a.m., in Courtroom 8 of the above-entitled Court located at 312 North Spring Street, Los Angeles, California 90012—or at such other date, time, or place as the Court may designate—Plaintiffs Steven Stetson, Shane LaVigne, Christine Leigh Brown-Roberts, Valentin Yuri Karpenko, and Jake Jeremiah Fathy will move pursuant to Federal Rule of Civil Procedure 23(h) for an order awarding $1.9 million in attorney's fees and $49,934.89 in incurred litigation costs from the common-fund settlement reached in the above-captioned action.  The Motion will be made and based upon this Notice of Motion; the Memorandum of Points and Authorities appended hereto; the Declarations of Alan Harris, David Zelenski, and Perrin F. Disner filed herewith; the Request for Judicial Notice filed herewith; all of the pleadings, papers, and documents contained in the file of the within action; and such further evidence or argument as may be presented at or before the hearing on the Motion.

The Motion is made pursuant to the April 19, 2013, Order granting preliminary approval of the settlement, which Order set May 6, 2013, as the filing deadline for the Motion and set the hearing thereon for August 19, 2013.  The required Local Rule 7-3 meet-and-confer took place commencing on November 15, 2012 (when the Settlement Agreement was executed), and on various dates thereafter.

Dated:  May 6, 2013                         _____/s/ *David Zelenski*_____

                                                        Alan Harris
                                                        David Zelenski
                                                        Perrin Disner
                                                        *Attorneys for Plaintiffs*

## MEMORANDUM OF POINTS AND AUTHORITIES

### Table of Contents

I.  Introduction ............................................................................................................... 1

II.  Statement of Material Facts and Relevant Procedural History ............................... 2

   A.  Summary of Plaintiffs' Claims ..................................................................... 2

   B.  The Court's Initial Dismissal on Account of the Rodriguez Settlement ......... 2

   C.  Plaintiffs' Appeal of the Dismissal ............................................................... 4

   D.  The Prior Proposed Settlement ..................................................................... 4

   E.  Class Members' and the Court's Response to the Prior Settlement ............... 7

   F.  The Average Recovery Amounts in Rodriguez and Park ............................... 8

   G.  Return to Mediation and to the Ninth Circuit ............................................. 9

   H.  Remand to the District Court ...................................................................... 12

III.  Argument ............................................................................................................... 13

   A.  Class Counsel Are Entitled to Recover Fees from the Common Fund ......... 13

   B.  Class Counsel's Requested Fees Fall Below the "Benchmark" .................. 15

   C.  Class Counsel Are Permitted to Seek a Percentage of the Cash
       Increase ..................................................................................................... 20

   D.  The Lodestar Crosscheck Confirms the Requested Fees Are
       Reasonable ................................................................................................ 21

   E.  Class Counsel's Requested Expense Reimbursement Is Proper ................. 25

IV.  Conclusion ............................................................................................................. 25

*Table of Authorities*

*Cases*

Adoma v. Univ. of Phoenix, Inc.
   2012 U.S. Dist. LEXIS 181281 (E.D. Cal. filed Dec. 20, 2012)...................................25

Anderson v. Nextel Retail Stores, LLC
   2010 U.S. Dist. LEXIS 71598 (C.D. Cal. filed June 30, 2012)...................................23

Ashley v. Atl. Richland Co.
   794 F.2d 128 (3d Cir. 1986) .......................................................................................23

Blum v. Stenson
   465 U.S. 886 (1984)....................................................................................................23

Boeing Co. v. Van Germet
   444 U.S. 472 (1980)...............................................................................................6, 14

Bond v. Ferguson
   2011 U.S. Dist. LEXIS 70390 (N.D. Cal. filed June 30, 2011) ...................................15

Carter v. Anderson Merchandisers, LP
   2010 U.S. Dist. LEXIS 55629 (C.D. Cal. filed May 10, 2010)....................................18

Chemical Bank v. Jaffe & Schlesinger, P.A.
   19 F.3d 1306 (9th Cir. 1994) ......................................................................................20

Cicero v. DirecTV, Inc.
   2010 U.S. Dist. LEXIS 86920 (C.D. Cal. filed July 27, 2010) ....................................18

Clark v. Payless Shoesource, Inc.
   2012 U.S. Dist. LEXIS 105187 (W.D. Wash. filed July 27, 2012) ..............................13

Collado v. Toyota Motor Sales, U.S.A., Inc.
   2011 U.S. Dist. LEXIS 133572 (C.D. Cal. filed Oct. 17, 2011)...................................24

Craft v. County of San Bernardino
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ......................................................................18

<u>Davis v. City of San Francisco</u>
  976 F.2d 1536 (9th Cir. 1992) ........................................................... 23

<u>Davis v. City of San Francisco</u>
  984 F.2d 345 (9th Cir. 1993) ............................................................. 23

<u>Franco v. Ruiz Food Prods., Inc.</u>
  2012 U.S. Dist. LEXIS 169057 (E.D. Cal. filed Nov. 27, 2012) .......... 16, 25

<u>Gardner v. GC Servs., LP</u>
  2012 U.S. Dist. LEXIS 47034 (S.D. Cal. filed Apr. 2, 2012) ................... 18

<u>Gates v. Deukmejian</u>
  987 F.2d 1392 (9th Cir. 1992) ........................................................... 23

<u>Greko v. Diesel U.S.A., Inc.</u>
  2013 U.S. Dist. LEXIS 60114 (N.D. Cal. filed Apr. 26, 2013) ................. 13

<u>Hopkins v. Stryker Sales Corp.</u>
  2013 U.S. Dist. LEXIS 16939 (N.D. Cal. filed Feb. 6, 2013) ........... 16, 18, 25

<u>In re Activision Sec. Litig.</u>
  723 F. Supp. 1373 (N.D. Cal. 1989) .................................................. 15, 16

<u>In re ATM Fee Antitrust Litig.</u>
  686 F.3d 741 (9th Cir. 2011) ............................................................. 22

<u>In re Bluetooth Headset Prods. Litig.</u>
  654 F.3d 936 (9th Cir. 2011) ......................................................... 13–14

<u>In re Cadence Design Sys., Sec. & Derivative Litig.</u>
  2012 U.S. Dist. LEXIS 56785 (N.D. Cal. filed Apr. 23, 2012) ................. 20

<u>In re FPI/Agretech Sec. Litig.</u>
  105 F.3d 469 (9th Cir. 1997) .......................................................... 20, 21

<u>In re Heritage Bond Litig.</u>
  2005 U.S. Dist. LEXIS 13555 (C.D. Cal. filed June 10, 2005) ........... 14, 16, 21

<u>In re HP Laser Printer Litig.</u>
  2011 U.S. Dist. LEXIS 98759 (C.D. Cal. filed aug. 31, 2011) ................... 23

In re HPL Techs., Inc. Sec. Litig.
    366 F. Supp. 2d 912 (N.D. Cal. 2005) ................................................. 23, 24

In re Linerboard Antitrust Litig.
    2004 U.S. Dist. LEXIS 10532 (E.D. Pa. filed June 2, 2004) ...................... 22

In re Nuvelo Sec. Litig.
    2011 U.S. Dist. LEXIS 72260 (N.D. Cal. filed July 6, 2011) ............ 15, 16, 17

In re Petition of Hill
    775 F.2d 1037 (9th Cir. 1985) .......................................................... 14

In re Visa Check/MasterMoney Antitrust Litig.
    297 F. Supp. 2d 503 (E.D.N.Y. 2003) ................................................. 19

Kakani v. Oracle Corp.
    2007 U.S. Dist. LEXIS 58740 (N.D. Cal. filed Aug. 2, 2007) ..................... 11

Kerr v. Screen Extras Guild, Inc.
    526 F.2d 67 (9th Cir. 1975) ............................................................. 25

Knight v. Red Door Salons, Inc.
    2009 U.S. Dist. LEXIS 1149 (E.D. Cal. filed Feb. 2, 2009) ...................... 15

Lindy Bros. Builders, Inc. v. Am. Radiator, Etc.
    540 F.2d 102 (3d Cir. 1976) ............................................................ 20

Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles
    2009 U.S. Dist. LEXIS 132269 (C.D. Cal. filed June 24, 2009) ................. 24

Pierce v. County of Orarnge
    2012 U.S. Dist. LEXIS 150492 (C.D. Cal. filed Mar. 2, 2012) .................. 23

Prandini v. Nat'l Tea Co.
    557 F.2d 1015 (3d Cir. 1977) .......................................................... 21

Rodriguez v. West Publ'g Corp.
    2007 U.S. Dist. LEXIS 74767 (C.D. Cal. filed Sept. 10, 2007) ........... *passim*

Rodriguez v. West Publ'g Corp.
    2010 U.S. Dist. LEXIS 24155 (C.D. Cal. filed Feb. 3, 2010) ...................... 8

Rodriguez v. West Publ'g Corp.
   563 F.3d 948 (9th Cir. 2009) ................................................................. 3, 8, 16

Rutti v. Lojack Corp.
   2012 U.S. Dist. LEXIS 107677 (C.D. Cal. filed July 31, 2012) ...................... 23, 24

Sandoval v. Tharaldson Employee Mgmt., Inc.
   2010 U.S. Dist. LEXIS 69799 (C.D. Cal. filed June 15, 2010)............................ 11

Schiller v. David's Bridal, Inc.
   2012 U.S. Dist. LEXIS 80776 (E.D. Cal. filed June 11, 2012)............................. 11

Six (6) Mexican Workers v. Arizona Citrus Growers
   904 F.2d 1301 (9th Cir. 1990) .............................................................................. 15

Staton v. Boeing Co.
   327 F.3d at 938 (9th Cir. 2003) ................................................................. 6, 13, 22

Thieriot v. Celtic Ins. Co.
   2011 U.S. Dist. LEXIS 44852 (N.D. Cal. filed Apr. 21, 2011) ........................... 18

Torrisi v. Tucson Elec. Power Co.
   8 F.3d 1370 (9th Cir. 1993) .................................................................................. 14

Trevino v. Gates
   99 F.3d 911 (9th Cir. 1996) .................................................................................. 23

United Steelworkers of Am. v. Phelps Dodge Co.
   896 F.2d 403 (9th Cir. 1990) ................................................................................ 24

Vizcaino v. Microsoft Corp.
   290 F.3d 1043 (9th Cir. 2002) ....................................................................... passim

Wal-Mart Stores, Inc. v. Dukes
   131 S. Ct. 2541 (2011) .......................................................................................... 17

Wang v. Chinese Daily News, Inc.
   2008 U.S. Dist. LEXIS 123824 (C.D. Cal. filed Oct. 3, 2008) ............................ 24

Wang v. Chinese Daily News, Inc.
   132 S. Ct. 74 (2011).............................................................................................. 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Statutes*

15 U.S.C. § 1 .................................................................................................. 2

15 U.S.C. § 2 .................................................................................................. 2

*Rules*

Federal Rule of Civil Procedure 23 ............................................................. 13

Federal Rule of Civil Procedure 48 ............................................................. 17

PLS.' MOT. FOR AWARD OF ATT'YS FEES & REIMBURSEMENT OF COSTS

1    *I.    Introduction.*

2         On April 19, 2013, the Court preliminarily approved a Stipulation and Settlement

3    Agreement ("Settlement Agreement") executed by Plaintiffs Steven Stetson, Shane

4    LaVigne, Christine Leigh Brown-Roberts, Valentin Yuri Karpenko, and Jake Jeremiah

5    Fathy, on the one hand, and Defendants West Publishing Corporation ("West") and

6    Kaplan, Inc. ("Kaplan"), on the other hand.[1]   The Settlement Agreement seeks to resolve

7    Plaintiffs' claims for alleged violations of federal antitrust law stemming from a

8    purportedly illegal market-division agreement between West and Kaplan.

9         This is the second settlement reached in this action.  Under the prior settlement,

10   which was preliminarily but not finally approved by the Court, West was to establish a

11   cash settlement fund of $5.285 million for the benefit of the Class.  Also under the prior

12   settlement, Kaplan was to provide over 180,000 discount certificates to the Class with a

13   total estimated value of at least $2.82 million.  Under the terms of the new Settlement

14   Agreement, there are no discount certificates, and both West and Kaplan are to increase

15   the cash settlement amount by $4.215 million, to $9.5 million.  The $9.5 million Gross

16   Settlement Fund will be used to pay the claims of Class Members who submit valid

17   Claim Forms.  By way of the present Motion, Class Counsel seek attorney's fees of $1.9

18   million from the Gross Settlement Fund, equal to 25% of the original $5.285 million cash

19   settlement (*i.e.*, $1,321,250), plus approximately 13.73% of the $4.215 million cash

20   increase (*i.e.*, $578,750).  Class Counsel also seek reimbursement for incurred litigation

21   expenses of $49,934.89.

22         Effectively, by requesting 25% of the prior cash settlement amount and less than

23   14% of the $4.215 million cash increase, the total fees come to only 20% of the $9.5

24   million Gross Settlement Fund.  As explained below, this is less than the 25% Fee Award

25   contemplated by the Settlement Agreement, and it amounts to only $128,750 more than

26   the fees requested under the prior settlement.  Additionally, the 20% request falls below

27   the 25% "benchmark" established by the Ninth Circuit for common-fund cases, and it

28   _____
     [1] Capitalized terms have the same meaning as used in the Settlement Agreement.

1 | likely will result in an average *net* recovery to Class Members of $128.01—nearly half
2 | the average net recovery under the earlier class-wide settlement in <u>Rodriguez v. West</u>,
3 | Central District of California Case No. CV 05-3222 R, and over one-third *more* than the
4 | average net recovery under the class-wide settlement in <u>Park v. Thomson Corporation</u>,
5 | Southern District of New York Case No. 05 Civ. 2931 (WHP). Class Counsel's request
6 | should therefore be approved as fair, reasonable, and adequate.

7 | **II.  Statement of Material Facts and Relevant Procedural History.**

8 | **A.  Summary of Plaintiffs' Claims.**

9 | Plaintiffs commenced this action over five years ago, in February 2008. (Feb. 6,
10 | 2008, Class Action Compl. for Violations of the U.S. Antitrust Laws ("Feb. 6, 2008,
11 | Compl.") at 1.) Plaintiffs' Complaint alleged that West and Kaplan had violated section
12 | 1 of the Sherman Act, 15 U.S.C. § 1, by conspiring to restrain trade in the full-service
13 | bar-review-course market. (Feb. 6, 2008, Compl. ¶¶ 92–98.) Plaintiffs' Complaint also
14 | alleged that West had violated section 2 of the Sherman Act, 15 U.S.C. § 2, by
15 | unlawfully acquiring and/or maintaining a monopoly of the bar-review market. (Feb. 6,
16 | 2008, Compl. ¶¶ 99–111.) The primary allegation against West and Kaplan was that they
17 | had entered an illegal "co-marketing" agreement in 1997 under which Kaplan agreed to
18 | withdraw its bid to purchase West Bar and stay out of the full-service bar-review market
19 | in exchange for an annual payment from West. (Feb. 6, 2008, Compl. ¶ 48.)

20 | **B.  The Court's Initial Dismissal on Account of the <u>Rodriguez</u> Settlement.**

21 | One month after Plaintiffs' Complaint had been filed, West moved to dismiss.
22 | (Mar. 14, 2008, Notice of Mot. and Mot. to Dismiss Compl. Pursuant to Fed. R. Civ.
23 | Proc. 12(b)(6) and 12(b)(1) at 1.) Kaplan submitted papers joining in the Motion. (Mar.
24 | 14, 2008, Def. Kaplan's Notice of Joinder & Joinder in Def. West's Mot. to Dismiss
25 | Pursuant to Fed. R. Civ. Proc. 12(b)(6) at 1.) Principally, West's Motion argued that
26 | Plaintiffs' claims were preempted under a settlement reached in 2007 in the related
27 | <u>Rodriguez</u> action. (<u>See</u>, <u>e.g.</u>, Mar. 14, 2008, Mem. of P. & A. in Supp. of Mot. to
28 | Dismiss Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) at 2:1–5 (arguing that

1  Plaintiffs' Complaint "ignores . . . the significant market effects of the non-monetary

2  relief provided by the <u>Rodriguez</u> settlement"), 11:3–5 (stating that, "[i]n approving the

3  <u>Rodriguez</u> settlement, this Court noted that the non-monetary relief provisions of the

4  <u>Rodriguez</u> settlement removed allegedly significant barriers to entry").)

5      <u>Rodriguez</u>, as this Court is aware, was an antitrust class action brought against

6  West and Kaplan for an alleged conspiracy to restrain trade in the bar-review-course

7  market.  (<u>See generally</u> May 6, 2013, Req. for Judicial Notice in Supp. of Pls.' Mot. for

8  Award of Att'ys Fees & Reimbursement of Costs ("May 6, 2013, Req. for Judicial

9  Notice") Ex. 1.)  As alleged by the <u>Rodriguez</u> plaintiffs, West and Kaplan had entered the

10  illegal co-marketing agreement identified above.  (May 6, 2013, Req. for Judicial Notice

11  Ex. 1 at ¶ 4.)  <u>Rodriguez</u> was settled by the parties thereto, with the Court granting final

12  approval in 2007.  (May 6, 2013, Req. for Judicial Notice Ex. 2 at 1.)  As part of the

13  <u>Rodriguez</u> settlement, West and Kaplan agreed to certain non-monetary relief, including

14  the termination of their co-marketing agreement.  <u>Rodriguez v. West Publ'g Corp.</u>, 2007

15  U.S. Dist. LEXIS 74767 at *19, 22 (C.D. Cal. filed Sept. 10, 2007), <u>aff'd in relevant part</u>

16  <u>and rev'd in part on other grounds</u>, 563 F.3d 948 (9th Cir. 2009).  Such non-monetary

17  relief was designed to foster competition in, and eliminate alleged barriers to entry into,

18  the bar-review-course market.  <u>See Rodriguez</u>, 2007 U.S. Dist. LEXIS 74767 at *19.

19      In light of the <u>Rodriguez</u> settlement, this Court dismissed Plaintiffs' Complaint

20  with prejudice on April 10, 2008.  (Apr. 10, 2008, Order Granting Def. West's Mot. to

21  Dismiss Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) with Prejudice at 2:13–

22  14.)  According to the Court:

23          [S]ubstantively, [P]laintiffs' allegations regarding the current state of

24          the market and its effects on individual [P]laintiffs cannot be squared with

25          the provisions of the <u>Rodriguez</u> settlement.  In [ap]proving the <u>Rodriguez</u>

26          settlement, this [C]ourt noted that the non-monetary relief provisions of the

27          <u>Rodriguez</u> settlement removed allegedly significant barriers to entry [in the

28          bar-review-course market]. . . .

1   Thus, the allegations that contradict these findings fail . . . .

2   (Apr. 7, 2008, Tr. of Proceedings at 4:17–5:2.)

3   **C.   *Plaintiffs' Appeal of the Dismissal.***

4   Following the Court's ruling on West's Motion, Plaintiffs appealed.  (May 7, 2008,

5   Notice of Appeal at 1.)  Among the issues addressed in the appeal, Plaintiffs pointed to

6   the distinct time period covered by the claims in their Complaint relative to the time

7   period covered in <u>Rodriguez</u>.  (May 6, 2013, Req. for Judicial Notice Ex. 5 at 12–19.)

8   Where the <u>Rodriguez</u> class spanned the ten-year period from August 1, 1997, through

9   July 31, 2006 (May 6, 2013, Req. for Judicial Notice Ex. 2 at 6:27), Plaintiffs' claims

10  herein were brought on behalf of individuals who had purchased bar-review courses *after*

11  July 31, 2006 (Feb. 6, 2008, Compl. ¶ 79).  Plaintiffs, in other words, allege a new and

12  wholly distinct Class with its own damages attributable to the *residual* impact on the bar-

13  review-course market of the conduct at issue in <u>Rodriguez</u>—conduct that took place

14  almost exclusively prior to the commencement of the within Class Period.  Notably, after

15  the filing of the present suit, Kaplan did indeed finally enter the relevant market.

16  Although this does not in itself excuse Plaintiffs' damages, it arguably lessens them to a

17  degree below the damages suffered by <u>Rodriguez</u> class members.[2]

18  Oral argument for the appeal was heard by the Ninth Circuit on September 30,

19  2009.  (May 6, 2013, Decl. of Alan Harris in Supp. of Pls.' Mot. for Award of Att'ys

20  Fees & Reimbursement of Costs ("May 6, 2013, Harris Decl.") ¶ 7.)  In October 2009, in

21  lieu of ruling on the appeal, the Ninth Circuit issued an Order "referr[ing the matter] to

22  the Ninth Circuit Mediation Office to explore a possible resolution through mediation."

23  (May 6, 2013, Req. for Judicial Notice Ex. 6 at 1.)

24  **D.   *The Prior Proposed Settlement.***

25  Over the next eight months, the parties engaged in numerous settlement

26  conferences supervised by the appointed Ninth Circuit Mediator, Roxane Ashe.  (May 6,

27  ───────────────────
      [2] Any lingering anticompetitive impact of the erstwhile market-division agreement can
28  be presumed to decrease over time commensurate with the competitive pressure brought
    to the market by Kaplan's increasing participation.

1  2013, Harris Decl. ¶ 7.)  Plaintiffs also engaged in additional arm's length negotiations

2  with Kaplan.  (May 6, 2013, Harris Decl. ¶ 7.)  During those negotiations, Plaintiffs

3  reached a non-monetary settlement with Kaplan.  (May 6, 2013, Harris Decl. ¶ 7.)  Under

4  the terms of that proposed settlement, Kaplan agreed to provide Class Members with

5  transferable discount certificates redeemable toward the purchase of future Kaplan

6  educational courses.  (May 6, 2013, Harris Decl. ¶ 7.)  Because the certificates would

7  have been usable for purchasing bar-review courses, it was the parties' good-faith belief

8  that the coupons would hasten competition between Kaplan—the new entrant to the bar-

9  review market—and West.  (May 6, 2013, Harris Decl. ¶ 7.)  According to an expert

10  retained by Plaintiffs to estimate the cash value of those certificates, the coupons were

11  worth at least $2.82 million.  (May 6, 2013, Harris Decl. ¶ 7 & Ex. 1 at ¶ 16.)

12          After Plaintiffs and Kaplan had negotiated the discount-certificate relief, the Ninth

13  Circuit Mediator issued a proposal that Plaintiffs settle their claims against West for

14  $5.285 million.  (May 6, 2013, Harris Decl. ¶ 8.)  Plaintiffs and West ultimately accepted

15  the Mediator's proposal, and a global settlement agreement reflecting the discount-

16  certificate settlement with Kaplan and the monetary settlement with West was executed

17  in October 2010.  (May 6, 2013, Harris Decl. ¶ 8.)

18          In December 2010, the Ninth Circuit remanded the action for settlement-approval

19  purposes.  (May 6, 2013, Req. for Judicial Notice Ex. 7 at 1.)  Plaintiffs thereafter filed

20  their Motion for preliminary approval (see Feb. 18, 2011, Pls.' Notice of Mot. & Mot. for

21  Conditional Certification of Settlement Class, Preliminary Approval of Class-Action

22  Settlement, & Appointment of Claims Administrator at 1), which Motion the Court

23  granted (see Mar. 21, 2011, Order Granting Pls.' Mot. for Conditional Certification of

24  Settlement Class, Preliminary Approval of Class-Action Settlement, & Appointment of

25  Claims Administrator at 1).  Notice was then delivered to the Class, and Members were

26  afforded an opportunity to submit claims.  (May 6, 2013, Harris Decl. ¶ 9.)

27          According to the Claims Administrator appointed by the Court, 184,496 notice

28  packets were delivered to the Class in connection with the prior settlement.  (May 6,

2013, Harris Decl. ¶ 9; May 31, 2011, Decl. of Markham Sherwood re Mailing of Notice to Class of Proposed Settlement of Class Action, Claim Form & Discount Certificates & Report on Reqs. for Exclusion & Objections Received ("May 31, 2011, Sherwood Decl.") ¶ 4.)  From those 184,496 notice packets, 47,542 timely claim forms were submitted, representing 57,262 bar-review-course purchases.[3]  (May 6, 2013, Harris Decl. ¶ 9; June 17, 2011, Supplemental Decl. of Markham Sherwood re Mailing of Notice to Class of Proposed Settlement of Class Action, Claim Form, Discount Certificates & Report on Claim Forms, Reqs. for Exclusion & Objections Received ("June 17, 2011, Sherwood Decl.") ¶ 3.)  Based on these figures, the average *gross* award to each participating Class Member under the prior settlement was approximately $92.30.[4]  After deducting attorney's fees and costs, as well as claims-administration fees and expenses, each of the participating Class Members would have received a *net* share of the $5.285 million settlement fund.  Under the prior settlement, Class Counsel requested 25% of the $5.285 million common-fund settlement with West (*i.e.*, $1,321,250), as well as $450,000 in fees from the settlement with Kaplan.[5]  (May 31, 2011, Mot. for Fees at 7:13–14, 18:5–7.)  After deducting the requested 25% from the cash fund, as well as attorney and claims-administration costs of $44,047 and $600,890, respectively (see May 6, 2013, Harris Decl. ¶ 9), the average net recovery to participating Class Members would have been approximately $57.96.[6]

---

[3] The per-Class Member computation under the earlier settlement—as under the present Settlement Agreement—was a function of the total amount that each Class Member paid for bar-review courses.  Accordingly, the 57,262 figure should be used instead of the 47,542 figure to estimate the average recovery under the prior settlement.

[4] The gross-recovery amount is inclusive of attorney's fees and claims-administration expenses, both of which constitute benefits to the Class.  See Boeing Co. v. Van Germet, 444 U.S. 472, 478 (1980) (explaining that attorney's fees are properly considered a class benefit); Staton v. Boeing Co., 327 F.3d 938, 975 (9th Cir. 2003) (stating that "[t]he post-settlement cost of providing notice to the class can reasonably be considered a benefit to the class").

[5] The $450,000 amount was to be paid by Kaplan on top of the $1,321,250 from the West cash fund.  (May 31, 2011, Pls.' Mot. for Award of Att'ys Fees & Reimbursement of Costs ("May 31, 2011, Mot. for Fees") at 18:5–7.)  In other words, the $5.285 million common fund would not have been reduced beyond the 25% requested by Class Counsel.

[6] According to the Court, the average net recovery under the prior settlement was $82.50.  (June 20, 2011, Reporter's Tr. of Proceedings at 14:19.)  It appears that the

1      ***E.      Class Members' and the Court's Response to the Prior Settlement.***

2              Again, from the 184,496 notice packets delivered to the Class under the prior

3      settlement, 47,542 timely claim forms were submitted, representing 57,262 bar-review-

4      course purchases.  (May 6, 2013, Harris Decl. ¶ 9; May 31, 2011, Sherwood Decl. ¶ 4;

5      June 17, 2011, Sherwood Decl. ¶ 3.)  According to the Claims Administrator, a total of

6      113 exclusion requests, equal to approximately .06% of the Class, and 62 objections,

7      equal to approximately .03% of the Class, were submitted.  (May 6, 2013, Harris Decl.

8      ¶ 9; June 17, 2011, Sherwood Decl. ¶¶ 4–5.)  One of the objections, filed by Class

9      Member Jonathan Hutcheson, purported to have been made on behalf of 209 separate

10     Class Members.  (May 6, 2013, Harris Decl. ¶ 9; May 31, 2011, Sherwood Decl. ¶ 11 &

11     Ex. D-4 at 1–89.)  Similarly, thirty of the sixty-two Class Members who submitted

12     objections did so to join in an objection filed by Class Member Daniel Greenberg of the

13     "Center for Class Action Fairness."  (May 6, 2013, Harris Decl. ¶ 9; May 31, 2011,

14     Sherwood Decl. ¶ 11 & Ex. D-1 at 8–43.)  Finally, six objecting Class Members filed an

15     objection through a non-Class Member attorney, George Richard Baker.  (May 6, 2013,

16     Harris Decl. ¶ 9; May 30, 2011, Objection to Class Action Settlement at 1.)

17             After Class Members had been given an opportunity to submit claims, object,

18     and/or exclude themselves, Plaintiffs filed their Motion for final approval and Motion for

19     fees, both of which came on for hearing on June 20, 2011.  (See generally May 31, 2011,

20     Pls.' Notice of Mot. & Mot. for Final Approval of Class-Action Settlement; May 31,

21     2011, Mot. for Fees.)  The only objector to appear at the hearing was Mr. Baker.  (June

22     20, 2011, Reporter's Tr. of Proceedings at 2:3–6.)  During the hearing, the Court denied

23     the Motion for final approval, holding that the average recovery amount did not

24     reasonably compare to that in Rodriguez or Park.  (June 20, 2011, Reporter's Tr. of

25     Proceedings at 14:15–25.)  The Court then denied as moot Plaintiffs' Motion for fees.

26     (June 20, 2011, Reporter's Tr. of Proceedings at 15:8–9.)

27     _____

28     Court computed that amount by assuming that the total number of valid claims was
       43,303.  (June 20, 2011, Reporter's Tr. of Proceedings at 14:19.)  Using instead the
       57,262 figure, the average recovery was $57.96.

### F.   The Average Recovery Amounts in <u>Rodriguez</u> and <u>Park</u>.

In <u>Rodriguez</u>, a total settlement fund of $49 million was established for over 376,000 class members (*i.e.*, on behalf of more than double the size of the present Class). <u>Rodriguez</u>, 563 F.3d at 957.  From the 376,000 members, approximately 88,000 claim forms were submitted,[7] representing approximately 130,000 bar-review courses.[8]  (May 6, 2013, Harris Decl. ¶ 11.)  Based on the 130,000 figure, the average *gross* award to each class member who submitted a claim in <u>Rodriguez</u> was approximately $376.92. After subtracting requested attorney's fees of $12,250,000, <u>see</u> <u>Rodriguez</u>, 563 F.3d at 957 (explaining that, under the <u>Rodriguez</u> settlement, counsel were seeking 25% of the settlement fund, *i.e.*, $12,250,000), and costs of $1,665,595.62, <u>see</u> <u>Rodriguez v. West Publ'g Corp.</u>, 2010 U.S. Dist. LEXIS 24155 (C.D. Cal. filed Feb. 3, 2010) (noting the awarded costs), a total of $35,084,404.38 was left for distribution to the <u>Rodriguez</u> class. The average *net* class-member payment was thus approximately $269.88.[9]

In <u>Park</u>, a gross settlement fund of $13 million was established on behalf of approximately 280,000 class members (*i.e.*, on behalf of more than 1.5 times the size of the present Class).  (May 6, 2013, Req. for Judicial Notice Ex. 4 at 2–3.)  Of the 280,000 members, 70,259 submitted claim forms, representing 107,109 courses.[10]  (<u>See</u> May 6,

---

[7] The Ninth Circuit noted a smaller participation rate reflecting only 52,000 submitted claims.  <u>Rodriguez</u>, 563 F.3d at 967.  This lower figure appears to have been taken from the district court's opinion, which had counted submitted claims only through August 2007.  <u>Rodriguez</u>, 2007 U.S. Dist. LEXIS 74767 at *33.

[8] The per-class-member computation under the settlement in <u>Rodriguez</u> was a function of the total amount that each <u>Rodriguez</u> class member paid for bar-review courses.  (May 6, 2013, Harris Decl. ¶ 11.)  Accordingly, the 130,000 figure should be used instead of the 88,000 figure to calculate the average <u>Rodriguez</u> recovery.

[9] The average net recovery under <u>Rodriguez</u> noted by the Court in connection with denying final approval of the prior settlement was $502.14.  (<u>See</u> June 20, 2011, Reporter's Tr. of Proceedings at 14:24.)  It appears that the Court calculated its amount based on (a) the total number of claims submitted rather than the associated number of bar-review courses and (b) applying an attorney-fee award of approximately $3,000,000, which was the fee awarded in <u>Rodriguez</u> on February 3, 2010.  <u>Rodriguez</u>, 2010 U.S. Dist. LEXIS 24155 at *15.  For purposes of the present Motion, a 25% fee award should be presumed, as (a) that was the amount contemplated at the preliminary-approval stage in <u>Rodriguez</u> and (b) the initial final-approval order in <u>Rodriguez</u> granted plaintiffs' counsel's 25% request.  <u>Rodriguez</u>, 2007 U.S. Dist. LEXIS 74767 at *80.

[10] Class members could participate in the <u>Park</u> settlement either by submitting a claim in <u>Park</u> itself or by submitting a claim in <u>Rodriguez</u>.  (<u>See</u> May 6, 2013, Req. for Judicial

2013, Req. for Judicial Notice Ex. 3 at ¶¶ 7, 15.)  Based on the 107,109 figure, the average *gross* award to each participating class member was approximately $121.37.  After subtracting requested attorney's fees of $2,031,774; attorney's expenses of $109,624.99; claims-administration fees of $750,000; and an incentive award to the named plaintiff of $5,000, a total of $10,103,601.01 was left for distribution to the Park class.  (May 6, 2013, Req. for Judicial Notice Ex. 4 at 3, 13–14.)  The average *net* class-member payment was thus approximately $94.33.[11]

Putting Park and Rodriguez to the side, the Court also expressed concerns with the discount-certificate portion of the prior settlement.  According to the Court, the coupons represented only "nominal value" to Class Members; additionally, approving such a non-cash settlement would, in the Court's view, simply "encourage[] further business with Kaplan rather than disgorge[e] ill-gotten gains."  (June 20, 2011, Reporter's Tr. of Proceedings at 13:19, 14:11–12.)  Based on these additional concerns, the Court declined granting final approval of the prior settlement on July 1, 2011.  (See generally July 1, 2011, Order Denying Final Approval of Class-Action Settlement & Req. for Reimbursement of Att'ys Fees & Costs.)

### G.    Return to Mediation and to the Ninth Circuit.

Following the Court's denial of final approval of the prior settlement, the parties participated in a private mediation before John Francis Carroll on September 22, 2011. (May 6, 2013, Harris Decl. ¶ 12; Mar. 18, 2013, Decl. of Mediator John Francis Carroll

---

Notice Ex. 4 at 4 (stating that "[t]he [a]mended [s]ettlement also obviates the need for any Rodriguez class member who submitted a claim form in that case to submit one in this action [*i.e.*, in Park] as well, in order to receive a payment").)  Claims submitted in Rodriguez were thus deemed to have also been submitted in Park.  According to the Park claims administrator, 55,649 claims were submitted in Park itself, and an additional 14,610 claims were submitted by Park class members claiming only through Rodriguez, for a total of 70,259 claims.  (May 6, 2013, Req. for Judicial Notice Ex. 3 at ¶¶ 7, 15.) Also according to the Park claims administrator, the 55,649 claims represented 75,271 separate courses, and the 14,610 additional claims represented 31,838 additional courses, for a total of 107,109 courses.  (May 6, 2013, Req. for Judicial Notice Ex. 3 at ¶¶ 7, 15.)

[11] The average net recovery under Park noted by the Court in connection with denying final approval of the prior settlement was $181.56.  (See June 20, 2011, Reporter's Tr. of Proceedings at 14:24.)  It appears that the Court calculated this amount based on the 55,649 claims submitted in Park itself rather than on the 107,109 courses represented by 70,259 total claims.

1    in Supp. of Class Action Settlement ("Mar. 18, 2013, Carroll Decl.") ¶ 2.)  Mr. Carroll
2    was the special master appointed to oversee discovery in <u>Rodriguez</u>, <u>see</u> <u>Rodriguez</u>, 2007
3    U.S. Dist. LEXIS 74767 at *30, and he was "particularly knowledgeable of the
4    underlying facts which ultimately gave rise to the bringing of the within matter" (<u>see</u>
5    Mar. 18, 2013, Carroll Decl. ¶ 1).  Shortly thereafter, on October 18, 2011, the Ninth
6    Circuit reasserted its jurisdiction and ordered the parties "to file supplemental letter briefs
7    setting forth (i) their respective positions on the [D]istrict [C]ourt's rejection of the
8    [prior] proposed settlement and (ii) the status of their commitment to the terms of the
9    rejected settlement." (May 6, 2013, Req. for Judicial Notice Ex. 8 at 1.)  Defendants filed
10   their briefs on October 28, 2013, expressing a commitment to the terms of the rejected
11   settlement.  (<u>See</u> May 6, 2013, Req. for Judicial Notice Ex. 9 at 4 (West's brief, stating
12   that "West remains committed to the terms of the rejected settlement), Ex. 10 at 5
13   (Kaplan's brief, stating that "Kaplan continues to believe that a <u>Stetson</u> settlement on the
14   terms set forth in the Stipulation of Settlement would be in the interests of the settlement
15   class").)  By contrast, Plaintiffs—at the risk of recovering nothing—asked the Court for a
16   ruling on the merits of the still-undecided appeal.  (<u>See</u> May 6, 2013, Req. for Judicial
17   Notice Ex. 11 at 4 (Plaintiffs' brief, stating that, although "Plaintiff-Appellants note that
18   all parties wish to see a global settlement, Plaintiff-Appellants believe that this can best
19   be accomplished by the Panel's issuing a decision on the merits of the appeal").)

20          In November 2011, the Ninth Circuit resubmitted the appeal and reversed the
21   dismissal, holding that, "[b]ecause the <u>Stetson</u> [P]laintiffs' interests in a monetary
22   recovery were not represented by the plaintiffs in <u>Rodriguez</u>, they are not now barred
23   from filing a claim for damages." (May 6, 2013, Req. for Judicial Notice Ex. 12 at 1, Ex.
24   13 at 2.)  At that point, instead of issuing its Mandate, the Ninth Circuit again "refer[red]
25   matters] to the Ninth Circuit Mediation Office to explore a resolution through
26   mediation." (May 6, 2013, Req. for Judicial Notice Ex. 13 at 4–5.)  The parties thus
27   resumed active, arm's length negotiations before the appointed Ninth Circuit Mediator.
28   (May 6, 2013, Harris Decl. ¶ 13.)  Ultimately, after more than ten months of negotiation

under the Ninth Circuit Mediator's supervision, and over a year after their work with Mr. Carroll, the parties agreed to settle this matter for $9.5 million.[12]  (May 6, 2013, Harris Decl. ¶ 13 & Ex. 2 at § 25.)  This is $4.215 million more than the "face" amount of the earlier proposed settlement, and it is all cash as to both West and Kaplan, meaning that there are no discount certificates.

Given that the Class under the new settlement is the same as that defined in the earlier proposed settlement (see Apr. 19, 2013, Order Granting Preliminary Approval of Class-Action Settlement & Conditional Certification of Settlement Class ("Apr. 19, 2013, Order Granting Preliminary Approval") ¶ 5 (defining the Class Period as running from August 1, 2006, through March 21, 2011)), it is reasonable to anticipate that roughly the same number of Class Members will again submit Claim Forms.  Accordingly, from the total Class of 184,496, the total number who will submit valid Claim Forms ("Authorized Claimants") in response to the new settlement is therefore estimated to be 47,542 (i.e., approximately 26% of the Class), representing approximately 57,262 bar-review courses.[13]  Based on this participation rate, the estimated per-Claimant *gross* recovery is $165.90.  This nearly doubles the $92.30 gross cash recovery under the earlier proposed settlement.  After deducting Class Counsel's requested fees and costs, as well as $20,000 in Incentive Awards and an estimated $200,000 in claims-administration fees and costs, the estimated average *net* recovery is $128.01—more than double the average net recovery under the rejected settlement, nearly half the average net recovery in Rodriguez, and over one-third more than the average net recovery in Park.

---

[12] Mr. Carroll has concluded that the terms of the present settlement are "very satisfactory," and, "without reservation, [he] recommends [its] approval."  (Mar. 18, 2013, Carroll Decl. ¶ 4.)

[13] "Human nature dictates that[,] despite counsel's best efforts, not all class members will submit claims" in response to a settled class action. Kakani v. Oracle Corp., 2007 U.S. Dist. LEXIS 58740 at *10 (N.D. Cal. filed Aug. 2, 2007).  Accordingly, it is reasonable to assume a participation rate of approximately 25%.  See e.g., Sandoval v. Tharaldson Employee Mgmt., Inc., 2010 U.S. Dist. LEXIS 69799 at *18 (C.D. Cal. filed June 15, 2010) (in approving a settled class action, noting that "24% of [c]lass [m]embers submitted valid claim forms," which the court characterized as a "positive" response to the settlement).  The 26% estimate herein, in fact, comports with the participation rate in Rodriguez, where approximately 88,000 claims were submitted from a class of 376,000, reflecting a 23% participation rate.  (May 6, 2013, Harris Decl. ¶ 11.)

### H.   Remand to the District Court.

Following the execution of the new Settlement Agreement, the Ninth Circuit issued its Mandate returning jurisdiction to this Court on February 7, 2013.  (Feb. 7, 2013, Am. Mandate at 1.)  Thereafter, this Court scheduled a hearing for March 11, 2013 (see Feb. 20, 2013, Civil Minutes at 1), during which it ordered Plaintiffs to file their Motion for preliminary approval "forthwith" (see Mar. 11, 2013, Civil Minutes at 1).  Plaintiffs filed their Motion the following week, and the Court granted preliminary approval on April 19, 2013, conditionally certifying the same Class proposed under the prior settlement.  (See generally Apr. 19, 2013, Order Granting Preliminary Approval.)

The $4.215 million increase to the cash value of the settlement is the result of Class Counsel's strenuous advocacy over a year of private and Ninth Circuit-supervised mediation.  In this regard, at no point since the denial of final approval of the prior settlement did any party—including the objectors—take any formal action whatsoever on behalf of Plaintiffs or the putative Class, whether before this Court, before the Ninth Circuit, or during the resumed mediation.  (May 6, 2013, Harris Decl. ¶ 14.)  Indeed, at no point from the date that the Court rejected the prior settlement through the date that the Motion for preliminary approval of the new settlement was filed did any objector even *contact* Class Counsel.[14]  (May 6, 2013, Harris Decl. ¶ 14.)  In point of fact, there have only been *three* instances since the Court's denial of final approval of the prior settlement where an objector has contacted Class Counsel:  (a) a telephone call from Mr. Baker on April 12, 2013—the Friday before Monday's preliminary-approval hearing for the new settlement; (b) an e-mailed letter from Mr. Baker sent thereafter on April 29, 2013; and (c) a telephone call and two follow-up e-mails on May 6, 2013.  (May 6, 2013, Harris Decl. ¶ 14; May 6, 2013, Decl. of David Zelenski in Supp. of Pls.' Mot. for Award of Att'ys Fees & Reimbursement of Costs ("May 6, 2013, Zelenski Decl.") ¶¶ 4–5 & Exs.

---

[14] Similarly, at no point from the date that the prior settlement was preliminarily approved through the date that final approval was denied did any Class Member—or any objector, for that matter—seek to intervene in this case.  Similarly, at no point was any "tag-along" litigation ever commenced by any Class Member alleging the same antitrust violations brought by Plaintiffs.

1–2.)  The only matters raised by Mr. Baker during those isolated overtures—all made *after* Plaintiffs had filed their Motion for preliminary approval of the *new* settlement— were (a) his "entitlement" to $1.1 million in fees for having objected to the prior settlement and (b) his vague reference to a new objection to the new settlement.  (May 6, 2013, Zelenski Decl. ¶¶ 4–5 & Exs. 1–2.)  Neither Mr. Baker—nor any other objector, for that matter—made *any* attempt whatsoever to participate in the year-long mediation process.  (May 6, 2013, Harris Decl. ¶ 14.)

**III.    Argument.**

> **A.    *Class Counsel Are Entitled to Recover Fees from the Common Fund.***

Federal Rule of Civil Procedure 23 provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. Proc. 23(h).  Rule 23(h) applies to requests for attorney's fees and costs for settled class actions.  See Staton, 327 F.3d at 964 (explaining that "[a]ttorneys' fees provisions included in proposed class action agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate and reasonable'").

In analyzing Rule 23(h) fee requests, courts "'have an independent obligation to ensure that the award, like the settlement itself, is reasonable[] even if the parties have already agreed to an amount.'"  Greko v. Diesel U.S.A., Inc., 2013 U.S. Dist. LEXIS 60114 at *22–23 (N.D. Cal. filed Apr. 26, 2013) (quoting In re Bluetooth Headset Prods. Litig., 654 F.3d 936, 941 (9th Cir. 2011)).  For purposes of determining a reasonable fee, "'courts have discretion to employ either the lodestar method or the percentage-of-recovery method.'"  Greko, 2013 U.S. Dist. LEXIS 60114 at *23 (quoting In re Bluetooth Headset Prods. Litig., 654 F.3d at 942).  Generally speaking, though, "[t]he lodestar method is . . . preferable when calculating statutory attorney fees, whereas the percentage-of-recovery approach is appropriate when the fees will be drawn from a common fund."  Clark v. Payless Shoesource, Inc., 2012 U.S. Dist. LEXIS 105187 at *3– 4 (W.D. Wash. filed July 27, 2012) (citing In re Bluetooth Headset Prods. Litig., 654

F.3d at 941).  See also In re Heritage Bond Litig., 2005 U.S. Dist. LEXIS 13555 at *60 (C.D. Cal. filed June 10, 2005) (explaining that the lodestar method is used in place of the percentage method when "the determination of [a] settlement's net value is too difficult").  The percentage method is also particularly suited for common-fund settlements achieved at a procedurally early litigation stage.  See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 & n.5 (9th Cir. 2002) (stating that "the primary basis of the fee award remains the percentage method" and that, although the lodestar can be used as a "crosscheck of the percentage method," it should not "imply that class counsel should necessarily receive a lesser fee for settling a case quickly").  Cf. Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993) (explaining that the percentage analysis should be "replaced by a lodestar calculation[] when special circumstances indicate that the percentage recovery would be either too small or too large").

As explained by the Ninth Circuit, a "common fund" exists "when (1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting."  In re Petition of Hill, 775 F.2d 1037, 1041 (9th Cir. 1985).  According to the Supreme Court, "the[se] criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum [amount] recovered on his [or her] behalf."  Boeing Co., 444 U.S. at 479.  Here, the $9.5 million Gross Settlement Fund is a common fund, as each Authorized Claimant will receive a sum certain, computed by multiplying the Net Settlement Fund (i.e., the Gross Settlement Fund less amounts for attorney's fees and costs, claims-administration fees and costs, and Incentive Awards) by the relative amount that he or she paid for BAR/BRI bar-review courses during the Class Period.  Accordingly, the Court should apply the percentage-of-recovery approach when setting the amount of Class Counsel's fee.  As explained below, because Class Counsel's requested fees are less than the "benchmark" adopted by the Ninth Circuit—indeed, the requested fees are also less than the 25% amount called for by the Settlement Agreement (see May 6, 2013, Harris Decl. ¶ 13 & Ex. 2 at § 50)—the Motion should be granted.

### *B.* *Class Counsel's Requested Fees Fall Below the "Benchmark."*

The Ninth Circuit has explained that "25 percent of the fund [i]s the 'benchmark' award that should be given in common fund cases." Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990). That said, "the exact percentage varies depending on the facts of the case, and in 'most common fund cases, the award *exceeds* that benchmark.'" Bond v. Ferguson, 2011 U.S. Dist. LEXIS 70390 at *25 (N.D. Cal. filed June 30, 2011) (quoting Knight v. Red Door Salons, Inc., 2009 U.S. Dist. LEXIS 1149 at *17 (E.D. Cal. filed Feb. 2, 2009)) (emphasis supplied). See also In re Activision Sec. Litig., 723 F. Supp. 1373, 1377–78 (N.D. Cal. 1989) (stating that "*nearly all* common fund awards range around 30%") (emphasis supplied). Here, although the Settlement Agreement contemplates a Fee Award of 25% of the $9.5 million Gross Settlement Fund (see May 6, 2013, Harris Decl. ¶ 13 & Ex. 2 at § 50), Class Counsel are requesting the 25% benchmark only for the original cash settlement amount of $5.285 million; as to the $4.215 million increase, they seek less than 14% in fees, resulting in an effective total fee request of only 20% of the $9.5 million common fund. This is only $128,750 more than the total fees requested under the prior settlement,[15] and it is fundamentally fair, reasonable, and adequate given the circumstances of this case.

When determining what particular percentage—whether the benchmark; a higher percentage, as is often the case; or a lower figure, as here—is fair, reasonable, and adequate, a court must "take into account all of the circumstances of the case." Vizcaino, 290 F.3d at 1048. According to Vizcaino, relevant circumstances—or "factors"—include whether counsel achieved "exceptional results," the "degree of risk assumed by counsel," whether the awarded fee "lies above or below the market rate," and the "length of time counsel represented the class on a contingency basis." In re Nuvelo Sec. Litig., 2011 U.S. Dist. LEXIS 72260 at *5 (N.D. Cal. filed July 6, 2011) (citing Vizcaino, 290 F.3d at 1048–50). Additional factors include "counsel's experience and skill," the "complexity

---

[15] Again, under the prior settlement, Class Counsel requested 25% of the $5.285 million cash settlement with West (*i.e.*, $1,321,250) and $450,000 from the coupon settlement with Kaplan (to be paid by Kaplan, not from the $5.285 million fund).

1    of the issues," and the "reaction of the class."[16]  In re Nuvelo Sec. Litig., 2011 U.S. Dist.

2    LEXIS 72260 at *5–6.  Here, each of these factors weighs in favor of awarding

3    benchmark fees; Class Counsel's request for *less than* the benchmark is thus reasonable.

4        ***The results obtained and the degree of risk assumed.***  The $9.5 million settlement

5    is an exceptional result obtained in the face of substantial risk.  As to these factors,

6    relevant considerations include (a) the fact that the Court dismissed Plaintiffs' claims

7    *before Defendants had even answered the Complaint* and (b) the fact that Class Counsel

8    succeeded over Defendants' vigorous opposition in reviving Plaintiffs' case *on appeal*.

9    See Vizcaino, 290 F.3d at 1048 (finding "exceptional results" and "extreme[] risk[]"

10   when the "plaintiffs [had earlier] lost in the district court" but "succeeded in reviving

11   their case on appeal").  Adding to the risk is the fact that Class Counsel undertook this

12   litigation on a contingent-fee basis, requiring them to shoulder not only the cost of

13   attorney and paralegal time, but all of the costs of over five years of litigation.  See

14   Hopkins v. Stryker Sales Corp., 2013 U.S. Dist. LEXIS 16939 at *8 (N.D. Cal. filed Feb.

15   6, 2013) (in awarding more than the 25% benchmark, explaining that "[c]lass [c]ounsel

16   took a significant risk investing in this case" because it "was conducted on an entirely

17   contingent fee basis against a well-represented [d]efendant" and because [a]ll of the

18   financial risk of litigation was therefore assumed by [c]lass [c]ounsel, whose fee

19   arrangement with [p]laintiffs required [c]lass [c]ounsel to bear all of the costs of litigation

20   and the costs of attorney and paralegal time"); Franco v. Ruiz Food Prods., Inc., 2012

21   U.S. Dist. LEXIS 169057 at *46 (E.D. Cal. filed Nov. 27, 2012) (stating that "an award

22   of *one-third* of the common fund as attorneys' fees has been found appropriate" when an

23   "action [i]s undertaken on a contingency fee basis and [when], as such, [c]lass [c]ounsel

24   invest[] time, effort, and money with no guarantee of recovery") (emphasis supplied).

25       Moreover—and perhaps most importantly—there is substantial risk inherent in

26   Plaintiffs' claims in and of themselves, as the co-marketing agreement at their center was

27   ―――――――――――――
         [16] A final factor—"comparison with counsel's lodestar," In re Nuvelo Sec. Litig.,
28   2011 U.S. Dist. LEXIS 72260 at *6 (citing In re Heritage Bond Litig., 2005 U.S. Dist.
     LEXIS 13555 at *60)—is addressed in Section III.D., *infra*.

1    dissolved by the <u>Rodriguez</u> settlement.  West and Kaplan would therefore likely argue

2    that the principal market-entry barrier was not present for virtually the entire Class

3    Period.  As suggested by the Ninth Circuit in its Order reversing the ruling on West's

4    Motion to dismiss, this presents a significant litigation problem for Plaintiffs.  (<u>See</u> May

5    6, 2013, Req. for Judicial Notice Ex. 9 at 2–3 (stating that, although "Plaintiffs' claims

6    that they will be injured by BAR/BRI's continuing monopolistic behavior have been

7    adequately pled for standing purposes," there is a question as to "whether, as a result of

8    the reforms in the <u>Rodriguez</u> settlement, [P]laintiffs' standing claim will ultimately fail

9    on the merits").)  That Class Counsel recovered nearly $10 million for the Class, then, is

10   no small feat.  Additionally, even if Plaintiffs were ultimately successful at trial in

11   demonstrating a residual anticompetitive impact on the bar-review market, that impact

12   has arguably dissipated over time with Kaplan's entry into the market, reducing the

13   amount of damages to which any Class Member is entitled.  Insofar as this Court

14   articulated questions about the strength of the plaintiffs' case in <u>Rodriguez</u>, <u>see</u>

15   <u>Rodriguez</u>, 2007 U.S. Dist. LEXIS 74767 at *26–27 (stating that "whether th[e

16   <u>Rodriguez</u>] plaintiffs would obtain a favorable, unanimous jury verdict as required by

17   Federal Rule of Civil Procedure 48 is far from guaranteed"), such issues are *a fortiori*

18   magnified in the present action—to say nothing of the difficulties inherent in litigating

19   antitrust class actions generally, <u>see id.</u> (explaining that "[c]laims for violation of federal

20   antitrust laws are notoriously difficult to prove"), or in maintaining a nationwide Class in

21   the wake of <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541 (2011).

22        ***The "market rate" for Class Counsel's services.***  Class Counsel's 20% fee request

23   is less than the "market rate" for a settlement of this size.  The "market-rate" factor

24   concerns the typical fee award associated with cases that settle for comparable sums.  <u>See</u>

25   <u>In re Nuvelo Sec. Litig.</u>, 2011 U.S. Dist. LEXIS 72260 at *7–8 (in analyzing the

26   percentage rate requested relative to the market rate, finding that "30% reasonably

27   compares to other awards for a $10M settlement").  According to Central District, "25%

28   is *substantially below* the average class fund fee nationally," and "[c]ases of under $10

[m]illion will often result in fees *above* 25%." Craft v. County of San Bernardino, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (citing a Federal Judicial Center study "of all class actions resolved or settled over a four-year period," which study "found a median percentage recovery range of 27–30%") (emphasis supplied).  See also Cicero v. DirecTV, Inc., 2010 U.S. Dist. LEXIS 86920 at *17 (C.D. Cal. filed July 27, 2010) (explaining that "20 to 30% [i]s the usual range in common fund cases where the recovery is between $50 and 200 million," that "case law surveys suggest that . . . 30–50% [is] commonly . . . awarded in case[s] in which the common fund is relatively small," and that "*cases below $10 million are often [compensated at] more than the 25% benchmark*") (emphasis supplied).  In light of the "market rate" for a settlement of this size, Class Counsel's 20% fee request is reasonable.

*Class Counsel's contingent-based representation.*  Class Counsel's fee request is justified based on the contingent nature of their five-year-long representation.  As recently explained by the Northern District, conducting a case "on an entirely contingent fee basis against a well-represented [d]efendant" actually supports an *upward adjustment from the benchmark.*  Hopkins, 2013 U.S. Dist. LEXIS 16939 at *8, 13.  See also Gardner v. GC Servs., LP, 2012 U.S. Dist. LEXIS 47034 at *19 (S.D. Cal. filed Apr. 2, 2012) (in awarding a 30% fee award, explaining that "class counsel took this case on a contingent fee basis and had to forego other financial opportunities"); Thieriot v. Celtic Ins. Co., 2011 U.S. Dist. LEXIS 44852 at *17 (N.D. Cal. filed Apr. 21, 2011) (in awarding a 33% fee, stating that "[i]t is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all"); Carter v. Anderson Merchandisers, LP, 2010 U.S. Dist. LEXIS 55629 at *10 (C.D. Cal. filed May 10, 2010) (in awarding the benchmark, stating that "[t]he case was undertaken on a contingency fee basis" and that "[c]lass [c]ounsel advanced all costs, despite the risk of no recovery in this case, representing a significant financial burden").  Because Class Counsel are here seeking *less* than 25% in fees, their request is presumptively reasonable and should be approved.

***Class Counsel's skill and the complexity of the issues.*** The fact that litigation of this complex antitrust class action has taken over five years, including the successful prosecution of an appeal, supports the fee request. As this Court has itself explained, "'[a]ntitrust class actions are 'notoriously complex, protracted, and bitterly fought' and [are] 'arguably the most complex actions to prosecute.'" Rodriguez, 2007 U.S. Dist. LEXIS 74767 at *28 (quoting In re Visa Check/MasterMoney Antitrust Litig., 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003)). As reflected in the Declarations filed herewith, Class Counsel have substantial experience in prosecuting class-wide claims, including antitrust matters. (See May 6, 2013, Harris Decl. ¶¶ 2–3.) "Overall, the specialized skill of Class Counsel in this area of the law [i]s generally an asset to the Class Members." Schiller v. David's Bridal, Inc., 2012 U.S. Dist. LEXIS 80776 at *51 (E.D. Cal. filed June 11, 2012). Class Counsel's experience, the skill involved in successfully reviving this case on appeal, and the complex nature of Plaintiffs' claims thus support a benchmark fee award; that Class Counsel are requesting less than the benchmark—only 20% of the common fund—is therefore reasonable.

***The reaction of the Class.*** Given that this Motion is being filed on the date that Notice is being delivered to the Class, the reaction of Class Members to the new settlement—the final factor for judging the reasonableness of a percentage request—is unknown. However, Class Counsel submit that the favorable reaction to the prior settlement can be used to gauge the response to the present settlement. As detailed above, in response to the earlier, lesser settlement, of the 184,496 mailed notice packets, 47,542 claim forms were timely submitted (equal to 26% of the Class), and only 113 exclusion requests and 62 objections were received by the Claims Administrator. This comports with the positive response to the approved Rodriguez settlement, in which the Court found "overwhelming support from the [c]lass." See Rodriguez, 2007 U.S. Dist. LEXIS 74767 at *32–33 (explaining that "52,000 claims were filed" from a class of 376,000," reflecting a response rate of under 14%, and that "only 54 [c]lass [m]embers submitted [o]bjections"). Now that a new cash settlement has been reached greater than

the prior one herein, it stands to reason that Class Members will again respond with "overwhelming" support.  Class Counsel's fee request, which exceeds the prior fee request by only $128,750, should therefore be approved.

### C.   Class Counsel Are Permitted to Seek a Percentage of the Cash Increase.

Again, Class Counsel are seeking 20% of the $9.5 million Gross Settlement Fund, which can be broken down into two components:  25% of the prior $5.285 million cash fund (*i.e.*, $1,321,250) and less than 14% of the $4.215 million cash increase (*i.e.*, $578,750).  Cf. In re Cadence Design Sys., Sec. & Derivative Litig., 2012 U.S. Dist. LEXIS 56785 at *16–17 (N.D. Cal. filed Apr. 23, 2012) (under a $38 million settlement, awarding class counsel "25 percent of the first $10 million in the settlement fund, 20 percent of the second ten million, and 15 percent of the remainder").  Class Counsel are entitled to a percentage of the increase because they—and they alone—negotiated the new settlement with Defendants after successfully securing an appellate reversal.

According to the Ninth Circuit, "[i]t is well established that an award of attorneys' fees from a common fund depends on whether the attorneys' '*specific* services benefited the fund—whether they tended to create, *increase*, protect or preserve the fund.'" Chemical Bank v. Jaffe & Schlesinger, P.A., 19 F.3d 1306, 1308 (9th Cir. 1994) (quoting Lindy Bros. Builders, Inc. v. Am. Radiator, Etc., 540 F.2d 102, 112 (3d Cir. 1976)) (emphasis supplied); In re FPI/Agretech Sec. Litig., 105 F.3d 469, 473 (9th Cir. 1997) (stating same).  Although less than .03% of the Class objected to the earlier settlement, and although Class Counsel were sent "back to the drawing board" after the original settlement was not finally approved, not a single objector participated in securing any of the cash increase.  *Indeed, not a single objector even contacted Class Counsel to assist in any further negotiations*.  Even if an objector—say, Mr. Baker, who was the only objector to appear at the earlier final-approval hearing—played a role in increasing the cash value of the settlement by virtue of having filed an objection, he would need to demonstrate what *specific* work he actually did in order to be entitled to an increase in the Gross Settlement Fund.  This required showing, of course, stems from the general rule

1  that fee-allocation arrangements in class actions are prohibited, as "'a division of fees

2  based on a percentage without regard to work performed or responsibility assumed is not

3  in compliance with the ABA standard.'" In re FPI Agretech Sec. Litig., 105 F.3d at 473

4  (quoting Prandini v. Nat'l Tea Co., 557 F.2d 1015, 1019 (3d Cir. 1977), overruled on

5  other grounds, Ashley v. Atl. Richfield Co., 794 F.2d 128 (3d Cir. 1986)).

6       As explained by the Ninth Circuit, it is simply improper to allocate fees "in

7  disproportion to the benefits [an] attorney [has] conferred upon [a] class—even if the

8  allocation in fact has no impact on the class." In re FPI Agretech Sec. Litig., 105 F.3d at

9  473.  Instead, a court presented with a fee-award application must compensate counsel

10 according to the "relative *work* performed by" the attorneys.  Id. (emphasis supplied).

11 Because "the relative efforts of, and benefits conferred upon [a] class by," the attorneys

12 are what matters for class-wide litigation, Class Counsel herein—who solely negotiated

13 the increased settlement following their successful prosecution of an appeal—are entitled

14 to the "'lion's share of the fee'" associated with the $4.215 million cash-value increase.

15 Id. at 473–74 (quoting Judge Real's district-court opinion therein).  See also id. at 474

16 (stating that "'I don't want anybody—anybody, again, also, very frankly—I don't want

17 anybody just sitting back and profiting from what's going to happen on appeal.'")

18 (quoting Judge Real's district-court opinion therein).

19       **D.    *The Lodestar Crosscheck Confirms the Requested Fees Are Reasonable.***

20       When setting a fee award, courts can—and should—secondarily apply the

21 alternative lodestar method to provide "perspective on the reasonableness of a given

22 percentage award."  Vizcaino, 290 F.3d 1043, 1050.  According to the Ninth Circuit,

23 "[c]alculation of the lodestar, which measures the lawyers' investment of time in the

24 litigation, provides a check on the reasonableness of the percentage award."  Id.

25       "Lodestar calculations are determined by multiplying the number of hours

26 reasonably expended during the litigation by a reasonable hourly rate."  In re Heritage

27 Bond Litig., 2005 U.S. Dist. LEXIS 13555 at *19.  It is "common for a counsel's lodestar

28 figure to [then] be adjusted upward by some multiplier reflecting a variety of factors such

as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel."[17] Id. at *71–72 (citing In re Linerboard Antitrust Litig., 2004 U.S. Dist. LEXIS 10532 at *50 (E.D. Pa. filed June 2, 2004) (recognizing that, historically, the average multiplier approved in common-fund cases was 3.89), disapproved on other grounds as stated in In re ATM Fee Antitrust Litig., 686 F.3d 741, 755 n.7 (9th Cir. 2011).

Here, based on the detailed, contemporaneously kept time records submitted with this Motion, Class Counsel's unadjusted lodestar (i.e., with no multiplier) is $918,898.00, computed as a function of the following hours and associated rates:

| Timekeeper | Classification | JD Acquired | Hourly Rate | Hours |
|---|---|---|---|---|
| J. Bennet | Attorney | 1964 | $400 | 15.60 |
| E. Disner | Attorney | 1972 | $800 | 171.20 |
| A. Harris | Attorney | 1974 | $800 | 582.70 |
| L. Owen | Attorney | 1999 | $550 | 2.40 |
| J. Ricasa | Attorney | 2001 | $475 | 1.50 |
| A. Treanor | Attorney | 2003 | $430 | 19.00 |
| D. Zelenski | Attorney | 2003 | $495 | 381.90 |
| P. Mohan | Attorney | 2003 | $430 | 8.70 |
| K. Abrams | Attorney | 2004 | $200 | 6.00 |
| M. Kavanaugh | Attorney | 2005 | $355 | 7.00 |
| P. Disner | Attorney | 2006 | $395 | 154.00 |
| F. Ung | Attorney | 2007 | $245 | 128.20 |
| P. Disner [18] | Clerk | --- | $195 | 50.90 |

---

[17] Although multipliers are prohibited for statutory-fee awards, they are allowed in common-fund settlements. See Staton, 327 F.3d at 967–68 (explaining that "[t]he procedures used to determine the amount of reasonable attorneys' fees differ concomitantly in cases involving a common fund" and that, "in common fund cases, . . . the court can apply a risk multiplier when using the lodestar approach") (emphasis supplied). As explained below, multipliers are often awarded in common-fund cases.

[18] Certain of Perrin Disner's time was incurred in his capacity as a clerk, before having been sworn in as an attorney. (See May 6, 2013, Decl. of Perrin F. Disner in Supp. of Pls.' Mot. for Award of Att'ys Fees ("May 6, 2013, Disner Decl.") ¶ 4.)

| | Senior Clerks | --- | $210 | 6.40 |
| | Junior Clerks | --- | $125 | 5.70 |
| *Total* | | | | 1,541.20 |

(May 6, 2013, Harris Decl. ¶¶ 15–17, 19–20, 22 & Exs. 4–5; May 6, 2013, Disner Decl. ¶ 3 & Ex. 1.)  Class Counsel's mixed, or "blended," hourly rate across all 1,541.20 hours is thus $596.22.

Both the rates noted above and the associated hours are reasonable.  As to the rates, "'[t]he proper reference point in determining an appropriate fee award is the rate[] charged by private attorneys in the same legal market as prevailing counsel.'" Rutti v. Lojack Corp., 2012 U.S. Dist. LEXIS 107677 at *30 (C.D. Cal. filed July 31, 2012) (quoting Trevino v. Gates, 99 F.3d 911, 925 (9th Cir. 1996)).  The rate charged by private attorneys in the same legal market is, in turn, the "'prevailing market rate[] in the relevant community,'" Davis v. City of San Francisco, 976 F.2d 1536, 1546 (9th Cir. 1992) (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)), vacated in part on other grounds by 984 F.2d 345 (9th Cir. 1993)), and the relevant community is "'the forum district'— [here], the Central District of California," Anderson v. Nextel Retail Stores, LLC, 2010 U.S. Dist. LEXIS 71598 at *6 (C.D. Cal. filed June 30, 2010) (quoting Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992)).  When setting rates, courts should use the attorneys' "current" rates, *i.e.*, their rates as of the filing of the fee application.  See In re HPL Techs., Inc. Sec. Litig., 366 F. Supp. 2d 912, 919–20 (N.D. Cal. 2005) (explaining that the use of current rates "simplifies the calculation and accounts for the time value of money in that lead counsel ha[ve] not been paid contemporaneously").

According to recent cases authority, the above rates are within the range of rates recently approved by the Central District for complex class actions.  See, e.g., Pierce v. County of Orange, 2012 U.S. Dist. LEXIS 150492 at *42–52 & n.16 (C.D. Cal. filed Mar. 2, 2012) (approving rates of up to $850); In re HP Laser Printer Litig., 2011 U.S. Dist. LEXIS 98759 at *14–19 (C.D. Cal. filed Aug. 31, 2011) (approving rates of up to

$800); <u>Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles</u>, 2009 U.S. Dist. LEXIS 132269 at *15–16 (C.D. Cal. filed June 24, 2009) (approving rates of up to $800); <u>Wang v. Chinese Daily News, Inc.</u>, 2008 U.S. Dist. LEXIS 123824 at *8–9 (C.D. Cal. filed Oct. 3, 2008) (approving rates of up to $800), <u>vacated on other grounds</u>, 132 S. Ct. 74 (2011).  Moreover, Class Counsel's rates above have been approved in the past in connection with other class-wide settlements (<u>see</u> May 6, 2013, Harris Decl. ¶ 17), and an expert retained by Class Counsel for the express purpose of conforming their rates to the market has concluded that they are, in fact, the same rates charged by others in the community (<u>see</u> May 6, 2013, Harris Decl. ¶ 18–19, 21 & Ex. 6.)  This establishes their reasonableness.  <u>See Rutti</u>, 2012 U.S. Dist. LEXIS 107677 at *30–31 (explaining that "'[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determination in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate'") (quoting <u>United Steelworkers of Am. v. Phelps Dodge Co.</u>, 896 F.2d 403, 407 (9th Cir. 1990)).

As to the hours incurred, Class Counsel note that the attorney undertaking most of the work was the lead attorney, Alan Harris.  This stems from the fact that most of the hours claimed herein were spent in settlement discussions and preparation—matters that courts recognize are typically handled by senior counsel.  <u>See</u> <u>In re HPL Techs., Inc. Sec. Litig.</u>, 366 F. Supp. 2d at 921 (noting that "little time (3.8% of the total hours) was spent on discovery, but a large fraction of lead counsel's overall time was spent—and necessarily so, it seems—by a senior attorney in settlement discussions and preparation").  In any event, on average, only 1,541.20 total hours were spent litigating this case over a period of five years, which reduces to less than one hour per day.  This is eminently reasonable, <u>cf.</u> <u>Collado v. Toyota Motor Sales, U.S.A., Inc.</u>, 2011 U.S. Dist. LEXIS 133572 at *15 (C.D. Cal. filed Oct. 17, 2011) (in analyzing class counsel's hours, noting that the "request for compensation of 6,881 hours is best represented by this being the equivalent to a collective 11.1 hours per day"), and Class Counsel's requested hours should be deemed reasonable.

1    Again, based on Class Counsel's hours and rates, their unadjusted lodestar is

2  $918,898.00.  To reach the $1.9 million award contemplated by the percentage analysis

3  detailed above, the lodestar need be adjusted upward only slightly by a multiplier of 2.07,

4  which is within the range "commonly found to be appropriate in complex class action

5  cases." Hopkins, 2013 U.S. Dist. LEXIS 16939 at *12 (stating that multipliers typically

6  range from between "1 to 4" in such cases).  See also Adoma v. Univ. of Phoenix, Inc.,

7  2012 U.S. Dist. LEXIS 181281 at *44–45 (E.D. Cal. filed Dec. 20, 2012) (explaining

8  that, "in common fund cases, . . . over half of the cases surveyed award[] multiples in the

9  1.5–3.0 range") (citing Vizcaino, 290 F.3d at 1051 n.6).  Furthermore, the modest

10  multiplier is warranted in light of the same factors discussed above in connection with the

11  benchmark.  See Franco, 2012 U.S. Dist. LEXIS 169057 at *58 (explaining that factors to

12  consider in awarding a multiplier include "the results obtained," the "difficulty of the

13  questions involved," the "skill requisite to perform the legal service," the "customary

14  fee," the "experience" of the attorneys, and "whether the fee is fixed or contingent")

15  (citing Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975)).

16         **E.    *Class Counsel's Requested Expense Reimbursement Is Proper.***

17    Class Counsel request reimbursement of $49,934.89 for costs incurred in litigating

18  this case.  As detailed in the Declarations filed herewith, the costs include "travel costs,

19  mediation fees, expert fees, copy and scanning costs, filing fees, and electronic research

20  fees[, which] fees are routinely reimbursed." Franco, 2012 U.S. Dist. LEXIS 169057 at

21  *60.  The request should therefore be approved in full.

22  **IV.   Conclusion.**

23    For the foregoing reasons, the Court should approve Class Counsel's request for

24  $1.9 million in attorney's fees and $49,934.89 in incurred costs from the $9.5 million

25  common-fund settlement.

26

27  Dated:  May 6, 2013                    /s/ *David Zelenski*

28                                Alan Harris, David Zelenski, Perrin Disner
                                  *Attorneys for Plaintiffs*