Alan Harris (SBN 146079)
David Zelenski (SBN 231768)
HARRIS & RUBLE
6424 Santa Monica Boulevard
Los Angeles, California 90038
Telephone: (323) 962-3777
Facsimile: (323) 962-3004
aharris@harrisandruble.com
dzelenski@harrisandruble.com

Perrin Disner (SBN 257586)
LAW OFFICES OF PERRIN F. DISNER
1855 Camden Avenue, Suite 3
Los Angeles, California 90025
Telephone: (310) 742-7944
Facsimile: (888) 544-5154
pdisner@disnerlaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN STETSON, SHANE LAVIGNE, CHRISTINE LEIGH BROWN-ROBERTS, VALENTIN YURI KARPENKO, and JAKE JEREMIAH FATHY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WEST PUBLISHING CORPORATION, a Minnesota corporation dba BAR/BRI, and KAPLAN, INC.,<br><br>Defendants. | Case No. CV-08-00810 R (Ex)<br><br>**DECLARATION OF ALAN HARRIS IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT**<br><br>Date: August 19, 2013<br>Time: 10:00 a.m.<br>Courtroom: 8<br><br>*Assigned to Hon. Manuel L. Real* |

**ALAN HARRIS** declares under penalty of perjury of the laws of the United States and the State of California as follows:

1.      I am a member in good standing of the State Bar of California and am one of the attorneys for Plaintiffs in the within action.  I make this Declaration in support of Plaintiffs' Motion for attorney's fees and the reimbursement of costs in connection with the common-fund settlement reached herein.  If sworn as a witness, I could competently testify to each and every fact set forth herein from my own personal knowledge, and I aver that all of the documents appended to this Declaration or to the concurrently filed Request for Judicial Notice have been maintained in my office in the ordinary course of business under my direction and control.

### Experience

2.      I have been and am licensed as an attorney, first in Illinois (1974) and later in California (1989).  I am a *magna cum laude* graduate of the University of Illinois (A.B. 1970, J.D. 1974).  After graduation from law school in January 1974, I was hired as a litigation associate at a plaintiffs' antitrust boutique in Chicago, Illinois:  Freeman, Freeman & Salzman, P.C.[1]  I became a partner in that firm in 1980, and I started my own practice in 1982.  I speak before professional organizations on topics of interest to the Bar, and I have represented plaintiffs in antitrust and complex business litigation for over thirty-six years.  See e.g., Illinois v. Ill. Brick Co., Inc., 431 U.S. 720 (1977); In re My Left Hook, LLC, 129 Fed. Appx. 352 (9th Cir. 2005); Gregory v. SCIE, LLC, 317 F.3d 1050 (9th Cir. 2003); In re Blue Coal Corp., 986 F.2d 687 (3d Cir. 1993); In re Blue Coal Corp., 206 B.R. 730 (M.D. Pa. 1997); U.S. v. Gleneagles Inv. Co., Inc., 584 F. Supp. 671, 689 (M.D. Pa. 1984), aff'd. in part and vacated in part, and remanded sub nom., U.S. v.

---

[1] Of my still-living partners in Freeman, Freeman & Salzman, a firm that dissolved in 2007, each became a senior partner in a leading national law firm.  Lee Freeman, Jr. was a partner and chair of the Antitrust Litigation Practice Group at Jenner & Block from 2007 to June 2011, and he is now of counsel at Katten & Temple LLP.  Jerrold Salzman is of counsel at Skadden, Arps, Slate, Meagher & Flom LLP.  Tyrone Fahner is a partner at Mayer Brown, having served as its co-chair from 1998 to 2001 and its chair from 2001 to 2007.

1  Tabor Ct. Realty Corp. 803 F.2d 1288 (3d Cir. 1986), cert. den. sub. nom., McClellan

2  Realty Co. v. U.S. 48 U.S. 1005 (1987); In re Uranium Antitrust Litig., 503 F. Supp. 33

3  (N.D. Ill. 1981); In re Grand Jury, 469 F. Supp. 666 (M.D. Pa. 1980); In re Chicken

4  Antitrust Litig., 560 F. Supp. 963 (N.D. Ga. 1980); In re Anthracite Coal Antitrust Litig.,

5  82 F.R.D. 364 (M.D. Pa. 1979); In re Folding Carton Antitrust Litig., 83 F.R.D. 251

6  (N.D. Ill. 1978); In re Anthracite Coal Antitrust Litig., 78 F.R.D. 709 (M.D. Pa. 1978); In

7  re Masterkey Antitrust Litig., 1977 U.S. Dist. LEXIS 12948 (D. Conn. 1977) (six-week

8  jury trial for plaintiffs); A. Cherney Disposal Co. v. Chicago & Suburban Refuse

9  Disposal Corp., 68 F.R.D. 383 (N.D. Ill. 1975); In re Cement-Concrete Block, Chicago

10  Area, Grand Jury Proceedings, 381 F. Supp. 1108 (N.D. Ill. 1974); Parmet v. Lapin, 2004

11  Cal. App. Unpub. LEXIS 5217 (June 1, 2004).  I have gone to jury and bench trials in

12  class actions on behalf of plaintiffs and, once, a bench trial for a defendant, Allstate

13  Insurance Company.  I have represented numerous classes of plaintiffs in state and

14  federal courts.  See, e.g., Jacobs v. CSAA Inter Ins. Bureau, 2009 U.S. Dist. LEXIS

15  37153 (N.D. Cal. filed May 1, 2009); Escobar v. Whiteside Constr. Corp., 2008 U.S.

16  Dist. LEXIS 68439 (N.D. Cal. 2008) (certification of collective action); Tremblay v.

17  Chevron Stations, Inc., 2008 WL 2020514 (N.D. Cal. 2008) (certification of collective

18  action); Gonzalez v. Preferred Freezer Servs. LBF, LLC, 2012 U.S. Dist. LEXIS 93013

19  (C.D. Cal. filed July 5, 2012) (successful opposition to a defense motion to compel

20  arbitration in a putative class action); Gonzalez v. Preferred Freezer Servs. LBF, LLC,

21  2012 U.S. Dist. LEXIS 139764 (C.D. Cal. filed Sept. 27, 2012) (successful motion to

22  correct improper defense contact of class members in a putative class action); Covillo v.

23  Specialty's Café, 2012 U.S. Dist. LEXIS 114602 (N.D. Cal. filed Aug. 14, 2012)

24  (successful opposition to a defense motion to compel arbitration in a putative class

25  action); Perez v. Maid Brigade, Inc., 2007 U.S. Dist. LEXIS 78412 (N.D. Cal. filed Oct.

26  11, 2007) (successful opposition to a defense motion to compel arbitration in a putative

27  class action); Hoffman v. Uncle P Prods., 2008 Cal. App. Unpub. LEXIS 3609; Bithell v.

28  E.P. Mgmt. Servs., LP, 2007 WL 4216854 (Cal. Ct. App. 2007) (sustaining a class-wide

settlement as fair and reasonable, and finding that class counsel adequately represented the class); DuPont v. Avalon Hollywood Servs., Inc., 2007 WL 93386 (Cal. Ct. App. 2007); Gregory v. Superior Court, 2004 WL 2786357 (Cal. Ct. App. 2004). In addition, I have been appointed lead class counsel in many settled class actions. See, e.g., Kang v. Albertson's, Inc., C.D. Cal. Case No. CV 07-00894 CAS ($6,637,500 settlement); Tremblay v. Chevron Stations, Inc., N.D. Cal. Case No. CV 07-6009 EDL ($4,500,000 settlement); Doty v. Costco Wholesale Corp., C.D. Cal. Case No. CV 05-3241 FMC ($7,500,000 settlement); Agatep v. Exxon Mobil Corp., C.D. Cal. Case No. CV 05-2342 GAF ($1,500,000 settlement); Alfano v. Int'l Coffee & Tea, LLC, C.D. Cal. Case No. CV 04-8996 SVW; Jenne v. On Stage Audio Corp., C.D. Cal. Case No. CV 04-2045 CAS; Hansen v. Advanced Tech Sec. Servs., Inc., Los Angeles Sup. Ct. Case No BC 367175 ($1,050,000 settlement); Ross v. Human Res., Inc., Los Angeles Sup. Ct. Case No. BC 351506; Harrington v. Manpay, LLC, Los Angeles Sup. Ct. Case No. BC 312171 ($1,000,000 settlement); Brackett v. Saatchi & Saatchi, Los Angeles Sup. Ct. Case No. BC 298728; Readmond v. Straw Dogs, Inc., Los Angeles Sup. Ct. Case No. BC257394; Greenberg v. EP Mgmt. Servs., LP, Los Angeles Sup. Ct. Case No. BC 237787 ($5,348,000 settlement); Angel Paws, Inc. v. Avalon Payroll Servs., Inc., Los Angeles Superior Court Case No. BC 188982; Saunders v. Metro Image Group, San Diego Sup. Ct. Case No. GIC 809753; Stratford v. Citicorp West FSB, Monterey Sup. Ct. Case No. M 81026; Deckard v. Banco Popular N. Am., related to Silva v. Banco Popular N. Am., C.D. Cal. Case No. CV 08-6709 JFW ($1,050,000 settlement).

       3.    David Zelenski, who is an attorney at my firm working on the above-captioned matter, has worked with me on numerous class-action matters since joining Harris & Ruble in 2004. See, e.g., Gonzalez v. Preferred Freezer Servs. LBF, LLC, 2012 U.S. Dist. LEXIS 93013 (C.D. Cal. filed July 5, 2012) (successful opposition to a defense motion to compel arbitration in a putative class action); Gonzalez v. Preferred Freezer Servs. LBF, LLC, 2012 U.S. Dist. LEXIS 139764 (C.D. Cal. filed Sept. 27, 2012) (successful motion to correct improper defense contact of class members in a putative

class action); <u>Covillo v. Specialty's Café</u>, 2012 U.S. Dist. LEXIS 114602 (N.D. Cal. filed Aug. 14, 2012) (successful opposition to a defense motion to compel arbitration in a putative class action); <u>Perez v. Maid Brigade, Inc.</u>, 2007 U.S. Dist. LEXIS 78412 (N.D. Cal. filed Oct. 11, 2007) (successful opposition to a defense motion to compel arbitration in a putative class action).  He has also been appointed as class counsel in numerous actions.  <u>See</u> <u>e.g.</u>, <u>Kang v. Albertson's, Inc.</u>, C.D. Cal. Case No. CV 07-00894 CAS ($6,637,500 settlement); <u>Doty v. Costco Wholesale Corp.</u>, C.D. Cal. Case No. CV 05-3241 FMC ($7,500,000 settlement); <u>Agatep v. Exxon Mobil Corp.</u>, C.D. Cal. Case No. CV 05-2342 GAF ($1,500,000 settlement); <u>Stratford v. Citicorp West FSB</u>, Monterey Sup. Ct. Case No. M 81026 ($950,000 settlement).  Mr. Zelenski is a graduate of Reed College (B.A. 1999) and the University of Southern California (J.D. 2003) (law review).  He is a member of the California bar (June 28, 2004), and his law-school Note, <u>Talent Agents, Personal Managers, and Their Conflicts in the New Hollywood</u>, 76 S. Cal. L. Rev. 979 (2003), has been cited by the California Supreme Court in <u>Marathon Entertainment, Inc. v. Blasi</u>, 42 Cal. 4th 974 (2008).  In addition, Mr. Zelenski was designated a 2013 "Super Lawyers Rising Star."

### *Procedural History*

4.    In May 2007, my firm, along with our then-co-counsel, the Disner Law Corporation, began to prepare the present action concerning alleged violations of antitrust laws in the bar-review-course market against Defendants West Publishing Corporation ("West") and Kaplan, Inc. ("Kaplan").  In the course of our investigation, we reviewed thousands of documents, interviewed Class Members and competitors, and engaged in extensive legal research.  In addition, we carefully reviewed court filings and informal discovery from <u>Rodriguez v. West Publishing Corp.</u>, C.D. Cal. Case No. CV 05-3222 R, which—along with the settlement in that case—lent support to our conclusion that West and Kaplan had indeed violated antitrust laws by entering an illegal market-division arrangement.  True and correct copies of the first amended complaint and of the order

/ / / / /

1    granting final approval of the settlement in <u>Rodriguez</u> are attached as Exhibits 1 and 2,

2    respectively, to the Request for Judicial Notice filed herewith.

3         5.    The Complaint in the above-captioned action was filed in February 2008.

4    The Complaint alleges that West and Kaplan violated section 1 of the Sherman Act, 15

5    U.S.C. § 1, by conspiring to restrain trade in the full-service bar-review-course market.

6    The Complaint also alleges that West (but not Kaplan) violated section 2 of the Sherman

7    Act, 15 U.S.C. § 2, by unlawfully acquiring and/or maintaining a monopoly of the bar-

8    review-course market.  On March 14, 2008, West filed a Motion to dismiss the

9    Complaint, a Motion in which Kaplan joined.  Principally, West's Motion argued that

10   Plaintiffs' claims were effectively preempted under the settlement reached in <u>Rodriguez</u>,

11   in which West and Kaplan agreed to terminate their market-division agreement.  The

12   Court agreed with Defendants, and, on April 10, 2008, Plaintiffs' Complaint was

13   dismissed with prejudice.

14        6.    On May 7, 2008, Plaintiffs filed a timely appeal.  The basis of the appeal

15   was that the <u>Rodriguez</u> settlement covered an earlier class of purchasers distinct from the

16   Class alleged in the within action.  Specifically, while the <u>Rodriguez</u> class period spanned

17   the ten-year period from August 1, 1997, through July 31, 2006, Plaintiffs' claims herein

18   were brought on behalf of individuals who purchased bar-review courses *after* July 31,

19   2006.  Plaintiffs, in other words, allege a new and wholly distinct Class with its own

20   damages attributable to the *residual* impact on the bar-review-course market of the

21   conduct at issue in <u>Rodriguez</u>—notwithstanding that such conduct mostly took place

22   prior to the commencement of the within Class Period.  A true and correct copy of

23   Plaintiffs' briefing on this issue is attached as Exhibit 5 to the Request for Judicial Notice

24   filed herewith.

25        7.    Oral argument as to the appeal was heard by the Ninth Circuit on September

26   30, 2009.  On October 9, 2009, in lieu of ruling on the appeal, the Ninth Circuit issued an

27   Order "referr[ing the matter] to the Ninth Circuit Mediation Office to explore a possible

28   resolution through mediation."  A true and correct copy of that Order is attached as

Exhibit 6 to the Request for Judicial Notice filed herewith.  For the next eight months, the parties engaged in numerous settlement conferences supervised by the appointed Ninth Circuit Mediator, Roxane Ashe.  During the course of settlement discussions, Class Counsel's primary goal was to achieve the maximum substantive relief possible for the Class, and I consistently insisted that any settlement include relief designed to accelerate competition in the bar-review-course market.  To that end, Class Counsel negotiated non-monetary relief with Kaplan, under which Kaplan would provide Class Members with discount certificates redeemable toward the purchase of future Kaplan educational courses.  Because the certificates would have been usable for purchasing bar-review courses, it was the parties' good-faith belief that the coupons would hasten competition between Kaplan—the new entrant to the bar-review market—and West.  According to an expert retained by Plaintiffs to estimate the cash value of those certificates (Dennis W. Rook, the Chair of the Department of Marketing and Professor of Clinical Marketing at the USC Marshall School of Business), the coupons were worth at least $2.82 million.  A true and correct copy of the expert's Declaration evaluating the worth of the discount certificates is attached hereto as **Exhibit 1**.

8.      After Class Counsel and Kaplan had negotiated the discount-certificate relief, the Ninth Circuit Mediator issued a proposal that Plaintiffs settle their claims against West for $5.285 million.  Plaintiffs and West ultimately accepted the Mediator's proposal, and a global settlement agreement reflecting the discount-certificate settlement with Kaplan and the monetary settlement with West was executed in October 2010.  Thereafter, in December 2010, the case was remanded to this Court for settlement-approval purposes.  A true and correct copy of the Order remanding the case is attached as Exhibit 7 to the Request for Judicial Notice filed herewith.

9.      Two months later, Plaintiffs filed their Motion for preliminary approval of the initial settlement agreement.  After a full hearing on the merits, the Court granted Plaintiffs' Motion.  Further to the Court's ruling, notice was delivered to the Class, and Members were afforded an opportunity to submit claims.  According to the Claims

Administrator appointed by the Court, a total of 184,496 notice packets were delivered to the Class.  Also according to the Claims Administrator, a total of 47,542 timely claim forms were submitted, representing 57,262 separate bar-review-course purchases, and only 113 exclusion requests and 62 objections were received.  Based on the information provided to me by the Claims Administrator, one of the objections, filed by Class Member Jonathan Hutcheson, purported to have been made on behalf of 209 separate Class Members; thirty of the sixty-two Class Members who submitted objections did so to join in an objection filed by Class Member Daniel Greenberg of the "Center for Class Action Fairness"; and six objecting Class Members filed an objection through a non-Class Member attorney, George Richard Baker.  The Claims Administrator has further informed me that it incurred approximately $600,890 administering the initial settlement.[2]

10.    After the claims period had closed, Plaintiffs filed their Motion for final approval of the initial proposed settlement.  The Court denied that Motion, holding that the amount of the average recovery did not reasonably compare to that in Rodriguez or to that in another then-recent antitrust settlement against West:  Park v. Thomson Corp., Southern District of New York Case No. 05 Civ. 2931 (WHP).  True and correct copies of the Park claims administrator's declaration (containing data as to the size of the Park class and as to the number of claims submitted therein) and of the order granting final approval of the Park settlement are attached as Exhibits 3 and 4, respectively, to the Request for Judicial Notice filed herewith.

11.    In Rodriguez, a total settlement fund of $49 million was established on behalf of over 376,000 class members (i.e., on behalf of more than double the size of the

_____

[2] Claims-administration expenses incurred in connection with the initial settlement were paid for separately by Defendants.  Accordingly, no claims-administration expenses associated with the initial settlement will come out of the new settlement fund, but certain of those expenses will benefit the Class nonetheless.  For example, in connection with the prior proposed settlement, the Claims Administrator generated a database of contact information that facilitated that provision of cost-saving e-mail notice for the new settlement.

1    present Class).  Rodriguez v. West Publ'g Corp., 563 F.3d 948, 957 (9th Cir. 2009).

2    According to the Rodriguez claims administrator, approximately 88,000 claim forms

3    were submitted in that action, representing approximately 130,000 separate bar-review-

4    course purchases.  In Rodriguez, the settlement funds were distributed *pro rata* based on

5    the relative amount that each class member who submitted a valid claim form paid for

6    bar-review courses.

7         12.    Following the Court's denial of final approval of the prior settlement, the

8    parties participated in a private mediation before John Francis Carroll on September 22,

9    2011.  Shortly thereafter, on October 18, 2011, the Ninth Circuit reasserted its

10   jurisdiction and ordered the parties "to file supplemental letter briefs setting forth (i) their

11   respective positions on the [D]istrict [C]ourt's rejection of the [prior] proposed settlement

12   and (ii) the status of their commitment to the terms of the rejected settlement."  A true

13   and correct copy of the Ninth Circuit Order requesting such supplemental briefing is

14   attached as Exhibit 8 to the Request for Judicial Notice filed herewith.  Defendants filed

15   their briefs on October 28, 2013, expressing a commitment to the terms of the rejected

16   settlement.  True and correct copies of West and Kaplan's brief are attached as Exhibit 9

17   and 10, respectively, to the Request for Judicial Notice filed herewith.  By contrast,

18   Plaintiffs—at the risk of recovering nothing—asked the Court for a ruling on the merits

19   of the still-undecided appeal.  A true and correct copy of Plaintiffs' letter brief is attached

20   as Exhibit 11 to the Request for Judicial Notice filed herewith.

21        13.    In November 2011, the Ninth Circuit resubmitted the appeal and reversed

22   the dismissal.  True and correct copies of the Ninth Circuit Order resubmitting the appeal

23   and of the Order of reversal are attached as Exhibits 12 and 13, respectively.  At that

24   point, instead of issuing its Mandate, the Ninth Circuit again "refer[red matters] to the

25   Ninth Circuit Mediation Office to explore a resolution through mediation."  The parties

26   thus resumed active, arm's length negotiations before the appointed Ninth Circuit

27   Mediator.  Ultimately, after more than ten months of negotiation under the Ninth Circuit

28   Mediator's supervision, and over a year after their work with Mr. Carroll, the parties

agreed to settle this matter for $9.5 million.  A true and correct copy of Stipulation and Settlement Agreement ("Settlement Agreement") reflecting the terms of $9.5 million settlement is attached hereto as **Exhibit 2**.  Mr. Carroll himself concluded that the terms of the Settlement Agreement are "very satisfactory," and, "without reservation, [he] recommends the Court's approval."  A true and correct copy of Mr. Carroll's Declaration is attached hereto as **Exhibit 3**.

14.     Given the procedural posture of this case, I did not have the benefit of engaging in formal discovery in negotiating the new Settlement Agreement.  However, my co-counsel and I have had the benefit of considering the opinion of Mr. Carroll, who has declared that he is "particularly knowledgeable of the underlying facts" in this action, given his role as special master in Rodriguez.  My co-counsel and I have also reviewed the extensive case file from Rodriguez, including the substantial discovery taken therein.  We have also undertaken our own investigation to inform our negotiating position, including comprehensive market research, witness interviews, and risk re-evaluation in light of intervening federal-court decisions, including Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011).  Dukes in particular may have serious implications as to the manageability through trial of the nationwide Class herein, given (i) that Plaintiffs' proposed nationwide Class implicates different bar exams—each costing different amounts—administered across separate States and (ii) that the residual anticompetitive impact from the now-terminated co-marketing agreement has arguably decreased with each new bar-exam administration to degrees that also vary State by State, given the initially piecemeal nature of Kaplan's market entry.  I have also very carefully considered the risks of further litigation, including the significant risks stemming from (i) the fact that Kaplan's agreement not to purchase West Bar took place nearly a decade before the current Class Period and (ii) the fact that the "co-marketing" agreement that was also earlier at issue was dissolved as part of the Rodriguez settlement.  As to the co-marketing agreement, I further note that, since this case's inception, Defendants have argued that it was actually pro-competitive arrangement.  I have also taken note of West's repeated

argument that its dominant market position is simply the result of the high-quality products and services it offers, not of any alleged violations of the Sherman Act.  In light of these potential defenses and risks, as well as in light of the expenses that would be involved in continuing to litigate this action, the potential recovery to the Class if the case were fully litigated through trial, and the probability of any recovery being delayed by the taking of an appeal, I believe that the Settlement Agreement represents a fair and reasonable result for all parties involved.  Based on my experience in matters of this nature, the $9.5 million common-fund will be adequate to provide Class Members with a significant cash benefit.

15.    After a careful analysis of all the relevant factors, I have formed and now hold the opinion that the terms and conditions embodied in the new Settlement Agreement are fair, reasonable, and equitable; that they represent a good result; and that the risks and delay of further litigation likely outweigh the potential benefits that might derive from further litigation.  All of the Plaintiffs in this action have reached the same conclusion.  True and correct copies of Plaintiffs' Declarations supporting the Settlement Agreement were filed in connection with the Motion for preliminary settlement approval; they are re-attached hereto as **Exhibit 4**.

16.    This Court appointed Gilardi & Co., LLC ("Gilardi") as the Claims Administrator under the Settlement Agreement.  This is the same firm that was appointed in connection with the preliminary approval of the prior settlement, and substantial efficiencies were therefore achieved by appointing Gilardi once again under the new Settlement Agreement.  Under the Settlement Agreement, Gilardi was to deliver a copy of the Notice and Claim Form to the last-known postal address of each Class Member. After the execution of the Settlement Agreement, Gilardi informed the parties that significant administration expenses could be saved (i) if e-mail and/or postcard notification were used the "first step" of notification to Class Members instead of the first-class-mail procedures specified in the Settlement Agreement and (ii) if Class Members were permitted to submit their Claim Forms online.  Gilardi informed the

parties that it had utilized this notice procedure in other class-wide settlements with favorable results; that it had e-mail addresses for more than 96% of the Class; and that, of the remaining 4%, most appeared to be law-firm Class Members whose e-mail addresses could be easily located.  Based on these representations, the Court's Order granting preliminary approval modified the Settlement Agreement to permit the electronic delivery of notice and the electronic submission of claims.

I have read the foregoing, and the facts set forth therein are true and correct of my own personal knowledge.  Executed July 22, 2013, in the County of Los Angeles, State of California.

                                   /s/ *Alan Harris*
                                   Alan Harris

DECL. OF ALAN HARRIS IN SUPP. OF PLS.' MOT. FOR FINAL APPROVAL