1  Alan Harris (SBN 146079)
2  Priya Mohan (SBN 228984)
   HARRIS & RUBLE
3  655 North Central Avenue
   Glendale, California 91203
4  Telephone:  323.962.3777
   Facsimile:  323.962.3004
5  aharris@harrisandruble.com
   pmohan@harrisandruble.com

6  Perrin Disner (SBN 257586)
   LAW OFFICES OF PERRIN F. DISNER
7  1855 Camden Avenue, Suite 3
   Los Angeles, California 90025
8  Telephone:  (310) 742-7944
   Facsimile:  (888) 544-5154
9  pdisner@disnerlaw.com

10
   *Attorneys for Plaintiffs*
11

12              **UNITED STATES DISTRICT COURT**

13              **CENTRAL DISTRICT OF CALIFORNIA**

14

15 | STEPHEN STETSON, SHANE | Case No. CV-08-00810 R (Ex)
16 | LAVIGNE, CHRISTINE LEIGH
   | BROWN-ROBERTS, VALENTIN YURI | **PLAINTIFFS' SUPPLEMENTAL**
17 | KARPENKO, and JAKE JEREMIAH | **BRIEF IN SUPPORT OF REQUEST**
   | FATHY, individually and on behalf of all | **FOR AWARD OF FEES AND**
   | others similarly situated, | **COSTS**
18
19 |                Plaintiffs, | Date:  None
   |                             | Time:  None
20 |        v. | Courtroom:  850

21 | WEST PUBLISHING CORPORATION, | *Assigned to Hon. R. Gary Klausner*
   | a Minnesota corporation dba BAR/BRI,
22 | and KAPLAN, INC.,

23 |                Defendants.

24
25
26
27
28

# TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................1

II.     ARGUMENT ................................................................................................2

    A.      Delay Compensation Methods ............................................................4

        1.      Delay Compensation Method 1: Current Rates Applied to
                All Hours Billed During the Course of the Litigation ..............5\

        2.      Delay Compensation Method 2: Historical Rates Adding
                a Prime Rate Enhancement ...................................................5

    B.      Application of a Risk Multiplier .........................................................6

        1.      This Case Was Extremely Risky ...............................................6

        2.      Class Counsel Took the Case with the Expectation of
                Receiving a Risk Enhancement if they Prevailed.....................9

        3.      Class Counsel's Hourly Rates Do Not Reflect Any Risk..........9

        4.      The Appropriate Risk Multiplier Here.....................................10

III.    CONCLUSION ...........................................................................................10

# TABLE OF AUTHORITIES

**CASES**

Arenson v. Bd. of Trade,
 372 F. Supp. 1349 (N.D. Ill. 1974) ....................................................3

Benson v. Cont'l Cas. Co.,
 592 F. Supp. 2d 1274 (C.D. Cal. 2009) ............................................5

Camacho v. Bridgeport Fin., Inc.,
 523 F.3d 973 (9th Cir. 2008) ...........................................................4

Chalmers v. City of Los Angeles,
 676 F. Supp. 1515 (1987) ..................................................................5

Fischel v. Equitable Life Assur. Society of the U.S.,
 307 F.3d 997 (2002) ..........................................................................6

In re Activision Securities Litigation,
 723 F. Supp. 1373 (N.D. Cal. 1989) ................................................3

In re Equity Funding Corp. Sec. Litig.,
 438 F. Supp. 1303 (C.D. Cal. 1977) ................................................3

In re Linerboard Antitrust Litig.,
 2004 WL 1221350 (E.D. Pa. June 2, 2004) ...................................10

In re Masterkey Antitrust Litigation,
 1977 WL 1545 (D. Conn. Nov. 14, 1977) ........................................8

In re Omnivision Techs., Inc.,
 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................3

In re Ravisent Sec. Litig.,
 2005 WL 906361 (E.D. Pa. April 18, 2005) ..................................10

In re Wash. Pub. Power Supply Sys. Secs. Litig.,
 19 F.3d 1291 (9th Cir.1994) ............................................................4

Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau,
 2009 WL 3562871 (N.D. Cal. Oct. 27, 2009) .................................9

Kerr v. Screen Extras Guild, Inc..
 526 F.2d 67 (9th Cir, 1976) .............................................................3

Moreno v. City of Sacramento,
 534 F.3d 1106 (9th Cir. 2008) .........................................................2

Morris v. Lifescan, Inc.,
 54 Fed. App. 663 (9th Cir. 2003) .....................................................4

Stanger v. China Elec. Motor, Inc.,
 812 F.3d 734 (9th Cir. 2016) ................................................. passim

Stetson v. Grissom,
 2016 WL 2731587 (9th Cir. May 11, 2016) ........................... passim

Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc.,
 731 F. Supp. 2d 937 (N.D. Cal. 2010) .............................................5

Van Vranken v. Atl. Richfield Co.,
 901 F.Supp. 294 (N.D. Cal. 1995) .................................................10

Wal-Mart Stores, Inc. v. Dukes,
 564 U.S. 338 (2011)...........................................................................7

Weeks v. Kellogg Co.,
  2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ....................................................4

Whealen v. Hartford Life & Acc. Ins. Co.,
  2009 WL 4063166 (C.D. Cal. Nov. 20, 2009) ..................................................4

1  **I.  INTRODUCTION**

2         Pursuant to this Court's Order of June 10, 2016 and the Ninth Circuit's May 11,

3  2016 decision, Class Counsel respectfully request that this Court award $1,900,000 in

4  attorneys' fees as well as order reimbursement of $49,934.89 in incurred costs.[1] That the

5  class enjoyed an outstanding result and the fee is warranted is confirmed by the district

6  court's August 19, 2013 finding that "the reaction of the class members has been

7  overwhelmingly supportive . . . only two of 180,000 class members have objected."  (June

8  22, 2016 Declaration of Alan Harris. ("Harris Decl."), Ex. 4, 6:24-7:2). The award is also

9  supported by the Ninth Circuit's holding that a lodestar multiplier for bearing the risks of a

10 contingent fee case and delayed payment is proper. The requested fee award requires a

11 lodestar risk multiplier of less than 2, based on an upward adjustment from the initial May

12 6, 2013 lodestar of $918,898. That lodestar should be increased to compensate Class

13 Counsel for the additional three year delay in payment and the lost opportunity costs to

14 Class Counsel. Under either of the two recognized approaches to calculating the cost of

15 delayed payment of a fee, the requested multiplier is less than 2, modest compared to the

16 average lodestar multiplier that Courts typically apply in antitrust and other fee awards.

17 For the reasons set forth below, Plaintiffs respectfully request that the Court enter an Order

18 awarding Class Counsel fees and costs in the total amount of $1,949,934.89.[2]

19        On May 6, 2013, Plaintiffs submitted their motion for award of attorney's fees [Dkt.

20 No. 146] (the "Fee Motion"). In connection with the Fee Motion, Class Counsel submitted

21 declarations and detailed time reports showing the time worked and hourly rates.  See Dkt.

22

---

23 [1] In this case, Class Counsel conservatively requested a fee limited to but twenty percent of
   the common fund.  Stanger v. China Elec. Motor, Inc., 812 F.3d 734, 739 (9th Cir. 2016)
24 ("The Ninth Circuit has set 25% of the fund as a 'benchmark' award under the percentage-
   of-fund method").
25 [2] Plaintiffs' costs of $49,934.89 should be awarded in full.  As the Ninth Circuit
   recognized, Plaintiffs have supported their claim for expert fees.  Stetson v. Grissom, Nos.
26 13-57061, 13-57159, 2016 WL 2731587, *6 (9th Cir. May 11, 2016) ("Stetson Op.")
   ("Class Counsel provided almost two full pages explaining how these experts were used
27 and why their input was crucial or indispensable. The district court's reduction of Class
   Counsel's costs was therefore based on clearly erroneous findings of fact).  Class
28 Counsel's discussion of the importance of their consultation with their experts is detailed
   in the Aug. 12, 2013 Declaration of Harris [Dkt. No. 171] at ¶¶ 7-10.

Nos. 149 and 150.[3]  The District Court's August 19, 2013 finding—that Class Counsel reasonably spent but 1300 hours working on the case and that an across the board hourly rate of $450 was appropriate—was deemed by the Ninth Circuit to have been made without meaningful analysis. Without sufficient explanation, the district court incorrectly reduced Class Counsel's requested $918,898 lodestar to $585,000.  (Harris Decl., Ex. 4 (Transcript of Hearing on Fee Motion)*, p. 8:12-15.)[4]

## II.   ARGUMENT

Following Plaintiffs' appeal, the Ninth Circuit vacated the district court's Fee Order and issued a mandate stating that in fashioning an award, this Court should: 1) apply the Kerr reasonableness factors that do or do not favor applying a multiplier in this case, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment; (2) apply one of the two delay/compensation methods to compensate for the delay in payment under one of two methods: either by applying the attorneys' current rates to all hours billed during the course of the litigation or using the attorneys' historical rates and adding a prime rate enhancement; and (3) determine whether this case warrants the application of a risk multiplier to Counsel's lodestar to take into account that: (a) the attorneys took the case with the expectation that they will receive a risk enhancement if they prevail, (b) their hourly rate does not reflect that risk, and (c) there is evidence the case was risky. (Stetson Op.)  The Ninth Circuit intimated that the Kerr v. Screen Extras Guild, Inc. factors favor the application of a multiplier in this case.[5]  The June 22, 2016 Harris Declaration filed herewith provides factual support for this Court to find: (1) that the Kerr

---

[3] Since then, of course, Class Counsel have spent over three hundred additional hours on this case, time which may be added to the lodestar.  Harris Decl., ¶ 11.
[4] The district court's cursory analysis, suggesting Class Counsel sought compensation for duplicative work, was incorrect and did not take into consideration that such work reference "is 'inherent in the process of litigating over time.' *Moreno*, 534 F.3d at 1112." Stetson Op., *5.
[5] "Class Counsel provided a detailed analysis of the [*Kerr*] factors on pages 16–21 of their motion for attorney's fees; the district court briefly mentioned the factors and then, without any analysis, dismissed them. On remand, the court 'must explicitly discuss why the *Kerr* reasonableness factors do or do not favor applying a multiplier (positive or negative) in this case.' *See Stanger*, 812 F.3d at 740."  Stetson Op. *6.

1  factors warrant a multiplier of 2; (2) that the loadstar has increased during the past three

2  years of further litigation; and (3) that Class Counsel undertook this matter with the

3  expectation of a risk enhancement for this difficult and uncertain case and that their

4  hourly rates do not reflect such risk.

5      The relevant factors courts use in determining whether a multiplier is appropriate

6  are set forth in Kerr. 526 F.2d 67, 70.  Class Counsel respectfully submits that an analysis

7  of the Kerr factors demonstrates that the Court should award the requested fees. The Fee

8  Motion and the supporting declarations reflect that Class Counsel have substantial

9  experience in prosecuting class-wide claims, including antitrust matters. See Fee Motion

10  at p. 19: 1-15. Further, the quality of opposing counsel is also important in evaluating the

11  quality of the work done by Class Counsel.  See, e.g., In re Equity Funding Corp. Sec.

12  Litig., 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("[P]laintiff's attorneys in this class

13  action have been up against established and skilled defense lawyers, and should be

14  compensated accordingly"); Arenson v. Bd. of Trade, 372 F. Supp. 1349, 1354 (N.D. Ill.

15  1974). Defendants were represented in this litigation by Munger, Tolles, & Olson LLP,

16  Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor, Shearman & Sterling LLP

17  and Satterlee Stephens Burke LLP, all of which are highly competent, making Class

18  Counsel's tasks more challenging and increasing the difficulty and risks of the litigation.

19  At every stage of the proceedings, Class Counsel had to perform with a high level of

20  skill, efficiency, and professionalism. The "prosecution and management of a complex

21  national class action requires unique legal skills and abilities."  In re Omnivision Techs.,

22  Inc., 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008).

23      The Ninth Circuit has stated that 25% of the common fund is a "benchmark" award

24  under the percentage of the fund method of awarding attorney's fees in a class action

25  settlement.  Stanger v. China Elec. Motor, Inc., 812 F.3d 734, 739 (9th Cir. 2016).  See

26  also In re Activision Securities Litigation, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989)

27  ("This court's review of recent reported cases discloses that nearly all common fund fee

28  awards range around 30% even after thorough application of either the lodestar or twelve

factor method."). Indeed, it is not unusual for courts to award fee in excess of 30% in appropriate circumstances. See, e.g., Morris v. Lifescan, Inc., 54 Fed. App. 663, 664 (9th Cir. 2003) (approving 33% fee).

### A.   Delay Compensation Methods

"The Court has the discretion to compensate counsel for a delay in payment by either awarding fees at the current hourly rate or by adding a 'prime rate enhancement' to the lodestar at the attorneys' historical rates." Whealen v. Hartford Life & Acc. Ins. Co., 2009 WL 4063166, at *5 (C.D. Cal. Nov. 20, 2009).  See In re Wash. Pub. Power Supply Sys. Secs. Litig., 19 F.3d 1291, 1305 (9th Cir.1994) ("The time value of money lost by the firm is only partially recouped [by applying historical rates]. Full compensation requires charging current rates for all work done during the litigation, or by using historical rates enhanced by an interest factor."). First, it should be noted that Class Counsel's hourly rates--both historical and current-- are reasonable. To gauge the reasonableness of Class Counsel's rates, it is appropriate to compare them with the hourly rates charged by Los Angeles firms practicing in the antitrust field. See Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008) ("Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the District Court sits."). Compared to the hourly rates at five firms with active antitrust practices in Los Angeles (Latham & Watkins, LLP, Gibson, Dunn & Crutcher, LLP, Quinn Emanuel Urquhart & Sullivan, LLP, Irell & Manella LLP, and Morrison & Foerster, LLP), Class Counsel's rates are reasonable. Partners at the five firms charged an average rate of $928 per hour in 2013. Associates charged an average rate of $533 per hour in 2013. *Billing Rates Across the Country*, National Law Journal, January 13, 2014 *available at* http://www. nationallawjournal.com/id=1202636785489/Billing-Rates-Acrossthe-Country?sl return =20150106200747. Weeks v. Kellogg Co., 2013 WL 6531177, at *31 (C.D. Cal. Nov. 23, 2013) (survey data may be used to determine a reasonable hourly rate). Principal Los Angeles defense counsel in this case were Munger, Tolles and Olson, recently found to be charging between $445 and $920 per hour.  (Harris Decl., Ex. 9) As

set forth in the 2013 Harris and Disner Declarations, the average rates for partners and associates in Class Counsel firms are lower than the average rates cited above, both in 2013 *and* currently.  See Dkt. Nos. 149 and 150.

### 1. Delay Compensation Method 1: Current Rates Applied to All Hours Billed During the Course of the Litigation

To arrive at the appropriate lodestar, most courts apply counsel's current hourly rates to all hours billed during the course of the litigation. Benson v. Cont'l Cas. Co., 592 F. Supp. 2d 1274, 1279 (C.D. Cal. 2009). In connection with their Fee Motion, Class Counsel submitted declarations detailing the total hours worked, applying then current hourly rates.  Dkt. Nos. 149 and 150.  The June 22, 2016 Harris Declaration brings the analysis up to date, applying current hourly rates.  Utilizing Class Counsel's current rates yields an enhanced lodestar of $1,040,166. This analysis gives no credit to over three hundred hours of additional work since the May 6, 2013 Fee Motion. (Harris Decl., ¶ 11.) Applying a multiplier of 1.82 to the adjusted lodestar confirms that the fee request here, $1,900,000, is reasonable.

### 2. Delay Compensation Method 2: Historical Rates Adding a Prime Rate Enhancement

The second delay compensation method adjusts the attorneys' fees by reference to a prime rate interest factor. Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc., 731 F. Supp. 2d 937, 951-52 (N.D. Cal. 2010). (" In order to select the appropriate interest rate, the valid alternatives are "(1) the cost to plaintiff's counsel of borrowing funds to support himself during the non-paying phases of the litigation; and (2) the cost of foregone interest on the money counsel would have accumulated if he had been paid throughout the lawsuit." Chalmers v. City of Los Angeles, 676 F. Supp. 1515, 1527 (1987). A court may measure the cost of foregone interest on the money by applying the U.S. prime rate compounded annually. Theme Promotions, 731 F. Supp. 2d 937, 951. On February 8, 2008 when the lawsuit was filed the prime rate was 3.25%, where it remained until December 17, 2015 when it increased to 3.5%.  Applying the prime interest rate compounded annually from May 6, 2013 through September 6, 2016, the earliest possible

1   time when the fee might actually be paid, the adjusted lodestar is $1,024,614.  (Harris

2   Decl. ¶ 5.)  Accordingly, applying the prime rate enhancement method to Class Counsel's

3   May 6, 2013 lodestar would also result in a lodestar multiplier of less than 2, here 1.85.

4   The requested fee award is reasonable by reference to either method.

### B.   Application of a Risk Multiplier

The Ninth Circuit indicated that this Court should apply a risk multiplier:

"The district court *must* apply a risk multiplier to the lodestar 'when (1)

attorneys take a case with the expectation they will receive a risk

enhancement if they prevail, (2) their hourly rate does not reflect that risk,

and (3) there is evidence the case was risky.' Failure to apply a risk

multiplier in cases that meet these criteria is an abuse of discretion."

*Stanger,* 812 F.3d at 741 (quoting *Fischel,* 307 F.3d at 1008) (emphasis

added). **Here, there is some evidence of risk—after all, the district court**

**initially dismissed the case** before being reversed on appeal—but the record

is not developed on the extent of that risk, or on the other two elements. The

district court failed entirely to consider whether Class Counsel's

representation merited a risk multiplier. On remand, the decision to apply a

risk multiplier—or not—remains within the district court's discretion, but in

either event it "must fully and adequately explain the basis for its decision."

*Stanger,* 812 F.3d at 741.

<u>Stetson</u> Op., at *5 (emphasis in bold).  This Court must now determine whether this case

warrants the application of a risk multiplier to Class Counsel's lodestar, taking into

account that: (a) the attorneys took the case with the expectation that they will receive a

risk enhancement if they prevail, (b) their hourly rates do not reflect that risk, and (c) the

case was risky. Here, all of the factors militate in favor of the application of a risk

multiplier.

### 1.   This Case Was Extremely Risky

The Ninth Circuit acknowledged the obviously risky nature of an antitrust class

action which -- just after filing -- was dismissed without leave to amend. <u>Stetson</u> Op., at *5 (9th Cir. May 11, 2016). Any antitrust case alleging a continuing, nationwide conspiracy, causing injury in fifty separate submarkets, is obviously fraught with risk.[6] There were daunting certification issues. See <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338 (2011).  On the merits, the single arguably per se violation, the "co-marketing" agreement between West and Kaplan, was abandoned as a result of the <u>Rodriguez</u> settlement.  The district court held that "based on Twombly, as a matter of law, plaintiff has not and cannot allege that defendant West is the proximate cause of any injury."  5:3-7.  At best, Class Counsel here expected to face an expensive "battle of the experts" at class certification, summary judgment and trial.  Undaunted by the district court's initial dismissal of this case, Class Counsel then engaged Defendant Kaplan in a tactical settlement negotiation, successfully securing a partial settlement which (a) achieved a valuable[7] class-wide settlement, (b) effectively provided injunctive relief by putting a strong wind into the sails of Kaplan's nascent venture into bar review, and (c) motivated the formerly intransigent West—previously uninterested in any settlement—to then agree after mediation to pay over half of the ultimate $9,500,000 cash settlement. After the 2011 settlement was rejected, the Ninth Circuit issued an order that the parties "file supplemental letter briefs setting forth (i) their respective positions on the [D]istrict [C]ourt's rejection of the [prior] proposed settlement and (ii) the status of their commitment to the terms of the rejected settlement." [Dkt. No. 147-8]. In spite of this open invitation to revive the 2011 settlement and bring the matter to a close with a minimum of further effort, Class Counsel instead committed to an indefinite amount of further work—at the risk of receiving nothing—and aggressively pursued an all-cash

---

[6] That this case was even more risky than the prior <u>Rodriguez</u> matter is highlighted by the fact that here, unlike in <u>Rodriguez</u>, not a single other firm in the nation filed a copy-cat case or sought to intervene.
[7] According to an expert retained by Plaintiffs to estimate the cash value of those certificates (Dennis W. Rook, the Chair of the Department of Marketing and Professor of Clinical Marketing at the USC Marshall School of Business), the coupon component of the 2011 settlement with Kaplan was worth at least $2.82 million. <u>See</u> May 6, 2013 Harris Decl. [Dkt. No. 150], Ex. 1.

settlement from both Defendants.  Ultimately, the decision to decline the Ninth Circuit's 2011 invitation to 'cash out' in face of the risk of having to commit a great deal more time and effort, toward the uncertain prospect of improving the outcome, netted an additional $4.215 million in cash for the Class, an increase of 45%, for the final all-cash settlement of $9,500,000.

With a class consisting of law school graduates, the presence of objectors to any settlement or fee request was another important risk factor, an obvious one in light of the fact of three appeals in <u>Rodriguez</u>, matching the three appeals in this case.[8] Objectors such as the Grissom Objectors add considerable risk, as they seem to feel free to make claims untethered to any of the actual facts of the case.  (Harris Decl. ¶ 6.) For example, they state that their analysis of "inexplicable" billing records pointed to facts which were otherwise "not on the Court's radar." However, there was no specific reference to any "inexplicable" entry, and none was referenced by the district court, which need no help in discharging its duty to review the Fee Motion.  Further, the claim that Class Counsel used "block billing" is easily articulated but unsupported. Examination of the records reveal no such practice, as the undersigned, having decades of experience, assiduously keeps time records in a proper manner.  May 6, 2013 Harris Decl. [Dkt. No. 150], ¶ 15.  <u>See</u> <u>In re Masterkey Antitrust Ligitation</u>, 1977 WL 1545 (D. Conn. Nov. 14, 1977).)  Again, as outlined in the May 6, 2013 Harris Declaration at paragraph 14, and confirmed by the district court, the Grissom Objectors did nothing to assist the court's analysis of the fee issue and nothing to forward progress in the settlement of the case:  "The Court is not persuaded that the [Grissom] objectors' role was even minimally material in bringing about the successful settlement. . . . what the objectors truly seek is a windfall."  (Harris Decl., Ex. 4, 10:3-5, 11:8-9.) The objectors' claim that no written discovery was conducted ignores the reality

---

[8] According to the Ninth Circuit:  "As we previously observed, this case is before us for the third time. Moreover, in a related matter before the same district judge, decimations and denials of attorneys fees have been appealed three times, and each time we have reversed the district court, at least in part." <u>Stetson</u> Op., at *6.

that extensive materials from <u>Rodriguez</u> were sought and reviewed and that lay and expert witnesses were interviewed, both telephonically and in person, in Florida, Washington and California.  (May 6, 2013 Harris Decl. [Dkt. No. 150], ¶ 4; Aug. 12, 2013 Harris Decl. [Dkt. No. 171], ¶¶ 2-7).

### 2. Class Counsel Took the Case with the Expectation of Receiving a Risk Enhancement if they Prevailed

Class Counsel only receive compensation for successful and profitable cases (i.e. cases that do not result in a net loss). Class Counsel rely on "[r]isk multipliers [to] incentivize attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis." <u>Stanger v. China Elec. Motor, Inc.</u>, 812 F.3d 734, 741 (9th Cir. 2016) Class Counsel took on this complex and risk-laden case with the expectation of receiving a risk enhancement if they prevailed.  (Harris Decl., ¶ 2.)

### 3. Class Counsel's Hourly Rates Do Not Reflect Any Risk

Class Counsel's hourly rates do not reflect a premium for the risk of non-payment. (Harris Decl, ¶ 26.) As noted in part C, *supra*, Class Counsel's hourly rates are in line with the rates charged by defense-side antitrust litigation attorneys in the Los Angeles area who work on an hourly rate in non-contingent cases.  Fees charged by defense counsel are paid on a regular basis by clients, therefore are not subject to the risk of nonpayment. The slightly lower rates for Harris & Ruble attorneys have been approved by state and federal courts in Los Angeles. (Harris Decl. ¶ 25.) The Grissom Objectors refer to a single 2007 San Francisco case in which, while acknowledging that "plaintiffs' counsel have done an admirable job maintaining contemporaneous records of the hours expended on this litigation," the court implicitly criticized Plaintiff's expert, Peter Zeughauser, on the basis that his expertise was based on his work in Southern California, not in San Francisco: "both Harris and Zeughauser fail to explain the reasonableness of the rates for the Northern District of California, instead stating that they are reasonable . . . for the Los Angeles . . . area." <u>Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau</u>, 2009 WL 3562871, at *3 (N.D. Cal. Oct. 27, 2009). Review of the Zeughauser Declaration

1    establishes that his expert opinion warrants weight in this case.  [Dkt. No. 150-6].

2                    **4.      The Appropriate Risk Multiplier Here**

3          The Class Notice informed some 180,000 new attorneys that Class Counsel would

4    seek $1,900,000 in attorneys' fees, yet only two objections were filed.  By requesting but

5    twenty percent of the common fund, less than the Ninth Circuit benchmark of 25%, Class

6    Counsel requested a fee which required application of a modest risk multiplier of just

7    over 2.  With the passage of another three years, and an adjustment to the lodestar for that

8    intervening time, the requested multiplier is now less than 2, a multiplier which is

9    appropriate in light of the factors outlined herein, and lower than multipliers routinely

10   awarded in analogous antitrust and other class actions. See e.g. Van Vranken v. Atl.

11   Richfield Co., 901 F.Supp. 294, 298 (N.D. Cal. 1995) ("[m]ultipliers in the 3-4 range are

12   common in lodestar awards for lengthy and complex class action litigation.")  Courts

13   frequently award antitrust class action attorneys, multipliers as high as four times their

14   lodestar. See e.g., In re Linerboard Antitrust Litig., 2004 WL 1221350, *16 (E.D. Pa.

15   June 2, 2004) (noting that from 2001 through 2003, the average multiplier approved in

16   common fund cases was 4.35); In re Ravisent Sec. Litig., 2005 WL 906361, *12 (E.D.

17   Pa. April 18, 2005) (fee represented a multiplier of 3.1). Even were this Court to retain

18   the original finding that the lodestar should be but $585,000, a reasonable 3.25 multiplier

19   would support the requested $1,900,000 fee (3.25*$585,000=$1,901,250).

20   **III.   CONCLUSION**

21         Plaintiffs respectfully request that this Court enter an order awarding Class

22   Counsel $1,900,000 in attorneys' fees, representing a lodestar multiplier of less than 2,

23   and reimbursing their litigation costs of $49,934.89, for a total award of $1,949,934.89.

24

25   DATED: June 22, 2016                    Respectfully submitted,

26                                           /s/ Alan Harris
                                             Alan Harris
27                                           Perrin F. Disner

28